# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEVEN G. MILLETT and MELODY J. MILLETT, On Behalf of Themselves and Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC and EQUIFAX CONSUMER SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION FILE<br><br>NO. 1:05-CV-2122-BBM |

## O R D E R

This action is before the court on Defendants Equifax Information Services, LLC and Equifax Consumer Services, Inc.'s Motion to Dismiss [Doc. No. 66].

I.   **Factual and Procedural Background**

The facts presented here are taken from the Fourth Amended Class Action Complaint (the "Fourth Amended Complaint") and are deemed true at this stage of the proceedings. Plaintiffs Steven and Melody Millett (respectively, "Mr. Millett" and "Mrs. Millett," or together the "Milletts") reside in Johnson County, Kansas. On behalf of themselves and others similarly situated, the Milletts have filed a putative class action against Equifax Information Services, LLC ("EIS") and Equifax Consumer Services, Inc. ("ECS") (collectively, "Equifax") for violations of the Credit

Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 et seq., and the Credit Reporting Agencies Act ("CRAA"), 15 U.S.C. § 1681, et seq., which is a provision of the Fair Credit Reporting Act ("FCRA"), as well as for breach of contract and fraud.

In approximately 1989, an individual using the name Abundio P. Cuatle or Abundio Cuatle or Abundio Perez and similar aliases began to illegally use Mr. Millett's social security number to obtain false identification, employment, insurance, credit cards and to pay withholding taxes. In August 2002, the Milletts learned that Bank of America maintained an account for an individual who was fraudulently and criminally utilizing Mr. Millett's social security number. In an effort to protect themselves from future identity theft, the Milletts bought a service offered by ECS called "Equifax Credit Watch." Equifax and related companies marketed and sold "Equifax Credit Watch" ("Credit Watch") as a service to help consumers protect themselves from identity theft. The promotional materials for the service promised e-mail alerts within 24 hours of possible identity theft activity. Further, the promotional materials described (a) how identity thieves steal a victim's information and (b) how identity thieves use the information to open new credit card and other accounts. The materials indicated that when identity thieves do not pay the bills on the accounts that they have opened, the delinquency is reported on the victim's credit

report. The promotional materials for the service indicated that the purchaser of Credit Watch could protect himself or herself from identity theft by subscribing to Credit Watch and thereby obtain an early alert regarding suspicious activity on one's credit report. The Milletts entered into a contract with ECS and purchased the service by subscribing to Credit Watch for a monthly fee that was automatically billed. Credit Watch, however, did not provide the promised services because at no time while subscribing to the service did Mr. Millett receive notification that another person continued to obtain credit utilizing his personal identification information.

On June 16, 2004, the Milletts filed this action in the U.S. District Court for the District of Kansas, which then transferred the action to this court on August 15, 2005. The Milletts filed the Fourth Amended Class Action Complaint on October 18, 2005. Equifax has moved for partial dismissal of the instant action.

## II.    Applicable Legal Standard

This court has the power to dismiss a legal action for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), however, dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the non-moving party. See Spanish Broad. Sys. of Fla., Inc. v.

Clear Channel Commc'ns, Inc., 376 F.3d 1065, 1070 n.1 (11th Cir. 2004). The "threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." Quality Foods de Centro Am., S.A. v. Latin Am. Agribus. Dev. Corp., S.A., 711 F.2d 989, 995 (11th Cir. 1983). "A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

### III. Discussion

#### A. CROA Antifraud Claims

The CROA was enacted in 1994 as part of an amendment to the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq. Parker v. 1-800 Bar None, No. 01 C 4488, 2002 WL 215530, at *2 (N.D. Ill. Feb. 12, 2002). It's purpose "is to ensure that consumers who utilize the services of credit repair organizations have the necessary information to make informed decisions regarding the purchase of those services and to protect the public from unfair and deceptive business practices." Id.

The Milletts have alleged that Equifax is a credit repair organization that violated the CROA by collecting advance payment before fully performing a service and by failing to provide certain documents and disclosures. (Fourth Am. Compl. ¶¶

29-37, citing 15 U.S.C. §§ 1679b, 1679c, 1679d & 1679e.) In addition to these claims, the Milletts allege that Equifax violated certain other provisions of the CROA, namely 15 U.S.C. § 1679b(a)(3) ("Section 1679b(a)(3)") and 15 U.S.C. § 1679b(a)(4) ("Section 1679b(a)(4)"). These provisions apply to any "person," rather than only to credit repair organizations. Equifax has moved to dismiss the Milletts's claims arising under Sections 1679b(a)(3) and (4) for failure to plead with particularity. See Fed. R. Civ. P. 9(b).

