## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVEN G. MILLETT, | ) | |
| MELODY J. MILLETT, | ) | |
| On Behalf Of Themselves and | ) | |
| All Others Similarly Situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 05-599-SLR |
| | ) | |
| TRUELINK, INC., | ) | CLASS ACTION |
| a Trans Union Company, | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

### [SECOND] <u>THIRD</u> AMENDED COMPLAINT - CLASS ACTION

Plaintiffs, Steven G. Millett and Melody J. Millett, by and through their undersigned attorneys, bring this action for damages against Defendant TrueLink, Inc., a TransUnion Company ("Defendant"). Plaintiffs bring this action on behalf of themselves and other similarly situated persons. For their complaint against Defendant, Plaintiffs allege the following:

### PARTIES

1.    Plaintiffs Steven Millett and Melody Millett ("Named Plaintiffs") reside in Johnson County, Kansas.

2.    Plaintiffs bring this action as representatives of a class of similarly situated plaintiffs ("Class Plaintiffs") who purchased the same or similar products and services of Defendant and who are entitled to bring the same causes of action against Defendant.

3.       Defendant is a corporation duly organized and existing in accordance with

the laws of Delaware and having its principal place of business in California.

Defendant's web pages refer to TrueLink as "a Delaware corporation based

in San Luis Obispo, California."  Defendant is authorized to do business and

is doing business in the states of Delaware and California.  Defendant is,

upon information and belief, a subsidiary or affiliated company of

TransUnion LLC [and/or Trans Union Consumer Solutions] (hereinafter

[collectively] referred to as "TransUnion").

4.       At all relevant times, Defendant was engaged in the retail sale of services and

products and, in conjunction with said sales, engaged in interstate commerce.

## JURISDICTION AND VENUE

5.       Named Plaintiffs bring this action on behalf of themselves and Class

Plaintiffs.

6.       Jurisdiction of this action is conferred upon this court by the provisions of 28

U.S.C.§§ 1331, 1332, 1337, 1343 and 1367.  The causes of action brought by

Named Plaintiffs and Class Plaintiffs can be determined in this judicial

proceeding and consolidated determination of these actions will provide

judicial economy, fairness and convenience for all parties.  The liability

evidence establishing all causes of action will be identical and none will

predominate nor create confusion to a jury.

7.      The matter in controversy exceeds $75,000.00.  There is diversity of

citizenship between Named Plaintiffs and Defendant.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

8.      On and after September 9, 2001, Defendant sold a credit monitoring service

known as Credit Monitoring or Online Credit Monitoring (hereinafter "Credit

Monitoring").

9.      Defendant maintains an internet portal called TrueCredit through which

consumers may access and purchase credit analysis products including Credit

Monitoring.

10.     At all pertinent times, Defendant advertised and marketed Credit Monitoring

<u>nationwide in uniform advertising</u> as a service that provides the following

privileges and services to Credit Monitoring members:

    a.      Protecting members against identity theft and fraud,

    b.      Allowing members to  monitor their credit report with weekly fraud-

            watch emails,

    c.      Providing members with weekly email alerts of changes in their credit

            reports,

    d.      Allowing members to immediately find out about fraudulent activity,

            and

    e.      Allowing members to always be on top of what is happening with

            their credit.

-3-

11.    The privileges and services that are provided to members of the Credit Monitoring service are explained in the internet pages provided on the TrueCredit internet portal.

12.    [Named Plaintiffs and ]Class Plaintiffs purchased the Credit Monitoring service from Defendant on or after September 9, 2001 through internet transactions on the TrueCredit internet portal.  Named Plaintiffs purchased the Credit Monitoring service on or about August 2, 2003.

13.    In conjunction with their purchase of the Credit Monitoring service, Named Plaintiffs and Class Plaintiffs entered into contracts with Defendant which set forth the terms and conditions of the parties' use of the TrueCredit internet portal and the products and memberships that could be purchased on the TrueCredit internet portal ("Contracts").

