## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEVEN G. MILLETT,                      )
MELODY J. MILLETT,                      )
On Behalf Of Themselves and             )
All Others Similarly Situated,          )
                          Plaintiffs,   )
                                        )
v.                                      )      C.A. No.: 05-599-SLR
                                        )
TRUELINK, INC.,                         )      CLASS ACTION
a Trans Union Company,                  )
                          Defendant.    )      JURY TRIAL DEMANDED

### FOURTH AMENDED COMPLAINT - CLASS ACTION

Plaintiffs, Steven G. Millett and Melody J. Millett, by and through their undersigned attorneys, bring this action for damages against Defendant TrueLink, Inc., a TransUnion Company ("Defendant"). Plaintiffs bring this action on behalf of themselves and other similarly situated persons. For their complaint against Defendant, Plaintiffs allege the following:

### PARTIES

1.    Plaintiffs Steven Millett and Melody Millett ("Named Plaintiffs") reside in Johnson County, Kansas.

2.    Plaintiffs bring this action as representatives of a nationwide class of similarly situated plaintiffs ("Class Plaintiffs") who purchased the same or similar products and services of Defendant and who are entitled to bring the same causes of action against Defendant. Plaintiffs also bring this action as

representatives of a class of similarly situated persons who are residents of

Kansas and/or who purchased the same or similar products and services in

the State of Kansas or as a result of advertising that was disseminated in

Kansas ("Kansas Class Plaintiffs") and who are entitled to bring the same

causes of action against Defendant.  Kansas Class Plaintiffs constitute a sub-

class of Class Plaintiffs so that any allegations made as to Class Plaintiffs

also apply to Kansas Class Plaintiffs.

3.    Defendant is a corporation duly organized and existing in accordance with

the laws of Delaware and having its principal place of business in California.

Defendant's web pages refer to TrueLink as "a Delaware corporation based

in San Luis Obispo, California."  Defendant is authorized to do business and

is doing business in the states of Delaware and California.  Defendant is,

upon information and belief, a subsidiary or affiliated company of

TransUnion LLC(hereinafter referred to as "TransUnion").

4.    At all relevant times, Defendant was engaged in the retail sale of services and

products and, in conjunction with said sales, engaged in interstate commerce.


**JURISDICTION AND VENUE**

5.    Named Plaintiffs bring this action on behalf of themselves and Class

Plaintiffs.

6.    Jurisdiction of this action is conferred upon this court by the provisions of 28

U.S.C.§§ 1331, 1332, 1337, 1343 and 1367.  The causes of action brought by

Named Plaintiffs and Class Plaintiffs can be determined in this judicial

proceeding and consolidated determination of these actions will provide

judicial economy, fairness and convenience for all parties.  The liability

evidence establishing all causes of action will be identical and none will

predominate nor create confusion to a jury.

7.    The matter in controversy exceeds $75,000.00.  There is diversity of

citizenship between Named Plaintiffs and Defendant.

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8.    On and after September 9, 2001, Defendant sold a credit monitoring service

known as Credit Monitoring or Online Credit Monitoring (hereinafter "Credit

Monitoring").

9.    Defendant maintains an internet portal called TrueCredit through which

consumers may access and purchase credit analysis products including Credit

Monitoring.

10.    At all pertinent times, Defendant advertised and marketed Credit Monitoring

nationwide in uniform advertising as a service that provides the following

privileges and services to Credit Monitoring members:

    a.    Protecting members against identity theft and fraud,

    b.    Allowing members to  monitor their credit report with weekly fraud-

        watch emails,

c. Providing members with weekly email alerts of changes in their credit reports,

d. Allowing members to immediately find out about fraudulent activity, and

e. Allowing members to always be on top of what is happening with their credit.

11. The privileges and services that are provided to members of the Credit Monitoring service are explained in the internet pages provided on the TrueCredit internet portal.

12. Class Plaintiffs purchased the Credit Monitoring service from Defendant on or after September 9, 2001 through internet transactions on the TrueCredit internet portal. Named Plaintiffs purchased the Credit Monitoring service on or about August 2, 2003.

13. In conjunction with their purchase of the Credit Monitoring service, Named Plaintiffs and Class Plaintiffs entered into contracts with Defendant which set forth the terms and conditions of the parties' use of the TrueCredit internet portal and the products and memberships that could be purchased on the TrueCredit internet portal ("Contracts").

14. The Contracts provide that consumers who purchase the Credit Monitoring service (i.e. become "members" of that service) are entitled to the privileges and services provided as part of the Credit Monitoring service in exchange for payment for membership in the Credit Monitoring service.

