**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

STEVEN G. MILLETT, MELODY J. MILLETT, )
On Behalf Of Themselves and All Others )
Similarly Situated, )
)
               Plaintiffs, )    C.A. No. 05-599 (SLR)
)
    v. )    **REDACTED VERSION**
)
TRUELINK, INC., a Trans Union Company, )
)
               Defendant. )

---

**DEFENDANT'S ANSWERING BRIEF IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

 

 

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
William M. Lafferty (#2755)
Samuel T. Hirzel II (#4415)
Jay N. Moffitt (#4742)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
wlafferty@mnat.com
shirzel@mnat.com
jmoffitt@mnat.com
Attorneys for Defendant TrueLink, Inc.

OF COUNSEL:

Michael O'Neil
Paula D. Friedman
DLA PIPER US LLP
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601
(312) 368-4000

Original Filing Date: September 12, 2007
Redacted Date: September 18, 2007

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

    A.    The Relevant Class Action Litigation. ......................................................... 2

        1.    The Millett Action against TrueLink. ................................................. 2

        2.    The Relationship Between the Millett Action and the Townes Action. ............................................................................................ 4

        3.    Related Class Litigation Brought By the Milletts Against TrueLink's Competitors ............................................................. 8

            i.    The Milletts' lawsuit against Equifax ........................................ 8

            ii.    The Millett's lawsuit against Experian .................................... 11

    B.    The Milletts' Claims For Breach Of Contract And Violation Of The KCPA ..... 12

        1.    Breach of Contract Under Delaware Law. ........................................ 12

        2.    Plaintiffs' Claims Under the Kansas Consumer Protection Act, KSA § 50-634(d) .......................................................................... 15

        3.    The Proposed Class Definitions. ..................................................... 16

ARGUMENT .................................................................................................... 17

    A.    Plaintiffs Fail to Meet the Requirements of Rule 23(a) .......................... 17

        1.    Plaintiffs Fail To Establish Numerosity. ......................................... 18

        2.    Named Plaintiffs Fail To Establish Commonality Of Substantive Issues Of Fact Or Law ................................................................ 19

        3.    Named Plaintiffs Fail To Establish Typicality. ................................. 19

        4.    Named Plaintiffs Fail to Demonstrate Adequacy of Representation ....... 20

            i.    Steven Millett is not an adequate representative of the class ....... 20

            ii.    Melody Millett is not an adequate representative of the class. ............................................................................. 24

           iii.    Milletts' interests are in conflict with class interests ................. 27

           iv.    Plaintiffs' counsel cannot adequately represent the putative class. ............................................................................. 28

    B.    Plaintiffs Fail To Establish The Requirements Of Rule 23(b)(3). ............... 31

        1.    Named Plaintiffs Fail To Demonstrate A Predominance Of Common Issues ........................................................................... 32

        2.    Superiority. ................................................................................. 37

## TABLE OF CONTENTS
(continued)

                                                                                    **Page**

CONCLUSION.............................................................................................................. 40

## TABLE OF AUTHORITIES

CASES

Amchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997).................................................................17, 19, 25

Amer. Seed Co. v. Monsanto Co.,
    238 F.R.D. 394 (D. Del. 2006) ..................................................17, 19, 31

American General Corp. v. Continental Airlines Corp.,
    622 A.2d 1 (Del. Ch. 1992), aff'd 620 A.2d 856 (1992) .......................13

American Ins. v. Material Transit, Inc.,
    446 A.2d 1101 (Del. Super. Ct. 1982) ..................................................25

Asset Recovery Svcs, Inc. v. Process Systems Integration, Inc.,
    2002 Del. C.P. LEXIS 55 (Feb. 6, 2002) ..............................................14

Beck v. Maximus, Inc.,
    457 F.3d 291 (3d Cir. 2006)............................................................17, 28

Benedict v. Altria Group, Inc.,
    241 F.R.D. 668 (D. Kan. 2007)......................................................Passim

Carpenter v. BMW of North America, Inc.,
    1999 U.S. Dist. LEXIS 9272 (E.D. Pa) ................................................18

Council of Unit Owners v. Freeman Assoc.,
    564 A.2d 357 (Del. Super. 1989) ..........................................................13

Finstad v. Washburn Univ. of Topeka,
    845 P.2d 685 (Kan. 1993) ...............................................16, 26, 33-34

Gen. Telephone Co. of Southwest v. Falcon,
    457 U.S. 147 (1982)..............................................................................17

Georgine v. Amchen Prods., Inc.,
    83 F.3d 610 (3d Cir. 1996).....................................................................20

Gevedon v. Purdue Pharma,
    212 F.R.D. 333 (E.D. Ky. 2002) ...........................................................18

Haft v. Dart Group Corp.,
    877 F. Supp. 896 (D. Del. 1995)............................................................13

Hillis v. Equifax Consumer Services, Inc.,
  237 F.R.D. 491 (N.D. Ga. 2006)......................................................... 23-24, 34, 39

In re Storage Tech.,
  113 F.R.D. 113 (D. Colo. 1986) ......................................................................21

Interim Healthcare, Inc. v. Spherion Corp.,
  884 A.2d 513 (Del. Super. Ct. 2005) ............................................................13, 32

Kelly v. Mid-Amer. Racing Stables, Inc.,
  139 F.R.D. 405 (W.D. Oak. 1990)......................................................................21

Maguire v. Sandy Mac, Inc.,
  145 F.R.D. 50 (D.N.J. 1992) ...............................................................................39

McClain v. Faraone,
  369 A.2d 1090 (Del. Ch. 1977).........................................................................13

Newton v. Merrill Lynch, Pierce, Fenner & Smith,
  259 F.3d 154 (3d Cir. 2001).............................................................................17

Pickett v. Iowa Beef Processors,
  209 F.3d 1276 (11th Cir. 2000) ........................................................................27

R. M. Williams Co., Inc. v. Frabizzio,
  1993 Del. Super. LEXIS 55 (Feb. 8, 1993) ......................................................14

Skeet v. Sears, Roebuck & Co.,
  137 F.R.D. 347 (D. Kan. 1991)....................................................................34, 39

Solomon v. Bell Atl. Corp.,
  777 N.Y.S.2d 50 (N.Y. App. Div. 2004) ...........................................................34

Stein v. Sprint,
  22 F. Supp. 2d 1210 (D. Kan. 1998)..................................................................26

Townes v. Trans Union LLC and TrueLink, Inc.,
  No. 04-1488-JJF ...................................................................................................4

Young v. Magnequench Int'l Inc.,
  188 F.R.D. 504 (S.D. Ind. 1999)........................................................................28

**STATUTES**

California Consumers Legal Remedies Act, Cal. Civ. Code §§1750-85........................................11

Credit Repair Organizations Act, 15 U.S.C. §1679 et seq................................................................4

Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ......................................................................2

Kansas Consumer Protection Act, Kan. Stat. Ann., § 50-626, et. seq. ...........................................1

Organized Crime Control Act, 18 U.S.C. § 1961 et seq. ................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................................................28

Rule 23 of the Federal Rules of Civil Procedure ..................................................................Passim

Restatement (Third) of Agency (2006)...........................................................................................25

Local Rule 3.1(b) ...........................................................................................................................5

Local Rule 7.1.1 ...........................................................................................................................30

Defendant TrueLink, Inc., now known as Trans Union Interactive, Inc. ("TrueLink"), by its attorneys, submits this Answering Brief in Opposition to Plaintiffs' Motion For Class Certification. ("Motion") (D.I. 124 and 125).

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs in the above-captioned Millett Action brought suit against defendant TrueLink, Inc. ("TrueLink") on behalf of themselves and a putative nationwide class and statewide Kansas class for breach of contract and violations of the Kansas Consumer Protection Act, Kan. Stat. Ann., § 50-626, et. seq. (the "KCPA"), respectively. The plaintiffs have moved to certify their action against TrueLink as a class action. Notably, this Court has already finally approved a settlement agreement in the case of Townes v. Trans Union and TrueLink, No. 04-1488, pending before Judge Farnan. The settlement in the Townes Action extinguishes the claims of most, if not all, of the members of the purported class in the above-captioned action.

## SUMMARY OF ARGUMENT

1.  The plaintiffs' assessment of what issues are common to the proposed class, as well as their ideas for how this case might be handled on a class wide basis, is remarkably naïve. Plaintiffs conspicuously ignore significant issues - substantive elements of their claims in fact – which necessarily require the presentation of individualized evidence for each class member. Plaintiffs also ignore specific facts in the record that prevent them from meeting the various requirements of Rule 23 of the Federal Rules of Civil Procedure.

2.  As set forth below, plaintiffs fail to demonstrate that the requirements of Rule 23(a) are met. In addition, plaintiffs fail to meet the predominance and superiority requirements of Rule 23(b)(3). The nature of plaintiffs' claims and the facts specific to plaintiffs demonstrate that these claims cannot be adjudicated on a class-wide basis. Individualized evidence is required with respect to each class member to establish the substantive elements of the claims.

