EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROBERT V. TOWNES, IV, Individually and on behalf of all Persons similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-1488-JJF |
| TRANS UNION, LLC and TRUELINK, INC., | ) ) ) | |
| Defendants. | ) ) | |

## STIPULATION OF SETTLEMENT BETWEEN LEAD PLAINTIFF AND DEFENDANTS

This Stipulation of Settlement ("Settlement Agreement" or "Agreement") is entered into between the lead Plaintiff, Robert V. Townes, IV, on his own behalf and on behalf of a proposed Class (as defined in Section 2.24 below), on the one hand, and Trans Union, LLC ("Trans Union") and TransUnion Interactive, Inc., (formerly known as TrueLink, Inc., and referred to herein as "TrueLink") (collectively, the "Defendants" as defined in Section 2.8 below), on the other. This Settlement Agreement is entered into in connection with the above-captioned action (the "Townes Action" or "Litigation") and is intended by the Parties (as defined in Section 2.18 below) to fully and finally compromise, resolve, discharge and settle the Released Claims, as defined herein, subject to the terms and conditions set forth below:

WHEREAS:

## Section 1.   Recitals[1]

1.1.   On December 1, 2004, Townes commenced a putative class action, styled Townes v. Trans Union, LLC and TrueLink, Inc., No. 04-1488-JJF (the "Townes Action" or the "Litigation") in the United States District Court for the District of Delaware against Trans Union and TrueLink alleging a cause of action for violation of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, et seq. ("CROA") and a cause of action for unjust enrichment.

1.2.   In their Amended Answer To the Complaint, Defendants denied the allegations in the Townes Action, denied wrongdoing of any kind, and further denied that this Litigation satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.

1.3.   Beginning in June, 2005 and continuing for approximately two years, the Parties engaged in vigorous and extensive discovery.  The Parties conducted over 10 depositions, answered interrogatories, and responded to document requests and requests for admissions.  In the course of discovery, Trans Union and TrueLink produced over 50,000 pages of documents.  The Settling Parties and their respective counsel have conducted an extensive investigation relating to the allegations and defenses raised in this Litigation.

---

[1] Definitions contained in Section 2, infra.

1.4.     Based upon, *inter alia,* the investigation described in Section 1.3 above, the Plaintiff and his lead counsel were fully aware of the strengths and weaknesses of their claims at the time the Settlement described herein was reached, and do not require any additional information, including any representations by Defendants, to reach an informed judgment as to whether to enter into the Settlement.

1.5.     At all times, Trans Union and TrueLink have denied and continue to deny that they have committed any wrongful act or violation of law or duty of any nature. Nevertheless, Trans Union and TrueLink desire to settle and terminate the claims of Plaintiff and the Class so as to avoid the substantial expense, inconvenience and distraction of continued litigation of this Townes Action and finally put to rest any and all of the Released Claims (as defined in Section 2.20 below) against the Released Parties (as defined in Section 2.21 below).

1.6.     It is further expressly understood and agreed that the provisions contained in this Stipulation and all related documents shall not be deemed a presumption, concession or admission by Trans Union or TrueLink of any violation of law, breach of duty, liability, default or wrongdoing as to any facts or claims alleged or asserted in the Townes Action, or in any other actions or proceedings, or that certification of a class other than for settlement purposes

3

is appropriate, all of which are strenuously denied, and shall not be interpreted, construed, deemed, invoked, offered or received in evidence or otherwise used by any person in the Townes Action or in any other litigation or proceeding of any nature whatsoever.

1.7.    The Parties recognize that the outcome of this Litigation is uncertain, and that a final result through the litigation process would require substantial risk and additional discovery, time, and expense. The Parties and their counsel therefore have agreed and desire to resolve this Litigation as a settlement class action according to the terms of this Settlement Agreement.

1.8.    The Parties and their counsel believe that the Settlement Agreement is a fair, reasonable, and adequate resolution of the Litigation. The Parties further believe that the prompt implementation of the Settlement Agreement is preferable to further prosecution of the Litigation as a means for resolving the claims, if any, that Townes and Settlement Class Members may have concerning the Offerings.

NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED, by Plaintiff, for himself and on behalf of members of the Settlement Class, and the Defendants that, subject to the approval of the Court pursuant to Fed. R. Civ. P. 23(e), and other conditions set forth in this Settlement Agreement, this Townes Action shall be settled, compromised and dismissed, on

the merits and with prejudice, and the Released Claims shall be finally and fully compromised, settled and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereinafter set forth.

## Section 2.   Definitions

2.1.   "Associated Literature" means the marketing and advertising used in connection with the Offerings, including radio advertisements, television advertisements, print advertisements, banner advertisements, email campaigns, newsletters, marketing and advertising statements contained in Defendants' Websites, internet keyword purchases/auctions, metatag embedment, and search engine optimization, and webpages that contain links to webpages that market, advertise or offer for sale Defendants' Offerings; provided, however, that "Associated Literature" does not include any webpages or portion of webpages, (including those included as part of newsletters, emails, or other statements) merely because such webpage contains the "Navigation Bar" that is the same as and contained on all of Defendants' web pages and such "Navigation Bar" includes an option that links to a webpage that describes, promote or offers for sale the Defendants' Offerings or similar products.

2.2.   "Benefit Code" means a code to be used by Class Members in place of payment in order to obtain the In-Kind Relief described in this Settlement Agreement.

5

2.3. "Benefit Code Notice" means the email notice sent to Class Members containing the Benefit Code.

2.4. "Class Counsel" means Pope, McGlamry, Kilpatrick, Morrison & Norwood, LLP, and Battle, Fleenor, Green, Winn & Clemmer, LLP, who are the attorneys of record for Townes and the Settlement Class in the Townes Action.

2.5. "Class Member" means any consumer who purchased an Offering from either Defendant at any time between December 1, 1999 and the date of entry of the Hearing Order.

2.6. "Contractual Associate" means any entity with which the Defendants have or had a contractual relationship whereby the entity (i) posts a link to a Defendant's Website on its website and receives a commission (or other compensation) for driving traffic to the Defendant's Website; (ii) advertises, promotes, markets, provides, and/or sells any Offering; or (iii) offers a private label or co-branded version of any of Defendants' Offerings; provided however, that "Contractual Associate" shall not include any subsidiaries of either Defendant, shall not include Equifax Consumer Services, Inc., Fair Isaac Corporation, or Experian Information Solutions, Inc., or their affiliates and shall not include financial institutions.

