# Exhibit D

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEVEN G. MILLETT, MELODY J. MILLETT,                )
On Behalf of Themselves and All Others              )
Similarly Situated,                                 )
                                                    )
                        Plaintiffs,                 )
                                                    )        Case No. 05-599-SLR
v.                                                  )
                                                    )
TRUELINK, INC.,                                     )
A Trans Union Company,                              )
                                                    )
                        Defendant.                  )

PLAINTIFFS' RESPONSE TO TRUELINK, INC.'S FIRST INTERROGATORIES
TO PLAINTIFF STEVEN MILLETT

Plaintiff Steven G. Millett, by and through his attorneys of record, pursuant to

Federal Rule of Civil Procedure 33 and local rules, respond to Defendant TrueLink, Inc.'s

First Interrogatories to Plaintiff Steven Millett.

INTERROGATORY NO. 1.        For each job or other employment Plaintiff has

held for the last ten (10) years including different jobs for the same employer, identify the

employer, the period of employment, and Plaintiff's job titles.

Answer: I worked at MicroAge in Phoenix Arizona in computer distribution until
approximately 1998. I do not know the date I started there. I worked at Mobility
Electronics in Scottsdale Arizona as a packaging lead from approximately 1998 to
approximately 2000. I worked at a Target store for one day in 2000. From 2000 to
September of 2006, I was a parent at home. In September of 2006 to December of 2006,
I worked as a seasonal laborer for a company named Silpada. I worked as a contractor
for Strategic Staffing from October 2006 to February 2007 when I began permanent
employment at InkCycle as an associate.

m Millett
EXHIBIT NO. 22
050307    nms
Metropolitan
COURT REPORTERS

INTERROGATORY NO. 2.        Describe in detail how Plaintiff learned of the

Website and the steps taken by Plaintiff which led to Plaintiff's initial visit to the Website.

Answer: My wife, Plaintiff Melody Millett, told me that we needed to purchase the products. We needed to monitor the information which would be provided by TransUnion and she recommended that this product would help us do that. I agreed and she purchased the product on my behalf for our family use. I am unaware how she learned about the website. She handles the financial and household management details for our family.

INTERROGATORY NO. 3.        Describe in detail each of the purpose(s) for

which Plaintiff purchased each product from Defendant.

Answer: I wanted to know whether the identity thief and others were using my personal information and I wanted to be completely protected from identity theft. I wanted to know whether there were any accounts in my credit file which did not belong to me.

INTERROGATORY NO. 4.        For each instance in which Plaintiff visited the

Website, state: (a) the date of the visit; (b) the purpose of the visit; (c) whether Plaintiff

received any products or services from Defendant in connection with each visit; and (d)

identify all documents which refer or relate to such visits and/or products or services.

Answer: My wife, as my agent, visited the TransUnion website often. I understand that she printed the web pages on some occasions. I understand that she visited the site on my behalf several times. I understand that she ordered credit reports on my behalf and received emails for our family use. The pages she printed were given to my attorneys who gave the pages to you. I wanted to know what was happening to my credit. You have records of some of our visits and records about the items we purchased. We have also given you copies of emails you sent.

INTERROGATORY NO. 5.        Describe in detail all instances, if any, in which

Plaintiff, or anyone acting on his behalf, has disputed the accuracy of any credit report or

other credit history information regarding Plaintiff with a credit bureau, reseller, consumer reporting agency or other entity or person and, as part of your answer: (a) state the date of each communication regarding the dispute; (b) identify the parties to each such communication; (c) identify the nature of the dispute (e.g., the alleged inaccuracy and source of the disputed information); and (d) describe the final result of such dispute (e.g., correction or deletion).

Plaintiffs object to this interrogatory to the extent it requests information protected by attorney client privilege or work product privilege. Plaintiffs object to this interrogatory as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs have filed a motion to dismiss the Count in the Fourth Amended Complaint pertaining to the Fair Credit Reporting Act. Information pertaining to that Count is no longer relevant. Subject to that objection, and without waiving that objection, Plaintiffs have produced non-privileged documents that are responsive to this request and refer Defendant to the CD Roms set out in Response to Request for Production Number 1, particularly CD Rom 1. Additional documents responsive to this request are in the possession, custody or control of Defendant or TransUnion LLC.

Plaintiffs will supplement this response as additional materials are identified. Some documents responsive to this request are subject to protective orders and confidentiality agreements. With consent of the party asserting the confidentiality of these documents, the documents will be made available by Plaintiffs to Defendant TrueLink. Consent would need to be obtained from Experian Information Solutions, Inc, Equifax Credit Information Services, Inc., Bank of America Corporation, Ford Motor

Credit Company, Fair Isaac and Company, Inc., and CSC Credit Services, Inc. Plaintiffs

will cooperate with counsel for Defendant TrueLink, Inc. in obtaining permission for

disclosure of these documents and depositions and deposition exhibits and will provide

defense counsel with the necessary contact information of representatives or counsel for

these entities. Subject to these objections and without waiving these objections, Plaintiffs

state as follows:

Answer: My wife handles the financial and household management affairs for our
family. She has disputed many accounts on our behalf. We do not yet feel as if we know
about all of the accounts which should be closed. I know that she had to close accounts
which appeared on the letter we got from TransUnion. I know it took her a lot of time to
do that and that we spent a lot of money to do that. We finally had to hire an attorney to
help us. There are a lot of documents that were printed about this and we gave those
documents to our attorneys. TransUnion will have some of this information, too.

