# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVEN G. MILLETT, MELODY J. MILLETT, | ) | |
| On Behalf of Themselves and All Others | ) | |
| Similarly Situated, | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 05-599-SLR |
| v. | ) | |
| | ) | |
| TRUELINK, INC., | ) | |
| A Trans Union Company, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' REPLY TO DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO MOTION FOR CLASS CONSIDERATION

ERISMAN & CURTIN

/s/ Christopher J. Curtin

Christopher J. Curtin
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon Road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ccurtin659@aol.com

DATE:  October 1, 2007

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

STEVEN G. MILLETT, MELODY J.    )
MILLETT, on behalf of themselves    )
and all others similarly situated,    )
    )
       Plaintiffs,    )
v.    )    Cause of Action No. 05-CV-599-SLR
    )
TRUELINK, INC.,    )
    )
       Defendant.    )

**PLAINTIFFS' REPLY TO DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

Arguments as to uniformity of marketing    6

  Damages

      Hart v. Dart Group Corp., 877 F.Supp. 896, 901 (D. Del. 1995)    7

      Council of Unit Growers v. Freeman Assoc., 564 A.2d 357, 359-60 (Del. Super. 1989)    7

      McClaine v. Faraone, 369 A.2d 1090, 1091-93 (Del.Ch. 1977)    7

      R.M. Williams Co., Inc. v. Frabizzio, Slip Opinion, Del. Super. Case
      No. Civ.A 90C-MY-10 (Del. Super. February 8, 1993) (1993 WL 54423)    7

      Asset Recovery Services, Inc. v. Process Systems Integration, Inc., Slip Opinion, Del.
      Com. Pl. Case No. CIV.A1999-10-124 (Del. Com. Pl. February 6, 2002)
      (2002 WL 31999347)    8

      In re Warfarin Sodium Antitrust Litigation, 391 F.3d 516, 530 (3rd Cir. 2004)    8

  Kansas Consumer Protection Act "KCPA" Claims    9

      Benedict v. Altria Group, Inc., 241 F.R.D. 668, 680 (D. Kan. 2007)    9

      Finstad v. Washington Univ. of Topeka, 845 P.2d 685, 692 (Kan. 1993)    9

Class Definitions: Argument as to Numerosity    10

Argument  as to Commonality    11

      Emerald Partners v. Berlin, 726 A.2d 1215, 1224 (Del.Supr. 1999)    12

Argument at to Typicality                                                                              12

    Georgine v. Amchem Prods., Inc., 83 F.3d 610, 631 (3d Cir. 1996)                        13

Argument  as to Adequacy of Representation                                                             13

    In re Storage Technology Corp., 113 F.R.D. 113 (D. Colo. 1986)                          15

    Arkansas Blue Cross and Blue Shield, v. Hicks, 78 S.W. 2d 58, 66-67 (Ark. 2002)         16

Arguments as to Adequacy of counsel                                                                    18

    F.R.Civ.P. 23(b)(3)                                                                     18

    F.R.Civ.P. 23(b)(2)                                                                     19

# TABLE OF AUTHORITIES

Arkansas Blue Cross and Blue Shield, v. Hicks, 78 S.W. 2d 58, 66-67 (Ark. 2002)    16

Asset Recovery Services, Inc. v. Process Systems Integration, Inc., Slip Opinion,
Del. Com. Pl. Case No. CIV.A1999-10-124 (Del. Com. Pl. February 6, 2002)
(2002 WL 31999347)    8

Benedict v. Altria Group, Inc., 241 F.R.D. 668, 680 (D. Kan. 2007)    9

Council of Unit Growers v. Freeman Assoc., 564 A.2d 357, 359-60 (Del. Super. 1989)    7

Emerald Partners v. Berlin, 726 A.2d 1215, 1224 (Del.Supr. 1999)    12

Finstad v. Washington Univ. of Topeka, 845 P.2d 685, 692 (Kan. 1993)    9

Georgine v. Amchem Prods., Inc., 83 F.3d 610, 631 (3d Cir. 1996)    13

Hart v. Dart Group Corp., 877 F.Supp. 896, 901 (D. Del. 1995)    7

In re Storage Technology Corp., 113 F.R.D. 113 (D. Colo. 1986)    15

In re Warfarin Sodium Antitrust Litigation, 391 F.3d 516, 530 (3rd Cir. 2004)    8

McClaine v. Faraone, 369 A.2d 1090, 1091-93 (Del.Ch. 1977)    7

R.M. Williams Co., Inc. v. Frabizzio, Slip Opinion, Del. Super. Case No. Civ.A 90C-MY-10
(Del. Super.  February 8, 1993) (1993 WL 54423)    7

**STATE STATUTES**

K.S.A. § 50-626                                                    17

K.S.A. § 50-626(b)(1)(B)                                           17

K.S.A. § 50-627                                                    10

**FEDERAL RULES**

F.R.Civ.P. 23(b)(2)                                               19

F.R. Civ. P. 23(b)(3)                                             18

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVEN G. MILLETT, MELODY J. | ) | |
| MILLETT, on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Cause of Action No. 05-CV-599-SLR |
| | ) | |
| TRUELINK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' REPLY TO DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## REPLY

Plaintiffs, in reply to Defendant's Answering Brief in Opposition to Plaintiffs' Motion for Class Certification, respond, in order of Defendant's argument, as follows[1]:

Litigation history.  Defendant alleges that Judge Farnan's rulings in the matter of Townes v. Trans Union, et al, Case No. 04-1488 (hereinafter "Townes"), serve to "extinguish" the "claims of most, if not all, of the members" of the purported class in the above-captioned matter.[2]   There are several problems with defense counsel's representation.  First, counsel for Defendant fails to mention that Plaintiffs have appealed the decision to deny Plaintiffs' motion to intervene, the decision to dismiss Plaintiffs' objection to the class definition, and the decision to refuse Plaintiffs an opportunity to speak at the Fairness Hearing.  Townes v. Trans Union, et al,, Third Circuit Court of Appeals Case No. 07-3677.  Secondly, the individuals who opted out of the Townes settlement have not had their cases extinguished.

