IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEVEN G. MILLETT, MELODY J. MILLETT, On Behalf Of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUELINK, INC., A Trans Union Company,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 05-599-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION TO STRIKE TESTIMONY OF RONALD DIMBERT

Defendant Truelink, Inc. ("TrueLink") moves this Court to strike the testimony of Ronald Dimbert ("Dimbert") offered by Plaintiffs Steven and Melody Millett (the "Milletts") in support of their Motion for Class Certification ("Class Cert. Motion") and Plaintiffs' Motion for Partial Summary Judgment ("Sum. Judgment. Motion") for the following reasons:

The Milletts produced an expert's report under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure authored by Dimbert (the "Dimbert Report") in which he claims to have conducted a survey of Kansas consumers as to their expectations upon reading only one of the pages found on the TrueLink website offering credit monitoring services. The Milletts have subsequently attached this report to their motions for class certification and summary judgment to support their contentions that: a) consumers encountering TrueLink's marketing materials for credit monitoring services have extremely high expectations concerning the product's performance (Plaintiff's Brief in Support of Motion for Class Certification ("Class Cert. Brief") pp. 12-13); b) Kansas consumers believe that the use of a Social Security number by another is a form of identity theft (Sum. Judgment Motion p. 6); and c) the use of personal identification

information is a form of identity theft (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment p. 10).

The Dimbert Report, however, does not provide competent and admissible evidence on these points because it is seriously flawed and fails to meet the standards for relevance and reliability under Rule 702 of the Federal Rules of Evidence as explained by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

Some of the most serious flaws in the Dimbert Report include:

(a)    The issue in the Sum. Judgment Motion is what the Milletts believed when they encountered the page from the TrueLink website that Mr. Dimbert included in his study. The opinions and beliefs of others have no bearing on the issue of what the Milletts believed. Thus the Dimbert Report is irrelevant for purposes of the Sum. Judgment Motion.

(b)    The Class Cert. Motion defines two putative classes, one national in scope and one confined to Kansas residents. Both classes are limited to purchasers of TrueLink's credit monitoring products. Dimbert does not use either of these classes for his samples in his survey. His results, therefore, are not relevant.

(c)    Dimbert asked the wrong questions. He created his entire study under the misconception that the internet page containing some of TrueLink's materials was a stand alone pop up advertisement. He therefore did not attempt to put the page or the questions he asked about it into any context simulating that which a consumer would experience when encountering this material in the real world. Instead he had survey participants read the page and with the screen still in front of them, respond to questions using words that they could locate on the page to answer multiple choice questions without any reference to credit reports. His results are

2

scientifically unsound and his stimulus does not come close to approximating the manner in which a real customer would encounter the material.

The question before this Court is whether a reasonable consumer who purchases credit monitoring services from TrueLink after viewing the material in question would reasonably believe that they are going to receive information which is not included in any credit report relating to that consumer. The Dimbert Report was not designed to answer this question and, therefore, does not provide useful, reliable or relevant information.

(d)  Dimbert surveyed the wrong universe and therefore cannot supply useful information with respect to the putative class members. The proposed class is defined as "All person who have purchased credit monitoring services from TrueLink...." (Class Cert. Motion pp. 1-2). Dimbert admits that his survey cannot be interpreted to reflect the opinions of a national class of consumers because his study was exclusively limited to Kansas residents found at one shopping mall location in Kansas. It is not scientifically valid to project probabilities of responses over the national population due to the limitations in the sample used. Further, even though Plaintiffs note in the Class Cert. Brief that they are limiting their second class to residents of Kansas, Dimbert has admitted that he cannot opine as to the probability of responses of "all Kansas residents who purchased credit monitoring services from TrueLink on or after September 9, 2001" because he took too small a sample from any relevant pool to permit him to draw valid conclusions. In short, the population for the Dimbert survey was not properly chosen for the purposes of this case.

(e)  Finally, among other things, the Dimbert Report methodology is flawed in that he did not present any control group. There is no way to determine what the respondents believed about such terms as "credit report" and "identity theft" and what they learned from the questions.

Further, Dimbert asked only close ended questions in a form that strongly suggested a "yes" answer. The questions used words from the TrueLink material while the participant was still allowed to view the material suggesting there was a "right answer." Dimbert cannot now determine if the response reflected the respondent's impression of the ad or if it reflected a desire to follow the question's lead and give the "correct" answer. Finally, other questions critical to his conclusions are improper in form, such as compound or ambiguous, and the results cannot support any relevant conclusion for purposes of this case.

For these and all the reasons expressed in the brief submitted with this motion, Defendant respectfully requests that this Court strike the proffered evidence and testimony supplied from Ronald Dimbert.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By: /s/ Jay N. Moffitt
William M. Lafferty (#2755)
Jay N. Moffitt (#4742)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

OF COUNSEL:

Michael O'Neil
Paula D. Friedman
DLA Piper US LLP
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601
(312) 368-4000

October 29, 2007

## CERTIFICATE OF SERVICE

I, Jay N. Moffitt, hereby certify that on October 29, 2007, I electronically filed the foregoing **MOTION TO STRIKE TESTIMONY OF RONALD DIMBERT** with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

### BY ELECTRONIC SERVICE

Christopher J. Curtin
Erisman & Curtin
629 Mount Lebanon Road
P.O. Box 250
Wilmington, DE 19803

And that I served a copy this day by electronic mail and by depositing in the United States mail, postage prepaid to:

Christopher J. Curtin, Esquire
Erisman & Curtin
629 Mount Lebanon Road
P.O. Box 250
Wilmington, DE 19803

B. Joyce Yeager, Esquire
Yeager Law Firm LLC
P.O. Box 2469
Mission, KS 66210

_____
Jay N. Moffitt (#4742)