The Milletts claim that the pleading standards addressed in Federal Rule of Civil Procedure 9 ("Rule 9") are not applicable to their claims under Section 1679b(a)(4). Under Section 1679b(a)(4), "no person" may

> (4) engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(4). This Section explicitly refers to "fraud," and fraud falls squarely within the class of claims contemplated by the plain language of Rule 9: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Thus, the court will apply the heightened pleading standard of Rule 9 to the Milletts's Section 1679b(a)(4) claims.

Although the Federal Rules of Civil Procedure generally require only that a

complaint set forth a short and plain statement of the plaintiff's claim, see Fed. R. Civ. P. 8(a), they provide a particularity rule in the case of fraud claims. See Fed. R. Civ. P. 9(b).

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. The application of Rule 9(b), however, must not abrogate the concept of notice pleading. Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (citations and internal quotations omitted); see Leonard v. Stuart-James Co., 742 F. Supp. 653, 659 (N.D. Ga. 1990) (Forrester, J.) (granting motion to dismiss where complaint failed to allege "specifically when, where, by whom, or specifically what that representation was").

In the instant action, the Milletts have alleged that they entered into a contract with ECS for Credit Watch; that the promotional materials for Credit Watch indicated that the purchaser could protect himself or herself from identity theft by subscribing to the service and thereby obtain an early alert regarding suspicious

activity on one's credit report; that Credit Watch did not provide the promised services; and that at no time while subscribing to the service did Mr. Millett receive notification that another person continued to obtain credit utilizing his personal identification information.

These allegations fall far short of complying with the Ziemba standard. The Milletts have indicated that misrepresentations were made in promotional materials, but have not alleged "the time and place of each such statement." Ziemba, 256 F.3d at 1202. The Milletts have not indicated *what* promotional materials are at issue and whether the Milletts relied on the specific misrepresentations in those particular promotional materials. The Milletts have also failed to allege the period of time during which they were under contract for the Credit Watch service.

The Milletts argue that the court should relax the requirements of Rule 9(b) in assessing the sufficiency of the Fourth Amended Complaint. The Milletts rely on four cases, none of which arose in the Eleventh Circuit, to support this argument. Each of these cases, however, is readily distinguished from the instant action. First, in Fujisawa Pharmaceutical Co. v. Kapoor, 814 F. Supp. 720, 726-27 (N.D. Ill. 1993), even though the court applied Rule 9(b) "less stringently," it nonetheless found "ample references to specific dates, statements, documents and contents" in the plaintiff's complaint to support what would otherwise have been an insufficient allegation of

fraud. Second, in Sunbird Air Services, Inc. v. Beech Aircraft Corp., 789 F. Supp. 364, 366 (D. Kan. 1992), the court allowed allegations of fraud to be less specific where the events at issue occurred over "an extended period of time." In the instant action, the Milletts have failed to indicate the period of time during which they allege the fraud to have occurred. Sunbird is thus inapposite. Third, in Bale v. Dean Witter Reynolds, Inc., 627 F. Supp. 650, 652 (D. Minn. 1986), the court did not require the plaintiff-investor in an action against his former brokerage firm to "recite, in detail, the fact of each transaction of the fraudulent scheme." (citation omitted) Unlike the instant action, in Bale the plaintiff at least indicated the period of time during which he was engaged in transactions with the defendant firm. Lastly, in Serpa v. Jolly King Restaurants, Inc., 62 F.R.D. 626 (S.D. Cal. 1974), plaintiffs signed an identical franchise agreement at different times that they alleged violated the antitrust acts. The court held that "allegations of time and place" as to each plaintiff were unnecessary. Id. at 635. In contrast, the Milletts have not identified a specific document viewed by them or the putative class members containing the alleged misrepresentation. A review of these cases has not persuaded the court that the Milletts's Complaint qualifies for any relaxation of the requirements of Rule 9(b).