14.    The Contracts provide that consumers who purchase the Credit Monitoring service (i.e. become "members" of that service) are entitled to the privileges and services provided as part of the Credit Monitoring service in exchange for payment for membership in the Credit Monitoring service.

15.    The Contracts further provide that membership in the Credit Monitoring service will be automatically renewed unless cancelled.

16.    The Contracts do not expressly state the privileges and services to which members of the Credit Monitoring service are entitled, but instead incorporate the description of privileges and services provided in the description of the Credit Monitoring service that is found on the internet

-4-

pages on the TrueCredit internet portal. The privileges and services that are promised to members, pursuant to the descriptions incorporated in the Contracts, are as follows:

   a.    Protecting members against identity theft and fraud,

   b.    Allowing members to  monitor their credit report with weekly fraud-watch emails,

   c.    Providing members with weekly email alerts of changes in their credit reports,

   d.    Allowing members to immediately find out about fraudulent activity, and

   e.    Allowing members to always be on top of what is happening with their credit.

17.   The Contracts provide that Defendant does not warrant the correctness, completeness or accuracy of the information that it provides to consumers pursuant to the Contracts.

18.   The Contracts provide that the Credit Monitoring service is to be paid for in advance and that payments will be automatically charged to a consumer's credit card.

19.   The Contracts provide that [disputes pertaining to the Contracts are governed by] Delaware law shall apply to the interpretation of the Contracts and that jurisdiction and venue for any action pertaining to the Contracts are proper in the state and federal courts of New Castle County, Delaware.

20.  Despite the assertions in Defendant's marketing materials that Credit Monitoring will protect consumers from identity theft and fraud, the Contract provides that consumers will not receive any identity theft or fraud protection services during the first 30 days following commencement of membership in the Credit Monitoring service.

21.  The Credit Monitoring service was marketed by Defendant to consumers, including Named Plaintiffs and Class Plaintiffs, who feared that private, personal information would be used by the perpetrators of identity theft and credit information fraud.

22.  Named Plaintiffs and Class Plaintiffs were induced to purchase the Credit Monitoring service by Defendant which advertised and marketed the service as one that would help guard against fraud and identity theft.

23.  Defendant represented that the Credit Monitoring service would provide protection to consumers against identity theft and fraud and would provide weekly fraud-watch emails.

24.  The Credit Monitoring service failed to perform as represented by Defendant and failed to provide all or some of the services identified in the marketing materials and Contracts.

25.  Defendant charged a fee to and received funds from Named Plaintiffs and Class Plaintiffs for the purchase and continued use of the Credit Monitoring service.

26.    The contract provided by Defendant to Named Plaintiffs and to Class Plaintiffs included "Fraud Resolution" services provided by PromiseMark, a "third party service provider."  The Fraud Resolution services included the promise that PromiseMark would "[r]un a credit check and review your credit record to determine accuracy", and "research and investigate potential damage to your identity."

27.    Upon information and belief, the services of PromiseMark were no longer available to Named Plaintiffs for a substantial portion of the term of the contract.

28.    Named Plaintiffs and Class Plaintiffs did not receive adequate notification of any modification made to the terms of the contract.

29.    Defendant indicated it would provide "Toll-free credit specialists with fraud resolution services."

30.    Defendant indicated "[s]hould you become a victim of identity theft, TrueCredit provides you with Fraud Resolution services to assist you in the recovery of financial and credit losses."

31.    The credit reports, scores, monitoring, Fraud Resolution Services and tools provided by and/or prepared by TrueLink were "based on data provided by TransUnion."

32.    Most or all of the representations and services that were provided by Defendant in relation to the Credit Monitoring service were made in or provided from Defendant's place of business in the State of California.

## COUNT I – CONSUMER LEGAL REMEDIES ACT

33.     Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as if more fully set forth herein.

34.     Named Plaintiffs and Class Plaintiffs are "consumers" for purposes of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

35.     The Credit Monitoring service provided by Defendant constitutes a "service" for purposes of the CLRA.

36.     The Contract through which Named Plaintiffs and Class Plaintiffs purchased the Credit Monitoring service constitutes a "transaction" for purposes of the CLRA.