-4-

15.    The Contracts further provide that membership in the Credit Monitoring service will be automatically renewed unless cancelled.

16.    The Contracts do not expressly state the privileges and services to which members of the Credit Monitoring service are entitled, but instead incorporate the description of privileges and services provided in the description of the Credit Monitoring service that is found on the internet pages on the TrueCredit internet portal.  The privileges and services that are promised to members, pursuant to the descriptions incorporated in the Contracts, are as follows:

a.    Protecting members against identity theft and fraud,

b.    Allowing members to  monitor their credit report with weekly fraud-watch emails,

c.    Providing members with weekly email alerts of changes in their credit reports,

d.    Allowing members to immediately find out about fraudulent activity, and

e.    Allowing members to always be on top of what is happening with their credit.

17.    The Contracts provide that Defendant does not warrant the correctness, completeness or accuracy of the information that it provides to consumers pursuant to the Contracts.

18.   The Contracts provide that the Credit Monitoring service is to be paid for in advance and that payments will be automatically charged to a consumer's credit card.

19.   The Contracts provide that Delaware law shall apply to the interpretation of the Contracts and that jurisdiction and venue for any action pertaining to the Contracts are proper in the state and federal courts of New Castle County, Delaware.

20.   Despite the assertions in Defendant's marketing materials that Credit Monitoring will protect consumers from identity theft and fraud, the Contract provides that consumers will not receive any identity theft or fraud protection services during the first 30 days following commencement of membership in the Credit Monitoring service.

21.   The Credit Monitoring service was marketed by Defendant to consumers, including Named Plaintiffs and Class Plaintiffs, who feared that private, personal information would be used by the perpetrators of identity theft and credit information fraud.

22.   Named Plaintiffs and Class Plaintiffs were induced to purchase the Credit Monitoring service by Defendant which advertised and marketed the service as one that would help guard against fraud and identity theft.

23.   Defendant represented that the Credit Monitoring service would provide protection to consumers against identity theft and fraud and would provide weekly fraud-watch emails.

-6-

24.    The Credit Monitoring service failed to perform as represented by Defendant and failed to provide all or some of the services identified in the marketing materials and Contracts.

25.    Defendant charged a fee to and received funds from Named Plaintiffs and Class Plaintiffs for the purchase and continued use of the Credit Monitoring service.

26.    The contract provided by Defendant to Named Plaintiffs and to Class Plaintiffs included "Fraud Resolution" services provided by PromiseMark, a "third party service provider."  The Fraud Resolution services included the promise that PromiseMark would "[r]un a credit check and review your credit record to determine accuracy", and "research and investigate potential damage to your identity."

27.    Upon information and belief, the services of PromiseMark were no longer available to Named Plaintiffs for a substantial portion of the term of the contract.

28.    Named Plaintiffs and Class Plaintiffs did not receive adequate notification of any modification made to the terms of the contract.

29.    Defendant indicated it would provide "Toll-free credit specialists with fraud resolution services."

30.    Defendant indicated "[s]hould you become a victim of identity theft, TrueCredit provides you with Fraud Resolution services to assist you in the recovery of financial and credit losses."

31.    The credit reports, scores, monitoring, Fraud Resolution Services and tools provided by and/or prepared by TrueLink were "based on data provided by TransUnion."

32.    Most or all of the representations and services that were provided by Defendant in relation to the Credit Monitoring service were made in or provided from Defendant's place of business in the State of California.


## COUNT I - VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT

33.    Named Plaintiffs and Kansas Class Plaintiffs incorporate the preceding paragraphs as if more fully set forth herein.

34.    Named Plaintiffs and Kansas Class Plaintiffs are "consumers" for purposes of the Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623 to 50-644 ("KCPA").

35.    The Credit Monitoring service provided by Defendant constitutes a "service" for purposes of the KCPA.

36.    The purchase of the Credit Monitoring service and the Contracts through which Named Plaintiffs and Kansas Class Plaintiffs purchased the Credit Monitoring service constitute "consumer transactions" for purposes of the KCPA.