3.    In addition, plaintiffs' efforts to minimize the appearance of individualized issues is at the expense of meaningful recovery to the class.  By attempting to measure their "damages" as the return of the relatively small amounts paid by each class member for the credit monitoring product, plaintiffs disregard both the fact that such recessionary damages are not appropriate here, and the fact that individual class members (though not the named plaintiffs) may be able to recover significantly greater monetary relief in individual actions.

## STATEMENT OF FACTS

**A.    The Relevant Class Action Litigation.**

The procedural history of this action and that of similar litigation brought by the Milletts and their counsel is helpful in providing general context for the current Motion, as well as illustrating the ineffectiveness of plaintiffs and their counsel in prosecuting these and other similar claims.  In the sections that follow, TrueLink will demonstrate the various procedural and strategic steps and mis-steps, and how they impact the asserted adequacy of plaintiffs' proposed representation of the class, and other prerequisites for class certification.

**1.    The Millett Action against TrueLink.**

On June 16, 2004, the Milletts filed suit against seven defendants in a single complaint filed with the U.S. District Court for the District of Kansas.  Millett v. Equifax Credit Information Services, Inc., et al., No. 04-2274-CM.  (D.I. 1).  That complaint included individual claims brought against several data furnishers and users of credit data (Bank of America Corp. and Ford Motor Credit Co.), and also included putative class claims against the national credit bureau, Trans Union LLC ("Trans Union") and its industry competitors who purportedly sold credit monitoring, and other credit history products to the Milletts, i.e., Equifax, Experian, CSC Credit Services, Inc. and Fair Isaac.  Among the thirteen claims asserted in this initial complaint were:  breach of contract; willful and negligent violations of the Fair Credit Reporting Act, 15

U.S.C. § 1681 et seq. ("FCRA"); defamation; conversion; fraud; and violations of the Organized Crime Control Act, 18 U.S.C. § 1961 et seq. ("RICO"). (Id.) Shortly after the initial lawsuit was filed, the Milletts' counsel voluntarily dismissed the claims against all but one of the defendants, and filed separate lawsuits in the same Kansas federal court against each of these defendants. (See Deposition of Melody Millett, pp. 102-103, attached hereto as Exhibit A (hereafter, "M. Millett Dep.")).

The original claims against Trans Union, similar to the claims against its competitors Equifax and Experian, were based in part upon alleged misrepresentations made through the internet marketing efforts of Trans Union which described credit monitoring as an aid to reducing the risk and consequences of identity theft. (M. Millett Dep., pp. 111-112; see also D.I. 1). Similar to their claims against Equifax, Fair Isaac and Experian, the Milletts contended that they believed Trans Union's credit monitoring product would monitor the credit files of third parties to detect identity theft, and not just the files of the Mr. Millett. (Id. at p. 242). Making the same arguments that ultimately failed in their case against Experian (see Section A(3)(iii), infra), the Milletts allege that TrueLink's general statements that the product provided identity theft protection supported their belief, even though the website marketing referenced only access to the subscriber's credit file. (M. Millett Dep., pp 242-43).

After voluntarily dismissing them from their original complaint, the Milletts' re-filed their claims against Trans Union in a separate lawsuit in the District of Kansas, No. 04 CV 02448. (D.I. 1 in Millett). The problem, however, was that the Milletts had contracted with TrueLink, not Trans Union, in obtaining the products which were the subject of the lawsuit. The Milletts later substituted TrueLink for Trans Union as the defendant. (D.I. 27 in Millett). However, fundamental and procedural defects in the Milletts' pleading remained. Upon

TrueLink's motion, the Kansas federal court transferred the action to the District of Delaware in recognition of a choice-of-venue provision in the subject contract requiring that required bringing the lawsuit in a federal or state court in Delaware.  (D.I. 29 in <u>Millett</u>).

[REDACTED]

The Milletts' counsel who ask this Court to determine their adequacy, have never explained why they failed to read the plain language of a contract before bringing class contract claims.

Following transfer to this Court, the plaintiffs, on December 14, 2005, filed their Second Amended Complaint, alleging breach of contract, and asserting that TrueLink's sale of products violated the Delaware Consumer Fraud Act and Delaware Consumer Contracts Act.  Also, for the first time, the Milletts asserted claims for violations of the Credit Repair Organizations Act, 15 U.S.C. §1679 <u>et</u> seq. ("CROA") on behalf of a nationwide class.  (D.I. 53 in <u>Millett</u>).  On June 12, 2006, the Milletts sought leave to file a Third Amended Complaint, D.I. 70, which included California statutory claims and nationwide class CROA claims.  Later, the Milletts filed on September 20, 2006, their Fourth Amended Complaint, D.I. 76, which (once again) asserted the same class CROA claims.  It was not until March 5, 2007, that the Milletts voluntarily dismissed their class CROA claims.

**2.    The Relationship Between the <u>Millett</u> Action and the <u>Townes</u> Action.**

Because of the similarities between the case of <u>Townes v. Trans Union LLC and TrueLink, Inc.</u>, No. 04-1488-JJF also pending in District of Delaware before Judge Farnan (the "<u>Townes</u> Action") and the above-captioned action, a discussion of the related <u>Townes</u> Action is necessary to understand the positions taken by the Milletts with regard to class certification.  The

plaintiff in the <u>Townes</u> Action brought putative class claims against TrueLink and Trans Union for their marketing and sale of credit history products to consumers over the internet.

Only a few months after filing the <u>Townes</u> Action, and after learning of the filing of a similar class action lawsuit, the plaintiff in the <u>Townes</u> Action filed a motion requesting that Judge Farnan appoint certain of his lawyers "interim counsel" under Rule 23(g)(2)(A) of the Federal Rules of Civil Procedure. Judge Farnan granted plaintiff's motion and appointed plaintiff's lawyers as interim counsel for the putative class because competing class actions may create "rivalry or uncertainty that makes formal designation of interim counsel appropriate."

As noted above, shortly after the Milletts' case was transferred to the District of Delaware, where the Milletts asserted claims for violations of CROA on behalf of a nationwide class, counsel for TrueLink in the <u>Townes</u> Action, pursuant to Local Rule 3.1(b), notified the Clerk of the Court that the <u>Millett</u> Action and <u>Townes</u> Action were related due to the "overlapping claims and putative classes." (D.I. 32 in <u>Townes</u>). Counsel for plaintiff in the <u>Townes</u> Action filed their own Notice, and urged "that coordination of the <u>Townes</u> and <u>Millett</u> actions is appropriate." (D.I. 37 in <u>Townes</u>). In response to TrueLink's notice of relatedness, counsel for the Milletts filed a letter with the Clerk stating their belief that their case was "dissimilar," and advising that counsel would soon move to be appointed "interim counsel." (D.I. 57 in <u>Millett</u>). Eventually, the Milletts moved for appointment of interim counsel, though in doing so, failed to mention the overlapping nature of the claims and classes in <u>Townes</u> and <u>Millett</u> Actions, or the fact that Judge Farnan had already appointed interim class counsel in <u>Townes</u>. These points were set forth, however, in TrueLink's response to the Milletts' Rule 23(g)(2)(A) motion. (D.I. 59 in <u>Millett</u>). Judge Robinson denied their motion, based upon the

Milletts' representation   (despite the common nationwide class claims) that the cases were "unrelated." (D.I. 73 in <u>Millett</u>).

On June 27, 2006, counsel and party representatives in the <u>Townes</u> Action participated in a settlement conference before Magistrate Judge Thynge.   The parties continued settlement discussions over the next nine months, culminating in a class action Stipulation of Settlement signed on April 5, 2007.  (A true and correct copy of the Stipulation of Settlement between lead Plaintiff and Defendants in the <u>Townes</u> Action is attached hereto Exhibit B).  At the suggestion of Magistrate Judge Thynge, those settlement discussions were coordinated with negotiations occurring in similar lawsuits brought against TrueLink and Trans Union's competitors, and the final settlement terms in the separate settlement agreements are substantively identical.   On April 16, 2007, Judge Farnan preliminarily approved the settlement reached by the parties in the <u>Townes</u> Action (the "<u>Townes</u> Settlement"), and the federal court in Atlanta granted final approval to the related <u>Equifax/Fair Isaac</u> Settlement Agreement, a settlement nearly identical to the <u>Townes</u> Settlement.   Notice has been provided to the settlement class in the <u>Townes</u> Settlement and the final fairness hearing took place on September 11, 2007.

On May 15, 2007, the Milletts filed a Motion for Leave to Intervene in the <u>Townes</u> Action, seeking to dismantle the <u>Townes</u> Settlement for their own financial gain, to the ultimate detriment of the Millett class members.   Under the guise of protecting the class claims, and reconciling their earlier misstatements to Judge Robinson upon their Motion for Appointment of Interim Counsel, the Milletts allege, among other things, that the settlement class is broader than the litigation class in the <u>Townes</u> Action.   The definition of the settlement class, however, is more narrow than that set forth in the complaint in the <u>Townes</u> Action, which included purchasers of "any" consumer service offered by TrueLink or Trans Union.   Moreover, the

Milletts are <u>not</u> members of the settlement class in the <u>Townes</u> Action, as the defined "Class" expressly excludes "all persons who are named plaintiffs in any action pending against any of the Defendants on the date of entry of Hearing Order wherein the recovery sought is encompassed by the Released Claims." (Ex. B, ¶2.24).