2.7. "Court" means the United States District Court for the District of Delaware.

2.8. "Defendants" means Trans Union and TrueLink.

2.9. "Defendants' Websites" means www.transunioncs.com, www.transunion.com, www.truecredit.com, www.freecreditprofile.com, and www.knowyourloanrate.com.

2.10. "Effective Date" shall mean the date on which the Judgment becomes Final.

2.11. "Final" means when the last of the following with respect to the Judgment approving the Settlement Agreement has occurred: (i) the Settlement Agreement is approved in all respects by the Court; (ii) a Judgment of dismissal with prejudice is entered with respect to the Plaintiff and all Settlement Class Members who do not Opt-Out as provided by Rule 23 of the Federal Rules of Civil Procedure; (iii) the time for the filing of any appeals has expired or, if there are appeals, approval of the settlement and Judgment has been affirmed in all respects by the appellate court of last resort to which such appeals have been taken and such affirmances are no longer subject to further appeal or review.

2.12. "Hearing Order" means the Order of the Court that the Parties will seek from the Court, as described in Section 3.3 below, and substantially in the form of Exhibit A hereto, which, *inter alia*, would: (i) preliminarily certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3); (ii) preliminarily approve the Settlement; (iii) approve the proposed notice(s) to the

Class; and (iv) set a hearing ("Fairness Hearing"), upon notice to members of the Settlement Class.

2.13. "Injunctive Relief" means the injunctive relief that has been agreed to by Defendants as described in Section 5 of this Agreement.

2.14. "Judgment" means the judgment and order entered by the Court approving the Settlement in all respects and dismissing with prejudice the claims of the Plaintiffs and the Class who do not Opt-Out as provided by Rule 23 of the Federal Rules of Civil Procedure.

2.15. "Long-Form Notice" means the notice of the Settlement (in a form substantially similar to that proposed by the Parties) provided to the Settlement Class that provides the Class with all the information necessary to be provided to the Class pursuant to Federal Rule of Civil Procedure 23 and the requirements of due process.

2.16. "Offering" means those products or services offered by Trans Union or TrueLink through the Defendants' Websites and purchased by consumers through the Defendants' Websites and are further identified as including one or more of the following: credit score, credit monitoring (offered at various times under one or more of the following names: Trans Union Credit Monitoring, Trans Union Credit Monitoring Unlimited, Credit Monitoring, Weekly Credit Alerts, Credit Watch, Trans Union Credit Alerts, 3-Bureau Credit Monitoring,

Credit Inform, Credit Monitor, ID Fraud Watch, Free Credit Profile and Credit Monitoring Plus FICO Score), Debt Analysis, Borrowing Power Analysis, or knowyourloanrate mortgage preparation kit (offered at various times as Mortgage Rate Wizard or Mortgage Rate Simulator).

2.17. "Opt-Out" means to timely request exclusion from the Settlement pursuant to Federal Rule Civil Procedure 23(c)(2)(B).

2.18. "Parties" or "Settling Parties" means Plaintiff, Trans Union and TrueLink.

2.19. "Plaintiff" means Townes.

2.20. "Released Claims" means any and all claims, actions, demands, causes of action, suits, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, present or future, concealed or hidden, liquidated or unliquidated, fixed or contingent, anticipated or unanticipated, whether statutory, in tort, contract, law, equity or otherwise, that have been, could have been or might in the future be asserted by Plaintiff in the Townes Action or the Settlement Class members or any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf, arising out of the offering, marketing, sale, purchase, delivery, or use of, or representations and advertisements concerning, the Offerings.

Released Claims include, but are not limited to, all claimed or unclaimed compensatory damages, damages for emotional distress, damages for physical injury, damages for reputational injury, statutory damages, consequential damages, incidental damages, punitive and exemplary damages, as well as all claims for disgorgement, or equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory. Released Claims further include interest, costs and fees arising out of any of the claims asserted or that could have been asserted in the Townes Action. Released Claims do not include claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), as amended as of the date of this Agreement. Notwithstanding the foregoing, nothing in this Agreement shall be deemed a release of the Parties' respective rights and obligations under this Agreement.

2.21. "Released Parties" means and refers to: (i) Trans Union LLC and its present, former and future officers, directors, employees, agents, attorneys, shareholders, predecessors, successors, subsidiaries, corporate affiliates, parents, representatives, insurers, vendors and assigns, or interest therein, jointly and severally; (ii) TransUnion Interactive, Inc. (formerly known as TrueLink, Inc.) and its present, former and future officers, directors, employees, agents, attorneys, shareholders, predecessors, successors, subsidiaries, corporate affiliates, parents, representatives, insurers, vendors and assigns, or interest

10

therein, jointly and severally; and (iii) Contractual Associates who (a) acknowledge receipt of the terms of Injunctive Relief, in accordance with Section 5.4 hereof, and (b) offered, marketed, sold, delivered, or made representations concerning any of the Offerings, provided however, that a Contractual Associate is a Released Party only with respect to claims arising from the offering, marketing, sale, purchase, delivery, or use of, or representations or advertisements concerning, the Offerings.

2.22. "Settlement" means the agreement between Plaintiff, on behalf of himself and on behalf of the Settlement Class, and Trans Union and TrueLink to settle and compromise the issues arising out of Plaintiff's Complaint in the Townes Action and the issues arising out of said Action, finally and forever, as memorialized in this Settlement Agreement.

2.23. "Settlement Administrator" means a third-party settlement administrator chosen by the Parties.

2.24. "Settlement Class" or "Class" means all individuals, regardless of where they reside, who, between December 1, 1999 and the date of entry of the Hearing Order, entered into an agreement with any of the Defendants to purchase any of the Offerings through Defendants' Websites, but did not later obtain a complete refund from any source, and received said Offering. "Settlement Class" or "Class" however, shall not include: (i) all judicial officers

in the United States and their families through third degree of relationship; (ii) all officers, directors, employees or counsel of the Released Parties; (iii) all persons who have already settled or otherwise compromised their claims against the Defendants; (iv) all persons who Opt-Out; and (v) all persons who are named plaintiffs in any action pending against any of the Defendants on the date of entry of the Hearing Order wherein the recovery sought is encompassed by the Released Claims.