INTERROGATORY NO. 6.        Describe in detail all instances, if any, in which

Plaintiff has purchased a credit report, credit monitoring subscription or similar product and,

as part of your answer: (a) identify the entity from whom Plaintiff purchased the product; (b)

identify the date and cost of each such purchase; (c) state the purpose(s) for which the

product(s) were purchased; and (d) describe in detail any deficiencies in each product

purchased by Plaintiff.

Plaintiffs object to this interrogatory to the extent it requests information

protected by attorney client privilege or work product privilege. Plaintiffs object to this

interrogatory as irrelevant, overly broad and not reasonably calculated to lead to the

discovery of admissible evidence. Plaintiffs have filed a motion to dismiss the Count in

the Fourth Amended Complaint pertaining to the Fair Credit Reporting Act. Information

pertaining to that Count is no longer relevant. Subject to that objection, and without

waiving that objection, Plaintiffs have produced non-privileged documents that are

responsive to this request and refer Defendant to the CD Roms set out in Response to

Request for Production Number 1, particularly CD Rom 1. Additional documents responsive to this request are in the possession, custody or control of Defendant or TransUnion LLC.

Plaintiffs will supplement this response as additional materials are identified. Some documents responsive to this request are subject to protective orders and confidentiality agreements. With consent of the party asserting the confidentiality of these documents, the documents will be made available by Plaintiffs to Defendant TrueLink. Consent would need to be obtained from Experian Information Solutions, Inc, Equifax Credit Information Services, Inc., Bank of America Corporation, Ford Motor Credit Company, Fair Isaac and Company, Inc., and CSC Credit Services, Inc. Plaintiffs will cooperate with counsel for Defendant TrueLink, Inc. in obtaining permission for disclosure of these documents and depositions and deposition exhibits and will provide defense counsel with the necessary contact information of representatives or counsel for these entities. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: My wife handled this for our family. I know that she purchased a product from Equifax first and then from TransUnion and Experian. The dates of these purchases can be seen on the documents she printed. We gave these documents to our attorneys. We wanted to know if Abundio Cuautle Perez and others were using my information. We knew that TransUnion might have information which Equifax and Experian did not have. The product did not work because we learned about other accounts from someone else or after we filed the lawsuit.

INTERROGATORY NO. 7.       If Plaintiff claims to have suffered any economic loss as a result of the conduct of Defendant alleged in the Fourth Amended Complaint, state: (a) the nature of the monetary loss suffered; (b) the amount of the monetary loss suffered; and (c) the date on which the monetary loss was suffered.

Answer: My wife handles these matters for our family. We lost a lot of money because we could not get credit or could not get good rates. We had to pay extra money for insurance, too. We spent a lot of money on lawyers. We also spent a lot of money to close accounts. We had to borrow money for our home from the family trust. The product did not work as it should have and we should have the purchase price paid back to us. I remember sometimes my wife ordered a credit report because TransUnion told us there was a change and then the report did not have a change on it. We had to pay for some of these reports and we should have that money refunded. The class members also spent money that should be reimbursed to them.

INTERROGATORY NO. 8.    If Plaintiff claims to have suffered any emotional or mental distress as a result of the conduct of Defendant alleged in the Fourth Amended Complaint, state: (a) the nature of the emotional or mental distress suffered; (b) the date on which the emotional or mental distress was suffered; (c) the identity of each physician or other care provider from whom the Plaintiff received treatment for the emotional or mental distress suffered; and (d) the identity and amount of each expense incurred in treating the emotional or mental distress suffered.

Objection. Plaintiffs categorized their damages in their Rule 26 disclosures to include statutory damages, penalties, costs, and fees pursuant to state and federal consumer statutes, and to costs for products and services.

Objection. This request calls for information that is not reasonably calculated to lead to discovery of admissible evidence. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: I asked my attorneys to handle the legal issues about damages. My wife and I have been upset often by all these things that have happened to me. We understand from our lawyers that we are not going to seek money for emotional damages.

INTERROGATORY NO. 9.    If Plaintiff claims to have suffered any physical injury as a result of the conduct of the Defendant alleged in the Fourth Amended Complaint, state: (a) the nature of the physical injury suffered; (b) the date on which the physical injury was suffered; (c) the identity of each physician or other care provider from whom the Plaintiff received treatment for the physical injury suffered; and (d) the identity and amount of each expense incurred in treating the physical injury suffered.