Finally, and perhaps most importantly, there are specific issues pertaining to the actions of defense counsel which must now, regrettably, be brought to the attention of the Court.  Plaintiffs urge the Court to

---

[1]  Plaintiffs note that the answering brief of Defendant is, in large part, a discussion of events peripheral to the determination of the pending motion for class certification.  Plaintiffs' counsel are compelled to respond but do so reluctantly.

[2]   This statement, Plaintiffs assert, is made by defense counsel after it played a role in the settlement discussions with the Named Plaintiffs in this action which was unknown to the court in Townes. See Exhibit A.

1

review the history set forth in the Affidavit attached.  There are a number of factual assertions in the

Answering Brief which are detailed in the Affidavit but are beyond the scope of this Reply.  The facts set

out should be considered when weighing the argument of defense counsel.  Plaintiffs' counsel must,

reluctantly, report on the manner in which defense counsel conducted itself in settlement negotiations with

the Milletts and their counsel.[3]  It should also be noted that it was *after* these Plaintiffs first filed claims

pertaining to the credit monitoring product, that the Named Plaintiff in *Townes* brought an action against

Defendants alleging violations of the Credit Repair Organizations Act ("CROA").

The claims of Defendant about the Milletts' action against another credit reporting agency,

Experian Information Solutions, Inc., have no direct bearing on these claims.  In the *Experian* litigation,

Named Plaintiffs were bringing claims under the California consumer statute, claims which were dismissed

before those Defendants provided class discovery.  In addition, a count remains to be litigated in Experian

and the motion for class certification on that count has been briefed.  Finally, the California court dismissed

the *individual* claims of the Plaintiffs while a motion to compel production of documents was being

advanced, a motion for both class and individual discovery.  The order came prior to the time when the

parties were scheduled to name experts.  As Plaintiffs have disclosed to defense counsel in the *Experian*

action and to defense counsel in this action, Named Plaintiffs will be appealing the decisions in that

California action.

It should be noted that the advertising of Defendants differed from the advertising which the

California court focused upon when it concluded that those Defendants engaged in puffery as they promised

identity theft protection for purchasers.  The advertising of Defendant in this action was much different.

(App. Ex. B) [fn re appendix designation]   In *Experian*, a consumer survey conducted subsequent to the

order indicated that most individual consumers believe that the use by another of one's personal

identification information constitutes identity theft.

Although Defendant would characterize this claim as a claim which would require Defendant's

parent, a credit reporting agency (Trans Union, LLC, hereinafter "Trans Union"), to monitor the credit files

---

[3]   The facts concerning the settlement discussions are contained in the Affidavit of Yeager, App. Ex. A.

of others, that is a misrepresentation of the issues Plaintiffs raise.  (Summary Judgment Motion)  Defendant misrepresented that its product or service, access to credit reports and scoring tools, was a tool adequate to detect identity theft.  In addition, Defendant breached its contracts.  This is not a request to have the parent of the Defendant monitor "third party" credit files.  This is an action to hold Defendant responsible for accepting fees for a product or service that did not work and could not work.  Plaintiffs explained in their motion for certification, the manner in which the product operates.  Plaintiffs explain in their Memorandum in Support of the Motion for Partial Summary Judgment, some of the reasons why this is actionable.

Defendant attempts to recast the claims.  Defendant indicates that, in order to provide the product or service, identity theft protection and access to accurate credit information, its parent would have to "monitor the credit files of third parties to detect identity theft, and not just the files of Mr. Millett.  (Answering Brief, pp. 3)  Defendant hopes to completely skirt the issue of the inaccurate and misleading nature about the manner in which a "credit report" can serve as an identity theft detection device.  (Summary Judgment Motion pp. 11 to 15)  Defendant also completely skirts the other performance issues.  (Motion for Partial Summary Judgment)

Defendants attempt to cast aspersions upon the pleadings practice of counsel for Plaintiffs.  Plaintiffs named TrueLink as a party after entering into a settlement agreement to dismiss Trans Union.[4]  Trans Union's counsel, when negotiating its dismissal with counsel for Plaintiffs, indicated that Trans Union, the parent of Defendant, wished "to give up the sub".  This was a reference by counsel to its subsidiary, TrueLink, the Defendant now named.  Counsel for Defendant's parent indicated that it wished to "give up the sub" and settle with Named Plaintiffs.  This was not ineptitude by counsel.  This was the subject of reasoned negotiation.  Defendant's prior counsel was the counsel who requested transfer to Delaware.  Counsel did so after the count pertaining to the Fair Credit Reporting Act as to Trans Union was resolved.  Counsel for Plaintiffs agreed *then*, not to oppose the motion to transfer the contract claim to Delaware and did so because the contract remaining at issue contained a venue clause.  The transfer and

---

[4]  Before transfer to Delaware, Defendant was represented by the Dallas, Texas office of Strasberger Price.  Current counsel was not involved in the settlement with Trans Union in which it was agreed that Defendant would be named and Trans Union would be dismissed because Trans Union wanted "to give up the sub," its wholly owned subsidiary. (App. Ex. A)

amendment of counts and named parties was not ineptitude on the part of Plaintiffs' counsel but the result of negotiations and motions practice. This Court has determined that Plaintiffs have stated the basis for a claim. The fact that Defendant engaged in extensive and protracted motions practice does not equate to a conclusion that Plaintiffs' counsel is inept. In addition, the issue of venue was not a decision of the Named Plaintiffs but a decision of counsel after motions practice and settlement discussions.