Equifax has raised the further issue of whether the Milletts have stated their CROA claims with sufficient particularity, in part, because they have stated all claims

against both Defendants jointly. Equifax principally relies on Brooks, 116 F.3d at 1381, in which the Eleventh Circuit held, in the alternative, that since the complaint was "devoid of specific allegations with respect to the separate Defendants," the complaint was "subject to dismissal without prejudice for failure to plead fraud with the requisite specificity as to each of the Defendants under Rule 9(b)." The Milletts do not deny that they have engaged in group pleading, but they argue that such is appropriate because the Defendants "are closely associated companies and when the details as to which aspect of the alleged fraud was committed by which company would be particularly within the knowledge of the Defendants." (Mem. in Opp'n to Mot. to Dismiss 9, citing Waltree Ltd v. ING Furman Selz LLC, 97 F. Supp. 2d 464, 469 n.6 (S.D.N.Y. 2000)). In Waltree, the plaintiff's complaint did not distinguish between two ING entities in a securities fraud action. In finding that the plaintiff had not engaged in impermissible group pleading, the District Court noted that although it was "a close call," the "facts surrounding the corporate relationship between the ING entities, as well as the precise roles those entities played in the challenged transactions, [was] exclusively within those entities' knowledge"; that there was "little dispute that both ING entities were intimately involved" in the disputed transactions; and that the complaint put "the ING entities on sufficient notice regarding the charges against them." Id.

In contrast, the record indicates that EIS will dispute that it was engaged in the questioned transaction(s). The court is thus unpersuaded that the Milletts's claims should be excepted (in the manner of Waltree) from the requirement that they plead specific facts with respect to each Defendant. Having reviewed the Milletts's allegations and the cases relied on by both parties, the court holds that the Milletts have not met the requirements of Rule 9(b) in stating their Section 1679b(a)(4) claims.

### B.  Common Law Fraud Claims

Under the law of the State of Georgia, the five elements of fraud are: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." Chhina Family P'ship, L.P. v. S-K Group of Motels, Inc., 275 Ga. App. 811, 815, 622 S.E.2d 40, 45 n.12 (2005) (quoting ReMax N. Atlanta v. Clark, 244 Ga. App. 890, 893, 537 S.E.2d 138, 141 (2000)). Such claims must also meet the heightened pleading requirements of Rule 9(b). For the reasons set out above with respect the Milletts's Section 1679b(a)(4) claims, this court holds that the Milletts have not met the requirements of Rule 9(b) in stating their common law fraud claims.

The Milletts have asked that in the event this court determined that the Complaint failed to meet the pleading requirements of Rule 9(b) that they be allowed time to cure any deficiencies. The Milletts are "entitled to one chance to amend the

complaint and bring it into compliance with the rule." Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 568-69 (11th Cir. 1994). The Milletts thus have 20 days from the entry of this Order to amend their Complaint to properly state their Section 1679b(a)(4) and common law fraud claims, or those claims will be dismissed.

### C.  Claims Arising under Section 1679b(a)(3)

The court will reserve ruling on whether the Milletts have sufficiently pleaded their claims under Section 1679b(a)(3) until after the Milletts have had the opportunity to amend their Complaint.

### D.  CRAA Claims

The Milletts have purported to state a claim under 15 U.S.C. § 1681e(b) ("Section 1681e(b)") of the CRAA.

> Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To establish a prima facie case of a violation of § 1681e(b), a consumer must present evidence that a credit reporting agency's report was inaccurate and was a causal factor in the denial of his credit application. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1161 (11th Cir. 1991). The FCRA, however, "does not make reporting agencies strictly liable for all inaccuracies." *Id.* "The agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures . . . ." *Id.*

Enwonwu v. Trans Union, LLC, No. 05-13695, 2006 WL 227585, at *3 (11th Cir. 2006).