37.     Defendant is a "person" for purposes of the CLRA.

38.     The CLRA provides a list of unfair and deceptive acts which are unlawful when undertaken in relation to a transaction involving the sale of services to a consumer.  Specifically, the CLRA provides that the following acts are unlawful:

a.     Representing that services have characteristics, uses or benefits which the services do not have,

b.     Representing that services are of a particular standard, quality or grade when the services are actually of another standard, quality or grade,

-8-

c.    Representing that a transaction confers or involves rights, remedies or obligations which it does not have or involve, and

d.    Inserting an unconscionable provision in a contract for services.

39.    Defendant has committed unfair and deceptive acts as defined in the CLRA in that Defendant has represented that the Credit Monitoring service has specific characteristics, uses and benefits when the Credit Monitoring service does not actually have those characteristics, uses and benefits; Defendant has represented that the Credit Monitoring service is of a particular standard, quality or grade when the Credit Monitoring service is not actually of that standard, quality or grade; Defendant has represented that the transaction by which Named Plaintiffs and Class Plaintiffs purchased the Credit Monitoring service conferred or involved rights, remedies and obligations which the Credit Monitoring service did not actually confer or involve; and the Contract through which Defendant provides the Credit Monitoring service contains unconscionable provisions in that the Contract includes provisions which disclaim any intention of providing accurate information and/or protection from fraud and identity theft when the very purpose of the Contract, as described in the associated advertising and marketing materials, is to provide accurate information and/or protection from fraud and identity theft.

40.    Named Plaintiffs and Class Plaintiffs have been damaged by Defendant's violations of the CLRA in that Named Plaintiffs and Class Plaintiffs have

paid money to purchase a service to protect them from fraud and identity

theft and Named Plaintiffs and Class Plaintiffs have not, in fact, received a

service that protects them from fraud and identity theft.

41.    Pursuant to Section 1780 of the CLRA, a consumer who suffers damage as a

result of one or more of the prohibited acts identified in the CLRA may bring

an action against the person that committed the prohibited act for actual and

punitive damages.

42.    Pursuant to Section 1780 of the CLRA, a consumer who suffers damage as a

result of one or more of the prohibited acts identified in the CLRA may

recover court costs and attorney's fees in conjunction with his action.

43.    Pursuant to Section 1781 of the CLRA, a consumer who is entitled to bring

an action under Section 1780 of the CLRA may bring an action on behalf of

other consumers who are similarly situated and who suffered similar

damages.

44.    Named Plaintiffs have complied with the requirements of Section 1782 of the

CLRA in that Named Plaintiffs have notified Defendant of the acts that it has

committed which are unlawful and in violation of Section 1770 of the CLRA

and Named Plaintiffs have demanded that Defendant correct or rectify the

unlawful acts that constitute violations of Section 1770 of the CLRA.

45.    The notice described in the immediately preceding paragraph was sent to

Defendant by certified mail, return receipt requested, at its principal place of

business within California, more than thirty days prior to the time that this Complaint was amended to state a claim under the CLRA.

46.    Defendant has failed to meet the requirements of Section 1782( c) of the CLRA in that Defendant has failed to identify all similarly situated consumers; Defendant has failed to notify all similarly situated consumers that, upon request, corrective action will be taken; Defendant has failed to take corrective action or has not indicated a willingness to take corrective action within a reasonable time, and/or Defendant has failed to cease the unlawful actions that serve as the basis of the notice and complaint.

47.    In engaging in the acts described herein that constitute violations of the CLRA, Defendant has been guilty of fraud and malice in that Defendant has engaged in despicable conduct which was carried on with a willful and conscious disregard of the rights of others, and Defendant has perpetrated an intentional misrepresentation, deceit or concealment of materials facts, known to Defendant, with the intention of thereby depriving persons of property or legal rights or otherwise causing injury.

**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek a judgment against Defendant for compensatory damages in a fair and reasonable sum, for their costs incurred in maintaining this action, for their attorneys' fees, for statutory damages and penalties, for punitive damages, and for such other amounts and relief as this Court deems just and equitable under the circumstances.

-11-

[

## COUNT I - CONSUMER FRAUD ACT

26.    Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as

if more fully set forth herein.

27.    Defendant, Named Plaintiffs and Class Plaintiffs are all "persons" for

purposes of the Consumer Fraud Act, 6 Del. C. §§ 2511-2527 ("CFA").

28.    The Credit Monitoring service provided by Defendant constitutes

"merchandise" for purposes of the CFA.

29.    The representations that Defendant made to Named Plaintiffs and Class

Plaintiffs regarding the Credit Monitoring service constitute

"advertisements" for purposes of the CFA.

30.    The Contract through which Named Plaintiffs and Class Plaintiffs purchased

the Credit Monitoring service, and the transaction and agreement described

therein, constitutes a "sale" for purposes of the CFA.

31.    The CFA provides that "[t]he act, use or employment by any person of any

deception, fraud, false pretense, false promise, misrepresentation, or the

concealment, suppression, or omission of any material fact with intent that

others rely upon such concealment, suppression or omission, in connection

-12-

with the sale, lease or advertisement of any merchandise, whether or not any

person has in fact been misled, deceived or damaged thereby, is an unlawful

practice."

32.     Defendant has committed an unlawful practice as defined in the CFA in that

Defendant has by deception, fraud, false pretense, false promise or

misrepresentation promised through its marketing materials to protect

members of the Credit Monitoring service from identity theft and fraud and

to provide weekly fraud-watch emails, and Defendant has failed to perform

those promises and/or actively disclaimed any responsibility to perform such

promises following payment for such promises.

33.     The misrepresentations that Defendant has made in violation of the CFA

include misrepresentations that have been made in Delaware and that have

affected Delaware consumers.

34.     The CFA provides that "[a] private cause of action shall be available to any

victim of a violation of this subchapter."

35.     Named Plaintiffs and Class Plaintiffs have been damaged by Defendant's

violations of the CFA in that Named Plaintiffs and Class Plaintiffs have paid

money to purchase a service to protect them from fraud and identity theft and

Named Plaintiffs and Class Plaintiffs have not, in fact, received a service that

protects them from fraud and identity theft.

36.     In engaging in the acts described herein that constitute violations of the CFA,

Defendant has engaged in reprehensible, outrageous and reckless conduct

-13-

that exhibits indifference for the rights of others and Defendant's fraud was gross and oppressive.

**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek a judgment against Defendant for compensatory damages in a fair and reasonable sum, for their costs incurred in maintaining this action, for their attorneys fees, for punitive damages, and for such other amounts and relief as this Court deems just and equitable under the circumstances.

## COUNT II - CONSUMER CONTRACTS ACT

37.    Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as if more fully set forth herein.

38.    Named Plaintiffs and Class Plaintiffs are "consumers" for purposes of the Consumer Contracts Act, 6 Del. C. §§ 2731-2736 ("CCA").

39.    Defendant is a "person" for purposes of the CCA.

40.    The Credit Monitoring service is "merchandise" for purposes of the CCA.

41.    The transactions by which Defendant sold the Credit Monitoring service to Plaintiffs and Class Plaintiffs, through the Contracts, were "sales" for purposes of the CCA.

42.    The CCA provides as follows: "In a contract for the sale or lease of merchandise to a consumer, a person engages in a deceptive practice when that person knowingly or recklessly . . . [d]istorts or obscures the terms,

conditions or meaning of the contract or creates a likelihood of confusion or misunderstanding by the use of unintelligible words, phrases or sentences."

43.     Defendant has engaged in a deceptive practice in that Defendant knowingly or recklessly sold the Credit Monitoring service to Plaintiffs and Class Plaintiffs, through the Contracts, and Defendant distorted or obscured the terms, conditions or meaning of the Contracts and created a likelihood of confusion or misunderstanding by using unintelligible words, phrases or sentences in the Contracts.

44.     Defendant has engaged in a deceptive practice in that Defendant knowingly or recklessly sold the Credit Monitoring service to Plaintiffs and Class Plaintiffs, through the Contracts, and Defendant omitted the information that is required by 15 U.S.C. § 1679(d) &(e).

45.     The Contracts violate the CCA in the following regards: the Contracts contain confusing cross-references; the Contracts contain sentences that are unreasonably long or complex; the Contracts contain double negatives and/or exceptions to exceptions; the Contracts contains sections and sentences that are in a confusing or illogical order; and the Contracts contain words with obsolete meanings or words that differ in their legal meaning from their ordinary meaning.

46.     The CCA provides that "[a]ny person who engages in a deceptive practice governed by this subchapter shall be liable to a consumer in an amount equal

-15-

to treble the amount of actual damages proved, plus reasonable attorney's fees."

47.     Named Plaintiffs and Class Plaintiffs have been damaged by Defendant's violations of the CCA in that Named Plaintiffs and Class Plaintiffs have paid money to purchase a service to protect them from fraud and identity theft, the service that Named Plaintiffs and Class Plaintiffs purchased does not protect them from fraud and identity theft, and Named Plaintiff and Class Plaintiffs were misled into purchasing the service due to the distorted and confusing nature of the Contracts by which Named Plaintiffs and Class Plaintiffs purchased the service.

**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek a judgment against Defendant for treble the amount of actual damages, for their costs incurred in maintaining this action, for their attorney's fees, and for such other amounts and relief as this Court deems just and equitable under the circumstances.

]

## COUNT [III] II - BREACH OF CONTRACT

48.     Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as if more fully set forth herein.

49.     Valid contracts existed between Defendant and Named Plaintiffs and Class Plaintiffs in that Named Plaintiffs and Class Plaintiffs accepted Defendant's offer of services by entering into the Contracts for purchase of the Credit

Monitoring service and there was mutual assent between Defendant and Named Plaintiffs and Class Plaintiffs regarding the terms of the Contracts.

50.   Named Plaintiffs and Class Plaintiffs complied with all of their obligations under the Contracts.

51.   Defendant breached the Contracts in that Defendant failed to provide the following promised privileges and services to members of the Credit Monitoring service:

    a.   Protecting members against identity theft and fraud,

    b.   Allowing members to  monitor their credit report with weekly fraud-watch emails,

    c.   Providing members with weekly email alerts of changes in their credit reports,

    d.   Allowing members to immediately find out about fraudulent activity, and

    e.   Allowing members to always be on top of what is happening with their credit.

52.   Named Plaintiffs and Class Plaintiffs sustained damages as a result of Defendant's breach of the Contracts in that Named Plaintiffs and Class Plaintiffs failed to receive one or more of the primary benefits that they had paid for pursuant to the Contracts and, therefore, essentially suffered the loss of the money that had been expended for the purchase of such benefits.

53.     The actions committed by Defendant that constitute a breach of the

Contracts, as described herein, were committed willfully and/or with malice

and exhibit a conscious indifference to the injury that such actions would

foreseeably cause to Named Plaintiffs and Class Plaintiffs.


**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek a judgment against

Defendant for compensatory damages in a fair and reasonable sum, for their costs incurred

in maintaining this action, for their attorneys fees, for punitive damages, and for such other

amounts and relief as this Court deems just and equitable under the circumstances.


## COUNT [IV] <u>III</u> – VIOLATIONS OF THE
## CREDIT REPAIR ORGANIZATIONS ACT

54.     Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as

if more fully set forth herein.

55.     Named Plaintiffs and Class Plaintiffs are "consumers" for purposes of the

Credit Repair Organizations Act, 15 U.S.C. § 1679, *et seq*. ("CROA").

56.     Defendant is a "credit repair organization" for purposes of the CROA <u>in that</u>

<u>Defendant used an instrumentality of interstate commerce to sell, provide, or</u>

<u>perform (or represent that it could or would sell, provide, or perform) any</u>

<u>service, in return for the payment of money or other valuable consideration,</u>

<u>for the express or implied purpose of improving any consumer's credit</u>

<u>record, credit history, or credit rating or providing advice or assistance to any</u>

<u>consumer for that purpose.</u>

57.     Pursuant to section 1679b of the CROA, a credit repair organization may not "make or use any untrue or misleading representation of the services of the credit repair organization."

58.     Pursuant to section 1679b of the CROA, a credit repair organization may not "engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

59.     Pursuant to section 1679b of the CROA, "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

60.     Defendant has violated the provisions of section 1679b of the CROA in that Defendant has made untrue or misleading representations regarding the Credit Monitoring service; Defendant has engaged in acts or practices that constitute the commission of, or attempt to commit, a fraud or deception in connection with the offer and sale of the Credit Monitoring service; and Defendant charged and received money for services that fall within the scope of the Credit Monitoring service before those services had actually been performed.

61.     Pursuant to section 1679c of the CROA, before entering into any contract

with a consumer, a credit repair organization shall provide the consumer with

the following written statement:

> Consumer Credit File Rights Under State and Federal Law
>
> You have a right to dispute inaccurate information in your
> credit report by contacting the credit bureau directly.
> However, neither you nor any 'credit repair' company or credit
> repair organization has the right to have accurate, current, and
> verifiable information removed from your credit report. The
> credit bureau must remove accurate, negative information
> from your report only if it is over 7 years old. Bankruptcy
> information can be reported for 10 years.
>
> You have a right to obtain a copy of your credit report from a
> credit bureau. You may be charged a reasonable fee. There is
> no fee, however, if you have been turned down for credit,
> employment, insurance, or a rental dwelling because of
> information in your credit report within the preceding 60 days.
> The credit bureau must provide someone to help you interpret
> the information in your credit file. You are entitled to receive
> a free copy of your credit report if you are unemployed and
> intend to apply for employment in the next 60 days, if you are
> a recipient of public welfare assistance, or if you have reason
> to believe that there is inaccurate information in your credit
> report due to fraud.
>
> You have a right to sue a credit repair organization that
> violates the Credit Repair Organization Act. This law
> prohibits deceptive practices by credit repair organizations.
>
> You have the right to cancel your contract with any credit
> repair organization for any reason within 3 business days from
> the date you signed it.
>
> Credit bureaus are required to follow reasonable procedures to
> ensure that the information they report is accurate. However,
> mistakes may occur.
>
> You may, on your own, notify a credit bureau in writing that
> you dispute the accuracy of information in your credit file.

The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:

The Public Reference Branch
Federal Trade Commission
Washington, D.C. 20580.

This written statement must be provided as a document which is separate from the contract between the credit repair organization and the consumer.

62.    Defendant has violated the provisions of section 1679c of the CROA in that Defendant failed to provide the required written statement in connection with the Contracts by which Defendant sold the Credit Monitoring service to Named Plaintiffs and Class Plaintiffs.

63.    Pursuant to section 1679d of the CROA, a contract between a credit repair organization and a consumer must include a description of the "total amount of all payments to be made by the consumer to the credit repair organization."

64.    Pursuant to section 1679d of the CROA, a contract between a credit repair organization and a consumer must include "a conspicuous statement in bold

face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'"

65.    Defendant has violated the provisions of section 1679d of the CROA in that the Contracts fail to describe the total amount of all payments to be made by the consumer, but instead leave the payment terms open ended and continuing on a quarterly or annual basis; and Defendant failed to include the required statement near the space reserved for the consumer's signature.

66.    Pursuant to section 1679e of the CROA, a contract between a credit repair organization and a consumer "shall be accompanied by a form, in duplicate, which has the heading 'Notice of Cancellation'" and shall include the following statement in bold face type:

> You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you.
> To cancel this contract, mail or deliver a signed, dated copy of this cancellation notice, or any other written notice to [name of credit repair organization] at [address of credit repair organization] before midnight on [date]
> I hereby cancel this transaction,
> [date]
> [purchaser's signature].

67.    Defendant has violated the provisions of section 1679e of the CROA in that Defendant failed to provide Named Plaintiffs and Class Plaintiffs entering into the Contracts with the form required by section 1679e.

68.     Pursuant to section 1679f of the CROA, a contract that is not in compliance

        with the provisions of the CROA "shall be treated as void" and "may not be

        enforced by any Federal or State court or any other person."

69.     Pursuant to section 1679g, a credit repair organization that fails to comply

        with any provision of the CROA shall be liable for actual damages consisting

        of amounts that consumers have actually paid to the credit repair

        organization, punitive damages as determined by the court, and attorney's

        fees and costs of the action.

70.     In engaging in the acts described herein that constitute violations of the

        CROA, Defendant has engaged in reprehensible, outrageous and reckless

        conduct that exhibits indifference for the rights of others.


**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek a declaration by this

Court that the Contracts are void and unenforceable, and further seek judgment for actual

damages in the amount of fees actually paid under the Contracts by Named Plaintiffs and

Class Plaintiffs, for punitive damages, for their attorneys fees and costs incurred herein, and

for such other amounts and relief as this Court deems just and equitable under the

circumstances.


**COUNT [V] <u>IV</u> – VIOLATIONS OF THE CREDIT REPORTING AGENCIES ACT**

71.     Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as

        if more fully set forth herein.

72.    Named Plaintiffs and Class Plaintiffs are "consumers" for purposes of the Credit Reporting Agencies Act, 15 U.S.C. § 1681, *et seq*. ("[CRAA]FCRA").

73.    Defendant is a "consumer reporting agenc[y]" for purposes of the [CRAA] FCRA in that it engaged, for a fee, in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of providing that information to third parties.

74.    The materials [accumulated and/or provided] collected or used in conjunction with the Contracts and/or the Credit Monitoring service or the Fraud Resolution Services constitute "consumer reports" for purposes of the [CRAA] FCRA in that Defendant collected or communicated information bearing on a consumer's credit worthiness, credit standing, credit capacity or general reputation for the purpose of serving as a factor in establishing the consumer's eligibility for purposes authorized under section 1681b of the FCRA.

75.    Pursuant to section 1681e of the [CRAA] FCRA, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

76.    Defendant has violated section 1681e of the [CRAA] FCRA in that Defendant has not [provided consumer reports to Named Plaintiffs and Class Plaintiffs without] follow[ing]ed procedures to assure the maximum possible accuracy of the information contained [therein] in consumer reports and, to

-24-

the contrary, has expressly stated in the Contracts that it does not warrant the correctness, completeness or accuracy of the information that it provides to consumers pursuant to the Contracts.  <u>Named Plaintiffs were unfairly denied credit based upon a credit report prepared by TransUnion, LLC.  Defendant indicated on its web pages that its services and information were "[b]ased on data provided by TransUnion."  Defendant provided inaccurate information bearing on a consumer's creditworthiness or credit character in that it provided no information which would justify the denial of credit.</u>

77.     Pursuant to section 1681n of the [CRAA] <u>FCRA</u>, any person who willfully fails to comply with the requirements of the [CRAA] <u>FCRA</u> is liable for actual damages in an amount not less than $100.00, for punitive damages as the court may allow, and for attorney's fees and costs.

78.     Pursuant to section 1681o of the [CRAA] <u>FCRA</u>, any person who negligently fails to comply with the requirements of the [CRAA] <u>FCRA</u> is liable for actual damages sustained by the consumer, and for attorney's fees and costs.

79.     In engaging in the acts described herein that constitute violations of the [CRAA] <u>FCRA</u>, Defendant has engaged in reprehensible, outrageous and reckless conduct that exhibits indifference for the rights of others.


**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek judgment for actual damages, for punitive damages, for their attorneys fees and costs incurred herein, and for

such other amounts and relief as this Court deems just and equitable under the circumstances.

## REQUEST FOR CERTIFICATION AS CLASS ACTION

80.  Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as if more fully set forth herein.

81.  This action is brought as a class action pursuant to Federal Rule of Civil Procedure 23(b).

82.  The class is made up of Named Plaintiffs and Class Plaintiffs and consists of persons who purchased the Credit Monitoring service from Defendant on or after September 9, 2001 by entering into the Contracts through internet transactions and who were induced to purchase the Credit Monitoring service by the advertising and marketing of Defendant which described the Credit Monitoring service as a means of protecting against fraud and identity theft.

83.  The class members may be identified by means of Defendant's records regarding the contracts and internet transactions in question.

84.  Defendant acted in a similar manner with regard to each of the class members in that Defendant used the same advertising and marketing materials to induce the class members to purchase the Credit Monitoring service by entering into identical or substantially similar contracts and Defendant failed to provide the promised services to the class members. Defendant further acted in a similar manner with regard to each of the class

members in that Defendant used the same "data provided by TransUnion" for
assembling or evaluating consumer credit information on consumers to
furnish to third parties for preparing consumer reports.

85.    While the exact size of the class is unknown, Named Plaintiffs believe that
       the number of class members is in the hundreds of thousands and potentially
       millions, and that the class is geographically disbursed so that joinder of all
       class members is impracticable.

86.    There are questions of law common to all class members in that, pursuant to
       the terms of the Contracts, all actions brought by class members will be
       controlled by Delaware law and all class members will be bringing the same
       actions against Defendant (i.e. Consumer [Fraud] Legal Remedies Act,
       [Consumer Contracts Act,] breach of contract and violations of the CROA
       and [CRAA] FCRA).  There are questions of fact common to all class
       members in that all class members purchased the same product from
       Defendant based upon the same representations made in Defendant's
       advertising and marketing materials and pursuant to the Contracts.

87.    The Named Plaintiffs will fairly and adequately represent and protect the
       interest of all class members.

88.    The prosecution of separate actions by individual class members would
       create a risk of inconsistent or varying adjudications with respect to
       individual class members which would establish an incompatible standard of
       conduct for Defendant.

89.    The questions of law and fact common to all class members predominate over any questions affecting only individual class members.

90.    Proceeding as a class would permit the individual class members to prosecute their common claims against Defendant in a single forum, simultaneously, efficiently and without unnecessary duplication of evidence, effort and judicial resources and the class action mechanism is superior to other available methods for the fair and efficient adjudication of this controversy.

91.    Class treatment is the only realistic means by which the class members, holding relatively small individual claims, can effectively litigate against a large and well-represented corporate defendant such as Defendant.

92.    There are no unusual difficulties likely to be encountered in the management of this case as a class action and Named Plaintiffs and their counsel are not aware of any reason why this case should not proceed as a class action.


   **WHEREFORE**, Named Plaintiffs and Class Plaintiffs request that this Court certify all counts of this action as a class action.


## JURY DEMAND

Plaintiffs demand a trial by jury of all claims triable as a right by jury.

Respectfully submitted,


/s/ Christopher J. Curtin
Christopher J. Curtin
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ccurtin659@aol.com

and

/s/ Barry R. Grissom
Barry R. Grissom, Esq.
KS Bar. Id. No. 10866
7270 W. 98th Terrace
Building 7, Suite 220
Overland Park, Kansas 66212
Phone: (913) 341-6616

and

Bryson R. Cloon
KS Bar. Id. No. 08660
MO Bar. Id. No. 36843
Cloon Law Firm
11350 Tomahawk Creek Parkway, Suite 100
Leawood, KS 66211
Phone: (913) 661-9600
Facsimile: (913) 661-9614

and

B. Joyce Yeager, Esq.
KS Bar. Id. No.  18932
7270 W. 98th Terrace
Building 7, Suite 220
Overland Park, Kansas 66212
Phone: (913) 648-6673

and

-29-

Michael W. Blanton,
MO Bar. Id. No. 46490
Swanson Midgley, LLC
2420 Pershing Road, Ste. 400
Kansas City, Missouri 64108
Phone: (816) 842-6100

COUNSEL FOR PLAINTIFFS