37.    Defendant, Named Plaintiffs and Kansas Class Plaintiffs are all "persons" for purposes of the KCPA.

38.    Defendant is a "supplier" for purposes of the KCPA.

39.    The KCPA provides a list of deceptive acts and practices that constitute violations of the KCPA regardless of whether any consumer has been misled. Specifically, the KCPA provides that the following acts and practices are prohibited:

a.    Representing, knowingly or with reason to know, that services have sponsorship, approval, characteristics, uses or benefits that they do not have;

b.    Representing, knowingly or with reason to know, that a supplier has a sponsorship, approval, status, affiliation or connection that the supplier does not have;

c.    Representing, knowingly or with reason to know, that services are of a particular standard, quality or grade when the services are actually of another standard, quality or grade;

d.    Representing, knowingly or with reason to know, that services have uses, benefits or characteristics when the supplier did not rely upon and have a reasonable basis for making such representation;

e.    The willful use, in any written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

f.    The willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact; and

g.    Falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations.

40.    The KCPA provides that a supplier shall not engage in any unconscionable act or practice in connection with a consumer transaction.  The KCPA provides that in determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know including the following:

a.    The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interest because of the consumer's inability to understand the language of an agreement;

b.    The consumer was unable to receive a material benefit from the subject of the transaction;

c.    The transaction the supplier induced the consumer to enter into was excessively onesided in favor of the supplier; and

d.    The supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

41.    The KCPA provides that a consumer who suffers a loss as a result of a violation of the KCPA may bring a class action for the damages caused by any act or practice that violates one of the specific prohibitions of the KCPA.

42.    The KCPA provides that the court may award a prevailing consumer attorney fees if the supplier is found to have committed an act or practice that violates the KCPA.

43.    Defendant has committed unfair and deceptive acts as defined in the KCPA in that Defendant has represented, knowingly or with reason to know, that

the Credit Monitoring service has sponsorship, approval, characteristics, uses or benefits that it does not have; Defendant has represented, in connection with the marketing and sale of the Credit Monitoring service, knowingly or with reason to know, that it has a sponsorship, approval, status, affiliation or connection that it does not have; Defendant has represented, knowingly or with reason to know, that the Credit Monitoring service is of a particular standard, quality or grade when it is actually of another standard, quality or grade; and Defendant has represented, knowingly or with reason to know, that the Credit Monitoring service has certain uses, benefits or characteristics when Defendant did not rely upon and have a reasonable basis for making such representation.

44.    Defendant has committed unfair and deceptive acts as defined in the KCPA in that Defendant has willfully used, in written representations regarding the marketing of the Credit Monitoring service, exaggeration, falsehood, innuendo or ambiguity as to a material fact; and Defendant has willfully failed, with regard to the marketing of the Credit Monitoring service, to state certain material facts, or has willfully concealed, suppressed or omitted certain material facts.

45.    Defendant has committed unfair and deceptive acts as defined in the KCPA in that Defendant has falsely stated, knowingly or with reason to know, that the sale of the Credit Monitoring service involves consumer rights, remedies or obligations.

46.     Defendant has engaged in unconscionable acts and practices with regard to the marketing and sale of the Credit Monitoring service in that Defendant sold the Credit Monitoring service under circumstances in which it knew or had reason to know of the following:

a.     That Defendant took advantage of the inability of consumers reasonably to protect their own interests because of consumers' inability to understand the language of the agreement and marketing materials by which the Credit Monitoring service was marketed and sold;

b.     That consumers were unable to receive a material benefit from the purchase of the Credit Monitoring service;

c.     That the transactions in which Defendant induced consumers to purchase the Credit Monitoring service were excessively onesided in favor of Defendant; and

d.     That Defendant made misleading statements of opinion regarding the Credit Monitoring service on which consumers were likely to rely to their detriment.

47.     Named Plaintiffs and Kansas Class Plaintiffs have been damaged by Defendant's violations of the KCPA in that Named Plaintiffs and Kansas Class Plaintiffs have paid money to purchase a service to protect them from fraud and identity theft and Named Plaintiffs and Kansas Class Plaintiffs

have not, in fact, received a service that protects them from fraud and identity theft.

**WHEREFORE**, Named Plaintiffs and Kansas Class Plaintiffs seek a judgment against Defendant for compensatory damages in a fair and reasonable sum, for their costs incurred in maintaining this action, for their attorneys' fees, for prejudgment and post-judgment interest, and for such other amounts and relief as this Court deems just and equitable under the circumstances.

## COUNT II - BREACH OF CONTRACT

48.     Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as if more fully set forth herein.

49.     Valid contracts existed between Defendant and Named Plaintiffs and Class Plaintiffs in that Named Plaintiffs and Class Plaintiffs accepted Defendant's offer of services by entering into the Contracts for purchase of the Credit Monitoring service and there was mutual assent between Defendant and Named Plaintiffs and Class Plaintiffs regarding the terms of the Contracts.

50.     Named Plaintiffs and Class Plaintiffs complied with all of their obligations under the Contracts.

51.     Defendant breached the Contracts in that Defendant failed to provide the following promised privileges and services to members of the Credit Monitoring service:

-13-

a.   Protecting members against identity theft and fraud,

b.   Allowing members to  monitor their credit report with weekly fraud-watch emails,

c.   Providing members with weekly email alerts of changes in their credit reports,

d.   Allowing members to immediately find out about fraudulent activity, and

e.   Allowing members to always be on top of what is happening with their credit.

52.   Named Plaintiffs and Class Plaintiffs sustained damages as a result of Defendant's breach of the Contracts in that Named Plaintiffs and Class Plaintiffs failed to receive one or more of the primary benefits that they had paid for pursuant to the Contracts and, therefore, essentially suffered the loss of the money that had been expended for the purchase of such benefits.

53.   The actions committed by Defendant that constitute a breach of the Contracts, as described herein, were committed willfully and/or with malice and exhibit a conscious indifference to the injury that such actions would foreseeably cause to Named Plaintiffs and Class Plaintiffs.

**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek a judgment against Defendant for compensatory damages in a fair and reasonable sum, for their costs incurred in maintaining this action, for their attorneys fees, for punitive damages, for prejudgment

and post-judgment interest, and for such other amounts and relief as this Court deems just
and equitable under the circumstances.

## COUNT III – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

54.    Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as
if more fully set forth herein.

55.    Named Plaintiffs and Class Plaintiffs are "consumers" for purposes of the
Credit Repair Organizations Act, 15 U.S.C. § 1679, *et seq*. ("CROA").

56.    Defendant is a "credit repair organization" for purposes of the CROA in that
Defendant used an instrumentality of interstate commerce to sell, provide, or
perform (or represent that it could or would sell, provide, or perform) any
service, in return for the payment of money or other valuable consideration,
for the express or implied purpose of improving any consumer's credit
record, credit history, or credit rating or providing advice or assistance to any
consumer for that purpose.

57.    Pursuant to section 1679b of the CROA, a credit repair organization may not
"make or use any untrue or misleading representation of the services of the
credit repair organization."

58.    Pursuant to section 1679b of the CROA, a credit repair organization may not
"engage, directly or indirectly, in any act, practice, or course of business that
constitutes or results in the commission of, or an attempt to commit, a fraud

-15-

or deception on any person in connection with the offer or sale of the services of the credit repair organization."

59.    Pursuant to section 1679b of the CROA, "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

60.    Defendant has violated the provisions of section 1679b of the CROA in that Defendant has made untrue or misleading representations regarding the Credit Monitoring service; Defendant has engaged in acts or practices that constitute the commission of, or attempt to commit, a fraud or deception in connection with the offer and sale of the Credit Monitoring service; and Defendant charged and received money for services that fall within the scope of the Credit Monitoring service before those services had actually been performed.

61.    Pursuant to section 1679c of the CROA, before entering into any contract with a consumer, a credit repair organization shall provide the consumer with the following written statement:

Consumer Credit File Rights Under State and Federal Law

You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:

The Public Reference Branch

Federal Trade Commission
Washington, D.C. 20580.

This written statement must be provided as a document which is separate

from the contract between the credit repair organization and the consumer.

62.     Defendant has violated the provisions of section 1679c of the CROA in that

Defendant failed to provide the required written statement in connection with

the Contracts by which Defendant sold the Credit Monitoring service to

Named Plaintiffs and Class Plaintiffs.

63.     Pursuant to section 1679d of the CROA, a contract between a credit repair

organization and a consumer must include a description of the "total amount

of all payments to be made by the consumer to the credit repair

organization."

64.     Pursuant to section 1679d of the CROA, a contract between a credit repair

organization and a consumer must include "a conspicuous statement in bold

face type, in immediate proximity to the space reserved for the consumer's

signature on the contract, which reads as follows: 'You may cancel this

contract without penalty or obligation at any time before midnight of the 3rd

business day after the date on which you signed the contract. See the attached

notice of cancellation form for an explanation of this right.'"

65.     Defendant has violated the provisions of section 1679d of the CROA in that

the Contracts fail to describe the total amount of all payments to be made by

the consumer, but instead leave the payment terms open ended and

-18-

continuing on a quarterly or annual basis; and Defendant failed to include the

required statement near the space reserved for the consumer's signature.

66.    Pursuant to section 1679e of the CROA, a contract between a credit repair

organization and a consumer "shall be accompanied by a form, in duplicate,

which has the heading 'Notice of Cancellation'" and shall include the

following statement in bold face type:

> You may cancel this contract, without any penalty or
> obligation, at any time before midnight of the 3rd day which
> begins after the date the contract is signed by you.
> To cancel this contract, mail or deliver a signed, dated copy of
> this cancellation notice, or any other written notice to [name
> of credit repair organization] at [address of credit repair
> organization] before midnight on [date]
> I hereby cancel this transaction,
> [date]
> [purchaser's signature].

67.    Defendant has violated the provisions of section 1679e of the CROA in that

Defendant failed to provide Named Plaintiffs and Class Plaintiffs entering

into the Contracts with the form required by section 1679e.

68.    Pursuant to section 1679f of the CROA, a contract that is not in compliance

with the provisions of the CROA "shall be treated as void" and "may not be

enforced by any Federal or State court or any other person."

69.    Pursuant to section 1679g, a credit repair organization that fails to comply

with any provision of the CROA shall be liable for actual damages consisting

of amounts that consumers have actually paid to the credit repair

organization, punitive damages as determined by the court, and attorney's

fees and costs of the action.

70.    In engaging in the acts described herein that constitute violations of the CROA, Defendant has engaged in reprehensible, outrageous and reckless conduct that exhibits indifference for the rights of others.

**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek a declaration by this Court that the Contracts are void and unenforceable, and further seek judgment for actual damages in the amount of fees actually paid under the Contracts by Named Plaintiffs and Class Plaintiffs, for punitive damages, for their attorneys fees and costs incurred herein, for prejudgment and post-judgment interest, and for such other amounts and relief as this Court deems just and equitable under the circumstances.

## COUNT IV – VIOLATIONS OF THE CREDIT REPORTING AGENCIES ACT

71.    Named Plaintiffs and Class Plaintiffs incorporate the preceding paragraphs as if more fully set forth herein.

72.    Named Plaintiffs and Class Plaintiffs are "consumers" for purposes of the Credit Reporting Agencies Act, 15 U.S.C. § 1681, *et seq*. ("FCRA").

73.    Defendant is a "consumer reporting agenc[y]" for purposes of the FCRA in that it engaged, for a fee, in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of providing that information to third parties.

74.    The materials collected or used in conjunction with the Contracts and/or the Credit Monitoring service or the Fraud Resolution Services constitute

"consumer reports" for purposes of the FCRA in that Defendant collected or communicated information bearing on a consumer's credit worthiness, credit standing, credit capacity or general reputation for the purpose of serving as a factor in establishing the consumer's eligibility for purposes authorized under section 1681b of the FCRA.

75.    Pursuant to section 1681e of the FCRA, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

76.    Defendant has violated section 1681e of the FCRA in that Defendant has not followed procedures to assure the maximum possible accuracy of the information contained in consumer reports and, to the contrary, has expressly stated in the Contracts that it does not warrant the correctness, completeness or accuracy of the information that it provides to consumers pursuant to the Contracts.  Named Plaintiffs were unfairly denied credit based upon a credit report prepared by TransUnion, LLC.  Defendant indicated on its web pages that its services and information were "[b]ased on data provided by TransUnion."  Defendant provided inaccurate information bearing on a consumer's creditworthiness or credit character in that it provided no information which would justify the denial of credit.

77.    Pursuant to section 1681n of the FCRA, any person who willfully fails to comply with the requirements of the FCRA is liable for actual damages in an

amount not less than $100.00, for punitive damages as the court may allow, and for attorney's fees and costs.

78.    Pursuant to section 1681o of the FCRA, any person who negligently fails to comply with the requirements of the FCRA is liable for actual damages sustained by the consumer, and for attorney's fees and costs.

79.    In engaging in the acts described herein that constitute violations of the FCRA, Defendant has engaged in reprehensible, outrageous and reckless conduct that exhibits indifference for the rights of others.

**WHEREFORE**, Named Plaintiffs and Class Plaintiffs seek judgment for actual damages, for punitive damages, for their attorneys fees and costs incurred herein, for prejudgment and post-judgment interest, and for such other amounts and relief as this Court deems just and equitable under the circumstances.

## REQUEST FOR CERTIFICATION AS CLASS ACTION

80.    Named Plaintiffs, Class Plaintiffs and Kansas Class Plaintiffs incorporate the preceding paragraphs as if more fully set forth herein.

81.    This action is brought as a class action pursuant to Federal Rule of Civil Procedure 23(b).

82.    The class in Count II (breach of contract), Count III (violation of CROA) and Count IV (violation of FCRA) is made up of Named Plaintiffs and Class Plaintiffs and consists of persons who purchased the Credit Monitoring

service from Defendant on or after September 9, 2001 by entering into the Contracts through internet transactions and who were induced to purchase the Credit Monitoring service by the advertising and marketing of Defendant which described the Credit Monitoring service as a means of protecting against fraud and identity theft.  The class in Count I (violations of KCPA) is made up of Named Plaintiffs and Kansas Class Plaintiffs and consists of persons who purchased the Credit Monitoring service from Defendant on or after September 9, 2001 by entering into the Contracts through internet transactions, who were induced to purchase the Credit Monitoring service by the advertising and marketing of Defendant which described the Credit Monitoring service as a means of protecting against fraud and identity theft, and who are residents of Kansas and/or purchased the same or similar products and services in the State of Kansas or as a result of advertising that was disseminated in Kansas.

83.    The class members may be identified by means of Defendant's records regarding the contracts and internet transactions in question.

84.    Defendant acted in a similar manner with regard to each of the class members in that Defendant used the same advertising and marketing materials to induce the class members to purchase the Credit Monitoring service by entering into identical or substantially similar contracts and Defendant failed to provide the promised services to the class members. Defendant further acted in a similar manner with regard to each of the class

members in that Defendant used the same "data provided by TransUnion" for assembling or evaluating consumer credit information on consumers to furnish to third parties for preparing consumer reports.

85.    While the exact size of the class is unknown, Named Plaintiffs believe that the number of class members is in the hundreds of thousands and potentially millions, and that the class is geographically disbursed so that joinder of all class members is impracticable.

86.    There are questions of law common to all class members in that, pursuant to the terms of the Contracts and the prior rulings of this Court, all actions brought by class members will be controlled by Delaware law (Counts II, III and IV) or Kansas Law (Count I) and all class members will be bringing the same actions against Defendant (i.e. [Consumer Legal Remedies Act] violations of KCPA, breach of contract and violations of the CROA and FCRA).  There are questions of fact common to all class members in that all class members purchased the same product from Defendant based upon the same representations made in Defendant's advertising and marketing materials and pursuant to the Contracts.

87.    The Named Plaintiffs will fairly and adequately represent and protect the interest of all class members.

88.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to

individual class members which would establish an incompatible standard of conduct for Defendant.

89.    The questions of law and fact common to all class members predominate over any questions affecting only individual class members.

90.    Proceeding as a class would permit the individual class members to prosecute their common claims against Defendant in a single forum, simultaneously, efficiently and without unnecessary duplication of evidence, effort and judicial resources and the class action mechanism is superior to other available methods for the fair and efficient adjudication of this controversy.

91.    Class treatment is the only realistic means by which the class members, holding relatively small individual claims, can effectively litigate against a large and well-represented corporate defendant such as Defendant.

92.    There are no unusual difficulties likely to be encountered in the management of this case as a class action and Named Plaintiffs and their counsel are not aware of any reason why this case should not proceed as a class action.

**WHEREFORE**, Named Plaintiffs and Class Plaintiffs request that this Court certify all counts of this action as a class action.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims triable as a right by jury.

Respectfully submitted,


/s/ Christopher J. Curtin
Christopher J. Curtin
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon Road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ccurtin659@aol.com

and

/s/ Barry R. Grissom
Barry R. Grissom, Esq.
KS Bar. Id. No. 10866
7270 W. 98th Terrace
Building 7, Suite 220
Overland Park, Kansas 66212
Phone: (913) 341-6616

and

Bryson R. Cloon
KS Bar. Id. No. 08660
MO Bar. Id. No. 36843
Cloon Law Firm
11350 Tomahawk Creek Parkway, Suite 100
Leawood, Kansas 66211
Phone: (913) 661-9600
Facsimile: (913) 661-9614

and

B. Joyce Yeager, Esq.
KS Bar. Id. No.  18932
7270 W. 98th Terrace
Building 7, Suite 220
Overland Park, Kansas 66212
Phone: (913) 648-6673

and

-26-

Michael W. Blanton,
MO Bar. Id. No. 46490
Swanson Midgley, LLC
2420 Pershing Road, Ste. 400
Kansas City, Missouri 64108
Phone: (816) 842-6100

COUNSEL FOR PLAINTIFFS