In opposing the Milletts' Motion for Leave to Intervene in the <u>Townes</u> Action, TrueLink questioned the Milletts' motives, given that they chose not to challenge the nearly identical <u>Equifax/Fair Isaac</u> Settlement Agreement discussed more fully below, even though that settlement would also extinguish their class claims. Notably, counsel for TrueLink was recently able to obtain a copy of the Confidential Settlement Agreement and Release, which resolved the putative class action that the Milletts brought against Equifax.

[REDACTED]

On August 30, 2007, Judge Farnan denied the Milletts' Motion for Leave to Intervene, finding that the Milletts did not have a cognizable legal interest in the <u>Townes</u> litigation. The Court concluded that "the presence of the opt-out provision [in the <u>Townes</u> Settlement] prevents the impairment of any legal interests held by those who may also be part of the proposed putative class in the <u>Millett</u> action." (D.I. 100 in <u>Townes</u>, p. 7).

Finally, during a hearing held on September 11, 2007, Judge Farnan granted final approval to the <u>Townes</u> Settlement, and entered a Final Judgment And Order Of Dismissal to that effect on September 12, 2007 (D.I. 108 in <u>Townes</u>).

3.    **Related Class Litigation Brought By the Milletts Against TrueLink's Competitors.**[1]

As noted above, the Milletts originally filed a multi-defendant complaint filed in Kansas federal court. After voluntarily dismissing that first combined complaint, the Milletts filed brought putative class action claims against Defendant TrueLink here, as well as Equifax, Experian, Consumerinfo.com and other of the same defendants. The Milletts have asserted many of the same claims, including those under CROA, arising from their purchase of the same products at issue in the other litigation against these parties. The history of the Milletts' litigation against Defendants' competitors is (to say the least) complex, but a basic understanding of the Milletts' prior efforts to represent classes in the related litigation is necessary to understand their pending motion here, and its underlying motives.

    i.    **The Milletts' lawsuit against Equifax.**

Even after the Milletts decided to voluntarily dismiss their claims against all but Equifax Consumer Services, Inc. and Equifax Information Services, LLC (collectively "Equifax"), No. 04-2279-CM, they were faced with a motion to dismiss for transfer for improper venue based upon a contractual provision mandating that the suit be brought in Georgia. Subsequently, the Milletts agreed to a transfer of their case to the United States District Court for the Northern District of Georgia, No. 05 CV 02122 BMM (the "Equifax Action"). Notably, the case was later transferred within the Northern District of Georgia to the same Judge who was presiding in the Equifax litigation. After filing numerous amended complaints and finally by their Fifth Amended Complaint, the Milletts alleged claims on behalf of a nationwide class for: (a) violations of CROA's disclosure requirements, as well as violations of CROA's fraud

---

[1] Section A.3 of the Statement of Facts describes numerous federal court cases whose docket sheets are available through each respective courts' PACER/ECF electronic case management system. The citations to the pleadings

provisions; (b) breach of contract; (c) fraud; and (d) negligent misrepresentation. (D.I. 84 in Equifax).

Equifax filed numerous motions challenging the sufficiency of the Milletts' Fifth Amended Complaint. (D.I., 88, 89 in Equifax). Although the parties fully briefed the motions, the Milletts reached a settlement of its claims against Equifax before the court ruled on them. (D.I. 102 in Equifax).

In their Reply Brief in Support of Motion for Leave to Intervene ("the Reply") filed in the Townes Action, the Milletts fail to reconcile the different positions they take with regard to the Townes Settlement and the Equifax/Fair Isaac Settlement Agreement, even though the latter agreement would have the same practical impact on their class claims as the former. Instead, the Milletts simply stated in conclusory fashion, in their Reply that the "other cases [discussed in the briefs of the Defendants and the Plaintiff in the Townes Action]. . . are simply inapposite." (D.I. 82 in Townes, p. 2).

[REDACTED]

That explanation further supports denial of the pending Motion For Class Certification.

[REDACTED]

and rulings in the cases referenced herein refer to the corresponding docket item numbers for the case under discussion.

[REDACTED]

---

[2]     [REDACTED]

[3]     [REDACTED]

[REDACTED]

### ii.    The Millett's lawsuit against Experian.

Just as their other lawsuits were transferred due to choice-of-venue provisions, the Milletts' case against Experian and Consumerinfo.com (collectively "Experian"), was transferred from the District of Kansas to the Central District of California, No. SACV-05-879-JVS (the "Experian Action").  By their Fourth Amended Complaint in that action, the Milletts asserted claims on behalf of a nationwide class for deceptive marketing in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§1750-85 (the "CLRA") and breach of contract.  (D.I. 113 in Experian).

Experian filed a motion for summary judgment on October 24, 2006, seeking dismissal of both claims. (D.I. 116 in Experian).  The primary issues raised by the motion, and ultimately resolved by the federal court, were: (1) whether Experian had a contractual duty to provide its customers with information that does not appear on their credit report; and (2) whether general claims of identity theft protection could be reasonably read to promise monitoring of credit files other than those of the subscribing consumer.

On December 18, 2006, the Court granted in part Experian's motion for summary judgment, finding that Experian's credit monitoring product performed as promised, and that its marketing of the product did not mislead consumers. (Order Granting in part and Denying in part Motion for Summary Judgment, D.I. 140 in <u>Experian</u>, attached hereto as Exhibit D). The district court found that Experian's credit monitoring product was intended to advise whether a purchaser's Experian credit report had changed in five specific ways commonly associated with identity theft. (<u>Id.</u> at p. 4). The Court further found that "it is clear that there was no offer to search for information that would not appear on a purchaser's credit report," and held that the Milletts' views as to how the product should perform were "impractical and undesirable." (<u>Id.</u>) Based upon similar reasoning, the Court also dismissed the Milletts' California statutory deceptive marketing claims. Even though defendant's website stated that its credit monitoring product will "guard against fraud and identity theft," and will "provide peace of mind," the court held that "no reasonable person would read these statements and take them literally and absolutely." (<u>Id.</u> at p. 6). On April 4, 2007, the Court denied the Milletts' motion for reconsideration. (D.I. 174 in <u>Experian</u>).

**B.    The Milletts' Claims For Breach Of Contract And Violation Of The KCPA.**

In order to fully understand the various obstacles to, and reasons for, denial of Plaintiffs' Motion, it is important to identify the factual nature of Plaintiffs' claims. Against the backdrop of the substantive claims asserted, it is readily apparent that class certification is not appropriate here.

**1.    Breach of Contract Under Delaware Law.**

Count II of plaintiffs' Fourth Amended Complaint asserts a claim for breach of contract. Under Delaware law, which according to the subject contract is the applicable law (Plaintiffs' Brief, p. 31 n.1), the elements of a claim for breach of contract include (1) a contractual

obligation; (2) breach of that obligation; and (3) resulting damages.  See Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513, 548 (Del. Super. Ct. 2005).

Plaintiffs argue that the credit monitoring contracts they and putative class members entered into incorporate the marketing language on TrueLink's website at the time.  (Plaintiffs' Brief, pp. 14-15).  Upon this basis, plaintiffs hope to identify a specific contractual term that they claim was breached.  Notably, however, plaintiffs offer no evidence that the marketing materials displayed on the website were uniform – even with respect to the specific representations at issue – throughout the class period.  Accordingly, to the extent that the contracts incorporate representations and descriptions available on the website, there is no evidence that the contracts were uniform.  To the contrary, Mrs. Millett acknowledged that the marketing language has changed over time.  (M. Millett Dep., pp. 189-90).  See also Declaration of Lucy Duni, ¶ 5, Exhibit E hereto ("Duni Declaration").

The measure of damages recoverable for breach of contract is the amount "necessary to put the plaintiff in as good a position as it would have occupied had there been full performance of the contract."  American General Corp. v. Continental Airlines Corp., 622 A.2d 1 (Del. Ch. 1992), aff'd 620 A.2d 856 (1992).  See also Haft v. Dart Group Corp., 877 F. Supp. 896, 901 (D. Del. 1995).  "Specifically, compensatory damages for breach of contract are designed under the law to place the injured party in as good a monetary position as it would have enjoyed if performance of the contract had been rendered as promised."  Council of Unit Owners v. Freeman Assoc., 564 A.2d 357, 359-60 (Del. Super. 1989).  Such damages include those damages which might have been foreseeable or anticipated as being likely to flow from the breach.  McClain v. Faraone, 369 A.2d 1090, 1092 (Del. Ch. 1977).

Though their Fourth Amended Complaint prays for "compensatory damages . . ." (FAC, p. 14, D.I. 76), Plaintiffs' Brief makes clear that instead of proving *damages,* they seek a refund of all monies they (and putative class members) paid for the credit monitoring product.  <u>See</u> Plaintiffs' Brief, p. 31.  Plaintiffs undoubtedly do so in an effort to minimize individualized issues as to whether each class member suffered any harm as a result of the alleged breach. Notably, however, plaintiffs do not plead a claim for equitable rescission, and restitution is not a proper measure of their "damages" for allegedly incomplete performance by TrueLink. Restitution of the contract price is not a remedy for breach of contract unless the parties are willing and able to return all benefits they received under the contract.  <u>See R. M. Williams Co., Inc. v. Frabizzio</u>, 1993 Del. Super. LEXIS 55 at *45 (Feb. 8, 1993) ("Plaintiff is not entitled to request restitution in this case as plaintiff has retained the performance tendered by defendant and does not intend to return it.") (citing Restatement (2d) of Contracts § 373 cmt. a).  <u>See also Asset Recovery Svcs. Inc. v. Process Systems Integration, Inc.</u>, 2002 Del. C.P. LEXIS 55 at *8-9 (Del. C.P. Feb. 6, 2002) (rejecting plaintiff's request for full refund of contract price paid for equipment as a measure of damages for breach of contract).  Noting the general measure of damages set forth above, the <u>Asset Recovery</u> court stated:  "Simply because [expectation interest] damages are difficult to ascertain is no reason to allow recover of the contract price." <u>Id.</u> (citations omitted).  Because there was no evidence that either the subject of the contract was either returned by plaintiff or that the equipment delivered had little or no value (<u>id.</u> at *8, 10-11), there was no reason to depart from the traditional measure of compensatory damages for breach of contract.  "[C]ompensatory damages are measured by plaintiffs 'out-of-pocket actual loss." <u>Id.</u> (citing <u>Strassburger v. Eavly</u>, 752 A.2d 557 (Del. Ch. 2000)).

14

Similarly, the facts here would not support a claim for restitution as a measure of plaintiffs' or the class's damages. The services received by the Milletts and class members are not capable of being returned. Further, "restitution is available only if the breach gives rise to a claim for damages for total breach and not merely to a claim for damages for partial breach." Restatement (2d) of Contract, § 373 cmt. a. Here however, plaintiffs cannot dispute that they received at least partial performance of credit monitoring services. Indeed, the contract has not only been performed, it has been repeatedly performed because the Milletts continued their subscription to credit monitoring for several years, rather than cancelling it once they perceived that it did not perform as they claim to have expected. (M. Millett Dep., pp. 82-84, 86, 318).

Any complaints plaintiffs may have regarding the completeness of performance can be raised, as they have, in a claim a breach of contract, but one for damages resulting from the allegedly incomplete nature of TrueLink's the identity theft protection aspect of its credit monitoring service. Plaintiffs do not allege that TrueLink failed to perform the contract at all or that it is without value. See M. Millett Dep., pp. 455-456 (acknowledging that credit monitoring serves purposes other than those related to concerns about identity theft).

## 2. Plaintiffs' Claims Under the Kansas Consumer Protection Act, KSA § 50-634(d).

Plaintiffs Brief specifically cites KSA § 50-634(d) as the provision of the KCPA under which they seek class certification. This is not surprising insofar as it is the only provision of the KCPA under which a class action for damages may be brought. See and compare KSA §§ 50-634(b), (c) and (d). To establish a claim under § 50-634(d), however, plaintiff and each class member must establish that TrueLink engaged in one of the acts or practices specifically enumerated thereunder. See KSA § 50-634(d) and cmt. 3. In addition, every claimant (and therefore every class member) must demonstrate that he is a consumer and that he has suffered a

loss as a result of the violation.  Id.  See also Benedict v. Altria Group, Inc., 241 F.R.D. 668, 680 (D. Kan. 2007).  This necessarily requires individualized proof of each class member's reliance on the alleged misrepresentations at issue.

> KSA § 50-634(d) requires individual showings of reliance, even if the result is *very* few class certifications in misrepresentation cases.  The court is unwilling to "rewrite" subsection (d) to find otherwise.

Id at 679-80.

Because reliance and resulting loss is required for each claimant, the putative class cannot include consumers "who [are] neither aware of nor damaged by a violation of the Act."  Finstad v. Washburn Univ. of Topeka, 845 P.2d 685, 692 (Kan. 1993).

### 3.    The Proposed Class Definitions.

For a proposed nationwide class action on their breach of contract claim, plaintiffs seek certification of the following classes essentially defined as "All persons who have purchased Credit Monitoring from TrueLink . . . from September 9, 2001 to the present."  (Plaintiffs' Motion, ¶¶ 3, 4).  There are numerous problems with the proposed definitions, many of which will be explained in further detail below, in conjunction with their impact on particular requirements of Rule 23(a) and (b)(3).  Generally, however, the class definitions are ridiculously overbroad.  In total disregard of the elements of the particular claims, as well as the requisite standing of each class member to maintain such claims, the classes purport to include:

- Purchasers who have already obtained a refund or other resolution from TrueLink regarding any perceived failure or unmet expectation of the credit monitoring product;

- Individuals who purchased credit monitoring without having seen or relied upon any of the marketing representations at issue (and therefore could not have relied upon them);

- Individuals who understood (as TrueLink specifically advised) that credit monitoring would alert subscribers only to changes in their credit report;

16

- Individuals who purchased credit monitoring for reasons other than those associated with identity theft concerns (rendering any alleged misrepresentation regarding identity theft protection immaterial);

- Individuals who purchased credit monitoring during time periods for which there is no evidence that the alleged misrepresentations were being used.

## ARGUMENT

### A.    Plaintiffs Fail to Meet the Requirements of Rule 23(a).

This Court has discretion to deny class certification. Amer. Seed Co. v. Monsanto Co., 238 F.R.D. 394, 396 (D. Del. 2006). A denial of class certification is appropriate where, as here, the Plaintiffs have failed to meet their burden of establishing: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, as required under Rule 23(a). Id. (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997); Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir.1994)).

A class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982); Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006). When engaging in such a rigorous analysis, the Court will not "inquire into the merits of a lawsuit," Amer. Seed, 238 F.R.D. at 396, but may conduct a limited inquiry and "probe behind the pleadings before coming to rest on the certification question." Newton v. Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154 , 166 (3d Cir. 2001) (internal citations omitted). After such a rigorous analysis, the plaintiffs here have failed to meet their burden because they cannot establish any of the four requirements for class certification under Rule 23(a).

1.    **Plaintiffs Fail To Establish Numerosity.**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  While it is typically not necessary for a plaintiff to assign a precise number to the size of the proposed class, it remains the plaintiffs' burden to show some evidence of the size of the class.  Carpenter v. BMW of North America, Inc., 1999 U.S. Dist. LEXIS 9272 *21 (E.D. Pa. June 21, 1999).  "Mere speculation is insufficient.  To the contrary, 'a higher level of proof than mere common sense impression or extrapolation from cursory allegations is required.'" Id. (quoting Schwartz v. Upper Deck Co., 183 F.R.D. 672, 681 (S.D. Cal. 1999)); see also Gevedon v. Purdue Pharma, 212 F.R.D. 333, 337-38 (E.D. Ky. 2002) (finding that "simple averment of numerosity" and "merely repeating the language of the rule" are not sufficient to establish numerosity).

In their effort to prove numerosity, plaintiffs cite the number of purchasers of credit monitoring from TrueLink, but ignore entirely whether or not such purchasers actually have claims for breach of contract or violation of the KCPA.  As explained elsewhere (infra, at Section B(1), the proposed class includes purchasers of credit monitoring who (a) did not see or rely upon the alleged misstatements, (b) who purchased the product for reasons other than identity theft, and (c) who were completely satisfied with the product.

Plaintiffs also ignore entirely the fact that virtually every member of their proposed nationwide and Kansas state-wide classes are members of the Settlement Class in Townes.  The Townes Settlement Class numbered over 3.86 million individuals nationwide.  With Final Approval of the Townes Settlement, all Townes Settlement Class members (with the exception of the few who timely opted out) have released any claims they may have had arising from their purchase of various products, including TrueLink's credit monitoring.  Plaintiffs offer no evidence that a proposed class of credit monitoring customers with claims surviving after Final

Approval of the <u>Townes</u> Settlement, will be sufficiently numerous – either on a Kansas-wide or nationwide level.

### 2. Named Plaintiffs Fail To Establish Commonality Of Substantive Issues Of Fact Or Law.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class" in order for the class to be certified. FED. R. CIV. P. 23(a)(2). Courts have recognized that "the commonality requirement may be generally subsumed within and superseded by the 'far more demanding' predominance requirement of Rule 23(b)(3)." <u>Benedict v. Altria Group, Inc.</u>, 241 F.R.D. 668, 672 (D. Kan. 2007) (citing <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623-24 (1997)). Accordingly, TrueLink will address in greater detail the commonality requirement in conjunction with its discussion, <u>infra</u>, of predominance under Rule 23(b)(3). As set forth therein, any common questions that may exist do not predominate over, but are in fact are completely eclipsed by individual issues.

For purposes of Plaintiffs' Motion, TrueLink does not dispute that there may be *some* questions of law or fact that are common to those members of the defined class, if any, who have the same claims that the Milletts pursue. However, TrueLink notes that the significance of those "common" issues pale in comparison to the significance of issues requiring individualized evidence. Indeed, as set forth above, questions touching upon whether class members have claims at all, are not common questions.

### 3. Named Plaintiffs Fail To Establish Typicality.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). In order to satisfy this requirement, "Plaintiffs must show that the class representatives are 'part of the class' and 'possess the same injury' as the class members." <u>Amer. Seed</u>, 238 F.R.D. at 396. The typicality

requirement is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees. Georgine v. Amchen Prods., Inc., 83 F.3d 610, 631 (3d Cir. 1996). The inquiry "assesses whether the named plaintiffs have incentives that align with those of absent class members so that the absentees' interests will be fairly represented." Id.

The typicality of each named plaintiffs' claims – including their standing – are addressed more completely in Sections A(4) and B(1), infra, addressing adequacy of representation, and predominance, respectively. In short, however, the Milletts' claims are not typical here for several reasons. First, though his claims rest upon having seen and been influenced by certain representations on TrueLink's website, Mr. Millett purchased his product through an agent, and personally saw few, if any, of the representations at issue. Second, the Milletts claim to have purchased credit monitoring for a specific and limited purpose – in an effort to identify uses of Mr. Milletts' social security number by a known identity thief. See generally, Fourth Amended Complaint, D.I. 76. There is no evidence or indication that other purchasers of the product believed that the product would identify and track all uses of any piece of information by a potential identity thief – particularly if such activity was not reflected in the customer's credit report. The claims of plaintiffs are also not typical of other customers who purchased credit monitoring for purposes unrelated to identity theft, or who may have claims relating to any other marketing language or practices not at issue here.

### 4.    Named Plaintiffs Fail to Demonstrate Adequacy of Representation.

#### i.    Steven Millett is not an adequate representative of the class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(A)(4). Mr. Millett cannot fairly and adequately protect the interests of the class here because he has demonstrated a complete lack of familiarity

with the facts of this case and he is woefully uninformed about the material aspects of this action. See Kelly v. Mid-Amer. Racing Stables, Inc., 139 F.R.D. 405, 409 (W.D. Oak. 1990) (denying motion for class certification where named plaintiffs exhibited an "almost total lack of familiarity with the facts of their case" and where named plaintiffs' minimal knowledge "appear[ed] to come entirely from counsel."); In re Storage Tech., 113 F.R.D. 113, 118 (D. Colo. 1986) (finding certain named plaintiff inadequate class representative where such named plaintiff "appeared unaware of even the most material aspects" of the case, "did not know the difference between her [] complaint and the consolidated amended complaint, nor why the[] particular defendants were being sued," and exhibited an overall "lack of interest" in the case).

Plaintiffs' Brief makes little more than a passing suggestion that Mr. Millett is an adequate representative of the class, focusing more on the alleged adequacy of his wife.  In fact, the only specific assertion regarding Mr. Millett's qualifications consists of a single sentence stating that Mr. Millett has "been involved in the prosecution of this action, having been deposed and having participated substantially in the preparation of the pleadings and discovery responses." (Plaintiffs' Brief, p. 22, citing Declaration of Steven Millett (Plaintiffs' Ex. W) at ¶ 3).  The deposition testimony of both plaintiffs, however, exposes the fallacy of this statement.

Contrary to the assertions made by plaintiffs, Mr. Millett has not been involved in the prosecution of this action, and is largely unaware of the status of the litigation.  Mr. Millett is so unfamiliar with even the most basic and essential facts in this action that he was completely unaware that he had sued Defendant TrueLink until he was deposed by defense counsel in March, 2007.  (See Deposition of Steven Millett attached hereto as Ex. F, pp. 21-24).   In fact, it is clear from his own testimony that he has abdicated many of his responsibilities to others.  As just one example of Mr. Millett's lack of involvement in this action is the fact that he was

unaware that Trans Union had been dismissed as a defendant, or that the pending lawsuit was against TrueLink. (S. Millett Dep., pp. 19-24). He was also unaware that claims under the Credit Repair Organizations Act had been filed on his behalf in this action. (Id., p. 53). In fact, it seems clear from his testimony that he abdicates the responsibility to monitor the litigation to his wife. (Id., p. 24).

Further, while he did appear for his deposition, Mr. Millett has been a *non*-participant in the preparation of written discovery responses. Interrogatories that were served upon and specifically directed to him in order to understand his knowledge of the facts were actually answered by his wife without his input. (S. Millett Dep., pp. 129-130, 131, 164; M. Millett Dep., p. 325). Indeed, he conceded that the responses contained facts which he was not aware of. (S. Millett Dep., pp. 136, 141-143). As these and other facts cited above make clear, Mr. Millett is not an engaged participant in the prosecution of this action. Indeed, Mr. Millett acknowledged that he is something less than enthusiastic and interested in this lawsuit. (Id. at pp. 162-163). He bemoans the responsibilities associated with litigation, and wished aloud in retrospect that it wasn't going forward. (Id. at p. 174).

On perhaps a more substantive level, Mr. Millett is not an adequate representative because he has no knowledge of the underlying facts relevant to his claims. While his claims rest upon allegedly misleading representations about the credit monitoring product, Mr. Millett did not **ever** visit TrueLink's website, did not directly purchase the product, and did not see the various marketing and product descriptions displayed there. Nor did Mr. Millett view the weekly alerts or other email communications from TrueLink. (S. Millett Dep., pp. 49-50)[4] Instead, his wife went online, determined that the credit monitoring was something they wanted, and

---

[4]  Mr. Millett suggested that may have glanced up to see an "opening statement" regarding the product while he was on a separate computer playing video games. (S. Millett Dep., pp. 100-102; M. Millett Dep., pp. 100-102).

purchased credit monitoring on behalf of her husband. (Id.; M. Millett Dep., pp. 320-322).

[REDACTED]

A plaintiff who has not seen alleged representations that form the basis for his claims is not an adequate representative. See Hillis v. Equifax Consumer Services, Inc., 237 F.R.D. 491, 501-503 (N.D. Ga. 2006) (finding plaintiff an inadequate representative because he had no recollection of seeing the allegedly misleading statements, though the suggestion in seeking class certification was that every purchaser of the product must have seen the representations at issue and that they are misleading).

Further, while Mr. Millett purports to represent a class from September 9, 2001 through the present, there is no testimony that he saw any representations on TrueLink's website at any time prior to or after a single date in August, 2003. To the contrary, aside from the undoubtedly incomplete marketing language that was quoted to him by his wife on the initial purchase date in August, 2003 (see M. Millett Dep., pp. 320-322), Mr. Millett testified that he has not seen any of TrueLink's advertisements for credit monitoring since then. (S. Millett Dep., pp. 52, 100-102). He does not know if TrueLink's marketing after August, 2003 is inaccurate or misleading. There is likewise no evidence that marketing used by TrueLink prior to August, 2003 would be objectionable to him. Accordingly, he cannot testify as to the content of any representations made to class members who purchased the product during the class period, nor can he testify as to how it affected a decision to purchase the product. While plaintiffs argue that the representations regarding TrueLink's credit monitoring produce were the same over the purported class period, the evidence is to the contrary.

[REDACTED]

23

[REDACTED]

Mr. Millett has been similarly uninvolved in reviewing the information provided by TrueLink during the course of his contract with TrueLink.[5]   Certainly, to prove his breach of contract claim, he must establish that there was a breach by TrueLink;  and to prove his KCPA claim, he must establish that the allegedly misleading statement, in its proper context and as understood by him, was in fact untrue and that it caused him to suffer a loss.  His inability to testify with regard to what was and was not delivered makes him ill-qualified to represent the class on a breach of contract of KCPA claim.  See Hillis, 237 F.R.D. at 502.

Finally, even if he had seen the representations and otherwise participated in purchasing the product, Mr. Millett, by his own admission, has problems remembering things, and agrees that his "memory problems [have] made it more difficult for [him] to assist in prosecuting the claims in all of the lawsuits that [he has] brought." (S. Millett Dep., pp. 25, 94-95).  His wife also agreed that Mr. Millett has a poor memory.  (M. Millett Dep., p. 335).  In fact, Mrs. Millett testified that he tends to be a simple person and that complex matters, including this litigation, are difficult for him.  (Id. at p. 335)  As demonstrated by his deposition testimony, these problems hinder his ability to establish his ability to prove his own claims, making him ill-suited to represent and hope to prove the claims of others.

> **ii.    Melody Millett is not an adequate representative of the class.**

---

[5]   Mr. Millett was not even aware of basic facts such as whether or not he was still purchasing the credit monitoring product at issue. (S. Millett Dep., p. 40).

Plaintiffs ignore these fatal flaws to Mr. Millett's ability to represent the class, and instead identify Mrs. Millett as the adequate class representative. However, because she has no standing to maintain the putative class claims, as well as other pertinent facts, she cannot be an adequate representative of the class. At a minimum, a class representative must be a member of the class she purports to represent. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).


[REDACTED]

[6]; Id. at pp. 214, 258-59 (noting that she has never entered into a contract with TrueLink for credit monitoring other than as an agent for Steven Millett)).

Delaware law is clear that where a party enters into a contract as an agent for another, the party to the contract (and therefore the party with standing to sue for a breach) is the principal, not the agent. See American Ins. v. Material Transit, Inc., 446 A.2d 1101, 1104 (Del. Super. Ct. 1982). "[I]t is established law that an agent for a disclosed principal is not a party to a contract." See also Restatement (Third) of Agency, § 6.01 (2006) ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal: 1) the principal and the third party are the only parties to the contract; and 2) the agent is not a party to the contract unless the agent and the third party agree otherwise.").[7] Here, because Mrs. Millett identified her husband as the subscriber, he is a disclosed principal. The fact that payment to TrueLink was made by the plaintiffs' joint checking account does not change this analysis.

---

[6] Though she believes she purchased a credit report from TrueLink, that purchase is not the subject of this lawsuit. (M. Millett Dep., pp. 206-207).
[7] The Restatement notes that a principal is "disclosed" when the third party has notice that the agent is acting for a principal and has notice of the principal's true identity; a principal is "undisclosed" if the third party has no notice that the agent is acting for a principal. Restatement (Third) of Agency § 1.04 (2006).

Mrs. Millett also has no standing to maintain her own claim for violation of § 50-634(d) of the KCPA. Plaintiffs suggest in their pleadings and their Brief that she has standing because a married couple comes within the definition of a "consumer" under the KCPA, KSA § 50-624(b). If a husband and wife jointly enter into a contract, they are together a "consumer." While Mrs. Millett may be a "consumer" under those circumstances, the contract here, in contrast, was entered into singly by Mr. Millett. In any event, whether or not Mrs. Millett is a "consumer" is not the end of the inquiry to determine whether or not she has standing to maintain a claim for damages. See Finstad, 845 P.2d at 691 (noting that status as "consumer" is not sufficient; plaintiff must be an "aggrieved consumer" who has suffered economic loss). Private actions for damages under KSA § 50-634(d) is reserved to those who "suffer loss as a result of a violation of th[e] act." Thus, to have standing, being a "consumer" is not enough; she must also have suffered harm as a result of the representation at issue.

Mrs. Millett testified that she has never been a victim of identity theft. (M. Millett Dep., p. 41). Therefore, she effectively admits that she has not suffered any harm as a result of the conduct at issue – the allegedly misleading marketing statements which relate to the protection from identity theft provided by credit monitoring.[8] As a result, she does not appear to have standing to maintain a claim for damages under KSA § 50-634(d). See Stein v. Sprint, 22 F. Supp. 2d 1210, 1216 (D. Kan. 1998) and Benedict, supra 241 F.R.D. at 675 and Finstad, supra 845 P.2d at 691-92. (a consumer's standing to sue for damages under the KCPA requires that the plaintiff be aggrieved and separate personal injury).[9]

---

[8] Moreover, there is evidence that Mrs. Millett knew at the time she purchased credit monitoring, that it would not alert her to any activity unless that activity were reported to and entered on Mr. Millett's credit file. (M.Millett Dep., pp. 409-410). Consequently, even if she had suffered a loss, the alleged misrepresentations could not have been the cause of any damages.

[9] It is critical to note here, that the obstacle which standing poses for the plaintiffs also illustrates the overbreadth of the class definition. The classes are not limited to those that who were harmed by alleged an breach or misrepresentation. As such, the class is overbroad, including those who (a) never saw any of the alleged

In addition to her questionable standing, Mrs. Millett is ill-equipped to testify as to all of what she read from TrueLink's website when purchasing the product. (M. Millett Dep., pp. 238-240). She admits that there are portions of the website – additional explanations of the credit monitoring product titled "Learn More"– that she did *not* read when she purchased the product on behalf of her husband. (M. Millett Dep., p. 242); see also D.I. 140 in Experian (Ex. D, p. 6) (indicating that determination of whether a statement on a website is misleading requires reference to the context in which it was made and other information available on the website).

### iii.    Milletts' interests are in conflict with class interests.

Also impacting the Milletts' ability to serve as class representatives is their demonstrated failure to pursue any relief for the classes they purport to or seek to represent.

[REDACTED]

While plaintiffs complain about TrueLink's allegedly misleading marketing practices, their Motion seeks only certification of a Rule 23(b)(3) class, making no request for certification under Rule 23(b)(2).

In addition, the Milletts' interests are not aligned with class members who purchased TrueLink's credit monitoring product and benefited from it. See Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000) ("a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class."). Further, the interest of the Milletts in representing the Kansas class – necessarily at the expense of class member's ability to recover unlimited compensatory damages or up to $10,000 in civil penalties – presents a serious conflict.

misrepresentations at issue; (b) got exactly what they bargained for and expected from the product; and (c) suffered no harm. In other words, in contravention of Article III standing requirements, the proposed class include those who suffered no injury in fact. Simply putting individuals in a "class" does not in and of itself confer standing; every class member must have standing to pursue the subject claims in their own right. See Benedict, 241 F.R.D. at 676-

Additional conflict arises from the fact that the Milletts waive additional claims that class members may have for additional relief available under, for example, the Credit Repair Organizations Act, and the consumer fraud statutes of their respective states of residence.

> **iv.    Plaintiffs' counsel cannot adequately represent the putative class.**

Because the Milletts' counsel have demonstrated a failure to conduct a basic investigation of essential facts before filing claims, displayed questionable judgment as to litigation strategy and made disingenuous (and, in fact) inaccurate statements to this Court and defense counsel, the Milletts cannot establish that Plaintiffs' counsel will be able to "fairly and adequately represent the interests of the [purported] class." Fed. R. Civ. P. 23(g)(1)(B); see also Fed. R. Civ. P. 23(a)(4) ("the representative parties will fairly and adequately protect interests of the class."). Pursuant to Rule 23(g)(1)(C), this Court must look, among other factors, to the work counsel has performed in this action in assessing the adequacy of Milletts' counsel as class counsel. Id. at (g)(C)(1)(i).

Such an inquiry ensures that "the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." Beck, 457 F.3d at 296 (3d Cir. 2006) (quoting Casey, 43 F.3d at 55 (3d Cir. 1994)); see also Young v. Magnequench Int'l Inc., 188 F.R.D. 504, 507 (S.D. Ind. 1999) (denying class certification where plaintiff failed to show that "counsel [was] qualified, experienced, and able to conduct vigorously the proposed litigation.") (internal citation omitted). Simply put, the Milletts cannot establish that plaintiffs' counsel is qualified to represent the class they seek to certify, because plaintiffs' counsel in this action have inexplicably filed claims against the wrong party in the wrong court (thereby

---

677 (to certify a class on claims under KSA § 50-634(d), plaintiff "must prove that each class member suffered a loss as a result of defendants' allegedly deceptive practice.").

unnecessarily delaying this action), engaged in unnecessary gamesmanship, and has made (at best) disingenuous and (at worst) misleading statements to opposing counsel and this Court.

The history of the Milletts' litigation against TrueLink is (to say the least) complex, but nevertheless illustrative of counsel's numerous procedural and strategic mis-steps. Indeed, the lengthy history of improper and inconsistent filings and questionable tactics meticulously detailed above demonstrates plaintiffs' counsel's sheer incompetence in pursuing this litigation. Truelink does not casually make this contention. Without itemizing all the conduct of the Milletts' counsel, identifies the most significant and indisputable examples of conduct that demonstrates the inadequacy of counsel They include:

1. The Milletts' counsel originally sued seven (7) defendants in one lawsuit in federal court in Kansas and, shortly thereafter, without explanation, voluntarily dismissed all but one defendant and refiled the dismissed claims in separate multiple lawsuits filed in the same court;

2. The Millett's counsel sued Trans Union for breach of contract in the providing of the credit monitoring product at issue here, but later voluntarily dismissed Trans Union from the lawsuit and added TrueLink as a defendant when it was pointed out to counsel that the party the Milletts contracted with – as was plain from the contract – was TrueLink, not Trans Union;

3. The Milletts' counsel sued TrueLink in federal court in Kansas even though the contract expressly provided that any such lawsuit must be brought in court in Delaware;

4. The Milletts' counsel specifically denied that the above-captioned action was related to the Townes Action (and this Court relied upon that denial in declining to appoint counsel as interim class counsel) even though both actions asserted nationwide class action claims under CROA against TrueLink for the sale of on-line direct-to-consumer credit history products;

5. The Milletts' counsel, years later, voluntarily dismissed the CROA claims only after counsel was advised of the settlement in the Townes Action, in order to argue, in challenging the class settlement, in Townes that the actions were different;

6. The Milletts' counsel repeatedly insisted that they had timely served objections to interrogatories directed at Mrs. Millett but have never produced, despite numerous

requests to do so, any proof of such timely service and instead filed a proof of service showing service several weeks overdue (D.I. 106);

7.   The Milletts' counsel filed a motion seeking an order of this Court to compel the production of documents and information from non-party Trans Union even though a) the deadline for discovery closed; b) counsel had never served a subpoena on Trans Union requesting the information or the motion which asked for the court order. Counsel affirmatively represented to this Court that they had confirmed with defense counsel pursuant to Local Rule 7.1.1 and, despite several requests to do so, never produced the documents purportedly memorializing such alleged efforts.

Even another Judge in the District of Delaware has questioned the conduct of counsel. On August 30, 2007, Judge Farnan denied the Milletts' Motion for Leave to Intervene in the Townes Action (D.I. 100 in Townes). In his ruling, Judge Farnan questioned the Milletts' counsels' motives in filing their Motion for leave to Intervene on the eve of the deadline established for opting-opt of the Settlement Class. (Id.) In doing so, Judge Farnan stated:

> While the Third Circuit has recognized that a motion to intervene is presumed timely if it is filed within the opt-out period, the Court finds that the circumstances of this case make the timeliness of the Milletts' Motion questionable. In this case, the Milletts were advised of the Townes parties' concern that there might be overlap between this action and the Millet action. The Milletts denied any such overlap and refused to coordinate the proceedings. Nevertheless, the Milletts participated in some settlement discussions to no avail. Despite abandoning settlement attempts, the Townes Defendants continued to apprise the Milletts of the Progress of the settlement, yet the Milletts declined to make any motion to intervene in Townes, despite knowing about the contours of the settlement for more than two months. **The Court is troubled that the Milletts offer no explanation for this delay.**

(Id. at p. 8, n.6) (emphasis added). Just as Judge Farnan questioned Plaintiffs' counsels' motives, so too should this Court and, in doing so, this Court should find that the Milletts have failed to demonstrate that Plaintiffs' counsel will fairly and adequately represent the interests of the class the Milletts seek to certify.

Yet another example of plaintiffs' counsel's questionable prosecution of this action is demonstrated by their reliance in large part on an improperly conducted and seriously flawed survey by their purported expert, Mr. Ronald Dimbert. As set forth in TrueLink's rebuttal expert report, among the flaws in the Dimbert survey is that it fails to ask its participants whether they believed, based upon the marketing material, that TrueLink's credit monitoring product would monitor information outside of the purchaser's credit report. By email dated August 28, 2007, defense counsel requested a compact disc of the computerized Dimbert survey in order to view the survey in the exact manner and format as it was viewed by the participants at the time they took the survey. To date, defense counsel has received no response from the Milletts' counsel.

Further, by letter dated August 21, 2007, Counsel for TrueLink informed plaintiffs' counsel that, in addition to the deficiencies in Mr. Dimbert's Expert Report, Mr. Smith's Expert Report failed to comply with the requirements of Rule 26(a)(2)(B) by failing to provide "a complete statement of all opinions expressed" and improperly listed general categories of documents reviewed by Mr. Smith such as "materials in my possession" and "my files on identity theft." Despite the Milletts' counsel's assurances that they would provide supplemental reports for both Mr. Dimbert and Mr. Smith addressing defense counsel's concerns, but have failed to do so. Again, simply another example of how plaintiffs' counsel have engaged in questionable conduct and why they are not qualified to represent the interests of the purported class here.

**B.     Plaintiffs Fail To Establish The Requirements Of Rule 23(b)(3).**

Even if this Court finds that either or both of the named plaintiffs have met the requirements of Rule 23(a) – which TrueLink denies – the analysis is not yet complete. In order to certify a class, the named plaintiffs must "establish that all four requisites of Rule 23(a) <u>and at least one part of Rule 23(b)</u> are met." <u>Amer. Seed</u>, 238 F.R.D. at 396 (quoting <u>Casey</u>, 43 F.3d

at 55) (emphasis added).   Here, the plaintiffs have moved for class certification under Rule 23(b)(3).   (D.I. 124, ¶1).   Rule 23(b)(3) requires the named plaintiffs to establish that: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.   FED. R. CIV. P. 23(b)(3); Benedict, 241 F.R.D. at 676.   Even assuming that the named plaintiffs, either collectively or individually, have standing and can establish all four elements of Rule 23(a), they fail to meet their burden of establishing predominance and superiority under Rule 23(b)(3).

### 1.    Named Plaintiffs Fail To Demonstrate A Predominance Of Common Issues.

Individual issues will predominate a number of necessary determinations with respect to class members' claims, not the least of which is whether or not class members suffered a loss so as to have standing to maintain a claim for violation of 50-634(d) of the KCPA and breach of contract.   And in addition to the existence of any actual damages, common issues that may exist will be swamped by individualized determinations regarding necessary elements of the claims, including reliance, materiality, and causation.   See Benedict, Finstad, both supra (claims for damages under KCPA require proof of reliance, materiality and causation); Interim Healthcare, supra, 884 A.2d at 548 (claims for breach of contract requires proof of causation).   Specific questions and variations among the class relating to these elements include the following:

- what were the representations re: credit monitoring at the time of each class members' purchase

- what representations did each class member see

- what representations were material to each class members' decision to purchase credit monitoring

- how did each class member interpret those representations

First, plaintiffs' claims are based upon a handful of representations which were displayed on a page of TrueLink's website at a given point in time. (Plaintiffs' Brief, pp. 11-12) However, it cannot be presumed that the subject allegedly misleading representations identified by plaintiffs were available on the website at all times throughout the class period, nor can it be presumed that each class member viewed the allegedly deceptive representations among the various other materials available. Indeed plaintiffs offer no evidence that the representations were the same at all times from September 9, 2001 through the present (the proposed class period). See M. Millett Dep., pp. 187-190 (plaintiffs have not printed out any of the marketing materials from TrueLink's website since their initial purchase in August, 2003). To the contrary, the evidence is that TrueLink's marketing and representations regarding its products changed numerous times over the course of that period. See Declaration of Lucy Duni, Ex. E, ¶ 5 ("Duni Decl."); see also M. Millett Dep., pp. 189-190 (admitting that there have been changes in the wording of marketing materials on the website). Because plaintiffs have no evidence that the representations available on the website were uniform throughout the class period, they cannot establish (a) that they were a part of each class members' contract (see Plaintiffs' Br., pp. 28-30 (suggesting that the contracts incorporate marketing available on the website)), or (b) that class members relied upon the same representations). See Finstad, 845 P.2d at 691 (one can only rely on a representation actually viewed).

In addition, TrueLink's website comprises numerous pages with detailed product descriptions, samples, and other marketing materials. Duni Decl., ¶ 5. Any customer navigating the website might view only certain on the materials on the website, and it is impossible to know, without individualized evidence, what representations each putative class member viewed. Again, as held in Finstad, supra, only those representations actually viewed by class members

can be the basis for reliance under the KCPA.  845 P.2d at 691.  The <u>Hillis</u> court found that the

plaintiffs (who sued for misrepresentations and breach of contract relating to their online

purchase of credit monitoring) could not satisfy the predominance requirement of FED. R. CIV.

P. 23(b)(3).  Specifically, there was no evidence that "the alleged misrepresentations were

uniform with respect to the class."  <u>Hillis</u>, 237 F.R.D. at 504.

> What [each class member] saw when they accessed those websites will
> depend on many things, including the time period in which they accessed
> the website, what pages they saw, and which website they accessed.  Also,
> because members of the class likely accessed different parts of a particular
> website, it will be very difficult to determine on a class-wide basis what
> representations they saw or read.  Moreover, determining whether each
> particular representation was misleading or untrue  . . . would further
> require the Court to engage in highly individualized inquiry.

<u>Id.</u>  <u>See also</u> <u>Solomon v. Bell Atl. Corp.</u>, 777 N.Y.S.2d 50, 55 (N.Y. App. Div. 2004) (class

certification is inappropriate where the "plaintiffs do not point to any specific advertisement or

public pronouncement by the [defendants] which was undoubtedly seen by all class members.").

Where there is no certainty or uniformity as to what representations the class members saw, that

central individualized issue makes it virtually impossible to satisfy the predominance

requirement:

> [T]he court finds that individual issues of fact predominate over common
> questions of law and fact.  While a common question of law is shared by
> all class members, *i.e.,* whether defendants' alleged conduct violates the
> KCPA and other Kansas law, the determination of whether such deceptive
> acts actually occurred involves factual issues unique to each class
> member.  Specifically, . . . the court finds that individual issues exist as to
> what specific oral representations were made to each member.  Inasmuch
> as these issues would require separate findings of fact for each class
> member, the court finds that certification of this class would not "achieve
> economies of time, effort, and expense . . . without sacrificing procedural
> fairness [or] bring about undesirable results."

<u>Skeet v. Sears, Roebuck & Co.</u>, 137 F.R.D. 347, 351 (D. Kan. 1991) (quoting Fed. R. Civ.

P. 23(b)(3)).  Again, the same analysis applies to plaintiffs' breach of contract claims, as the

causation element requires proof that (a) the representations at issue were a part of the class member's contract; and (b) their breach was the cause of damages.

With respect to materiality as well as reliance, plaintiffs recognized in their depositions that credit monitoring, a key benefit of which is online access to customers' credit reports and scores, serves multiple purposes, only one of which is related to identity theft. (M. Millett Dep., pp. 455-456 (noting that the credit management aspects of credit monitoring has value to customers concerned about cleaning up inaccuracies and improving their scores)). For example, consumers may purchase TrueLink's credit monitoring in order to ensure accuracy of their credit reports and identify the effect of information in their credit reports on their credit scores. By identifying and taking steps to remove inaccurate or obsolete information, plaintiffs can then track their credit reports to ensure that such information is removed, and observe any corresponding changes to their credit score. Other customers may purchase credit monitoring for general credit management purposes, taking advantage of the online and unlimited access to their credit reports and scores. For customers who purchased credit monitoring for these purposes, representations regarding use of the product to alert them to potential identity theft would not have been relied upon or material to their purchasing decision.

In addition, plaintiffs' claims are premised upon their own interpretation of the subject representations regarding use of credit monitoring to protect against identity theft, notwithstanding other clarifying representations and explanations available on the website. Specifically, plaintiffs claim to have interpreted the representations as promising that TrueLink would alert them if there was any use of any information relating to them, even if such use was not reflected in Mr. Millett's credit report. (Plaintiffs' Brief, pp. 3, 6). The reasonableness of plaintiffs' interpretation is questionable, to say the least, insofar as other representations on the

35

website specifically describe the product as monitoring "your credit report."

[REDACTED]

In fact, their identical claim against Experian was rejected on summary judgment, with the court finding that no reasonable person would interpret the marketing language as plaintiffs did.

> [Plaintiff] claims that a reasonable consumer would believe that the Credit Manager [Experian's credit monitoring] product provides "broad protection against identity theft," such that any information that would assist the purchaser in detecting incidents of identity theft would be relayed to them. **However, . . . a reasonable consumer would interpret the Credit Manager product as providing information relevant to detecting identity theft in the context of his or her Experian credit report. It is unreasonable to read the representations on the web pages leading to the purchase page and believe that Credit Manager somehow acts as an all-knowing private investigator, relaying any information relevant to identity theft to the purchaser.** The Millett Plaintiffs refer to statements promising that Credit Manager will "guard against fraud and identity theft," and that the product will provide "peace of mind." However, the web pages also promise "the best things in life." **No reasonable person would read these statements and take them literally and absolutely. It would be clear to any reasonable consumer that the product offers to convey information indicative of identity theft, but only if it appears in the purchaser's Experian credit report.**

(Order Granting In Part And Denying In Part Motion For Summary Judgment, p. 6 (Dec. 18, 2006), D.I. 140 in Experian attached hereto as Ex. D (emphasis added) (internal record citations omitted).

The same analysis should apply here. Class members cannot recover under plaintiffs' theory of the case if they understood, as explained on True Link's website, that credit monitoring would alert them to changes in their own credit reports. In other words, if credit monitoring customers (including those who may have purchased the product out of concerns regarding

identity theft) understood that the product would alert them if a third party had changed the billing address on one of the customer's accounts, or had opened a new account in the customer's name, but that the product would not notify them of any other activity outside what is in their credit reports, then they cannot recover. Consequently, individualized inquiry as to each class member's understanding of the product is necessary to establish reliance and causation.

Plaintiff's unsupported assumptions that class members (a) all saw the same representations and that the subject representations were material to and relied upon in deciding to purchase credit monitoring; (b) all interpreted the representations in the same way as plaintiffs; and (c) all suffered loss in the amount of the purchase price must be rejected. Case law is clear that each class member must have standing, and that each class member must satisfy the various elements of the claims. These individualized issues would clearly predominate over any issues common to the class, making the claims inappropriate for class-wide adjudication.

**2.    Superiority.**

Certifying this action as a class action is clearly not the superior method of adjudicating these claims. Contrary to the various assumptions upon which plaintiffs rely, there are several facts demonstrating that class status is not superior to individual adjudication of claims similar to the Milletts', *if any*. These include, for example, the ability of individual claimants to obtain significant monetary relief not being pursued on behalf of the class here, as well as the ability of individual claimants to recover attorneys' fees. Plaintiffs assume that the absence of other similar actions filed against TrueLink with regard to the marketing and performance of its credit monitoring product indicates that individuals are disinclined to pursue their remedies on an

individual basis. [10]  In fact, however, given the significant incentives to doing so, the absence of similar claims filed against TrueLink simply demonstrates that no other members of the putative class view TrueLink's marketing as misleading or deceptive, or are otherwise dissatisfied with the performance of their credit monitoring contracts.  Thus, there is no indication that in the absence of class certification, the courts will be swamped by similar individual claims.

Given the relatively substantial relief available to class members on an individual basis, as compared to those pursued here on behalf of the putative class, it is clearly preferable to class members to pursue their claims, if any, on an individual basis.  Plaintiffs here seek only a return of moneys paid by class members for the credit monitoring product.  While TrueLink disputes whether this is a proper measure of plaintiffs' and class members' *damages* (under the breach of contract claim or the KCPA claim), see Section B(1), supra, such relief is certainly inferior to what class members might be able to recover on an individual basis.  Under the KCPA, for instance, individual claimants can recover their actual damages, or up to $10,000 in civil penalties, whichever is greater.  KSA §§ 50-636(a), (b) (violation of the KCPA "shall render the violator liable to the aggrieved consumer . . . for the payment of a civil penalty . . . [of up to] $10,000 for each violation.").  Such penalties are not available in a class action;  class action recoveries are limited to the amount of the loss suffered as a result of the alleged violation.  KSA §§ 50-634(b) and (d); § 50-636(a) (civil penalty "recoverable in an individual action").  In addition, they may recover their attorneys' fees.  KSA § 50-634(e) (authorizing awards of reasonable attorney fees to the prevailing party).

---

[10]  Plaintiffs ignore completely the fact that some customers who were dissatisfied with the product may have canceled the product and/or obtained a refund from TrueLink.  As noted in Section B(3) supra, this demonstrates the overbreadth of the class definition.

The specific remedies available under the KCPA convinced the court in <u>Skeet v. Sears,</u>

<u>Roebuck & Co.</u>, 137 F.R.D. 347 (D. Kan. 1991) to deny certification, finding that a class action

was not superior to other available methods of adjudication.  The court stated:

> While it is true that the actual damages which each member may recover
> under the KCPA, are relatively small in amount, the KCPA provides for
> the recovery of civil penalties in the amount of $2,000 [now $10,000] per
> violation if a plaintiff's claim is pursued individually.  *See* KSA 50-634(b)
> and 50-636(a).  In fact, in an individual action, a plaintiff is entitled to
> recover actual damages or civil penalties, whichever is greater.  KSA 50-
> 634(b).  Because individual claimants could recover significantly in
> individual actions and therefore would be motivated to bring individual
> lawsuits, the court finds that adjudication on a class-wide basis is not
> superior to litigation on a claim-by-claim basis.

137 F.R.D. at 351-52.  <u>See also</u> <u>Hillis v. Equifax Consumer Services, Inc.</u>, 237 F.R.D. 491, 507

(N.D. Ga. 2006) (noting the significance of statutory authorizations for the recovery of attorneys'

fees, which "helps ensure that individual actions are practical even for those who seek relatively

small amounts of money.") (citations omitted); <u>Maguire v. Sandy Mac, Inc.</u>, 145 F.R.D. 50, 53

(D.N.J. 1992) ("Where a statute provides attorney's fees to a prevailing plaintiff there is less

incentive to protect by class certification individuals with class claims.").

Plaintiffs affirmatively disavow for themselves and the class any claim for actual

damages – apparently in an effort to avoid individualized inquiry.  <u>See</u> Plaintiffs' Brief, pp. 31-

33.  At the same time, however, plaintiffs acknowledge that the actual damages that an individual

class member may have suffered can be substantial.  (S. Millett Dep., pp. 128-29).  In fact, Mr.

Millett even admitted that if class members have more significant damages as a result of the

product's failure, that would have to be determined on an "individual case by case" basis.[11]  If a

---

[11]    In any event, however, the restitutionary measure of damages plaintiffs rely on instead – seeking to obtain a
refund for the amounts paid by each class member – is not a proper measure of damages under either the beach of
contract claim or the KCPA claim.  <u>See</u> Section B(1), <u>supra</u>.  Notably, plaintiffs fail to cite any authority for the
suggestion that a return of the contract price paid constitutes a measure of damages suffered as a result of the
complained conduct.  Nowhere do plaintiffs suggest that there was a complete failure to perform the contract, or that

class were certified, such class members with large actual damages would receive only the return of the contract price paid for the product (no more than $ 9.95 per month).

Further, individual actions are preferable insofar as they will preserve for the class any other claims not pursued by the Milletts here. As noted above (Section A(4), supra), individuals may have claims for additional relief under other federal and state acts, including, but not limited to the federal CROA, and the consumer fraud acts of class members' respective states (other than Kansas).

## CONCLUSION

As set forth above, plaintiffs fail to meet the requirements of Rule 23(a)(3), and further fail to meet the predominance and superiority requirements required for certification under Rule 23(b)(3). For these reasons, TrueLink respectfully requests that this Court deny Plaintiffs' Motion For Class Certification.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Samuel T. Hirzel*

William M. Lafferty (#2755)
Samuel T. Hirzel II (#4415)
Jay N. Moffitt (#4742)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200
wlafferty@mnat.com
shirzel@mnat.com
jmoffitt@mnat.com
Attorneys for Defendant TrueLink, Inc.

OF COUNSEL
Michael O'Neil
Paula D. Friedman
DLA Piper US LLP
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601
(312) 368-4000

---

the product as delivered has no value. To the contrary, plaintiffs acknowledge that it does, both expressly and tacitly (by the fact that she continued to purchase the product from Aug. 2003 through some time in 2006). See M. Millett Dep.; pp. 83-86; 179-180; 317-318; 455.