2.25. "Service Agreement" means the agreement titled "Service Agreement" that is displayed to consumers making purchases on Defendants' Websites, and which consumers must affirmatively click and accept in order to make any such purchase.

2.26. "State CROA Statutes" means any state statute that is substantially similar, in scope and purpose, to the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, et seq.

2.27. "Townes" means Robert V. Townes, IV.

Section 3.   General Terms and Conditions.

3.1.   Benefit to Plaintiff.  Plaintiff and Class Counsel have concluded, under the circumstances and considering the pertinent facts and applicable law, that it is in Plaintiff's and the Settlement Class' best interests to enter into this Settlement Agreement to avoid the uncertainties of litigation and to ensure a

benefit to Plaintiff and all members of the Settlement Class. Plaintiff and Class Counsel consider this Settlement Agreement to be fair, reasonable, and adequate and in the best interests of the members of the Settlement Class.

3.2. No Admission of Liability. By entering into this Agreement, the Settling Parties agree that Defendants are not admitting any liability to the Plaintiff, the Settlement Class, or any other person or entity, and Defendants expressly deny all such liability. Defendants' sole motivation for entering into this Settlement Agreement is to dispose expeditiously of the claims that have been asserted against them in the Litigation by settlement and compromise rather than incur the expense and uncertainty of protracted litigation. No portion of this Agreement may be admitted into evidence in any action, except as required to enforce this Agreement and/or to cease or enjoin other litigation.

3.3. Submission Of The Settlement To The Court For Approval. As soon as is practicable following the execution of this Stipulation And Agreement Of Settlement, the Parties shall apply to the Court for entry of the Hearing Order, substantially in the form attached hereto as Exhibit A: (a) preliminarily approving the Settlement; (b) preliminarily certifying the Settlement Class; (c) setting a hearing ("Fairness Hearing"), upon notice to members of the Settlement Class, for the purpose of (i) determining whether the Settlement should be approved as fair, reasonable and adequate to the Class members, and whether

13

the Judgment should be entered;  (ii) determining whether the preliminary certification of the Settlement Class should be made final; and (iii) considering Class Counsels' application for an award of attorneys' fees and payment of costs and expenses;  (d) setting the method of giving Notice to the Class;  (e) approving the forms of Notice to be provided to members of the Class; (f) setting a period of time during which Class members may serve written objections to the Settlement, or Class Counsels' application for attorneys' fees and expenses;  (g) enjoining prosecution of any action or claims that constitute Released Claims by any member of the Class;  and (h) setting a period of time during which Class members must file Authentication Forms in order to participate in the distribution of In-Kind Relief.

3.4.   Request For Entry Of Judgment.   At or before the Fairness Hearing referred to in Section 3.3(c) above, the Parties shall request entry of a Judgment, substantially in the form attached hereto as Exhibit C, which is a condition of this Settlement Agreement:  (a) approving finally the Settlement as fair, reasonable and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;  (b) certifying the Settlement Class; (c) directing that the claims of the Class members be dismissed without costs and with prejudice, and releasing, as against each of the Released Parties, the Released Claims;  (d) permanently barring and enjoining

the institution and prosecution, by Plaintiff and other Class members, of any other action against the Released Parties in any court asserting any Released Claim; (e) dismissing the Townes Action with prejudice and barring the Released Claims by the Plaintiff and all Class members; (f) reserving the Court's jurisdiction over this Townes Action, including all further proceedings concerning the administration, consummation and enforcement of this Settlement; and (g) containing such other and further provisions consistent with the terms of this Settlement to which the Parties expressly consent in writing.

3.5.    Settlement Class Definition.    Plaintiff shall propose, and Defendants shall join or not oppose, for settlement purposes only, that the District Court certify the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure, as the term "Settlement Class" is defined herein.

3.6.    Cessation of Litigation Activity.    Plaintiff and Class Counsel agree not to initiate any additional litigation against Defendants concerning the claims alleged in the Litigation.    Immediately upon execution of this Agreement, Plaintiff, Class Counsel and Defendants agree to cease all litigation activity in the Litigation (other than any activity to implement and/or enforce this Settlement Agreement) and to request the court in the Townes Action to stay all motions or other pre-trial matters and to continue any previously scheduled deadlines, hearings or trial settings until each of the conditions precedent to the Settling

Parties' obligations to proceed to consummate the Settlement provided for herein has been satisfied or waived.

3.7.  Class Certification.  The Court's certification of the Settlement Class shall not be deemed to be the adjudication of any fact or issue for any purpose other than the accomplishment of the settlement provisions set forth herein and shall not be considered as law of the case, res judicata, or collateral estoppel in this or any other proceeding unless the settlement receives final approval and the Judgment approving the terms of this Settlement Agreement is entered and becomes Final.  In the event the settlement provided for herein is not accomplished according to all the terms of this Agreement, the Litigation for all purposes will revert to its status prior to the execution of this Settlement Agreement and the Court's certification order shall be null and void and shall be vacated, and thereafter no class will remain certified; provided that, thereafter Plaintiff and Class Counsel may seek certification of a new class before the Court, and Defendants may oppose such certification on any grounds.

Section 4.    Notice to the Settlement Class

4.1.  For purposes of providing Court-approved class notices and establishing that the best practicable notice has been given, membership in the Settlement Class and the provision of class notice will be accomplished in accordance with the provisions of this Section 4.

4.2. Class List: The Defendants shall deliver to the Settlement Administrator, for each member of the Settlement Class, the following information: (i) the consumer's first, middle and last name; (ii) the consumer's current address, if known, (iii) the consumer's Social Security Number and (iv) the consumer's current email address, if known. The list produced at the end of this process shall be a conclusive list of the members of the Settlement Class (hereafter the "Class List").

4.3. Email Notice: Within thirty (30) days after the Court's entry of the Hearing Order, the Defendants shall cause the Settlement Administrator to send the Email Notice (in a form substantially similar to that mutually agreed upon by the Parties) by email to each Settlement Class member at each member's last known email address(es) as provided by the Defendants. A Class member who purchased an Offering from both of the Defendants will only be sent one Email Notice. The Email Notice will set forth the objection and Opt-Out dates, will contain the HTML or web address for the settlement website where pertinent information concerning the Settlement will be available, and will include a toll-free telephone number at which assistance will be available. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the emailing of the Email Notice to be filed with the Court.

4.4.  Resending Email Notice:   If the Email Notice sent to any Settlement Class Members is "bounced back" from, or is otherwise identified as having been undeliverable to the intended recipient's email server, Defendants shall have thirty (30) days within which they may, at their sole discretion, attempt to verify or update the email address of each such Settlement Class member and to resend Email Notice to the updated email addresses.

4.5.  Postcard Notice:   In the event that an Email Notice sent to a particular Settlement Class member is "bounced back" from or is otherwise identified as having been undeliverable to the recipient's email server, or, if Email Notice is resent as permitted under Section 4.4 and that Email Notice is "bounced back" from or is otherwise identified as having been undeliverable to the recipient's email server, Defendants shall cause the Settlement Administrator to send Postcard Notice (in a form substantially similar to that mutually agreed upon by the Parties) by first-class mail to each such Settlement Class member.   The Postcard Notice shall be sent to the last known address reflected in the Defendants' current customer records, as updated by utilizing the National Change of Address process. The Postcard Notice will set forth the objection and Opt-Out dates, will contain the HTML or web address for the settlement website where the Long-Form Notice and pertinent information concerning the Settlement will be available, and will include a toll-free telephone number at

which assistance will be available. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the mailing of the Postcard Notice to be filed with the Court. Neither the Defendants nor the Settlement Administrator shall have any further obligation to send the Class Members notice of the Settlement.

4.6.    Internet Notice:    Defendants shall establish an internet web site (the "Settlement Website") containing information about the Settlement. The Settlement Website will be accessible no later than one (1) day prior to the emailing of the Email Notice described above, and will continue to be accessible until seventy-five (75) days after the Effective Date. The Settlement Website will set forth the following information:  (i) the full text of the Settlement Agreement; (ii) a Long-Form Notice (in a form substantially similar to that mutually agreed upon by the Parties); (iii) the Hearing Order and other relevant orders of the Court; and (iv) contact information for Class Counsel and the Settlement Administrator. Nationwide access to the Settlement Website will be ensured via the following methods, (i) and (ii) of which will be in effect no later than one (1) day prior to the emailing of the Email Notice described above, and continuing in effect until seventy-five (75) days after the Effective Date:  (i) the Settlement Website will be registered with Google so that appropriate queries on Google will yield a link to the settlement website; (ii) a web link will be posted (a) on the

login page of Defendants' Websites; (b) on a page of the Learning Center portion of the www.truecredit.com, www.freecreditprofile.com, and www.knowyourloanrate.com websites; (c) on the Help And Education page of the www.transunioncs.com website; and (d) on the Consumer Resources page of the www.transunion.com website, so that visitors to the Defendants' Websites may jump directly to the Settlement Website; and (iii) the Email Notice and Postcard Notice will reference the Settlement Website. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the establishment and maintenance of the Settlement Website to be filed with the Court.

4.7. <u>Telephone Assistance Program</u>: Defendants will establish a toll-free telephone number, which will be staffed by the Settlement Administrator, to answer questions from the Settlement Class members. At Defendants' sole election, the toll-free number will provide access to a voice response unit ("VRU") and live support or a VRU mechanism that the Class Members will have the option to leave a voice mail message with the Settlement Administrator, which message will be responded to, as appropriate. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the establishment and maintenance of the Telephone Assistance Program to be filed with the Court. The Telephone

Assistance Program will be maintained until seventy-five (75) days after the Effective Date.

4.8.    All costs associated with the notice program described in Section 4 of the Agreement shall be paid by the Defendants.

4.9.    It is stipulated and agreed that the foregoing terms with respect to notice are material conditions precedent to Defendants' obligations under this Agreement.    If the extent, manner or form of notice provided for in this Agreement are not approved by the Court in all material respects, it is understood that Defendants will not be obligated to proceed with the Settlement provided for herein.

## Section 5.    Injunctive Relief

5.1.    All of the affirmative relief contemplated by this Settlement is expressly contingent upon the Court approving the proposed Settlement in all respects, the Court entering the Judgment and the Judgment becoming Final. Defendants shall implement the following changes for a term not to exceed two (2) years from the Effective Date:

5.1.1.    Defendants agree that their Offerings and Associated Literature will not use the following terms: "improve," "enhance," "boost," "raise" and "increase" in the same phrase as the term "score" or "rating";

however, an exception will be allowed when discussing hypothetical examples of how actions may affect a score in any score simulation tool.

5.1.2.    Defendants agree that their Offerings and Associated Literature will not use the phrases "credit repair," "credit rebuilding," "credit fix," "repair your credit," "fix your credit" or combinations of those words; provided however, that the Defendants may use such terms in the disclaimer described in Paragraph 5.1.5. below and are not inhibited from communicating a consumer's rights under the FCRA, FACTA or equivalent state statutes;

5.1.3.    Defendants agree that their Offerings and Associated Literature will not use the terms "advice", "tips", "suggestions" and "instructions" in the same phrase as the terms "improving," "enhancing," boosting," "raising" and "increasing" a credit score or credit rating;

5.1.4.    Defendants agree that their Offerings and Associated Literature that refer to a score simulation tool and any features thereof will add an explanation regarding the general nature of the simulated score associated with a score simulation tool, and will not suggest that the simulated score is "always" (or its equivalent) predictive of one's actual score;

5.1.5.    A disclaimer that Defendants are not credit repair organizations, or similarly regulated organizations under other applicable laws, and do not provide credit repair advice, shall be displayed (i) in the Terms Of

Use within the first three (3) paragraphs under the "General Terms" heading of the Terms Of Use on the www.truecredit.com, www.freecreditprofile.com, and www.knowyourloanrate.com websites; and (ii) in the Terms Of Use within the first two (2) paragraphs under the "Disclaimers Of Warranties And Liabilities" section of the Terms Of Use on the www.transunion.com and www.transunioncs.com websites;

     5.1.6.   A disclaimer explaining that Defendants' credit monitoring Offerings monitor only the credit file associated with the purchasing consumer, and do not monitor, compare or cross-reference the credit file associated with the purchasing consumer to any other credit file(s) maintained by the applicable credit bureau(s), shall be displayed: (i) on the www.truecredit.com, www.freecreditprofile.com, and www.knowyourloanrate.com websites as follows: (a) in the Terms Of Use within the first three (3) paragraphs under the "General Terms" heading of the Terms Of Use, and (b) on the page containing the Fighting Identity Theft Worksheet, as such page exists as of March 1, 2007; (ii) on the www.transunioncs.com website as follows: (a) in the Terms Of Use as any paragraph under the "Disclaimers Of Warranties And Liabilities" heading of the Terms Of Use, and (b) on the page accessed by clicking "Learn More" from the monitoring product page, as such page exists as of March 1, 2007; and (iii) on the www.transunion.com website as follows: (a) in the Terms Of Use as any

paragraph under the "Disclaimers Of Warranties And Liabilities" heading of the Terms Of Use, and (b) on the "Consumer Resources" page; and

    5.1.7.    Trans    Union    agrees    to    maintain    a    link    to www.annualcreditreport.com on the www.transunion.com website.

    5.2.    Within sixty (60) days after the Effective Date, the Defendants shall implement the Injunctive Relief described in Paragraphs 5.1.1 through 5.1.6 above.  Without any admission of liability by the Defendants for their prior actions and statements, upon implementation of the Injunctive Relief described above, the Settling Parties and their counsel agree that none of the Defendants will fall within the statutory definition of a "credit repair organization" contained in 15 U.S.C. § 1679a, or the equivalent term defined in a substantially similar manner contained in a State CROA Statute.

    5.3.    Without any admission of liability by the Defendants for their prior actions and statements, the Settling Parties further agree to request that the Court find, as part of its overall approval of the Settlement, that upon implementation of the Injunctive Relief described above, none of the Defendants will fall within the statutory definition of a "credit repair organization" contained in 15 U.S.C. § 1679a, or the equivalent term defined in a substantially similar manner contained in a State CROA Statute.

5.4.    Within sixty (60) days after the Effective Date, the Defendants shall cause a summary of the Injunctive Relief terms of this Settlement to be sent (via email or mail) to each of their Contractual Associates.  To the extent that Defendants' existing contracts with Contractual Associates permit Defendants to require compliance with the Injunctive Relief, Defendants shall (i) advise the Contractual Associates that the Defendants will require the Contractual Associates to comply with the Injunctive Relief for same period of time that Defendants are to so comply, and (ii) request that the Contractual Associate acknowledge receipt of Defendants' direction to abide by the Injunctive Relief terms of this Settlement.  To the extent that Defendants' existing contracts with Contractual Associates do not permit Defendants to require compliance with the Injunctive Relief, Defendants instead shall notify the Contractual Associates that the Defendants are required to comply with the Injunctive Relief and shall encourage the Contractual Associates to do so as well.  Defendants will not encourage or use Contractual Associates to circumvent the Injunctive Relief terms of this Settlement.  If either Defendant becomes aware that any of its Contractual Associates that have been advised that compliance with the Injunctive Relief is required, is not in compliance with the Injunctive Relief, such Defendant shall contact the Contractual Associate and demand that the Contractual Associate comply with the Injunctive Relief.  Within sixty (60) days

after the Effective Date, the Defendants shall revise the contracts entered into or renewed during the 2 year term of the Injunctive Relief with their Contractual Associates to include reference to the Injunctive Relief terms contained herein.

5.5. The Court shall retain jurisdiction of the Townes Action for the purpose of interpretation of, compliance with and enforcement of this Agreement, including enforcement of the Injunctive Relief herein.

5.6. Nothing in this Settlement or Settlement Agreement shall prevent the Defendants from complying with the law as it may exist now or in the future, or from making future changes to adjust their websites if consistent with applicable statutes, statutory amendments, exemptions, regulations or case law precedent. Furthermore, nothing in this Settlement or Settlement Agreement shall prevent Defendants from complying with their obligations under state and federal law.

5.7. Relation to Other Agreements, Laws, and Interpretations, Future Exemption from the CROA or Similar Statutes: The Parties recognize that situations may arise in which provisions of the Agreement may conflict with, or differ from, other laws, rules, regulations, statutes, agreements, and the like. In that regard, the parties have agreed as follows:

5.7.1. Other Agreements: In the event that, after the Effective Date, in conjunction with any other matter, lawsuit, regulatory matter, or similar event,

Defendants (or any of their successors, if applicable) enters into any agreement, consent judgment, settlement, injunction, consent decree, or other binding document regarding the subject matter of the Injunctive Relief or any section herein ("Other Agreement"), then, after notice to and consultation with Class Counsel, Trans Union and/or TrueLink may petition the Court for relief from any provision of the Injunctive Relief or this Agreement. If the Court grants such relief, then the Settlement will be modified accordingly without the requirement of notice to the Settlement Class or additional consideration by the requesting party or any other Defendant.

     5.7.2.    <u>New Order, Law, or Interpretation</u>: In the event any federal or state law, rule, regulation, or a judicial, agency, or administrative order or interpretation including but not limited to formal policy statement or letter ruling is passed, adopted, issued, communicated or rendered after the Effective Date of this Agreement concerning or relating to the Injunctive Relief or the subject matter of any provision of the Injunctive Relief or this Agreement, or concerning the subject matter of the Litigation (a "New Order, Law, or Interpretation"), and Trans Union and/or TrueLink has a good faith belief that it cannot comply with the New Order, Law, or Interpretation without violating this Agreement or the Consent Decree, then Trans Union and/or TrueLink may comply with such New Order, Law, or Interpretation, and such actions will

constitute compliance with this Agreement or the Consent Decree and shall not be deemed a breach thereof, provided, however, that Defendants (either individually or jointly) shall timely provide written notice to Class Counsel identifying the provisions of the Injunctive Relief or the Agreement impacted by the New Order, Law, or Interpretation. If Class Counsel disputes the impact of the New Order, Law, or Interpretation, then Class Counsel may petition the Court for an order requiring Defendants to continue to comply with the Injunctive Relief provisions of this Agreement.

      5.7.3.    <u>Future Exemption from the CROA</u>: If, following the Effective Date, Trans Union and/or TrueLink qualifies for one of the exemptions currently or in the future provided in 15 U.S.C. § 1679a(3)(B) or in any similar provisions under federal or state law then, after notice to Class Counsel and the Court, said party shall be relieved from the Injunctive Relief provisions in this Agreement. If Class Counsel disputes that the notifying Party falls within the exclusion, then Class Counsel may petition the Court for an order requiring the requesting party to continue to comply with the Injunctive Relief provisions of this Agreement.

**Section 6.   In-Kind Relief**

      6.1.    In addition to the Injunctive Relief described above, Defendants agree to offer, without charge, to any eligible Settlement Class member who purchased an Offering from it, the following In-Kind Relief.

6.2.    In-Kind Relief:  Defendants, through TrueLink, will provide three (3) months of Trans Union Credit Monitoring, as it is offered by TrueLink as of March 1, 2007, (the "In-Kind Relief") to each Class Member who purchased any Offering from Defendants.  To obtain the In-Kind Relief, the Class Member must complete the Authentication Process described below.

6.3.    Authentication Process:

6.3.1.    The Class Member must fully complete the Authentication Form (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court).  The Authentication Form will request that the Class Member provide the following information:  (i) name; (ii) current address; (iii) previous address, if the Class Member has changed addresses within the prior two (2) years; (iv) the last four (4) digits of his Social Security Number; and (v) current email address.  The Authentication Form will be available online at the Settlement Website from the date of sending of the Email Notice through seventy-five (75) days after the Effective Date.  The Authentication Form may be submitted either on-line or by U.S. mail.  The Authentication Form, if completed on-line, must be submitted not later than seventy-five (75) days after the Effective Date.  The Authentication Form, if submitted by U.S. mail, must be postmarked not later than seventy-five (75) days after the Effective Date and

mailed to the Settlement Administrator, at the address so designated on the Authentication Form.

6.3.2.    Upon receipt of a completed Authentication Form, the Defendants and/or the Settlement Administrator will verify that the person submitting it is a Class Member by comparing the information on the Authentication Form to the information contained in the Class List. Defendants and/or the Settlement Administrator will review the completed Authentication Form and determine if there is sufficient evidence that the person submitting it is likely to fit within the Settlement Class. If there is a reasonable probability that the person submitting an Authentication Form is a Class Member, he or she will be treated as a Class Member. If Defendants and/or the Settlement Administrator regard the Authentication Form as deficient (i.e., the form contains insufficient information from which determine whether the person submitting the form is a Class Member), Defendants and/or the Settlement Administrator will notify the person who submitted it and give him or her 14 days to cure the deficiency. If Defendants and/or the Settlement Administrator continue to regard any Authentication Form as deficient, Defendants or the Settlement Administrator will provide the person's information (excluding Social Security Number) to Class Counsel. If Class Counsel and Defendants cannot resolve the dispute, the Authentication Form

will be rejected and the person who submitted it will be notified of the rejection by Defendants or the Settlement Administrator with a copy of the notice of rejection served upon Class Counsel. Neither the Defendants nor the Settlement Administrator shall have any further obligation to any person whose Authentication Form is rejected.

6.3.3.    Within fifteen days (15) after the Effective Date, the Defendants shall cause the Settlement Administrator to send a Notice of Eligibility (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) by email to the Class Members. Neither the Defendants nor the Settlement Administrator shall have any further obligation to send the Notice of Eligibility to the Class Members. The Notice of Eligibility shall (i) advise the Class Members of the last date on which Authentication Forms may be submitted; and (ii) provide an estimated timeframe for the distribution of Benefit Code Notices.

6.3.4.    On or about ninety days (90) after the Effective Date, the Defendants shall cause the Settlement Administrator to begin sending the Benefit Code Notice (in a form substantially similar to that mutually agreed upon by the Parties) by email to the Class Members who completed and timely submitted an approved Authentication Form at the email address provided on the Authentication Form. Either or both of the Defendants, in their sole discretion,

may elect to stagger the distribution the Benefit Code Notices over a six (6) month period; provided however that for every 30-day period following the initial distribution of the Benefit Code Notices, at least one-sixth of the Benefit Code Notices must be distributed. If a Defendant elects to stagger the distribution of the Benefit Code Notices, the order of distribution will be alphabetical. Neither the Defendants nor the Settlement Administrator shall have any further obligation to send the Benefit Code Notice to the Class Members.

6.3.5. The Benefit Code Notice will provide the Class Member with the website address at which the In-Kind Relief may be obtained, a benefit code that will be used in place of payment and instructions on how to obtain the In-Kind Relief. In order for the Class Members to obtain the In-Kind Relief, they will be required to successfully complete the authentication process required by the Defendants for all purchasers of Defendants' Offerings and otherwise must be eligible to receive the In-Kind Relief chosen. The Defendants agree that when redeeming their Benefit Code, Class Members will not be solicited to purchase any additional products or services from Defendants unless such solicitations are made in the normal course to all purchasers of Trans Union Credit Monitoring. The Defendants shall not have any further obligation to provide In-Kind Relief other than as outlined above.

6.3.6.    The Benefit Code will expire ninety (90) days after it is delivered to the Class Member.

6.3.7.    For any Class Member who (i) is currently enrolled in Trans Union Credit Monitoring through one of the Defendants, (ii) submits an Authentication Form, (iii) elects to receive In-Kind Relief of 3 months of Trans Union Credit Monitoring, and (iv) uses the Benefit Code , the three (3) months of Trans Union Credit Monitoring provided in this Settlement will be applied to the Class Member's existing membership in Trans Union Credit Monitoring, and the Defendant will suspend the automatic monthly credit card deduction for the three-month period following use of the Benefit Code.  Upon expiration of the three-month period, the Defendant may resume the automatic credit card deduction at the end of the then current monthly term without further notice to the Class Member.  If the Class Member's membership in Trans Union Credit Monitoring is paid on a yearly or some other periodic basis, the applicable Defendant will, following use of the Benefit Code, extend the membership for the three-month period following the date when the Class Member's existing membership would otherwise expire.    Prior to charging the Class Member's credit card for the next enrollment period, the Defendant will provide the Class Member with its customary notice regarding charging the Class Member for the next enrollment period.

**Section 7.    Releases**

7.1.    <u>Release</u>:    Upon the Effective Date, Plaintiff and each member of the Settlement Class, their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf with respect to the Offerings marketed and sold by the Defendant(s), shall conclusively be deemed to have fully, finally and forever released, relinquished and discharged the Released Parties from and against any and all of the Released Claims.

7.2.    <u>Waiver of Unknown Claims</u>:    Plaintiff and the Settlement Class members, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns, and all those acting or purporting to act on their behalf, hereby warrant, represent and agree that unknown losses or claims could possibly exist and that present losses may have been underestimated in amount or severity. Plaintiff and the Settlement Class members, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns, and all those acting or purporting to act on their behalf, explicitly take that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein have been bargained for between Plaintiff and the

Settlement Class members, on the one hand, and Defendants, on the other hand, with the knowledge of the possibility of such unknown claims and losses, and were given in exchange for a full accord, satisfaction and discharge of all such Released Claims. Consequently, Plaintiff and the Settlement Class members expressly waive and are deemed to waive all rights under **California Civil Code Section 1542**, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASES, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.3.   Plaintiff and all Settlement Class members do and are deemed to understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases. In connection with such waiver and relinquishment, Plaintiff and all Settlement Class members do and are deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject

matter of this Settlement, but that it is their intention to release fully, finally and forever all Released Claims, the Townes Action, and in furtherance of such intention, the release of all Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

Section 8.   Attorneys' Fees and Costs

8.1.   Defendants agree to pay reasonable attorney's fees and costs as determined by the Court up to One Million Three Hundred Thousand Dollars ($1,300,000.00).  Defendants further agree that they will not oppose any request by Class Counsel for attorney's fees and costs to the extent such request does not exceed One Million Three Hundred Thousand Dollars ($1,300,000.00).  In no event shall Defendants be liable for attorney's fees and costs of more than One Million Three Hundred Thousand Dollars ($1,300,000.00).  That amount includes not only the payment of all attorney's fees, costs, and expenses to Class Counsel, but also payment for all attorneys and other persons working under the direction of Class Counsel in the Townes Actions.  Class Counsel agrees not to request attorney's fees and costs exceeding One Million Three Hundred Thousand Dollars ($1,300,000.00).  Defendants shall pay the amount of attorney's fees and costs approved by the Court (not to exceed One Million Three Hundred

Thousand Dollars ($1,300,000.00)) within seven days (7) of the Effective Date. No other agreement exists between the Parties as to attorney's fees and costs.

**Section 9.    Incentive Award Payment to Plaintiff**

9.1.    In recognition of the time and effort the Plaintiff Townes expended in pursuing the lawsuit, in participating in discovery, in fulfilling his obligations and responsibilities as Class Representatives, and of the benefits conferred on all of the Class Members by the Settlement, Class Counsel will ask the Court to award an Incentive Award to Townes in an amount not to exceed $7,500.00 (Seven Thousand Five Hundred Dollars). Defendants agree that they will not oppose any request by Class Counsel for Incentive Awards to the extent such requests do not exceed $7,500.00 (Seven Thousand Five Hundred Dollars). Defendants shall pay the Incentive Award approved by the Court (not to exceed $7,500.00 (Seven Thousand Five Hundred Dollars) within seven days (7) of the Effective Date. No other agreement exists between the Parties as to payments to be made to the Plaintiff.

**Section 10.  Court Approval**

10.1.  Court Submission: Class Counsel and Defendants' counsel will submit this Settlement Agreement, along with such other supporting papers as may be appropriate, to the Court for preliminary approval of this Settlement Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure. If the Court declines

to grant preliminary approval of this Settlement Agreement and to order notice of hearing with respect to the proposed Settlement Class, or if the Court declines to grant final approval to the foregoing after such notice and hearing, this Settlement Agreement will terminate as soon as the Court enters an order unconditionally and finally adjudicating that this Settlement Agreement will not be approved.

10.2. Final Judgment: The Settling Parties agree that the Settlement is expressly conditioned upon dismissal with prejudice of the Litigation, entry of a Judgment and the Judgment becoming Final. The Settling Parties will jointly submit a proposed Judgment prior to the fairness hearing.

10.3. The Townes Action was commenced on December 1, 2004. No amendment to the originally filed complaint or other event in the Action has caused the Action to be recommenced for purposes of the Class Action Fairness Act ("CAFA"). Therefore, no notices are required to be sent under CAFA and the Hearing Order shall so recite.

Section 11. Termination

11.1. Any Party shall have the unilateral and unfettered right to individually terminate this Agreement and the Settlement and declare it null and void, if any of the following conditions occurs:

11.1.1.    The Court (or any other court) requires a Notice Program materially different from the Notice Program outlined in Section 4 of this Agreement or as finally agreed upon by the Parties as reflected in the Settlement Agreement;

11.1.2.    The Court fails to issue a Hearing Order in accordance with the terms of the Settlement Agreement;

11.1.3.    The Court fails to enter a Judgment dismissing the Townes Action with prejudice and integrating the material terms of the Settlement Agreement, including but not limited to the scope of the Released Claims and Released Parties; and

11.1.4.    The Judgment is appealed and such Judgment is finally reversed or modified on appeal.

11.2.    Each Defendant shall have the unilateral and unfettered right to individually terminate this Agreement and the Settlement and declare it null and void, if more than 0.7% of the Settlement Class Members who purchased an Offering from Defendants elect to Opt-Out.

11.3.    If any of the conditions described above occurs and any of the Parties elect to terminate the Settlement and the Settlement Agreement then: (i) the Settlement and the Settlement Agreement (including without limitation the class certification provisions thereof) shall have no further force and effect

39

with respect to any Party to the Townes Action and shall not be offered in evidence or used in the Townes Action or any other proceeding; (ii) counsel for the Parties shall seek to have any Court orders, filings, or other entries on the Court's file that result from the Agreement, the Settlement and the Settlement Agreement set aside, withdrawn, and stricken from the record; (iii) the Settlement and the Settlement Agreement, and all negotiations, proceedings, and documents prepared, and statements made in connection with either of them, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law; and (iv) all Parties to the Townes Action shall stand in the same procedural position as if the Settlement and the Settlement Agreement had not been negotiated, made, or filed with the Court.

Section 12.  Miscellaneous Provisions

　　12.1.  Integration Clause:　　This Settlement Agreement contains a full, complete, and integrated statement of each and every term and provision agreed to by and among the Settling Parties and supersedes any prior writings or agreements (written or oral) between or among the Settling Parties, which prior agreements may no longer be relied upon for any purpose.　This Settlement Agreement shall not be orally modified in any respect and can be modified only by the written agreement of the Settling Parties.　In the event a dispute arises

between the Settling Parties over the meaning or intent of this Agreement, the Settling Parties agree that prior drafts, notes, memoranda, discussions or any other oral communications or documents regarding the negotiations, meaning or intent of this Agreement shall not be offered or admitted into evidence. Plaintiffs and Class Counsel acknowledge that, in entering into this Settlement Agreement, they have not relied upon any representations, statements, actions, or inaction by Defendant or its counsel that are not expressly set forth herein.

12.2. <u>Headings</u>: Headings contained in this Agreement are for convenience of reference only and are not intended to alter or vary the construction and meaning of this Agreement.

12.3. <u>Governing Law</u>: To the extent not governed by the Federal Rules of Civil Procedure, the contractual terms of this Agreement shall be interpreted and enforced in accordance with the substantive law of the State of Delaware without regard to principles of conflict of laws.

12.4. <u>Mutual Interpretation</u>: The Settling Parties agree and stipulate that this Agreement was negotiated on an "arms'-length" basis between parties of equal bargaining power. Also, the Agreement has been drafted jointly by Class Counsel and counsel for Defendants. Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against any of the Parties.

12.5. Notice: Except as otherwise specifically provided herein, whenever any written notice is required by the terms of this Agreement, it shall be deemed effective on the date received, addressed as follows:

If to Plaintiffs or the Class to:

C. Neal Pope
Wade H. Tomlinson, III
Pope, McGlamry, Kilpatrick,
    Morrison & Norwood
1111 Bay Avenue, Suite 450
P.O. Box 2128 (31902-2128)
Columbus, GA 31901

Michael L. McGlamry
Pope McGlamry, Kilpatrick,
    Morrison & Norwood
The Pinnacle, Suite 925
3455 Peachtree Road, N.E.
P.O. Box 191625 (31119-1625)
Atlanta, GA 30326-3243

If to Trans Union and/or TrueLink to:

John Blenke
Executive Vice President and
    General Counsel
Trans Union LLC
555 W. Adams Street
Chicago, IL 60661

Michael O'Neil
DLA PIPER US LLP
203 N. LaSalle Street
Suite 1900
Chicago, IL 60601-1293

12.6. Counterpart Execution: This Agreement may be executed in any number of counterparts and will be binding when it has been executed and delivered by the last signatory hereto to execute a counterpart. A facsimile signature shall be deemed to constitute an original signature for purposes of this Agreement. After execution of counterparts by each designated signatory, Defendants agrees to furnish each Party with a composite conformed copy of this Agreement reflecting all counterparts' signatures.

12.7. <u>Binding Upon Successors</u>:  This Agreement shall be binding upon and inure to the benefit of the Settling Parties hereof and their representatives, heirs, successors, and assigns.

12.8. <u>Severability</u>:  In the event any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions if the Parties and their counsel mutually elect by written stipulation to be filed with the Court within twenty (20) days to proceed as if such invalid, illegal, or unenforceable provisions had never been included in this Agreement.

12.9. <u>Warranty of Counsel</u>:  Class Counsel unconditionally represent and warrant that they are fully authorized to execute and deliver this Agreement on behalf of the Class Plaintiff.  Defendants unconditionally represent and warrant that they are fully authorized to execute and deliver this Agreement on behalf of Defendants.

12.10.    The Parties to this Settlement and their counsel agree that they shall act in good faith and exercise their best efforts to effectuate this Settlement and its Final Approval.

The undersigned Parties have executed this Agreement as of the date indicated below.

Dated: April 5, 2007

POPE, McGLAMRY, KILPATRICK,
   MORRISSON & NORWOOD, LLP


Michael L. McGlamry
Wade H. Tomlinson III
3455 Peachtree Road, N.E.
Suite 925
Atlanta, GA 30326
(404) 523-7706
*Counsel for Plaintiff*

DLA PIPER US LLP


Michael O'Neil
Paula D. Friedman
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601
(312) 368-4000
*Counsel for Defendants*

BATTLE, FLEENOR, GREEN
   WINN & CLEMMER LLP

Wilson F. Green
505 North 20th Street, Ste. 1150
Birmingham, AL 35203
(205) 397-8160
*Counsel for Plaintiff*

MORRIS, NICHOLS, ARSHT
   & TUNNELL LLP

William M. Lafferty (DSBA No. 2755)        (*4742)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
*Counsel for Defendants*

ROSENTHAL, MONHAIT
   & GODDESS, P.A.

Carmella P. Keener (DSBA No. 2810)
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801-1070
*Counsel for Plaintiff*

44

The undersigned Parties have executed this Agreement as of the date indicated below:

Dated: April 5, 2007

POPE, McGLAMRY, KILPATRICK,          DLA PIPER US LLP
  MORRISSON & NORWOOD, LLP


_____       _____
Michael L. McGlamry                   Michael O'Neil
Wade H. Tomlinson III                 Paula D. Friedman
3455 Peachtree Road, N. E.            203 N. LaSalle Street, Suite 1900
Suite 925                             Chicago, IL 60601
Atlanta, GA 30326                     (312) 368-4000
(404) 523-7706                        *Counsel for Defendants*
*Counsel for Plaintiff*


BATTLE, FLEENOR, GREEN                 MORRIS, NICHOLS, ARSHT
  WINN & CLEMMER LLP                     & TUNNELL LLP


_____       _____
Wilson F. Green                       William M. Lafferty
505 North 20th Street, Ste. 1150      1201 N. Market Street
Birmingham, AL 35203                  Wilmington, DE 19801
(205) 397-8160                        (302) 658-9200
*Counsel for Plaintiff*               *Counsel for Defendants*


ROSENTHAL, MONHAIT
  & GODDESS, P.A.


_____
Carmella P. Keener
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801-1070
*Counsel for Plaintiff*

44