Objection. Plaintiffs categorized their damages in their Rule 26 disclosures to include statutory damages, penalties, costs, and fees pursuant to state and federal consumer statutes, and to costs for products and services.

Objection. This request calls for information that is not reasonably calculated to lead to discovery of admissible evidence. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: I asked my attorneys to handle the legal issues about my damages. My wife and I have had some physical effects from what has happened to us. We understand from our lawyers that we are not going to seek money for physical injury.

INTERROGATORY NO. 10.    If Plaintiff claims to have suffered any other injury (other than that described in your responses to the three previous interrogatories) as a result of the conduct of the Defendant alleged in the Fourth Amended Complaint, state: (a) the nature of the injury suffered; (b) the date on which the injury was suffered; (c) the identity of each physician or other care provider from whom the Plaintiff received treatment for the injury suffered; and (d) the identity and amount of each expense incurred in treating the injury suffered.

Objection. Plaintiffs categorized their damages in their Rule 26 disclosures to include statutory damages, penalties, costs, and fees pursuant to state and federal consumer statutes, and to costs for products and services.

Objection. This request calls for information that is not reasonably calculated to lead to discovery of admissible evidence. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: Plaintiffs categorized their damages in their Rule 26 disclosures to include statutory damages, penalties, costs, and fees pursuant to state and federal consumer statutes, and to costs for products and services.

*INTERROGATORY NO. 11.*    For each lawsuit or other legal proceeding (including, without limitation, a bankruptcy proceeding) to which Plaintiff has been a party, or currently is a party, state the full name and case number of the case and the court in which the action was filed, and describe the claims asserted in the lawsuit or legal proceeding.

Plaintiffs object to this request on the grounds of work product and that it is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: I have filed lawsuits against CSC, Ford, Bank of America, TransUnion, Equifax and related companies, Fair Isaac, Experian and related companies, and you. My attorneys and my wife handled that for me. I understand that my attorneys are giving you a list of these cases. I also had two misdemeanor DUI tickets in Johnson County, Kansas when I was 18 and 23. I do not know those case numbers from Johnson County.

INTERROGATORY NO. 12.    Describe in detail all facts which support the allegations of Paragraph 24 of the Fourth Amended Complaint that: "The Credit Monitoring service failed to perform as represented by Defendant and failed to provide all or some of the services identified in the marketing materials and Contracts," and, as part of your answer, specify the "services identified in the marketing materials and Contracts" that Defendant allegedly "failed to provide."

Plaintiffs object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

*Objection. Calls for legal conclusions.*

*Objection. Calls for disclosure of attorney work product.*

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: I asked my wife to handle this as my agent. I know that she has a lot more information about this. I know that the product was supposed to protect us from identity theft but it did not. For example, Abundio Cuautle Perez is still using my information and you did not tell me. There are accounts he opened that I learned about from the lawsuits or from others and not from you. I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers.

INTERROGATORY NO. 13.    Does Plaintiff contend that he, or any members of the putative classes, suffered any harm from the consequences of identity theft that was caused, facilitated, not mitigated and/or not prevented, in whole or in part by any conduct of TrueLink alleged in the Fourth Amended Complaint? Unless your Answer is an unqualified "no," describe in detail each such instance of harm suffered and state all facts which support your contention.

Plaintiffs object to this request as overly broad and unduly burdensome.

*Objection. Calls for legal conclusions.*

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: I delegated these matters to my wife who handles the finances for our family. She has a lot more information about this. I could not get credit until after I filed lawsuits. I could not learn why. We had to buy our house with a loan from a trust. We paid more for things that we were able to finance. My information is still mixed up. We paid money for credit reports that did not have the information we needed. We paid money for a product that did not give us the information we needed. If I had known about accounts opened using my information, I could have closed the accounts. If my records were clear, I could have gotten credit or could have gotten credit with better terms. I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers. Other class members did not get all of the services for which they paid.

INTERROGATORY NO. 14.    Describe in detail all facts which support the allegations of Paragraph 87 of the Fourth Amended Complaint that: "The Named Plaintiffs will fairly and adequately represent and protect the interest of all class members," and as part of your answer, describe: (a) who will bear the costs associated with prosecuting the claims asserted in the Fourth Amended Complaint, including but not limited to the cost of providing notice to members of the proposed classes; and (b) what funds or other financial resources are available to fund such costs.

Plaintiffs object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery.

Counsel conducted adequate investigation prior to filing this action and determined that counsel had the resources to prosecute this action.

INTERROGATORY NO. 15.    Describe in detail all facts which support the allegations in Paragraph 47 of the Fourth Amended Complaint that "Named Plaintiffs and Kansas Class Plaintiffs have not, in fact, received a service that protects them from fraud and identity theft."

Plaintiffs object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: The product is not protecting me because Abundio Cuautle Perez is still using my information. There are accounts opened and judgments filed which have my Social Security number, for example. I could not get credit and did not know why. You did not tell me things I needed to know. My wife and my attorneys have more information about this. My wife has handled these matters for our family.  I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers.

INTERROGATORY NO. 16.    State with specificity each and every of the "primary benefits" that Named Plaintiffs and Class Plaintiffs failed to receive, as alleged in Paragraph 52 of the Fourth Amended Complaint.

Plaintiffs object to this request as overly broad and unduly burdensome.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: This is a legal question which my attorneys are helping me with. I know that the product we bought does not work because it does not provide notice of all types of identity theft and credit fraud. My wife has more information about this. I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers.

INTERROGATORY NO. 17.    Describe in detail all facts which support the allegations in Paragraph 43 of the Fourth Amended Complaint that "Defendant has committed unfair and deceptive acts as defined in the KCPA in that Defendant has represented, knowingly or with reason to know, that the Credit Monitoring service has sponsorship, approval, characteristics, uses or benefits that it does not have."

Plaintiffs object to this request as overly broad and unduly burdensome.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: This is a legal question that my attorneys are helping me with. I know that the product does not do what you said it would do. I also know that it is misleading for an affiliated company to supply the actual information which is sold to me by you. My wife has more information about this. I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers.

INTERROGATORY NO. 18.     Describe in detail all facts which support the allegations in Paragraph 43 of the Fourth Amended Complaint that "Defendant has represented, in connection with the marketing and sale of the Credit Monitoring service, knowingly or with reason to know, that it has a sponsorship, approval, status, affiliation or connection that it does not have."

Plaintiffs object to this request as overly broad and unduly burdensome.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: This is a legal question my attorneys are helping me with. I know that you and TransUnion do not tell people about how you work together and who gives us the information. My wife has more information about this.   I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers.

INTERROGATORY NO. 19.     Describe in detail all facts which support the allegations in Paragraph 43 of the Fourth Amended Complaint that "Defendant has represented, knowingly or with reason to know, that the Credit Monitoring service is of a particular standard, quality or grade when it is actually of another standard, quality or grade."

Plaintiffs object to this request as overly broad and unduly burdensome

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: This is a legal question my attorneys are helping me with. You should know that you will not tell someone if their information is being used. My wife has more information about this. I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers.

INTERROGATORY NO. 20.   Describe in detail all facts which support the allegations in Paragraph 43 of the Fourth Amended Complaint that "Defendant has represented, knowingly or with reason to know, that the Credit Monitoring service has certain uses, benefits or characteristics when Defendant did not rely upon and have a reasonable basis for making such representation."

Plaintiffs object to this request as overly broad and unduly burdensome.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: This is a legal question my attorneys are helping me with. You should know that you will not tell someone if their information is being used. My wife has more information about this. I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers.

INTERROGATORY NO. 21.   State with particularity the "exaggeration, falsehood, innuendo or ambiguity as to a material fact" alleged in Paragraph 44 of the Fourth Amended Complaint.

Plaintiffs object to this request as overly broad and unduly burdensome.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: This is a legal question my attorneys are helping me with. There are a lot of things that you said you would do that you do not do. As an example, you said you would provide complete protection from identity theft but you did not. My wife has more information about this. I know that TransUnion LLC has information about other class members it is not providing to you or you are not providing to your customers.

INTERROGATORY NO. 22.    Identify the "third parties" referenced in Paragraph 73 of the Fourth Amended Complaint:

Plaintiffs object to this request as overly broad and unduly burdensome and not likely to lead to the discovery of admissible evidence.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery.

Objection. Irrelevant. This count has been or will be dismissed.

INTERROGATORY NO. 23.    Identify all "inaccurate information bearing on a consumer's creditworthiness or credit character" provided by TrueLink as alleged in Paragraph 76 of the Fourth Amended Complaint.

Plaintiffs object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery.

Objection, irrelevant. This count has been or will be dismissed.

INTERROGATORY NO. 24.     Describe in detail the instances in which "Named Plaintiffs were unfairly denied credit based upon a credit report prepared by TransUnion, LLC" as alleged in Paragraph 76 of the Fourth Amended Complaint and as part of your answer, describe: (a) who denied the Named Plaintiffs credit; (b) on what information such denial was based; and (c) identify any documents which refer or relate to any such denial of credit and/or the "credit report prepared by TransUnion, LLC."

Plaintiffs object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery.

Objection. Irrelevant. This count has been or will be dismissed.

INTERROGATORY NO. 25.     Identify to whom "Defendant provided inaccurate information bearing on a consumer's creditworthiness or credit character," as alleged in Paragraph 76 of the Fourth Amended Complaint.

Plaintiffs object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery.

Objection, irrelevant. This count has been or will be dismissed.

INTERROGATORY NO. 26.    Did Named Plaintiffs ever request "Fraud Resolution services," as that phrase is used in Paragraph 26 of the Fourth Amended Complaint? Unless your answer is an unqualified "no," describe in detail any manner, if any, in which the "Fraud Resolution services" which were delivered form the basis for any of your claims.

Plaintiffs object to this request as overly broad and unduly burdensome.

Objection. Calls for legal conclusions.

Objection. Calls for disclosure of attorney work product.

Plaintiffs reserve the right to supplement this discovery as more information becomes available during discovery.

Objection. Vague and ambiguous. Subject to these objections and without waiving these objections, Plaintiffs state as follows:

Answer: My wife has more information about this. This is a legal question my attorneys are helping me with. It is my understanding that those services were promised in the contract.

DATED: February 2̲6̲, 2007

Respectfully submitted,

Christopher J. Curtin
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ecurtin659@aol.com

and

/s/ Barry R. Grissom
Barry R. Grissom, Esq., *pro hac vice*
KS Bar. Id. No. 10866
7270 W. 98th Terrace
Building 7, Suite 220
Overland Park, Kansas 66212
Phone: (913) 341-6616

and

Bryson R. Cloon, *pro hac vice*
KS Bar. Id. No. 08660
MO Bar. Id. No. 36843
Cloon Law Firm
11150 Overbrook Road
Leawood, KS 66211
Phone: (913) 661-9600
Facsimile: (913) 661-9614

B. Joyce Yeager, *pro hac vice*
KS Bar No. 18932
MO Bar No. 46013
City Center Square
1100 Main St., 26th Floor
Kansas City, Missouri 64105
Phone: (816) 876-2600
Facsimile: (816) 221-8763

Michael W. Blanton, *pro hac vice*
MO Bar. Id. No. 46490
Swanson Midgley, LLC
2420 Pershing Road, Ste. 400
Kansas City, Missouri 64108
Phone: (816) 842-6100

COUNSEL FOR PLAINTIFFS

<u>CERTIFICATE OF SERVICE</u>

I, Christopher J. Curtin, Esq., hereby certify that on February 21, 2007, I served

an original and copy of the foregoing Plaintiffs' Responses to First Interrogatories to

Plaintiff Steven Millett by depositing the same in the United States Mail, postage prepaid

to:

William M. Lafferty, Esq.
Jerry Clyde Harris, Jr., Esq.
Morris Nichols Arsht & Tunnell
1201 N. Market St.
Wilmington, DE 19801
wlafferty@mnat.com

and that I served a copy electronically this day to the following:

Michael C. O'Neil
Paula D. Friedman
DLA Piper US LLP
203 N. LaSalle St., Ste. 1900
Chicago, IL  60601-1293
michael.Oneil@dlapiper.com
paula.friedman@dlapiper.com

ERISMAN & CURTIN

/s/ Christopher J. Curtin
Christopher J. Curtin
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ccurtin659@aol.com

DATE: February 21, 2007

## PLAINTIFF'S SWORN SIGNATURE

STATE OF _Kansas_ )
 ) ss.
COUNTY OF _Johnson_ )

The below named person, being duly sworn on oath states that he has read the foregoing interrogatories and the answers given are true to the best of affiant's knowledge and belief.

_Sten G Millet_
Steven G. Millett

The foregoing answers to interrogatories were subscribed and sworn to before me this _9_ day of _Feb_____, 2007.

_Elizabeth A. Metz_
Notary Public

My Commission Expires:

_9/5/10_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEVEN G. MILLETT, MELODY J. MILLETT,   )
On Behalf Of Themselves and All Others     )
Similarly Situated,                                      )
                                                              )
                          Plaintiffs,                        )
                                                              )          Case No. 05-599-SLR
v.                                                            )
                                                              )
TRUELINK, INC.,                                        )
A Trans Union Company,                             )
                                                              )
                          Defendant.                      )

PLAINTIFFS' NOTICE OF SERVICE

Plaintiffs, by and through their counsel of record, on February 21, 2007served

PLAINTIFF'S RESPONSE TO TRUELINK, INC'S FIRST INTERROGATORIES TO

PLAINTIFF STEVEN MILLETT, and PLAINTIFF'S RESPONSE TO TRUELINK,

INC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS, by

depositing the same in the United States mail, postage prepaid to counsel of record.


Respectfully submitted by:


s/Christopher J. Curtin
Christopher J. Curtin
DE Bar ID. No 0226
Erisman & Curtin
629 Mount Lebanon Road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5577
E-mail: ccurtin659@aol.com

and

s/ Barry R. Grissom
KS Bar #10866
7270 W. 98th Terrace
Building 7, Suite 220
Overland Park, KS 66212
(913) 341-6616
(913) 341-4780-Fax

and

Bryson R. Cloon
KS Bar #08660
MO Bar #36843
Cloon Law Firm
11350 Tomahawk Creek Parkway, Suite 100
Leawood, KS 66211
(913) 661-9600
(913) 661-9600

and

B. Joyce Yeager
KS Bar # 18932
Yeager Law Firm
1100 Main Street
Kansas City, MO 64105
(816) 876-2600 Ext 113

and

Michael W. Blanton
MO Bar #46490
Swanson Midgley, LLC
2420 Pershing Road, Suite 400
Kansas City, MO 64108
(816) 842-6100
COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Christopher J. Curtin, Esquire, hereby certify that on February 21, 2007, I

electronically filed the foregoing NOTICE OF SERVICE with the Clerk of the District Court

using CM/ECF, which will send notification of such filing to the following:

William M. Lafferty, Esquire
Jerry Clyde Harris, Jr., Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

and that I served a copy electronically this day to the following:

Michael C. O'Neil
Paula D. Friedman
DLA Piper US LLP
203 N. LaSalle St., Ste. 1900
Chiacogo, IL 60601-1293
michael.Oneil@dlapiper.com
paula.friedman@dlapiper.com

ERISMAN & CURTIN

/s/ Christopher J. Curtin
Christopher J. Curtin
Bar Identification No. 0226
629 Mount Lebanon Road
P.O. Box 250
Wilmington, DE 19899
(302) 478-5577
ccurtin659@aol.com
Attorney for Plaintiffs

DATED: February 21, 2007

# Exhibit E

 



## Let our award-winning monitoring service take care of it!

Knowledge: quarterly access to your credit report with analytical tools.
Protection: Complete identity theft protection with weekly fraud-watch emails.
Convenience: Toll-free credit specialists with fraud resolution services.

☑ Yes, monitor my credit score for an additional $4.95/quarter
☑ Yes, monitor my debt for an additional $4.95/quarter

Start monitoring my credit today for just $19.95 per quarter >>

*As a member, you'll receive ALL THIS-*



**Weekly Fraud-Watch Emails**                                    Learn M
▶ Receive weekly email alerts to changes in your report
▶ Immediately find out about credit report changes
  including fraudulent
  activity, new inquiries, new accounts, late payments, and
  more



New account opened in your name
Date opened:      January 1, 2001
Creditor's name:   Motor Credit Company
Account number:   1234 5678 9000 ****
Type:              Automotive Loan

**Quarterly Access to Your Credit Report**                       Learn M
▶ Receive a brand new credit report four times per year
▶ Reports are easy-to-read with color graphics and free
  interactive guide



Credit Alert
Dear Sample,
A change has appeared on your credit
report during the week of January 1-7,
2003. Simply click here for details.

**NEW! Fraud Resolution Services**                               Learn M
▶ Should you become a victim of identity theft, TrueCredit
  provides you
  with Fraud Resolution services to assist you in the
  recovery of financial
  and credit losses

EXAMPLE: CREDIT TRENDING

**Powerful Tools and Analysis**                                  Learn M
▶ Graphical trending helps you manage your progress
▶ View colorful charts and graphs on changes in your debt,
  income,
  credit score, and more

https://www.truecredit.com/services/creditMonitor/monitoringSample.jsp?...   8/6/2003

M. Millett
EXHIBIT NO. 15
05 03 07   hms
Metropolitan
COURT REPORTERS

Millett00871

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEVEN G. MILLETT, MELODY J. MILLETT,    )
On Behalf Of Themselves and All Others       )
Similarly Situated,                                        )
                                                                   )
                              Plaintiffs,                    )
                                                                   )          Case No. 05-599-SLR
v.                                                                 )
                                                                   )
TRUELINK, INC.,                                         )
A Trans Union Company,                            )
                                                                   )
                              Defendant.                  )

## DECLARATION OF LUCY DUNI

I, Lucy Duni, having been duly sworn, state as follows:

1.        I am over 18 years of age and I make this declaration on personal knowledge and in support of TrueLink Inc.'s, now known as Trans Union Interactive, Inc. ("TrueLink") Motion for Partial Summary Judgment.

2.        I am currently employed by TrueLink as the Marketing Director of TrueLink's marketing department.

3.        After graduating from college in 1998, I was hired as a Marketing Specialist by TrueLink. I was then promoted to Marketing Manager in 2003 and I was, again, promoted to Director of Marketing in 2005.

4.        As part of my job responsibilities as Director of Marketing, I oversee the development, layout and design of TrueLink's TrueCredit.com internet portal and I supervise and manage individuals who manage the products on that site. I also oversee the marketing and distribution of our newsletter and I oversee our various marketing campaigns, including the marketing of TrueLink's credit monitoring product.

5.    TrueLink's TrueCredit.com website comprises, as it did since at least January of 2003, numerous pages with detailed product descriptions, samples, and other marketing materials advertising and explaining its products.

6.    Through TrueLink's TrueCredit.com website, TrueLink offers consumers access to information in their credit report from the three national credit bureaus (including Trans Union), as well as credit scores, and related products.

7.    As it did since at least January, 2003, the TrueLink credit monitoring product that I understand Ms. Millett purchased on behalf of her husband on August 6, 2003, monitors the Trans Union credit file of the subscriber and notifies the subscriber by email when there are certain types of changes to only that credit file.


Under 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.


Dated: October 1, 2007


_____
Lucy Duni

# Exhibit G

# WHOLE EXHIBIT REDACTED

# Exhibit H

# WHOLE EXHIBIT REDACTED

# Exhibit I

## U.S. DISTRICT COURT
## DISTRICT OF DELAWARE (WILMINGTON)

STEVEN G. MILLETT and )
MELODY J. MILLETT, )
On behalf of Themselves and )
Others Similarly Situated, )
)
       Plaintiffs, )    Case No. 1:05-cv-00599-SLR
)
v. )    Complaint - Class Action
)
TRANSUNION, LLC and )
TRUELINK, INC. )
)
       Defendants. )

### PLAINTIFFS' SUPPLEMENTAL RESPONSE TO TRUELINK'S FIRST INTERROGATORIES TO STEVEN MILLETT

      Plaintiff supplements his response as follows:

**Interrogatories Nos. 7 through 10:**

In this action, plaintiffs are seeking for themselves and members of the class, the statutory damages available pursuant to the Kansas Consumer Protection Act, attorneys' fees and costs allowed by the Kansas Consumer Protection Act, and restitution of the purchase price and interest.

**Interrogatory No. 13**

In this action, plaintiffs are seeking for themselves and members of the class, the statutory damages available pursuant to the Kansas Consumer Protection Act, attorneys' fees and costs allowed by the Kansas Consumer Protection Act, and restitution of the purchase price and interest. This interrogatory seeks information that is not relevant to the damages sought by the plaintiffs.

      Respectfully submitted,

      Bryson R. Cloon    KS #08660
      One Hallbrook Place
      11150 Overbrook Rd.
      Suite 350
      Leawood, Kansas 66211
      (913) 661-9600
      (913) 661-9614 Fax
      ATTORNEY FOR PLAINTIFFS

## PLAINTIFF'S SWORN SIGNATURE

STATE OF  Kansas          )
                         ) ss.
COUNTY OF  Johnson        )

The below named person, being duly sworn on oath states that he has read the foregoing supplemental interrogatories and the answers given are true to the best of affiant's knowledge and belief.

_____

                              Steven Millett

The foregoing answers to interrogatories were subscribed and sworn to before me this _18th_ day of _July_____, 2007.

_____
                              Notary Public

My Commission Expires:
    9/5/10



ELIZABETH A. METZ
My Appt. Exp. 9/5/10

# Exhibit J

nytimes.com



December 12, 2006
STOLEN LIVES

# Protectors, Too, Gather Profits From ID Theft

By ERIC DASH

Melody Millett was shocked when her car loan company asked her if she was the wife of Abundio Perez, who had applied for 26 credit cards, financed several cars and taken out a home mortgage using a Social Security number belonging to her actual husband.

Beyond her shock, Mrs. Millett was angry. Five months earlier, the Milletts had subscribed to a $79.99-a-year service from Equifax, a big financial data warehouse, that promised to monitor any access to her credit records. But it never reported the credit activity that might have signaled that they were victims of identity theft.

"I feel like the whole thing is a sham," said Mrs. Millett, a 37-year-old information-technology manager from Overland Park, Kan. "You feel completely violated because here are the people who know the industry. They hold all the data." The services, she contends, are oversold.

It is not just criminals who are profiting from identity theft; financial institutions are making money, too. Fear of identity theft has helped give rise to a nearly billion-dollar business in credit-monitoring services sold by the major credit bureaus — companies like Equifax, Experian and TransUnion — as well as direct marketers and banks.

Javelin Strategy and Research, which analyzes the credit-monitoring market, says more than 12 million Americans are now subscribers. The services alert

them when lenders have requested their credit files, usually an indication a credit application has been made in their name.

Credit monitoring has quickly gained traction with consumers through aggressive advertising that often promotes its value in protecting against identity theft. But its abilities are far more limited than is commonly perceived.

In the meantime, measures that could stem fraud from identity theft — like legislation empowering consumers to block access to their credit records, making it impossible to extend new credit — have faced stiff resistance from industry groups.

"Identity theft has essentially become a business — not just for bad guys but for good guys, too," said Robert Gellman, a privacy consultant in Washington. "A lot of the people that are involved in profiting legally from identity theft are direct participants in the whole credit system that doesn't have the protections in place to prevent identity theft in the first place."

Some criticism has been aimed at banks, which tolerate a certain amount of fraud as a cost of doing business. But the biggest beneficiaries from identity theft have been the three credit bureaus.

Banks and other lenders have long bought information like a person's payment history or debt load to assess a loan's risk. But credit monitoring turned the system on its head and helped create a new, consumer- focused financial data industry.

In addition to selling files to lenders in bulk, the bureaus now market largely the same records to individuals, including entries that reflect applications for credit, new accounts or balance changes. While the data is sold to a big financial institution for 20 cents to $1 a report, according to analysts and industry executives, it can be repackaged and sold to consumers in the form of credit monitoring for $3 to $16 a month.

Persuading customers to sign up can be costly. But today, Wall Street analysts estimate credit monitoring alone to be a $900 million category, growing 20 percent a year or more.

"It's a pretty big market considering that 10 years ago it didn't exist," said J. Bradford Eichler, a consumer data company analyst at Stephens.

Peace of Mind, at a Price

Representatives of Equifax, Experian and TransUnion, whose consumer affiliates are being sued by the Milletts, would not comment on the couple's specific contentions because of the continuing litigation. But they say credit monitoring is a valuable tool.

"Our products give consumers an early warning system so they can limit the damage and take care of the problem right away," said John Danaher, president of TransUnion's online consumer services arm.

And indeed, many consumers speak glowingly of their experiences with credit monitoring. Wendy Barrington, a 36-year-old Houston woman, recalled the annoyance a friend faced for months after her financial information was stolen.

"I am not about to risk something I have worked so hard on," said Ms. Barrington, who pays about $15 a month for TransUnion's credit-monitoring service. "All it takes is one person stealing your information and you are in a world of hurt."

Still, some consumer advocates caution that people may be overpaying for that peace of mind.

For one thing, Americans can essentially create their own credit-monitoring service by taking advantage of a federal law that guarantees access to one free credit report a year from each of the three bureaus. And thanks to so-called zero liability policies, the cost of fraud is generally absorbed by the credit card companies, merchants and banks.

At the same time, credit monitoring may fail to detect that a credit request was even made. For example, a fraud artist may use someone else's personal identification information — like a Social Security number — but take out a loan in his or her own name. The data mismatch can cause the bureau's computer systems to route the loan request to a separate file so that a credit-monitoring service never picks it up.

That is what Melody and Steven Millett, the Kansas couple, say happened to them.

In late January 2003, Mrs. Millett found something was wrong when a Ford Motor Credit computer system refused to let her set up an online account to pay off an auto loan. When she called the lender, Mrs. Millett said, she was told that an account had already been set up with Mr. Millett's Social Security number but a different name: Abundio Perez.

She later learned of at least 26 cases in which Mr. Millett's personal information had been used in credit applications by Mr. Perez since 1989, according to a lawsuit filed by the Milletts against the credit bureaus, data providers and several creditors in June 2004 in federal court in Kansas City, Kan.

The previous August, Mrs. Millett had bought a credit-monitoring subscription from Equifax. Soon after the Ford Motor Credit incident, she also signed up for credit monitoring with Experian and TransUnion.

At least one credit application using Mr. Millett's Social Security number came after the Milletts obtained their credit-monitoring subscriptions, according to their lawyer, Joyce Yeager. But not once, Mrs. Millett said, did the couple receive notice of unusual access to their credit records or the misuse of Mr. Millett's data. Quite the contrary, the bureaus sent them a succession of reassuring e-mail messages suggesting that their information was safe and offering congratulations.

In their legal claims, which have been separated into several class-action lawsuits, the Milletts say that the bureaus' monitoring services do not work as advertised.

"The core identifier is your Social Security number," Mrs. Millett said in an interview. "You use it for work, for taxes. You would think that identifier would be covered by someone advertising they protect you from identity theft. To think that they are not is just flabbergasting."

Donald Girard, an Experian spokesman, acknowledged that his company's credit-monitoring products could not detect cases in which a credit applicant used someone else's Social Security number but his or her own name because those records were stored separately. He added, however, that in such cases consumers are "not harmed" financially.

Protection vs. Prevention

Initially, the credit bureaus sold monitoring as a way for consumers to understand and manage their credit scores before taking out big loans. But since a wave of data breaches in 2004 heightened consumer fears, a security message appears to have moved toward center stage.

"It is advertised as monitoring for identity-theft protection," said Michael R. Stanfield, chief executive of Intersections, a direct-marketing company that offers credit monitoring through big banks and card companies. But he said consumers hear protection "and don't understand if it is prevention or detection."

"What is needed in the marketplace are products that are going to help you protect your information, monitor it when it is in the process of getting used in a financial fraud, and catch those financial frauds when they are about to occur," he added.

Privacy advocates have suggested providing more fraud-prevention tools to consumers by allowing them to freeze access to credit records if they think they have been identity-theft victims — or as a precaution.

Beginning with California in 2003, such laws have passed in 26 states, including New York last month. But of roughly 148 million credit-eligible customers in those states, Experian estimates 30,000 have elected to freeze their files.

Financial and retailing lobbying groups have generally opposed such legislation at the state and federal levels since it could hinder a retailer in issuing a store-branded credit card — or a bank in extending a loan — to a legitimate customer, who must first unfreeze the credit file. It can also restrict the bureaus from selling consumer credit files.

The big credit bureaus, after initially opposing tougher legislation, are taking a wait-and-see approach. "It may be that we evolve to that at some point," said Maxine Sweet, Experian's vice president for consumer education. "We have to make sure that we are not interfering with what is a very important part of the whole consumer credit economy."

Such a freeze might not have helped the Milletts, since the problematic files were kept under another name. Mrs. Millett is still using a credit-monitoring service, but she would not recommend it to a friend.

"I still have credit monitoring because of the simple fact that it is the best tool available at this time," she said. "It is not ideal, it is broken, and it is not as advertised."