Defendant asserts it was ineptitude to substitute parties. The fact that Named Plaintiffs did not recognize the supplier of the product demonstrates that the product advertising is deceptive and misleading and not that Named Plaintiffs are inadequate class representatives. When reviewing the advertising, most consumers believe that there is a company called True Credit. (Ex. F to Plaintiffs' Motion for Class Certification; App. Ex. W)

Plaintiffs then filed their claim alleging violations of the California consumer protection statute because Defendant and its parent represented that Defendant's primary operations were in California. This Court concluded, however, that the Named Plaintiffs were entitled to bring a claim under the Kansas consumer act. This decision was made after briefing by the parties. Counsels' pleading to apply the law of the principal place of business of Defendant was not ineptitude and there was legal support for the argument that the California statute could have been applicable. Plaintiffs' counsel even tried to investigate the number of employees of Defendant in California and in Delaware and in Illinois. (App. Ex. A)

Defense counsel also fails to mention to the Court that defense counsel was notified, shortly after the Rule 26 conference, that the CROA counts in this action would be dismissed. (App. Ex. A) It was not ineptitude to dismiss the counts.

The *Townes* Action. There are only three important similarities between the *Townes* action and this action. First, Defendant is a party to both. Secondly, Defendant's products are at issue in both. Thirdly, defense counsel is identical in both.

The *Townes* action litigated claims that products of Defendant *and its parent* violated provisions of CROA. In this action, the claims are that Defendant breached its contract with purchasers of its products and that Defendant violated the Kansas Consumer Protection Act ("KCPA"). Judge Farnan and Judge

4

Robinson have concluded that the claims of Named Plaintiffs are dissimilar. In paragraph 3 of Judge Farnan's *Townes* Order, he stated that Plaintiffs claims were "not affected" by the settlement in *Townes*. It is now time, pursuant to the scheduling order in this matter to address whether a class can be certified in this matter.[5] Over 300 people opted out of the *Townes* action and a Kansas consumer act is being considered by this Court as well.

Defendant alleges, on page 6 of its redacted brief, that Plaintiffs' counsel has been inconsistent when asserting that this action is broader than the action in *Townes*. This action involves two claims and does not pertain to CROA. It is, in fact, broader than the *Townes* action as more issues are raised and the counts are more diverse and complex than the CROA claims settled in *Townes*.

The Defendant's discussion about the settlement agreement in this action and in the other litigation should be examined carefully. Despite the fact the litigation against other parties in other courts is unrelated to this action, defense counsel expends much effort describing its perceptions of the unrelated litigation. Defense counsel was not involved in the litigation. (See, instead, App. Ex. A) At the risk of diverting the Court further from any genuine issues raised concerning class certification, counsel for Plaintiffs is compelled to clarify the history of the litigation undertaken by the Milletts. (App., Ex. A) The statutes which were the basis for relief, the claims, the contracts, and the advertising all differ for each matter. The years of litigation and discovery benefitted the class members and assisted counsel and Plaintiffs to collect information available about Trans Union, reporters of information, and the credit reporting industry which would not otherwise be available for the class and Plaintiffs. (Motion for Summary Judgment pp. 11-15, App. Ex. A, App. Ex. J; App. Ex. P; App. Ex. X; App. Ex. Y)

The Milletts have been excellent representatives for consumers in this action and in the other actions. Steve Millett has been deposed several times and has responded to extensive discovery requests. He has expended funds in attorneys fees and has seen to it that the claims of the class are advanced. Melody Millett has been deposed several times and has responded to extensive discovery requests. Because she is employed in the information technology field, she has an expertise about information technology

---

[5]  Please see Exhibit A for information which, it can be assumed, was unknown to Judge Farnan when he stated that Plaintiffs' acted belatedly in *Townes*.

which Mr. Millett does not have.  He has, understandably and admirably, relied upon Mrs. Millett's

expertise.  The fact that he has less expertise or less knowledge than Mrs. Millett does not make him an

unsuitable class representative.  Despite his frustrations with the legal proceedings which have consumed

the family's energy for over three years now, he has seen to it that counsel was employed and has supported

the excellent work of his wife to manage the details of the litigation and the information about the credit

reporting industry.  (See also App. Ex. A; App. Ex. J)

Finally, Plaintiffs can turn their efforts toward a reply to the legal portion of the Answering Brief.

A class action remedy is appropriate for all the reasons stated in the Fourth Amended Complaint, motion for

certification, and motion for partial summary judgment.

Arguments as to uniformity of marketing.  Defendant argues that its contracts were not uniform because the

contracts incorporated the web site and Defendant asserts that Plaintiffs have provided no evidence that the

marketing materials were uniform.  Plaintiffs are not required to establish each and every element of their

claim in order to seek class certification.  (Answering Brief p. 17)    [Redacted]

To the extent there is

an issue of fact about the frequency of the ads change and language, this issue is not determinative of the

issue of preliminary class certification.

---

[6] Plaintiffs note that the current advertisements no longer utilize this phrase and that the web page viewable
on September 27, 2007 by counsel was structured to resemble the advertisement language which Judge
Selna opined to be puffery in the matter of *Millett v. Experian Information Solutions, Inc. et al*, C.D. Calif.
Case No. SACV-00979 JVS (Aff., Ex. A attached)
       Defendant produced several boxes of advertisements and counsel for plaintiffs will decline this
invitation by defense counsel to produce them all to the Court with this reply.  As defense counsel concedes,
Plaintiffs need not provide proof of each element of their claims in order for the Court to certify the class.

Damages.   Defendant asserts that Plaintiff Melody Millett was in error when she stated in her deposition that the class members should seek restitutionary damages.  (Answering Brief p. 13)  Mrs. Millett is not an attorney and, as a lay person, she estimated that the damages for the members of the class could be measured.  She suggested that a measure could be the amount paid by the consumer for the defective product.  (Answering Brief p. 14)  Defendant appears to argue that compensatory damages are appropriate because compensatory damages are adequate to place the injured party in as good a monetary position as it would have enjoyed if performance of the contract had been rendered as promised.  (Answering Brief p. 13)  The cases which Defendant cites as authority for this position are clearly inapplicable to this matter, however.

Defendant relies upon Hart v. Dart Group Corp., 877 F.Supp. 896, 901 (D. Del. 1995).  *Hart* involved a claim brought pertaining to the value of stock and the court determined that it was the Defendant's acts which prevented the court from determining, with any degree of certainty,  the value of the stock.  Plaintiff recovered damages. Id.   Defendant also relies upon Council of Unit Growers v. Freeman Assoc., 564 A.2d 357, 359-60 (Del. Super. 1989).  The Delaware court addressed construction defect damages and determined that traditional measures of contract damages were inapplicable.  This opinion does not support Defendant's proposition that damages cannot be measured or that property must be returned to recover in a contract claim.    In *McClain v. Farone*, which Defendant also cites, the court refused to award any damages which were not within the contemplation of the parties to the contract.  McClaine v. Faraone, 369 A.2d 1090, 1091-93 (Del.Ch. 1977).   Instead, it determined that Defendant should pay the value of the property as it was valued on the day of Plaintiffs' purchase.  The property did not have to be available in order for those damages to be awarded.

Defendants then seem to contend that, because the product had some value, restitution is not an appropriate award of damages.  (Answering Brief at p. 14)  Defendant stretches that concept to argue that the product cannot be returned and so restitution is not an available remedy.  This argument, Defendant claims, is supported by an unpublished opinion, R.M. Williams Co., Inc. v. Frabizzio, Slip Opinion, Del. Super. Case No. Civ.A 90C-MY-10 (Del. Super.  February 8, 1993) (1993 WL 54423).  In *R.M.Williams*,

the Delaware court determined that restitutionary damages would not be available to the plaintiffs because to allow those damages would allow Plaintiffs in that action a "double recovery." Williams, 1993 WL 54423 at *14-15. The court determined instead there was a more appropriate measure. Id. The court did not, as Defendant implies, require a return of property before any damages could be awarded. In *Asset Recovery Services, Inc. v. Process Systems Integration, Inc.*, another unreported decision which Defendant cites in support, Plaintiff was denied restitutionary damages because plaintiff failed to prove any damages. Asset Recovery Services, Inc. v. Process Systems Integration, Inc., Slip Opinion, Del. Com. Pl. Case No. CIV.A1999-10-124 (Del. Com. Pl. February 6, 2002) (2002 WL 31999347).

It is not necessary that all class members have identical factual situations in order for a class to be certified. A class which contains those who were aggrieved by the Defendant's misrepresentation can be certified. Even if class members have differing measures of damages, this does not prevent the certification of purchasers of a product as a class. Certification of a single, nationwide class is appropriate even in instances where certain class members may be eligible for punitive damages under their state laws, while other class members may only be eligible for "full consideration" damages. In re Warfarin Sodium Antitrust Litigation, 391 F.3d 516, 530 (3rd Cir. 2004). "Under a 'full consideration' statute, a consumer can recover the full purchase price paid, as opposed to receiving reimbursement of only the overcharges." Id. A class can be certified despite variations in state law rights and remedies. Id. Such differences are "insufficient to defeat commonality and predominance." In the event such issues remain after certification, "any material variations could be considered in the context of calculating damages as well as in assessing the fairness of the settlement." Id.

Even if the value of an item has some value, damages can be recovered if the amount was reasonably within the contemplation of the parties at the time that the contract was made. *See*. e.g. McClain v. Faraone, 369 A.2d 1090, 1092 (awarding damages for costs incurred because the amount was "reasonably within the contemplation of the parties"). Defendant indicated in its contracts that the value of the losses contemplated would be limited to the cost of the purchase price of the product. (Exhibits N, O and P, Motion for Class Certification)(But see Plaintiffs Memorandum in support of its motion for summary

judgment pages.  It is inconsistent now for Defendant to argue that loss of moneys expended for the product were not within the contemplation of those who signed the uniform contracts.

<u>Kansas Consumer Protection Act "KCPA" Claims</u>.   Defendant argues that Plaintiffs cannot bring a claim, pursuant to the Kansas Consumer Protection Act ("KCPA" or "the Act"), for class damages because they cannot meet the requirement of K.S.A. § 50-634(d).  (Answering Brief pp. 15-16)   K.S.A. § 50-634(d) provides that a consumer who suffers a loss as a result of a violation the Act many bring a class action for damages caused by an act listed in K.S.A. §§  50-626 or 50-627.  Plaintiffs may bring a class for violations of KSA §§ 50-626 and 50-627.  Some of the unconscionable acts of Defendants are demonstrated in Plaintiffs' Motion for Partial Summary Judgment.  Defendant relies upon two cases for the proposition that Plaintiffs cannot meet the requirements of Section 50-634: <u>Benedict v. Altria Group, Inc.</u>, 241 F.R.D. 668, 680 (D. Kan. 2007), and <u>Finstad v. Washington Univ. of Topeka</u>, 845 P.2d 685, 692 (Kan. 1993).

In *Benedict*, the court required the class representative to show that the members were promised and did not get cigarettes that delivered lower levels of tar and nicotine.  <u>Benedict</u>, 241 F.R.D. at 679.  It found that the Named Plaintiff could not do so.   In this matter, however, the contract of Defendant incorporated the materials from the web site which indicated that the consumers would be protected from identity theft. Defendant made the statement knowing that the "credit report" did not contain all of the data needed to detect identity theft and could not prevent it.  (See motion for Partial Summary Judgment)  Corporate officers and supervisors stated in their depositions that the product reduced its customers' damages because a consumer might learn about a change in their credit report after there was an instance of injury.  (App. Ex. C; App. Ex. D; App. Ex. E: App. Ex. K) (See also App. Ex. B; App. Ex. S: App. Ex. V)  The consumer, were they to learn of fraud, would have to investigate and work to remove any incorrectly reported information from their "credit report".  (See, Opinions attached to App. Ex. A; App. Ex. P)

In this instance, no individualized damages would be measured by the amount of tar and nicotine consumed by each smoker, as was the case in *Benedict*.  In this instance, each purchaser is damaged because the "credit report", the product or service sold, cannot work to prevent identity theft or fraud.  The credit report might alert to some items in some credit files received from TransUnion if the item were

reported to TransUnion in such a manner that its computers detected it as a new, placed it on the account of the credit file being monitored, and alerted the correct consumer. (App. Ex. H; D.I. 261) If all these steps occurred correctly for an account while the "watch" was set, a consumer would be notified of a "change" in a "credit report". The consumer would then be advised to detect and correct any fraud. This is not prevention of identity theft. This is not protection from identity theft. In each year from 2001 to 2006, Defendant advertised complete identity theft protection was available to purchasers. Purchasers saw advertising when enrolling. The contract said the services were described in the web pages. (See Motion for Summary Judgment)

In *Finstad*, a second case Defendant relies upon, the students of a court reporting school were denied damages because the students could not prove that any losses were incurred as a result of a premature statement in the school catalogue that the school had been accredited. The *Finstad* action was brought one year prior to the time that the KCPA was amended in 1991. The KCPA now indicates that violations of K.S.A. § 50-626(b)(1)(B) in the Act are actionable whether or not a consumer has been misled. Id. at 690-91. Plaintiffs' claims in *Finstad* were brought before that amendment was effective. This action was filed much, much later than the 1991 amendment. In addition, there are also unconscionable acts defined in K.S.A. § 50-627 which are not the subject of the *Finstad* opinion. It is true that the Kansas Supreme Court has determined that the consumer must be damaged by a violation of the Act in order to recover. Finstad, at 691-92. The Kansas Supreme Court defined an aggrieved consumer to be a party whose pecuniary interest *may be affected*, or one whose pecuniary interest *is* directly affected by the action. Id. at 691. Plaintiffs have alleged that the class members are aggrieved. Plaintiffs have alleged that the misrepresentations of the Defendant were a misrepresentation to all members of the class and that the class members have expended funds to purchase a product which Defendant knew could not perform as represented. (Complaint paragraphs 33 to 53; Summary Judgment Motion) Plaintiffs are adequate representatives of that class. (App. Ex. A; App. Ex. F; App. Ex. J) (Motion for Partial Summary Judgment and Memorandum in Support)

10

Class Definitions: Argument as to Numerosity. Defendant asserts, on page 16 of its Answering Brief, that the class definitions are "ridiculously overbroad". This is inconsistent with their statements in the Answering Brief that the class definition in *Townes* is not only enforceable but that it is appropriate. The class definition is *Townes* includes all individuals who entered into agreements to purchase a wide variety of products, including products that the Named Plaintiff in *Townes* had not purchased. In addition, the class period begins in 1999, before credit monitoring was offered or could have been purchased by Townes. (App. Ex. A)

Defendant contends that the *Townes* class includes all purchasers of credit monitoring  This is inconsistent with their statements on pages 16 and 17 of the Answering Brief that the class in this action should not include those who received refunds, those who did not rely on marketing representations, those who understood that their "credit report" would be monitored, those who purchased credit monitoring for some reason other than identity theft, and those who purchased credit monitoring when there were no misrepresentations. Such distinctions were not an issue for Defendant when it proposed the class settlement in *Townes*. The action in *Townes* involved claims for violation of CROA and yet Defendant now asserts that those who purchased credit monitoring for reasons unrelated to CROA should be able to recover as class members in the *Townes* class but not in this matter. Answering Brief  p. 18. Each consumer expended funds for products which did not function as represented. (See Motion for Partial Summary Judgment) The class definition in this matter is not overly broad.[7]

Defendant also contends that Plaintiffs cannot establish numerosity because some class members did not see or rely upon misstatements. (Answering Brief at page 18) Enrollment could only be accessed on the internet by entering through the Defendant's web pages which were incorporated into the contract. (Summary Judgment Motion pages)   In addition, whether or not individuals purchased the product because

---

[7]  For purposes of argument, Plaintiffs note that the number of individuals who opted out of the *Townes* case includes over 300 individuals. (*Townes* Doc. No. 94)   Accepting, for purposes of argument only, that the class settlement in *Townes* precludes recovery for those who did not opt out, those who did opt out would still have a claim in this action. Defendant is inconsistent when it contends that Plaintiffs cannot establish numerosity because the class is subsumed in the settlement in *Townes*.

they were fearful of identity theft is not fateful to class certification.  The product did not perform in a number of ways.  (Summary Judgment Motion)

Defendant also argues that the class in this matter cannot include those who were entirely satisfied with the product.  (Answering Brief at p. 18)  This, too, is inconsistent with Defendant's assertion that the *Townes* class includes all members of this class.  If the *Townes* settlement class includes consumers who were satisfied and did not request a refund, but this class cannot be certified because it includes those consumers, the class definition in *Townes* is overly broad.

<u>Argument as to Commonality</u>.  Defendant alleges, without factual or legal support, that any common question of law or fact as to the class members in this action "pales in comparison to the significance of issues requiring individualized evidence."  (Answering Brief p. 19)  "Issues not briefed are deemed waived."  <u>Emerald Partners v. Berlin</u>, 726 A.2d 1215, 1224 (Del.Supr. 1999). Defendant identifies no individualized evidence which would be required.  Defendant does not identify any unique defenses it would offer. Defendant entered into uniform agreements (Exhibits N, O, and P to Plaintiffs' Class Motion), Defendant engaged in national advertising which was displayed when consumers enrolled, Defendant charged consumers the same price, as it enrolled them with the same contract and terms at any given time, and Defendant's product or service was operated with basically the same operational steps.  (Deposition of Anderson, pp. 80 to 81, App. Ex. D).  Defendant cannot explain what individualized evidence should predominate over these common questions.  (Answering Brief p. 19)

<u>Argument at to Typicality</u>.  Defendants allege that the claims of Named Plaintiffs are atypical because not all consumers were concerned about identity theft and because all consumers did not believe that personal pieces of identifying information would be monitored.  Plaintiffs have established that consumers believe that "identity theft" includes the use of personal identifiers.  (Plaintiffs Summary Judgment Motion) Defendant attempts to defend this case by stating that identity theft is only important when incorrect data appears on a "credit report".  This is not the position it takes when it trains its employees.  [Redacted]

It is inconsistent for Defendant to argue in this matter that consumers would not want to know this information and also to market a product by offering to detect identity theft information and to prevent identity theft and fraud altogether.  A "credit report" does not have the information needed to detect all forms of identity theft.  (Summary Judgment Motion)

Defendant relies upon a Third Circuit case in support of its argument.  Georgine v. Amchem Prods., Inc., 83 F.3d 610, 631 (3d Cir. 1996).  The *Amchem* case is clearly distinguishable.  The Third Circuit determined that the class in *Amchem*, consisting of personal injury plaintiffs who sought to recover a variety of medical costs, had "too little in common".  Id. at 632.  Some of the personal injury class members, the court noted, would contract different diseases and some would "incur little or no physical impairments".  Id. This is not controlling in this contract and consumer fraud matter.

Argument  as to Adequacy of Representation. Defendant asserts that, because Melody Millett would be a better class representative, Steven Millett is an inadequate representative.  Defendant's own employees are provided with scripts for telephone calls and told what to say to individuals who telephone to obtain service on behalf of someone else whose credit report is being monitored.  (App. Ex. F)  Defendant clearly understood that some consumers would require other individuals to assist them with the product's performance.   To argue now that such an individual is an inadequate class representative is inconsistent.

Mr. Millett is not, as Defendant asserts, totally unfamiliar with the facts of the case.  Mr. Millett testified that he knew the basis of the claim was for the credit monitoring product offered and that there was a lot of communication with his attorneys.  (App. Ex. H, pp. 10-12, 20-21, 32-33, 117, 143)  He knew general information and he saw the marketing on line when the product was purchased to protect him from identity theft.  (App. Ex. H, pp. 34-37, 101-02, 123, 147-50)   In addition, he knew:

- the relief which should be provided to the class  (pp. 32-35, 173);

- the class he wanted to represent included those who purchased the product and the persons who bought the product but did *not* know that the product did not work  (pp. 45-48, 126-27);

---

[8]   Defendant represents it will detect fraud. (Exhibit M to Motion for Certification)

- electronic mail he viewed indicated his credit was fine but he had not been able to get good credit (pp. 49-50, 69-71, 76-77, 83, 110-15, 140-41, 153-57, 161);

- the approximate date when he bought the product (p. 51);

- that the Defendant was being asked to change its deceptive advertising  (pp. 51-52, 115);

- the "credit report" might not be telling him everything he needed to know about identity theft (pp. 86-87);

- that more than one product had to be purchased to cross reference credit reporting agency information from three bureaus  (pp. 104-05);

- the parties and the courts  (pp. 119, 125);

- the names of the first three attorneys he hired (pp. 17, 54);

- the general status of most of the cases  (pp. 55-57, 108);

- the nature of confidentiality agreements.  (pp. 55-57, 65); and

- that he had made efforts to help the class and fix his credit  (pp. 142-43).

He believed that some class members had been paying longer than others so the damages might be adjusted. (pp. 128-29)  Although he had drafting help with his interrogatory answers, he did look the answers over and knew the questions were originally sent to his wife for him by the lawyers.  (pp. 129-32, 136-37)  Mr. Millett hired lawyers and had his wife handle the litigation details but he reviewed the complaints.  (pp. 17-18, 23, 33, 55, 76, 96)  Mr. Millett and his wife decided to file the lawsuits because the credit reporting agencies and others were using his Social Security number and information as well as handling records kept for an identity thief.  (pp. 26-29)  The manner in which Mr. Millett was questioned in his deposition was confusing to him.  (pp. 34-36, 50-51, 87-89, 120, 130-32, 136-39, 142-44, 163-64, 172-75)[9]  Mr. Millett did not want to be involved with the lawsuits but he had no choice because it was the only way to fix things. (pp. 132-34, 163)

---

[9]   Mr. Millett, like other consumers, was confused by the number of names utilized by Defendant and its subsidiaries and predecessors in interest over the years.  Even now, the name of TransUnion Interactive or TrueCredit is only explained in fine print on web pages.  (App., Ex. B; App. Ex. W; S.I. 261, Ex. B )

Defendant relies upon a 1986 Colorado decision as support for its proposition that Mr. Millett is an inadequate representative. (Answering Brief pp. 20-21, citing In re Storage Technology Corp., 113 F.R.D. 113 (D. Colo. 1986).) The Colorado court determined that some of the *Storage Technology* plaintiffs would be inadequate class representatives. Other plaintiffs were found to be adequate, however. Id. at 118-19.[10] Mr. Millett was aware that the basis for the action was the sale of the product, was aware that procedural aspects of the case could change, knew the names of the attorneys he hired directly and with whom he had personal contact, he was angry about the protracted litigation, and he wanted the information available to Defendant and its parent. He knew he was responsible for the class and he obtained the help he needed. Named Plaintiffs are allowed to rely upon the legal representatives they employ. Just as Defendants contemplated when they instructed their employees that family members might do so, Mr. Millett has authorized Mrs. Millett, his wife, who is quite knowledgeable about information technology, to assist him to investigate the claim and monitor the litigation. When deciding to enroll in the product, Mr. Millett determined that the product would help him. The product was to track his information. Mrs. Millett, who handled the family's finances                    [Redacted]                          , discussed the product with Mr. Millett; he was the person who indicated that, if the product would help, then the family should purchase the product. In addition, as concerns the KCPA class, the information which Defendant alleges Mr. Millett should know is irrelevant. A KCPA claimant does not have to be a contractee in order to bring an action that conduct was unconscionable as defined by the KCPA. (Summary Judgment Motion)

Defendant has admitted that both Named Plaintiffs are consumers as defined by the KCPA. (D.I Ex. I) Defendant asserts that Mrs. Millett cannot be a class representative because she is not a party to the contract. Defendant asserts that Ms. Millett, even as a purchaser of a credit report from the TrueCredit

---

[10] Adequate representative Katechis did not know the specifics alleged in the complaint but he was aware of the underlying basis for the action, knew certain procedural history of the case, and knew the lead attorney. Id. at 118-19. Named Plaintiff Orlofsky understood that the allegations of the action had changed, that he had financial obligations, that he would represent the class, that he could defer to his attorneys for tactical decisions, and that he was angry. Id. Scarff, another Named Plaintiff, had good understanding because he had been a paralegal and had hired adequate counsel. Id. Spear was also found to be adequate because he understood that the class would benefit if the action were successful.

website, cannot be a party and that she is an undisclosed agent. (Answering Brief p. 25) Ms. Millett made no attempt to hide the fact that she was purchasing the product from her computer with her debit card. Defendant's own records establish this. (App. Ex. I)  Defendant was prepared for, and contemplated, that multiple family members would be involved in the monitoring of a consumer "credit file". (App. Ex. F) Ms. Millett was an aggrieved consumer and she applied for credit jointly with her husband. (App. Ex. J) The Kansas Consumer Act does not require that an action be brought by the purchaser of the product. (Summary Judgment Motion)

Other jurisdictions have allowed the spouse of a consumer to represent the class. *See, e.g.,* Arkansas Blue Cross and Blue Shield, v. Hicks, 78 S.W. 2d 58, 66-67 (Ark. 2002). In *Hicks*, the wife of the Medicaid recipient represented the class. The Medicaid recipient was failing and confined. His wife indicated to class counsel that she was willing to participate in the litigation by attending hearings and depositions "in an effort to help other poor families recover monies spent on unnecessary insurance." Id. at 66. The wife  told class counsel to keep in contact with her and let her know what was going on. She then appeared at hearings. Id. at 67. This was adequate representation, the court determined, because she displayed interest in the action, familiarity with the challenged practices, and ability to assist in litigation decisions. Id. at 67.

Defendants excuse their lack of performance in a footnote and argue that Ms. Millett knew that the material in the "credit file" would not be reported. (Answering Brief p. 26, fn 8)  Defendant's performance cannot be excused. The Milletts were unable to obtain credit cards, could not purchase a home at reasonable rates, and the children's trusts were tied to the Social Security number being maintained by Trans Union about others.   A representative from Trans Union was even present at a meeting with counsel for the parties and Mrs. Millett. (App. Ex. A) Counsel said that if the "credit report" brought to that meeting was accurate, there was no need for concern about inaccurate information in Trans Union's files. After this statement was made, credit was denied Steve Millett based upon a Trans Union "credit report". (Summary Judgment Motion)  Plaintiffs have established, after the filing of the action, that data about another individual's credit had been mixed with the credit file associated with Mr. Millett. (Motion Partial

Summary Judgment)  Trans Union had withheld this information from Defendant and from Plaintiffs. (Motion Partial Summary Judgment)  Counsel and Defendant would now deny that these consumers have standing to bring claims.  These Named Plaintiffs received product emails and "credit reports", and were told by defense counsel that there was no inaccurate information to cause concern.

If these Named Plaintiffs are inadequate, undisclosed, improper class representatives because they are not aggrieved, knowledgeable or competent, it is hard to understand who would be acceptable to Defendant.  The Named Plaintiffs' interests are aligned with all purchasers of the product who were told that the "credit report" was a valuable tool for detecting identity theft and that you could rely upon the information in the "credit report".  (Motion for Partial Summary Judgment)

Defendant asserts that the Milletts cannot be class representatives because Ms. Millett did not read every page available from the TrueCredit or Trans Union web site when enrolling.  (Answering Brief p. 27) No such conduct was required to enroll.  If this additional information, information which was available prior to enrollment, was necessary to make the Defendant's representations about the product complete, then the pages should have been required reading before enrollment was allowed.  If the explanation was required, the materials of Defendant and its parent were misleading.

Named Plaintiffs do not have a conflict with the class.  Defendant argues that the class members really should seek $10,000 each in civil penalties and that Named Plaintiffs, who are litigating on behalf of these consumers, would be insufficient class representatives if they did not do so.  (Answering Brief pp. 27-28)  However, questions pertaining to claims brought pursuant to K.S.A. § 50-626 must be decided by a jury.   Named plaintiffs would be filing a frivolous motion to make such a claim for damages prior to trial as Defendant invites them to do.  Named Plaintiffs seek class relief.  (Fourth Amended Complaint,  Motion for Partial Summary Judgment and Memorandum in Support)

Plaintiffs have labored mightily in an attempt to bring to light information about the credit reporting industry. (App. Ex. A; App. Ex. J) Defendant argues both that Named Plaintiffs are inadequate representatives because they have done so and that they are inadequate because they have not done more.

The Milletts have prosecuted these actions to the best of their ability and to the point where Mr. Millett is frustrated.  Plaintiffs bring an adequate claim.  (Motion for Partial Summary Judgment)

Arguments as to Adequacy of counsel.  Plaintiffs' counsel are not inept.  (App. Ex. A)  Discovery disputes are not indicative of ineptitude.  Motions to compel discovery have not been filed and such argument is beyond the scope of this Reply.

Defense counsel also claims that alleged shortcomings of Plaintiffs' experts are indicative of ineptitude.  Issues pertaining to the quality of the expert reports have not been briefed for the court and the issues are not determinative of the adequacy of counsel.  Plaintiffs timely designated their experts and the expert depositions will demonstrate the validity of the opinions.

Rule 23(b)(3).  Defendant repeats many of its allegations when discussing the issues of predominance and superiority.  Plaintiffs, in order to avoid redundancy, incorporate their arguments herein as pertains to losses of the class.  Plaintiffs incorporate their arguments herein as to predominance of common issues.  Plaintiffs incorporate their arguments herein concerning class wide, uniform deception about the use of the "credit report" as a marketing tool.  Plaintiffs are not responsible for the fact that the contract incorporated web materials and that the contract was so vague as to be unconscionable.  (Summary Judgment Motion)  All purchasers expended moneys for "credit reports" and Defendant and its parent were aware that the "credit report" could not detect all forms of identity theft.  (FTC Report, D.I. 261, Ex. H)  Additionally, Plaintiffs ask the Court to refer to their briefing herein to address the allegations that other litigation should control or influence the decision of this court as to the claims in this action.  Plaintiffs have noted for the Court the inconsistencies in the logic of Defendant that these claimants have not, despite all their efforts, done enough to establish competency and dedication to the class or that other class members would be better to pursue their own individual claims.  Were such individuals to do so, they would also be subject to these same defenses raised.  If individuals are disinclined to pursue class claims, it is not a poor reflection on Named Plaintiffs' diligence and competency; they alone have been willing to undertake this effort.  As Steven Millett noted, others might not know what he does.  In addition, after years of litigation, Defendant argues

that Plaintiffs should recover, at most,  just over $250.00  Plaintiffs have been denied credit after being told, as Mr. Millett phrased it "Hunky Dorey".  (App. Ex. G)

Defendant falsely states that Plaintiffs are seeking minimal relief for the class.  (Motion for Partial Summary Judgment)  Counsel for Defendant cannot harmonize its positions.  If class members have additional actions to pursue, as Defendant asserts, then class members cannot be properly included in the *Townes* settlement.  Even if, as Defendant asserts, certain class members had differing amounts of damages, bifurcation for a determination of differing damages is a well-recognized solution.  Finally, it was not error to file for a class certification pursuant to Rule 23(b)(3) rather than 23(b)(2) because injunctive relief was not the dominant relief requested.  F.R.Civ.P. 23(b)(2).

This matter is appropriate for preliminary certification of the class.  Plaintiffs respectfully request that the Court grant its Motion for Class Certification.

Respectfully submitted,

Christopher J. Curtin
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ccurtin659@aol.com

and

Barry R. Grissom, Esq.
KS Bar. Id. No. 10866                         YEAGER LAW FIRM, LLC
Overland Park, Kansas 66212                   By: /s/ B. Joyce Yeager
Phone: (913) 341-6616                         B. Joyce Yeager, Esq.
                                              KS Bar. Id. No. 18932
and                                           P.O. Box 2469
                                              Mission, KS  66201
Bryson R. Cloon                               Phone: (913) 648-6673
KS Bar. Id. No. 08660, MO Bar.
Id. No. 36843                                 and
Cloon Law Firm
11150 Overbrook Road                          Michael W. Blanton,
Leawood, KS 66211                             MO Bar. Id. No. 46490
Phone: (913) 661-9600                         Swanson Midgley, LLC
Facsimile: (913) 661-9614                     2420 Pershing Road, Ste. 400
                                              Kansas City, Missouri 64108
and                                           Phone: (816) 842-6100

COUNSEL FOR PLAINTIFFS

20

**CERTIFICATE OF SERVICE**

I, B. Joyce Yeager, hereby certify that on October 11, 2007, I served a copy of the foregoing

Redacted Reply by depositing the same in the United States Mail, postage prepaid to:

    William M. Lafferty, Esq.
    Jay N. Moffitt., Esq.
    Morris Nichols Arsht & Tunnell
    1201 N. Market St.
    Wilmington, DE 19801
    wlafferty@mnat.com

    and that I served a copy electronically this day to the following:

    Michael C. O'Neil
    Paula D. Friedman
    DLA Piper US LLP
    203 N. LaSalle St., Ste. 1900
    Chicago, IL  60601-1293
    michael.Oneil@dlapiper.com
    paula.friedman@dlapiper.com

                        Yeager Law Firm,
                         /s/ B. Joyce Yeager
                        B. Joyce Yeager, *pro hac vice*
                        KS Bar No.  18932, MO Bar No. 46013
                        P.O. Box 2469
                        Mission, KS  66201-2469
                        (913) 648-6673
                        Facsimile (773) 326-3538

DATE: October 11, 2007