Equifax argues that the Milletts have failed allege that Equifax produced an inaccurate credit report so as to make out a prima facie case for the violation of Section 1681e(b). The Milletts have alleged that the reports provided through Credit Watch to them constituted credit reports under the FCRA; that they received no notice of ongoing identity theft, as promised by Equifax; and that Equifax knew that Credit Watch could not produce the promised results. The Milletts have further alleged that Equifax furnished the reports without following reasonable procedures to assure the maximum possible accuracy of the information contained therein. The Milletts have not alleged that those credit reports, however, were inaccurate so as to satisfy the prima facie case set forth in Enwonwu.[1]

---

[1] In support of their Section 1681e(b) claims, the Milletts have cited numerous cases discussing what constitutes "reasonable procedures to assure maximum possible accuracy." See, e.g., Lowry v. Credit Bureau, Inc. of Ga., 444 F. Supp. 541, 544 (N.D. Ga. 1978) (Murphy, J.) (holding that automatic addition of plaintiff's social security number to credit file of bankrupt person with similar name to plaintiff's might constitute violation of FCRA obligations); Philbin v. Trans Union Corp., 101 F.3d 957, 965 (3d Cir. 1996) (holding that where agency had produced two reports that were inconsistent with each other, one was inaccurate, and thus plaintiff has produced sufficient evidence to survive summary judgment on the issue of reasonable procedures); Thompson v. San Antonio Retail Merchs. Ass'n, 682 F.2d 509, 513 (5th Cir. 1982) (holding that where inaccurate credit report resulted the denial of credit to plaintiff, defendant agency was liable, in part, because it had failed to exercise reasonable care in programming its computer); Graham v. CSC Credit Servs., Inc., 306 F. Supp. 2d 873, 881 (D. Minn. 2004) (holding that victim of identity theft had stated a claim sufficient to survive summary judgment where he had alleged that agency had failed to follow reasonable procedures in failing to remove inaccurately reported delinquent account from his file *after* he disputed that account). In contrast to the instant action, in all of these cases the plaintiffs alleged that defendants had furnished an inaccurate credit report containing information concerning some person other

The court understand the Milletts to have cited <u>Koropoulos v. Credit Bureau, Inc.</u>, 734 F.2d 37 (D.C. Cir. 1984) for the proposition that a technically accurate report does not shield a reporting agency from liability when the information disclosed therein is misleading. In <u>Koropoulos</u>, a plaintiff took out a loan from a bank, defaulted on that loan, but eventually paid a collection agency the entire balance, a percentage of which was returned to the bank. Plaintiff sued because the code the reporting agency used to describe the plaintiff's payment of the former debt was so vague as to qualify as inaccurate. That code applied "to any debt charged off as a loss, referred for collection, requiring a civil action, or uncollectible because the debtor 'skipped.'" <u>Id.</u> at 40. The code, however, did indicate that there was no balance due on the loan. In addition, the plaintiff in <u>Koropoulos</u> alleged that his report was sent to a department store and may have resulted in the denial of credit to his wife. The Court of Appeals for the District of Columbia Circuit held that the disputed report, which contained factually correct information that nonetheless may have misled a reader was actionable under Section 1681e(b). Even if <u>Koropolous</u> controlled in this Circuit, however, the Milletts have alleged that advertisements regarding the credit reports, rather than the credit reports themselves, contained

---

than the one to whom the report purportedly pertained *and* that the plaintiff had suffered a denial of credit or credit on less favorable terms as a result.

-13-

misleading information.

Furthermore, the Milletts have not alleged that the credit reports at issue were "a causal factor" in the denial of any of Mr. Millett's credit applications. Enwonwu, 2006 WL 227585, at *3. The Milletts rely on a Ninth Circuit decision, Guimond v. Trans Union Credit Information Co., 45 F.3d 1329 (9th Cir. 1995), for the proposition that failure to comply with Section 1681e(b) is actionable even absent a denial of credit. In Guimond, the Ninth Circuit determined that liability under Section 1681e(b) could be predicated "as a matter of law, on the occurrence of some event-- denial of credit or transmission of the report to third parties—resulting from the compilation and retention of erroneous information." Id. at 1333. The Milletts have neither alleged the denial of credit based on the credit reports at issue in this case nor have they alleged that these reports were transmitted to third parties. The court thus need not decide whether Guimond controls, because even if it did, the Milletts would not be able to avail of it to save their Section 1681e(b) claims. For the forgoing reasons, the Milletts's Section 1681e(b) claims must be DISMISSED.

IV.   Summary

Defendants Equifax Information Services, LLC and Equifax Consumer Services, Inc.'s Motion to Dismiss [Doc. No. 66] is GRANTED IN PART and DENIED IN PART. Plaintiffs have 10 days from the entry of this Order to amend their

Complaint, or their common law fraud claims and claims arising under Section 1679b(a)(4) will be dismissed.

IT IS SO ORDERED, this 27th day of March, 2006.

s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE