# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEVEN G. MILLETT, MELODY J. MILLETT, )
On Behalf Of Themselves and All Others )
Similarly Situated, )
                                  )
        Plaintiffs, )
                                   )        Case No. 05-599-SLR
v. )
                                   )
TRUELINK, INC., )        **REDACTED VERSION**
A Trans Union Company, )
                                   )
        Defendant. )

## DEFENDANT TRUELINK INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

William M. Lafferty (#2755)
**Morris, Nichols, Arsht & Tunnell LLP**
1201 N. Market Street
Wilmington, DE 19899
Phone: (302) 658-9200
Fax: (302) 658-3989

Of Counsel:
Michael O'Neil
Paula D. Friedman
**DLA Piper US LLP**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Phone: (312) 368-4000
Fax:   (312) 236-7516

Counsel for Defendant

Original Filing Date: October 29, 2007
Redacted Date: November 5, 2007

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS.........................................................1

II.   SUMMARY OF ARGUMENT ..............................................................................................1

III.  STATEMENT OF FACTS .....................................................................................................3

IV.   ARGUMENT .............................................................................................................................3

A.    Plaintiffs Fail To Meet Their Burden To Demonstrate An Absence
      Of Material Issue Of Fact With Regard To The Unconscionability
      Under The KCPA. ......................................................................................................3

B.    Plaintiffs Fail To Establish Unconscionability Under § 50-627(B)(1)
      Of The KCPA. .............................................................................................................9

      1.    Plaintiffs fail to establish applicability of § 50-627(b)(1) ....................9

      2.    Plaintiffs were not confused or otherwise unable to
            understand the marketing and contractual language. ...........................11

      3.    There is no evidence that TrueLink knew or had reason to
            know of plaintiffs' claimed inability to understand contract
            or marketing language. .................................................................................14

C.    There Is No Evidence That The Plaintiffs' Contract Was Excessively
      One-Sided And Therefore Unconscionable Under KSA § 50-627(B)(5). .......14

D.    Alleged Product Failures Do Not Constitute Unconscionability. ....................16

      1.    Efficacy in detecting identity theft. ...........................................................16

      2.    "Watch set failures." .....................................................................................21

      3.    Blank alerts. ....................................................................................................22

      4.    Core failures. ..................................................................................................23

E.    The Attempted Contractual Disclaimers Of Implied Warranties And
Limitations Of Liability Are Not Unconscionable Under KSA § 50-627. .....26

F.    The Milletts' Motion Should be Denied Because They Are Not
"Aggrieved Consumers." ...................................................................................29

G.    The Milletts' Are Not Entitled To The Remedies They Seek.........................31

1.    The Milletts are not entitled to a civil penalty under the KCPA. ........31

2.    Even if this Court finds that the Milletts are entitled to a
civil penalty, the Milletts are not entitled to a civil penalty
in the amount of $20,000 per day for each violation .........................32

3.    The Milletts are not entitled to a civil penalty of $10,000 per day.......33

4.    The Milletts are not entitled to attorneys' fees....................................35

5.    The Milletts are not entitled to equitable relief...................................36

V.    CONCLUSION ...................................................................................................38

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ..................................................................................... 2,5

Johnsmeyer v. Hanover Dev. Co. II,
    2005 WL 2495817 (Kan. App. 2005)............................................................ 18

Lowe v. Surpas Resource Corp.,
    253 F.Supp. 2d 1209 (D.Kan. 2003)............................................................. 33

Maberry v. Said,
    927 F.Supp. 1456 (D. Kan. 1996)............................................................ 33, 34

Porter v. Merck and Co.,
    No. 04-CV-586, 2005 WL 3719630  (Kan. Dist. Ct. Aug. 19, 2005) ...................... 31

Tufts v. Newmar Corp.,
    53 F. Supp. 2d 1171 (D. Kan. 1999)..................................................... passim

United Missouri Bank v. Gagel,
    815 F. Supp. 387 (D. Kan. 1993)................................................................ 2,5

<u>State Cases</u>

Alexander v. Certified Master Builders Corp.,
    1 P.3d 899 (Kan. 2000)............................................................................... 32

Baldwin v. Priem's Pride Motel, Inc.,
    580 P.2d 1326 (Kan. 1978)......................................................................... 18

Crandall v. Grbic,
    138 P.2d 365 (Kan. App. 2006)............................................................ 10, 12

Dodson v. U-Needa Self Storage, LLC,
    96 P.3d 667 (Kan. App. Ct. 2004)............................................................... 33

Finstad v. Washburn Univ. of Topeka,
    845 P.2d 685 (Kan. 1993)........................................................................... 29

Heller v. Martin,
    782 P.2d 1241 (Kan. App. 1989) ................................................................ 5, 6, 23

Moore v. Bird Eng'g Co., P.A.,
    273 Kan. 2 (Kan. 2002) ................................................................................ 23

Musil v. Hendrich,
    627 P.2d 357 (Kan. App. 1981) ..................................................................... 4

Remco Enter., Inc. v. Houston,
    677 P.2d 567 (Kan. App. 1984) ........................................................... 4, 10, 16

Stair v. Gaylord,
    659 P.2d 178 (Kan. 1983) ............................................................................ 28

State ex rel Stovall v. Confimed.com,
    38 P.3d 707 (Kan. 2002) .......................................................................... 5, 10

State ex rel Stovall v. DVM Enter., Inc.,
    62 P.3d 653 (Kan. 2003) ...................................................................... 4, 5, 12, 29

York v. Intrust Bank,
    962 P.2d 405 (Kan. 1998) ........................................................................ 35, 36

Zenda Grain & Supply Co. v. Famland Industries, Inc.,
    894 P.2d 881 (Kan. App. 1995) ................................................................... 28


State Statutes

Kansas Consumer Protection Act

    Kan. Stat. Ann. § 50-617(b) ........................................................................ 1

    Kan. Stat. Ann. § 50-624(h) ....................................................................... 27

    Kan. Stat. Ann. § 50-627(b) ................................................................. passim

    Kan. Stat. Ann. §50-634(b) ........................................................ 31, 32, 35, 36

    Kan. Stat. Ann. §50-636 ...................................................................... 33, 34

    Kan. Stat. Ann. § 50-639 ...................................................................... 27, 28

Kan. Stat. Ann. §50-677 ........................................................................................ 33

Kansas Uniform Commercial Code

    KSA § 84-2-314............................................................................................... 27, 28

    KSA § 84-2-315.................................................................................................... 27


Other Kansas Statutes

    Kan. Stat. Ann. §83-501 ....................................................................................... 34

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Steven and Melody Millett (the "plaintiffs" or "Milletts") brought suit against

TrueLink, now known as TransUnion Interactive, Inc. ("TrueLink"), for claims arising out of

plaintiffs' purchase of credit monitoring from TrueLink.  Plaintiffs assert claims on behalf of

themselves and on behalf of a putative class.  In the operative Fourth Amended Complaint (D.I.

76) (the "FAC"), plaintiffs assert claims for violation of the Kansas Consumer Protection Act,

Kan. Stat. Ann., 50-626, et. Seq. (the "KCPA") (Count I) and for breach of contract (Count II).[1]

In accordance with this Court's Scheduling Order, fact discovery closed on July 15, 2007, and

the deadline for the disclosure of expert reports passed on July 30, 2007.  (D.I. 82).

Plaintiffs moved for class certification on August 10, 2007 (D.I. 124).  On October 1,

2007, TrueLink moved for partial summary judgment on the claims asserted by plaintiffs in the

FAC.  (D.I. 145, 146).  On October 2, 2007, plaintiffs moved for partial summary judgment on

their claims of unconscionability under the KCPA.  (D.I. 147, 148).  TrueLink hereby submits its

brief in opposition to Plaintiffs' Motion For Partial Summary Judgment ("Plaintiffs' Motion").

## II.     SUMMARY OF ARGUMENT

Plaintiffs' Motion seeks summary judgment on their KCPA claims for unconscionability

under KSA § 50-627(b).  Motion, pp. 1, 14.  Determinations of unconscionability are to be made

after consideration of all "circumstances of which the supplier knew or had reason to know" at

the time of the allegedly unconscionable conduct.  KSA § 50-617(b).  The statute lists seven

examples of circumstances which might support a finding of unconscionability.  Id. at KSA §

---

[1]  The two other claims alleged as Counts III and IV of the FAC were voluntarily dismissed by
plaintiffs.  (D.I. 98).

50-627(b)(1) through (7). In their Motion, plaintiffs attempt to establish unconscionability under 4 separate circumstances described in § 50-627(b)(1), (5), (6) and (7).

In their effort to do so, plaintiffs do not let the relevant facts stand in their way. To the contrary, plaintiffs take astounding liberties with the evidence in the record, frequently mischaracterizing testimony given. Plaintiffs also ignore substantial evidence in the record that contradicts their asserted "facts, " preferring instead, for example, to boldly represent to the Court that TrueLink did not notify customers of certain facts, when record evidence establishes to the contrary.[2]

In any event, plaintiffs clearly fail to meet their initial burden on summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). See also United Missouri Bank v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993) (movants with burden of persuasion must make _prima facie_ case by establishing evidence to support each essential element of their claims, as well as negating any affirmative defenses of nonmovant, in order to obtain summary judgment). Thus, in order to satisfy their burden, plaintiffs must present to the Court sufficient evidence to establish each and every element of their KCPA claim, and must further demonstrate that no material facts with regard to any of those required elements remain in dispute. Among other deficiencies, plaintiffs' Motion fails to establish as a matter of law that TrueLink "knew or had reason to know" of any of the allegedly unconscionable circumstances listed in KSA § 50-627(b)(1), (5), (6), or (7). As an essential element of their KCPA claim, plaintiffs' failure to

---

[2] In addition, it appears that plaintiffs' Motion fails to comply with Local Rule 7.1.3, in that the supporting brief does not contain distinctly titled sections describing the nature and stage of proceedings, summary of argument, or concise statement of facts. It also appears that neither Plaintiffs' Motion, nor their Brief are in at least 12 point font as required by Local Rule 7.1.3.

present such evidence is fatal to their Motion. In addition, plaintiffs also fail to prove that any of the 4 circumstances applies to them. Plaintiffs also fail to present sufficient evidence from which the court could find that they are "aggrieved" as a result of the allegedly unconscionable conduct, such that they are entitled to recover damages or any relief in a private action under the KCPA. Finally, plaintiffs fail to establish that they are entitled to the relief requested.

### III.    STATEMENT OF FACTS

In their various unnumbered "facts" asserted in their Motion, plaintiffs take enormous liberties with the evidence. Because plaintiffs failed to separately number their factual assertions in their Motion, and typically refer to a supporting exhibit (e.g., a deposition or a collection of nonsequentially-numbered, unauthorized documents) without a pinpoint cite (e.g., a deposition page and line number, or a particular page of a group exhibit) responding to them is unwieldy to say the least. Nevertheless, for the sake of clarity and ease for the Court, as well as its response, TrueLink has endeavored to number the separate paragraphs asserted by plaintiffs, and sets forth its response to them in a separate Response to Plaintiffs' Purported Factual Statement ("Response to Facts"). TrueLink expressly incorporates by reference its Response to Facts as if fully set forth herein.

### IV.    ARGUMENT

**A.    Plaintiffs Fail To Meet Their Burden To Demonstrate An Absence Of Material Issue Of Fact With Regard To The Unconscionability Under The KCPA.**

By their Motion for partial summary judgment, plaintiffs seek a ruling as matter of law that TrueLink committed an "unconscionable act or practice" in violation of "the Kansas Consumer Protection Act [the "KCPA"] at KSA § 50-627(b)." See Motion, p. 1. See also id. at

p. 14.[3]  Determinations of unconscionability under the KCPA are to be made by the Court after consideration of "circumstances of which the supplier knew or had reason to know" at the time of the allegedly unconscionable conduct.  KSA § 50-627(b).  The statute enumerates seven specific (though not exhaustive) circumstances which the Court is directed to consider in determining the question of unconscionability under the KCPA.  Id. at § 50-627(b)(1) through (7).  By their Motion, plaintiffs attempt to establish unconscionability with reference to four (4) circumstances described in §§ 50-627(b)(1), (5), (6) and (7).

To prove an act was unconscionable under the KCPA requires more than proving that one or more of the enumerated circumstances exists.  See State ex rel Stovall v. DVM Enter., Inc., 62 P.3d 653,  660 (Kan. 2003).[4]  In fact, before the Court may even consider any of the enumerated circumstances, there must be evidence that the defendant "knew or had reason to know" of the applicable circumstances at the time of the transaction.  Id. §50-627(b).  See also Musil v. Hendrich, 627 P.2d 357, 372) (Kan. App. 1981) (pig seller was entitled to directed verdict on KCPA unconscionability claim where there was no proof that he knew or had reason to know at the time of the sale that some pigs would die).

---

[3]  As only one example of the Plaintiffs' mis-citations to facts and law in their confusing submissions upon their summary judgment motion, Plaintiffs repeatedly refer to "KSA § 50-257," though quoting and apparently intending to cite KSA § 50-627.  (See Pl. Br., pp. 4, 5, 6.)

[4]  Rather, the existence of any one of the circumstances listed "is one element the court must examine in combination with other facts present in the case in determining whether the seller acted unconscionably." Id. "[T]he determination of unconscionability ultimately depends upon the facts in a given case. Thus, to a great extent, the determination is left to the sound discretion of the trial court to be determined on the peculiar circumstances of each case." Id. at 657. See also Remco Enter., Inc. v. Houston, 677 P.2d 567, 573 (Kan. App. 1984) (same).

The Kansas Supreme Court has made clear that, in addition to requiring proof that defendant "knew or should have known" of the specific circumstances, plaintiffs asserting unconscionability claims under the KCPA must demonstrate (a) "some element of deceptive bargaining conduct" and (b) "unequal bargaining power." State ex rel Stovall v. DVM Enterprises, Inc., 62 P.3d 653, 658 (Kan. 2003). See also State ex rel Stovall v. Confimed.com, 38 P.3d 707, 713 (Kan. 2002) ("an act is not unconscionable absent any indication of deceptive bargaining conduct or unequal bargaining power; a transaction that merely appears unfair, or in retrospect was a bad bargain, does not state a claim under the KCPA"). Similarly, a contract is not unconscionable simply because it may have been breached or because a statement made ultimately turns out to be false. See Heller v. Martin, 782 P.2d 1241 (Kan. App. 1989) (finding breach of contract but no KCPA violation); Tufts v. Newmar Corp., 53 F. Supp. 2d 1171 (D. Kan. 1999) (contract is not rendered unconscionable simply because statement made turns out to be false).

The deficiencies of Plaintiffs' Motion, discussed in greater detail below, are several, any one of which results in a conclusion that plaintiffs failed to meet their initial burden as summary judgment movants. See Celotex v. Catrett, , 477 U.S. 317, 323-24 (1986). See also United Missouri Bank v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993) (movants with burden of persuasion must make *prima facie* case by establishing evidence to support each essential element of their claims, as well as negating any affirmative defenses of nonmovant, in order to obtain summary judgment). In fact, given the lack of clarity of plaintiffs' arguments and the non-specific (and frequently erroneous) citations to the record, it would be appropriate for the Court to deny Plaintiffs' Motion on that basis alone, rather than attempt to decipher it. In any

event, even if considered on the merits, plaintiffs' Motion fails to establish that plaintiffs are entitled to judgment as a matter of law.

First, plaintiffs present no evidence that TrueLink, at the time of the Milletts' initial purchase of credit monitoring in August, 2003, knew or had reason to know of any of the circumstances alleged in their Motion. Plaintiffs reply primarily upon misleading descriptions of TrueLink's discovery responses and the responses of certain TrueLink employees to largely irrelevant questions. For example, TrueLink's admissions as to what certain terms meant were expressly premised upon the definition imposed by the discovery responses, not the definition that could be implied or inferred from its use in TrueLink's marketing. See Response to Facts, ¶¶16-17. Rather, the so-called "evidence" cited by plaintiffs relates only to what individuals may have known at the time of their depositions – all of which occurred in 2007 at least 3 years after the subject transaction.[5] Moreover, the cited testimony is what the individuals believed certain words, taken out of context, mean to them. There is no testimony as to the drafting of marketing text or the intent behind the use of certain words or phrases in TrueLink's marketing.

Plaintiffs have tried to buttress their primary claim by reference to certain "product failures,"                    [REDACTED]                    As detailed below, some such failures simply did not occur. [REDACTED]


See Heller v. Martin, 782

---

[5]   Further, plaintiffs never took a Rule 30(b)(6) deposition of designated representative of TrueLink. The persons deposed by Plaintiffs in this litigation all testified in their individual capacities as to their individual understandings.

P.2d 1241 (Kan. App. 1989); Tufts v. Newmar Corp., 53 F. Supp. 2d 1171, 1178-79 (D. Kan.

1999). Notably, the Milletts have not moved for summary judgment on their breach of contract

claim. And while plaintiffs frequently refer to "evidence" of *Trans Union's* knowledge, there is

no evidence that *TrueLink* knew or had reason to know whatever Trans Union may have known.[6]

Second, notwithstanding the fact that determinations of unconscionability are to be made

with reference to the particular circumstances involved, plaintiffs make no reference to the

context of the single specific phrase their entire claim of unconscionability is based upon. They

would apparently prefer that unconscionability be determined in a vacuum. Plaintiffs also make

little effort to demonstrate unconscionability with respect to them and Mr. Millett's purchase,[7]

opting instead to suggest that TrueLink acted unconscionably with respect to "consumers" in

general. However, no class has been certified, so the only claims before the court are the

individual claims of the Milletts.[8] Yet plaintiffs avoid discussing facts specific to the their own

---

[6] Plaintiffs never sought discovery from Trans Union in this litigation. Accordingly, any "knowledge" they assert Trans Union may have had is pure supposition. Further, plaintiffs make various assertions regarding conduct of Trans Union which are wholly unsupported by competent evidence. (See e.g., Pl. Br., pp. 7, 8, 20-21). TrueLink submits that these should be disregarded in their entirety.

[7] For the reasons detailed in TrueLink's separate Motion for Partial Summary Judgment, Ms. Millett has no standing to bring a claim under the KCPA, as she acted only as the "agent" for Mr. Millett. For this reason, the plaintiffs' Rule 56 motion should be denied with respect to plaintiff Mrs. Millett.

[8] Though no class has been certified here, plaintiffs suggest that the size of the class for KCPA claims is 12,094. (Pl. Br., p. 4). This statement is not only remarkably presumptuous (and irrelevant for purposes of Plaintiffs' Motion), it is, more importantly, false. As plaintiffs and the Court are aware, the "class" of purchasers of credit monitoring alleged here is subsumed within the Settlement Class in the Townes Litigation which was pending in this same Court. By virtue of that Townes Settlement, which received final approval from Judge Farnan on September 11, 2007, most if not all of the Milletts' putative Kansas class have released any claims they may have had under the KCPA. See D.I. 140 at pp. 4-7, 18-19.

circumstances, instead referring to vague notions (unsupported by competent evidence) of how "consumers" would interpret certain words in only part of TrueLink's marketing. Such "evidence" is irrelevant to the Milletts' individual claims. For that reason, as well as other more substantive reasons, TrueLink is separately moving to strike the "expert" report of Ronald Dimbert, Exhibit F to Plaintiffs' Motion For Class Certification, cited by the Milletts in support of their Rule 56 motion.

Conspicuously absent, and ultimately fatal to their Motion is any evidence that *the Milletts* had any inability to understand the language used, or that *they* lacked bargaining power vis-à-vis TrueLink. In fact, as discussed below, there is substantial evidence to the contrary. Plaintiffs were sophisticated consumers, [REDACTED]

(See Response to Facts, ¶¶1-3). At the time of their purchase of credit monitoring from TrueLink, they fully understood its limitations.

Finally, plaintiffs offer no evidence of the requisite deceptiveness which must accompany a finding of unconscionability. For reasons set forth in TrueLink's Motion For Partial Summary Judgment and supporting materials (D.I. 145, 146), TrueLink's conduct was not deceptive. Rather, its marketing and contract language made clear that credit monitoring alerts customers to certain types of changes to their credit reports. Plaintiffs have no evidence, and certainly not sufficient evidence, to establish as a matter of law, and based on undisputed facts, that TrueLink's practices were deceptive.

8

For these reasons and those more fully set forth below, Plaintiffs have failed to meet their burden to establish an absence of a material issue of fact with regard to unconscionability under the KCPA.

**B.      Plaintiffs Fail To Establish Unconscionability Under § 50-627(B)(1) Of The KCPA.**

Plaintiffs argue that TrueLink acted unconscionably under KSA § 50-627(b)(1) by taking advantage of a vague inability of unspecified "consumers" to understand the language of the contract, and the inability of unnamed "consumers" to understand what information would be supplied with the credit monitoring subscription. (Pl. Br., pp. 6-8, 9-11). Under § 50-627(b)(1), one factor in determining unconscionability is whether the supplier "took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor." Plaintiffs, however, offer no evidence that they themselves suffered from some infirmity or other condition which left them unable to understand the language used on TrueLink's website and in the contract. To the contrary,

[REDACTED]

all <u>before</u> purchasing TrueLink's product in August 2003, plaintiffs were not unsophisticated or otherwise infirm consumers. <u>See</u> Response to Facts, ¶¶1-3.

1.      <u>Plaintiffs fail to establish applicability of § 50-627(b)(1)</u>

Section 50-627(b)(1) has no application here. The Kansas Legislature's Comment to this provision, which refers to some "physical infirmity, ignorance, illiteracy [or] inability to

understand the agreement," indicates that it refers to language barriers (selling an English-language encyclopedia to a non-English speaking consumer) or using legal verbiage that a low-income consumer cannot reasonably understand. See State ex rel Stovall v. Confirmed.com, LLC, 38 P.3d 707, 711 (Kan. 2002); Crandall v. Grbic, 138 P.2d 365, 379 (Kan. App. 2006).  In contrast, § 50-627(b)(1) does not apply where the plaintiff is a consumer of average intelligence. Remco Enter., Inc. v. Houston, 677 P.2d 567, 572 (Kan. App. 1984). See also Tufts v. Newmar Corp., 53 F. Supp. 2d 1171, 1183 (D. Kan. 1999) (holding § 50-627(b)(1) inapplicable because "Plaintiffs do not allege that they did not understand the terms of the agreement;  they allege that they understood the terms, but that the terms were false.").  This is precisely the situation presented here:  The Milletts offer no evidence of their inability to understand the terms used on the website or in the contract, rather, their claims (under both the KCPA and breach of contract) are premised upon the alleged falsity of those terms.  In any event, plaintiffs offer no evidence that they are anything other than sophisticated consumers, fully capable of understanding the language used on TrueLink's website and in its contract.

In addition, where a consumer has the opportunity to avail himself of information, but chooses not to do so, their argument that they were taken advantage of is not supported by the record. See Crandall, 138 P.2d at 379 (plaintiffs, who were free to attend the home inspection themselves, but chose not to, and who otherwise acted as sophisticated consumers, could not establish that they were taken advantage of in the transaction;  court affirmed entry of summary judgment for defendant on claim of unconscionability under KCPA).  Like the plaintiffs in Crandall, the Milletts offer no evidence of the type of infirmity or inability to understand the language and nature of the agreement contemplated by § 50-627(b)(1).  Their claim of

unconscionability of language in the agreement also must be rejected in light of evidence that

plaintiffs did not avail themselves of the opportunity to read the available language in question.

It is unclear whether either of the Milletts even bothered to read the agreement at the time they

agreed to it.  See M. Millett Dep., pp. 80-81, 257-259 (indicating that she only skimmed it); S.

Millett Dep., pp. 107-108 (his wife never indicated to him whether or not she read it).  Further,

regarding descriptions of credit monitoring and its features and benefits, Mrs. Millett testified

that she does not recall whether she read all explanations that were available on the website.  (M.

Millett Dep., pp. 238-241).  Mr. Millett did not read any of the descriptions on the website.  (S.

Millett Dep., pp. 100-102).  Having failed to even read the information made available by

TrueLink, plaintiffs cannot be heard to complain that the terms or descriptions were not capable

of being understood.[9]  The fact that plaintiffs may have misunderstood how credit monitoring

operated, after having read only a small portion (if any) of the extensive material available on

TrueLink's website, does not support the claimed inability to understand the language.

    2.    <u>Plaintiffs were not confused or otherwise unable to understand the marketing and contractual language.</u>

Plaintiffs contend that they expected TrueLink to advise them of any use of Mr. Millett's

social security number, whether or not such use showed up in his credit report.  However, the

only website statement that they point to *which they read* is "complete identity theft

---

[9]  Indeed, as a matter of law, plaintiffs cannot have been aggrieved by an allegedly
unconscionable use of language they now perceive as confusing but which they did not read (and
thus, made no attempt to understand) at the time of their transaction.  Accordingly, Plaintiffs'
testimony – citations to which are so conspicuously absent from their Motion -- undercuts their
claim of harm resulting from the alleged unconscionability.

protection."[10] Exhibit G to TrueLink's Response To Statement Of Facts (Millett 00871) is the webpage plaintiffs claim Mrs. Millett viewed when purchasing credit monitoring. That webpage states: "Protection:  Complete identity theft protection *with weekly fraud-watch emails*." Id. (emphasis added).  "Weekly fraud-watch emails" are then described on the same page as "weekly email alerts to changes *in your report*" providing notification "about *credit report* changes . . ." Id. (emphasis added).  Notably, there is no specific language suggesting monitoring of social security numbers. See also September, 2003 and October 2003 TrueLink Emails (Exhibits K and L to Response to Facts) (neither of which mentioned or suggested monitoring of Mr. Millett's social security number).

   To believe plaintiffs' argument, they had no idea what credit monitoring was or what would be "monitored."  In point of fact, there is significant evidence, which plaintiffs conspicuously ignore, establishing that plaintiffs *did* understand not only the language and the nature of the transaction at issue, but also the limitations of credit monitoring. See S. Millett Dep., p. 119 (he understood that credit monitoring would alert him to changes in his credit report);  M. Millett Dep., pp. 409-410 (she knew credit monitoring would not alert them to changes that were not made to his credit report). See also D.I. 76 (FAC, ¶¶ 10, 23, 51).  Because this is precisely what they received, the plaintiffs were not taken advantage of. See State ex rel Stovall v. DVM Enter., Inc., 62 P.3d 653, 661 (Kan. 2003) (where plaintiffs received exactly what they asked for, they were not taken advantage of).

---

[10]  Plaintiffs' Brief refers to various other statements on the TrueLink website (Pl. Br., p. 9), but there are no allegations that either plaintiff read any of them.  Mrs. Millett testified that she relied solely on "complete identity theft protection" as a basis for her belief as to what the product would deliver.  (Response to Facts, ¶¶14-15).

Faced with the fact that the language is clearly understandable, plaintiffs attempt to manufacture confusion by injecting issues not presented in the marketing language or otherwise describing credit monitoring. See Pl. Br., pp. 7-8 (suggesting a confusing distinction between "credit files" and "credit reports").  However, plaintiffs failed to identify any marketing of TrueLink's credit monitoring that refers to "credit files" or which otherwise might create such confusion.  Credit monitoring is consistently described as alerting customers to changes *in their credit reports*. See Response to Facts, ¶¶4-6, and Exhibit G to Response to Facts (Millett 00871).  Moreover, though plaintiffs never read the contract, and contrary to conclusory citations in their Brief, the contract makes clear that credit reports are distinct from credit files, and that customers would not receive full "disclosures" or "credit files" with their purchase of credit monitoring from TrueLink.  Specifically, under the heading "Fair Credit Reporting Act," the contract states, in pertinent part:

> The Fair Credit Reporting Act allows you to obtain a disclosure from every credit reporting agency of the nature and substance of all information in your file at the time of your request.  <u>Full disclosure of information in your file at a credit reporting agency must be obtained directly from such credit reporting agency.  The credit reports provided or requested through our [TrueLink's] Site are not intended to constitute the disclosure of  information by a credit reporting agency as required by the Fair Credit Reporting Act or similar laws.</u>

See Credit Monitoring Member Agreement (Ex. N to Plaintiffs' Motion For Class Certification Brief (D.I. 126)) (emphasis added).

Plaintiffs deceptively spin the evidence in the record to suggest that TrueLink admits that the phrase "complete identity theft protection" is vague and ambiguous. (Pl. Br., pp. 9-11).  By mixing the meanings of the phrase (already taken out of the specific context of alerts to credit

report changes), with the phrase used in plaintiffs' written discovery requests (which was defined in plaintiffs' requests), plaintiffs mischaracterize the record. TrueLink has never admitted that the phrase "complete identity theft protection," as used on its website, is vague and ambiguous. (See Response to Facts, ¶¶16-17).

3.  There is no evidence that TrueLink knew or had reason to know of plaintiffs' claimed inability to understand contract or marketing language.

Finally, a finding of unconscionability under § 50-627(b)(1) requires evidence that TrueLink knew or had reason to know of the claimed disability or infirmity on the Milletts' part that allegedly affected their ability to understand the contract terms and the descriptions of credit monitoring. KSA § 50-627(b). Plaintiffs offer no such evidence, nor does any exist. In wholly conclusory fashion, and citing no evidentiary support, plaintiffs state that "Defendant knew that the 'credit report' it sold had limitations as a tool to detect 'identity theft' but sold it for this purpose." (Pl. Br., p. 8). The "limitations" that the Milletts complain of is the fact that TrueLink would only advise of changes to a subscriber's credit file. Given that TrueLink specifically described the product as monitoring a credit report (see Response to Facts, ¶¶4-7), it cannot be charged with knowing of some unspecified infirmity that would have prevented plaintiffs from understanding the language of the agreement or the nature of credit monitoring and its benefits as described at length on its website.

**C.  There Is No Evidence That The Plaintiffs' Contract Was Excessively One-Sided And Therefore Unconscionable Under KSA § 50-627(B)(5).**

Plaintiffs next contend that the contract was unconscionable because it was excessively one-sided in favor of the supplier. (Pl. Br., pp. 11-12, citing KSA § 50-627(b)(5)). Plaintiffs, without citing any specific contract provision or any special factual circumstances impacting

their ability to choose whether or not to make the purchase, suggest that "consumer[s] had no choice but to accept the membership services as provided." (Pl. Br., p. 12). There is simply no evidence to support this assertion. Plaintiffs, like all other consumers, were free to explore the website content (including its descriptions of the credit monitoring service and other extensive information) and the terms of the contract *prior* to deciding whether or not to make a purchase. Danaher Dep., pp. 173-174; Duni Dep., p. 114. See also Response to Facts, ¶4. Indeed, Mrs. Millett (as "agent" for Mr. Millett), was required to indicate agreement to the contract terms before purchasing the product. M. Millett Dep., pp. 80-81, 257-259.

Plaintiffs also argue that TrueLink "at any time during the term of the contract, could elect to stop providing some facet of its service." (Pl. Br., p. 12). Even if this were true (which it is not),[11] it does not make the contract excessively one-sided in favor of TrueLink. Plaintiffs ignore entirely the fact that they, like all other customers, had the right to cancel the agreement at any time. Danaher Dep., pp. 165-166. See also Credit Monitoring Member Agreement (Exhibit N to Plaintiffs' Brief In Support Of Motion For Class Certification, D.I. 126). Notably, for *years* after learning of the alleged "product failures," plaintiffs did not cancel. See Response to Facts, ¶¶20-22 (plaintiffs learned very soon after purchasing credit monitoring that it did not provide the information they allegedly believed it would, yet they never affirmatively canceled their

---

[11]

[REDACTED]

credit monitoring subscription, but ultimately passively allowed it to lapse when the credit/debit

card used for payment expired more than 3 years later). There is nothing one-sided about such

an open cancellation policy. See Remco Enter., Inc. v. Houston, 677 P.2d 567, 573 (Kan. App.

1984) (rental contract was not unconscionable where, *inter alia*, lessee could have cancelled the

agreement at any time after one week).

**D.    Alleged Product Failures Do Not Constitute Unconscionability.**

In an effort to establish unconscionability under KSA § 50-627(b)(6), plaintiffs argue that

certain discrete "product failures" establish that TrueLink made a "misleading statement of

opinion on which the consumer was likely to rely to the consumer's detriment." KSA § 50-

627(b)(6). Though plaintiffs fail to identify precisely what "statements of opinion" they

challenge, presumably, they refer to the "complete identity theft protection with weekly fraud

watch emails." This phrase does not appear to be a statement of opinion at all. Section 50-

627(b)(6) was designed to address only clear "statements of opinion." "Overt factual

misstatements expressed in form of opinion are dealt with by § 50-626," a separate provision of

the KCPA addressing deceptive practices. Tufts v. Newmar Corp., 53 F. Supp. 2d at 1183

(quoting Comment to § 50-627 and holding that giving false information on weight of RV is not

a statement of opinion).

1.    Efficacy in detecting identity theft.

Plaintiffs challenge the efficacy of credit monitoring – which provides customers access

to their credit reports and notification of critical changes to their credit reports – as a tool in

detecting identity theft. As plaintiffs note, individual witnesses – including the Milletts – have

agreed that purchasers of credit monitoring cannot be protected from all possible types of

identity theft. Because plaintiffs believe that the marketing promises to do just that, they contend the product "fails." However, the alleged "failure" is borne solely out of plaintiffs' unnatural and unreasonable interpretation of select portions of a single phrase from one of TrueLink's webpages, not by any defect in TrueLink's product. The credit monitoring that plaintiffs purchased did what it promised: it monitored Mr. Millett's Trans Union credit report for certain changes – changes which, if they occurred, might indicate possible identity theft occurring with respect to Mr. Millett's credit accounts. Plaintiffs fail to prove that credit monitoring is not ineffective in this regard. Therefore, there are no "unconscionable" product failures.

The Milletts' forced reading of a limited portion of the credit monitoring description is unreasonable for the same reasons that the federal court in California rejected the Milletts' similar interpretation of language in their similar claim against TrueLink's competitor, Experian. See TrueLink's Brief In Support Of Motion For Partial Summary Judgment (D.I. 146), pp. 23-26. The Experian court ruled that the Milletts' literal interpretation of marketing language stating that Experian's credit monitoring product will "guard against fraud and identity theft" and "provide peace of mind," was not reasonable. Id. at p. 24; Experian Order (Exhibit A to D.I. 146) at p. 6. In its Order, the Experian court stated:

> [A] reasonable consumer would interpret the Credit Manager product as providing information relevant to detecting identity theft in the context of his or her Experian credit report. It is unreasonable to  read the representations on the web pages leading to the purchase page and believe that Credit Manager somehow acts as an all-knowing private investigator, relaying any information relevant to identity theft to the purchaser. . . . No reasonable person would read these statements and take them literally and absolutely. It would be clear to any reasonable consumer that the product offers to convey information indicative of identity theft, but only if it appears in the purchaser's Experian credit report.

Id. On April 4, 2007, the Experian court denied the Milletts' motion for reconsideration.

The Milletts' asserted interpretation of the portion of the TrueLink marketing language at issue here is similarly unreasonable given its context. (See TrueLink's Brief In Support Of Partial Summary Judgment (D.I. 146), pp. 8-11, 22-25; Response to Facts, ¶¶15-18). It is also inconsistent with their own testimony. Mr. Millett stated that at the time of purchasing credit monitoring from TrueLink in August, 2003, he understood that the product would monitor for changes "in my credit report." (S. Millett Dep., p. 119). Further, Mrs. Millett testified that she did not interpret the phrase "complete identity theft protection" to carry a literal meaning. Instead, she said, "[y]ou have to read these things reasonably." (M. Millett Dep., p. 410). She further testified that she did not think that credit monitoring would alert her to information unless it appeared in her husband's credit report. M. Millett Dep., pp. 409-410. Further, she stated that "no reasonable person would" read TrueLink's use of the phrase "complete identity theft protection" and believe that the credit monitoring product would protect against the use of an individual's social security number where such use was never reported to Trans Union. (M. Millett Dep., pp. 409-410; See Response to Facts, ¶¶ 1-5, 13-21).

Mrs. Millett's sworn testimony is consistent with the limits of the KCPA. As set forth in TrueLink's Motion For Partial Summary Judgment, plaintiffs' amputated phrase "complete identity theft protection" is mere puffing which cannot serve as the basis for a KCPA claim. Baldwin v. Priem's Pride Motel, Inc., 580 P.2d 1326 (Kan. 1978) (affirming entry of summary judgment to seller; "statement as to 'first-class condition' is innocent 'puffing' to be expected by a consumer."). See also Johnsmeyer v. Hanover Dev. Co. II, 2005 WL 2495817 (Kan. App. 2005) (affirming, on other grounds, court's dismissal of KCPA claim that was based on seller's

representation that house was high quality,which was "mere puffing"). The portion of TrueLink's marketing of credit monitoring as stating "complete identity theft protection" is so non-specific and broad that a consumer could not possibly rely on such language as a promise of what credit monitoring will provide. Even in its more complete context, "complete identity theft protection with weekly fraud-watch emails," the first portion is mere puffing with respect to what the customer will receive: the fraud watch email alerts.

Plaintiffs fail to explain how their interpretation can be supported. Specifically, plaintiffs offer no authority for amputating select portions of a phrase, removing it from its more general marketing context, and insisting upon a literal, unrestrained and unreasonable reading of it. Given their own testimony which is inconsistent with such a broad reading of the phrase, they should be required to do so both before they can hope to obtain summary judgment, and before they can hope for their claims to survive TrueLink's motion for summary judgment.

In addition to having no evidence to support their own theory, plaintiffs offer no evidence that holding credit monitoring out as a useful tool in detecting identity theft was false (i.e., a "misleading statement" of opinion) as required by KSA § 50-627(b)(6). By notifying customers of changes to their credit reports, such as new tradelines, changes of address, etc., customers are able to learn of a potential identity theft such as attempts to divert the customer's credit card statements to another address, or opening new tradelines in the customer's (victim's) name. Duni Dep., pp. 35, 44-45, 47-48, 107-108; Matis Dep., pp. 19-20-23; Danaher Dep., pp. 25-27) (all describing the benefits of credit monitoring and how it protects against id theft in the context of customer's credit report). Indeed, Mrs. Millett's own blog postings, as well as her quote in a

New York Times article, are testaments to the efficacy of credit monitoring. (See Response to Facts, ¶¶22-23).[12]

The only evidence offered by the Milletts that the product does not perform as promised is TrueLink's purported admission as to the truth of this assertion. Plaintiffs' deceptive description of TrueLink's discovery response demonstrates the failure of its argument. TrueLink did not admit, indeed plaintiffs did not request admission, that its credit monitoring product did not prevent identity theft. Defendant only admitted (as requested), that the product did not prevent all forms of "identity theft," as that term was defined in plaintiffs' requests for admissions (See Response to Facts, ¶17).

Even if it were false, that a statement made may turn out to be false is not unconscionable. Unconscionability cannot be established merely by proving that information given by the supplier later proved to be false. See Tufts v. Newmar Corp., 53 F. Supp. 2d 1171, 1178-79 (D. Kan. 1999) As previously noted, plaintiffs offer no evidence tending to show that TrueLink knew or reasonably should have known, at the time plaintiffs purchased the product,

---

[12] In fact, the evidence suggests that when plaintiffs purchased credit monitoring, misuse of one's social security number, without also using the victim's name, was not regarded as identity theft. A 2003 report of the Identity Theft Resource Center (the "ITRC Report")(produced by plaintiffs, a copy of which is attached as Exhibit N to Response To Statement of Facts) identified 3 forms of "identity theft." When asked, Mrs. Millett initially testified that her husband, by having his social security number used by another, was a victim of "financial" identity theft as described in the ITRC Report. M. Millett Dep., pp. 399-400. Upon reading the full description of financial identity theft set forth in the ITRC Report, however, she acknowledged that her husband did not suffer that type of identity theft (or any other described in the Report) because the so-called identity thief did not attempt to establish credit lines in Steven Millett's name. Id. at pp. 400-401. In fact, Mrs. Millett testified that "[t]he types of identity theft have been evolving since this original survey was done in 2003." M. Millett Dep., p. 401. With regard to "financial identity theft" as described in the ITRC Report, plaintiffs have no evidence that credit monitoring does not aid in the detection of at least this type of identity theft.

that the four words "complete identity theft protection" would be separated from its complete

phrase, taken out of context, and misinterpreted by plaintiffs to suggest that credit monitoring

would alert them to information beyond information appearing in Steven Millett's credit report.

No such evidence exists.  Plaintiffs' is the only lawsuit ever filed against TrueLink in which a

customer claimed to have interpreted the marketing language in this manner.  TrueLink therefore

had no knowledge or reason to know that the Milletts might expect credit monitoring – a credit

report-based service – to be an all-knowing guardian of all aspects of their identity from all types

of identity theft or social security fraud having nothing to do with the victim's credit.[13]

    2.    "Watch set failures."

Plaintiffs argue that temporary changes in

                                                                    constitutes a

"product failure" and a basis for applying KSA § 50-627(b)(6).  See Pl. Br., p. 13.

.[REDACTED]

---

[13]  In fact, there is evidence that the misuse of social security numbers alone, without acting in the victim's name, is not commonly considered "identity theft."  See Exhibit N to Response to Statement of Facts (ITRC Report); Matis Dep., pp. 81-82.

3.    <u>Blank alerts.</u>

Plaintiffs make a similar argument for a "product failure" regarding the "blank alerts" that certain customers may have received.  (Pl. Br., p. 13).  Once again, however, the evidence in now way suggests that the blank alerts were a known problem with credit monitoring at the time of plaintiffs' purchase (or at any time prior to their occurrence).  Accordingly, any statement regarding the delivery of email alerts was not "misleading" at the time it was made.  Further, plaintiffs fail to explain how any representation regarding delivery of email alerts was a "misleading statement of opinion" as required by KSA § 50-627(b)(6).

[REDACTED]

The evidence relating to alleged blank alerts hardly supports a finding of unconscionability.  [REDACTED]

See Moore v. Bird Eng'g Co., P.A., 273 Kan. 2, 14 (Kan. 2002) (finding against defendant for breach of contract but not for KCPA violations); Heller v. Martin, 782 P.2d 1241 (Kan. App. 1989) (finding against the defendant on breach of contract only and finding no violation of the KCPA).  See also Tufts v. Newmar Corp., 53 F. Supp. 2d 1171, 1178-79 (D. Kan. 1999) (unconscionability does not arise merely because a statement made ultimately turns out to be false).

Further, there is no evidence whatsoever that TrueLink "knew or had reason to know" [REDACTED]

4.     Core failures.

Plaintiffs also refer to "core failures," suggesting that those instances are "product failures."  But plaintiffs mischaracterize what a "core failure" is.

[REDACTED]

In addition, plaintiffs fail to accurately describe the testimony regarding "core failures," preferring instead to ignore specific testimony given on the subject.[14] By deliberately ignoring testimony in the record, plaintiffs offer their own, entirely speculative theory, and one having no connection whatsoever to plaintiffs' individual claims (or even to those of a putative class).

[REDACTED]

---

[14] Many of plaintiffs' citations to deposition testimony purportedly on the subject of "core failures" actually concern other topics. As but one example, plaintiffs cite the Anderson Dep., pp. 105-106 and 108-109 as testimony relating to core failures, and that purchasers are not told why a core fail occurred. (Pl. Br., pp. 14-15). However, *none* of the testimony on these pages deals with the topic of core failures.

[REDACTED]

.

.

Moreover, it is important to note that plaintiffs' arguments regarding "core failures" are irrelevant to their claims because there is no evidence that plaintiffs encountered a "core failure" when attempting to purchase credit monitoring from TrueLink.

---

[15] [REDACTED]

E.     **The Attempted Contractual Disclaimers Of Implied Warranties And Limitations Of
Liability Are Not Unconscionable Under KSA § 50-627.**

Citing KSA § 50-627(b)(7) and § 50-639, plaintiffs contend that it is unconscionable for

TrueLink to include attempted disclaimers of implied warranties of merchantability and fitness

for a particular purpose in its credit monitoring contracts.  (Pl. Br., pp. 16-18).  As an initial

matter, this theory of unconscionability is not alleged in Plaintiffs' Fourth Amended Complaint

(D.I. 76), and the time for seeking leave to amend has long since passed.  See D.I. 82.  That is

reason enough to deny plaintiffs' motion with respect to unconscionability under § 50-627(b)(7).

Even if it had been alleged, the problem with plaintiffs' newly-asserted claim is twofold:

First, plaintiffs suggest that KSA §§ 84-2-314 and 84-2-315 of the Kansas UCC create implied

warranties of merchantability and fitness for a particular use (Pl. Br., p. 16), but those provisions

apply only to goods, not to services.  Accordingly, the source of implied warranties relied upon

by plaintiffs offers no legal basis for the asserted implied warranty of merchantability or fitness

for a particular purpose with respect to credit monitoring services.  A contractual attempt to

disclaim an implied warranty that does not exist cannot be regarded as unconscionable.  Second,

nothing in § 50-639 of the KCPA prohibits disclaimers of implied warranties with respect to

services.

According to Plaintiffs' own allegations, for purposes of the KCPA, credit monitoring is

a "service," not "property" or goods.  See FAC, ¶ 35 (specifically alleging that "[t]he Credit

Monitoring service provided by defendant constitutes a 'service' for purposes of the KCPA").

See also Id. at ¶¶ 8, 10-16, 18, 20-25, 32, 35-36, 43-47 (referring to TrueLink's "Credit

Monitoring service").  Under the KCPA, the definition of "property" (i.e, "goods") is distinct

from the definition of "services."  See KSA § 50-624(h) and (i).

In determining unconscionability, § 50-627(b)(7) of the KCPA directs courts to consider circumstances where, "except as provided by KSA § 50-639, . . . the supplier excluded, modified, or otherwise attempted to limit either the implied warranties of merchantability and fitness for a particular purpose or any remedy provided by law for a breach of those warranties." KSA § 50-627(b)(7).  KSA § 50-639 prohibits disclaimers or limitations of warranties, but does so only "with respect to *property* which is the subject of or is intended to become the subject of a consumer transaction in this state. . . . " Id. at § 50-639(a)(emphasis added).  See also id. at § 50-639(b) and (c) (also limited to warranties with regard to "property" that is the subject of a consumer transaction).  Implicit in § 50-639's prohibition of disclaimers with regard to property is a recognition that disclaimers with regard to services are *not* prohibited.

Plaintiffs contend that KSA § 84-2-314 (and presumably § 84-2-315) of the Kansas UCC establish the existence of implied warranties of merchantability and fitness for a particular purpose in TrueLink's credit monitoring service contracts.  But these statutes have no application to service contracts;  they are limited in their application to "goods."  Accordingly, plaintiffs fail to establish the existence of implied warranties of merchantability or fitness for a particular use here -- a necessary prerequisite to finding a violation of KSA § 50-627(b)(7) or § 50-639.  Moreover, § 50-639(d) of the KCPA expressly states that "[n]othing in this section shall be construed to expand the limited warranty of merchantability as defined in KSA § 84-2-314 . . .," which recognizes implied warranties only with respect to "goods."  Thus, plaintiffs fail to establish an element of their claim under KSA § 50-627(b)(7) – that a warranty of

merchantability or fitness for a particular purpose is implied by law, under KSA § 84-2-314 and

§ 84-2-315 or otherwise, in plaintiffs' purchase of credit monitoring services.[16]

Moreover, even of one existed, the attempted disclaimer of an implied warranty of

merchantability or fitness is insufficient proof to establish unconscionability. State ex rel Stovall

v. DVM Enter., Inc., 62 P.3d 653, 659-660 (Kan. 2003)(affirming order granting defendant

summary judgment). "An attempt to restrict potential warranties is not in and of itself an

unconscionable act *per se*. Rather, the attempted disclaimer is one element the court must

examine in combination with other facts present in the case in determining whether the seller

acted unconscionably." Id. at 660.

Here no unconscionability arises from the attempted disclaimers. The record shows that

the Milletts knew of the defect or defects of which they are now complaining: they understood

that the product would not alert them to changes beyond information that appeared in Mr.

Millett's credit report. It is a recognized exception to the prohibited disclaimers where "the

supplier establishes that the consumer had knowledge of the defect or defects, which became the

basis of the bargain between the parties." KSA § 50-639(c) and § 50-627(b)(7).

In any event, the disclaimers are necessitated by the inherent nature of the credit

reporting industry, and are customary in the direct-to-consumer credit reporting industry. As

---

[16] Plaintiffs' citations to Stair v. Gaylord, 659 P.2d 178 (Kan. 1983) and Zenda Grain & Supply Co. v. Famland Industries, Inc., 894 P.2d 881 (Kan. App. 1995) are inapposite. Stair involved a contract for the sale an irrigation hose – a "good" not a service. The Zenda Grain case did not involve a KCPA claim, nor did it involve an implied warranty of merchantability or fitness for a particular purpose with respect to service contracts. Instead, the case implied a warranty of workmanlike performance. Even if a similar warranty could be implied here, nothing in § 50-627(b)(7) or § 50-639 of the KCPA prohibits or makes unconscionable a supplier's attempt to disclaim an implied warranty of workmanlike performance.

noted in the Federal Trade Commission report relied upon by the Milletts, the credit reporting industry relies upon data furnished by tens of thousands of data furnishers, and errors may result from errors originating with one of those data furnishers.  (Response to Facts, ¶10-11).

Accordingly, [REDACTED]

Notably, the contracts that the Milletts had with TrueLink competitors Experian and Equifax include substantively identical disclaimers as those used by TrueLink and challenged by the Milletts here.  (Id. ¶12).  Accordingly, because they are mandated by the nature of the credit reporting industry and TrueLink's contract with its source of information, and are standard in the direct-to-consumer credit reporting business, the disclaimers cannot be held as a matter of law to be "unconscionable."

**F.     The Milletts' Motion Should Be Denied Because They Are Not "Aggrieved Consumers."**

Aside from their failure to establish actionable violations of the KCPA, the Milletts have not met the threshold burden of establishing that they have standing to maintain their claims under the KCPA.  As set forth in TrueLink's Motion For Partial Summary Judgment and supporting materials (D.I. 145, 146) (all of which are hereby incorporated by reference herein), a prerequisite to prevailing on a KCPA claim is establishing that the plaintiffs are not just consumers, but are "aggrieved consumers."  Finstad v. Washburn Univ. of Topeka, 845 P.2d 685, 690 (Kan. 1993).  Contrary to plaintiffs' unsupported statement (Pl. Br., p. 4), the Court has _not_ preliminarily determined plaintiffs' standing under the KCPA.  At best, the Court determined that the KCPA is the applicable law under a choice of law analysis, and that plaintiffs could

*allege* standing. See D.I. 74. This does not mean that plaintiffs were "aggrieved" -- that they suffered harm as a result of the conduct challenged in the Fourth Amended Complaint (which had not yet been filed).

With regard to this indispensable element of their KCPA claim, plaintiffs offer nothing more than conclusory statements that they were aggrieved. They make no effort to tie each of the alleged violations of § 50-627(b) to any resulting harm. See D.I. 145, 146. For example, plaintiffs argue that TrueLink's attempted disclaimers are unconscionable, but they point to no harm suffered as a result of their presence in the contracts. Indeed, there is none. TrueLink has not attempted to enforce those disclaimers or limitations on liability; accordingly, any assertion of resulting harm is not ripe and wholly speculative. Plaintiffs' failure to come forward with evidence establishing that they were aggrieved by specific conduct is fatal to their Motion.

Similarly, with regard to the alleged product failures and misrepresentations of opinion, plaintiffs also fail to present a sufficient record to establish, as a matter of law, that they have suffered economic harm as a result of those product failures or descriptions. For example, if the issue is the alleged misrepresentation that credit monitoring literally provides "complete identity theft protection," then an consumer aggrieved by it must be one who not only purchased it in reliance on the representation, but also suffered identity theft notwithstanding having purchased credit monitoring. As set forth more fully in TrueLink's Brief In Support of its Motion For Partial Summary Judgment (D.I. 146, pp. 25-29), there is no such evidence.

**G.      The Milletts Are Not Entitled To The Remedies They Seek.**

1.      <u>The Milletts are not entitled to a civil penalty under the KCPA.</u>

Even if this court finds that the Milletts are "aggrieved consumers" under the KCPA,

Steven Millett is not entitled to a civil penalty.  Simply put, the Milletts are legally barred from

collecting a civil penalty because: (1) the Milletts' actual damages – if any – are easily

calculable, and (2) the Milletts have brought their claim for violations of the KCPA on behalf of

themselves and a Kansas statewide class. (<u>See</u> D.I. 126).  As an initial matter, the Milletts seek a

civil penalty only on behalf of Steven Millett and not on behalf of his wife Melody Millett,

implicitly acknowledging the merit of TrueLink's position that Melody Millett has no standing

as Mr. Millett's "agent" to bring a claim against TrueLink under the KCPA.  Regardless of

whether or not the Milletts seek monetary damages in the form of a civil penalty on behalf of

Steven alone or the Milletts jointly, as a matter of law, the Milletts are not entitled to civil

penalties.

Under the KCPA, an aggrieved consumer may "recover, but not in a class action,

damages or a civil penalty…whichever is greater." KAN. STAT. ANN. §50-634(b); <u>See also</u> <u>Porter</u>

<u>v. Merck and Co.,</u> No. 04-CV-586, 2005 WL 3719630, *2 (D. Kan.. Aug. 19, 2005) ("this

section also permits class actions for declaratory and injunctive relief and damages for violations

of certain sections of the act, but not penalties.").  Civil penalties are "remedial rather than

punitive" in nature.  <u>Dodson</u>, 96 P.3d at 673 (citing <u>Equitable Life Leasing Corp. v. Abbick</u>, 757

P.2d 304, 307 (KAN. 1988)).  Notably here, civil penalties are only appropriate where "the

consumer suffers damages which may be difficult to quantify.  To remedy this situation, the

KCPA provides for a civil penalty as an alternative to actual damages." <u>Alexander v. Certified Master Builders Corp.</u>, 1 P.3d 899, 907 (Kan. 2000).

Here, the plaintiffs explicitly seek civil penalties in the amount of $20,000 per day for each violation of the KCPA (<u>Pl.'s Br.</u>, p. 27).  Even though the Milletts concede that they are not seeking actual damages, it is simply not "more appropriate to award the statutory penalty." (<u>Pl.'s Br.</u>, p. 29).  The Plaintiffs even include the exact amount of actual damages they allegedly suffered - $169.21. (<u>Pl.'s Br.</u> 29, n.19).  Because the amount of actual damages is easily calculable - as the Milletts themselves have demonstrated - and the intent behind awarding damages under the KCPA is remedial and not punitive in nature, the Milletts are not entitled to recover a civil penalty.

Even if this Court is inclined to agree with the Milletts that actual damages are an "inadequate remedy," the Milletts are still barred from recovering civil penalties because they have brought their claims on behalf of a class of individuals.  The language of the statute is clear: an aggrieved consumer may "recover, <u>but not in a class action</u>, damages or a civil penalty." KAN. STAT. ANN. §50-634(b).  Accordingly, the Milletts are not entitled to recover a civil penalty here.

2.    <u>Even if this Court finds that the Milletts are entitled to a civil penalty, the Milletts are not entitled to a civil penalty in the amount of $20,000 per day for each violation.</u>

The Milletts have alleged that Steven Millett is entitled to $10,000 for each violation of the KCPA, as well as to an additional $10,000 enhancement for each violation. (<u>Pl.'s Br.</u>, 25).  The Milletts' argument that they may recover statutory damages in the amount of $20,000 per violation of the KCPA is without merit.

Under the KCPA, an "aggrieved consumer" is entitled to an enhanced civil penalty where the "violation is committed against elder or disabled persons." (KAN. STAT. ANN. §50-677; Lowe v. Surpas Resource Corp., 253 F.Supp. 2d 1209, 1231 (D.KAN. 2003). The Milletts are neither disabled nor elderly. Therefore, the Milletts are legally barred from recovering an enhanced statutory penalty under the KCPA.

    3.    The Milletts are not entitled to a civil penalty of $10,000 per day.

Even without the statutory enhancements, the Milletts are still not entitled to $10,000 per day for each violation of the KCPA. Under the KCPA, civil penalties are "recoverable in an individual action...in a sum set by the court of not more than $10,000 for each violation." (KAN. STAT. ANN. §50-636(a)). The statute itself sets no minimum amount and provides no further guidance as to the amount that may be awarded. Accordingly, the amount of civil penalties awarded is within the discretion of the court and the court need not automatically award the maximum civil penalty simply because there is a violation of the statute. Dodson v. U-Needa Self Storage, LLC, 96 P.3d 667, 673 (Kan. Ct. App. 2004); Maberry v. Said, 927 F.Supp. 1456, 1462-63 (D. Kan. 1996).

Further, pursuant to the statute, "any act or practice declared to be in violation of this act not identified to be in connection with a specific identifiable consumer transaction but which is continuing in nature shall be deemed a separate violation each day such act or practice exists." KAN. STAT. ANN. §50-636(d). This provision, however, is inapplicable where, as here, there is an identifiable transaction, i.e., Mr. Millett's purchase of credit monitoring. State Ex. Rel. Morrison v. Oshman Sporting Goods Co., 69 P.3d. 1087, 1096 (Kan. 2003).

Putting aside the issue of a statutory enhancement or a continuing violation, a court will

determine the amount of a civil penalty by examining the harm alleged by the plaintiffs.

Maberry, 927 F.Supp. at 1463. Although the KCPA does not explicitly provide for the factors to

be considered when determining the amount of a civil penalty, at least one court has sought

guidance from the factors set forth to determine the amount of a civil penalty under a similar

statute, KAN. STAT. ANN. §83-501; State Morrison, 69 P.3d. at 1087, 1096 (Kan. 2003). In

Morrison, the court determined the appropriate civil penalty based upon a consideration of the

following factors:

> (1) the extent of harm caused by the violation; (2) the nature and
> persistence of the violation; (3) the length of time over which the
> violation occurs; (4) any corrective action taken; and (5) any and
> all relevant circumstances.

Id. at 1096.

Here, the Milletts summarily conclude that they are entitled to the maximum civil penalty

of $10,000 per violation under the KCPA with little to no analysis of the five factors set forth

above. (Pl.'s Br., 28). In support of their position, the Milletts only cite to the alleged harm that

they have suffered as a result of credit denials, without drawing any causal link between the

alleged failures of TrueLink's Credit Monitoring Product and the credit denials. (Pl.'s Br., 28).

In fact, Ms. Millett has testified that plaintiffs do not blame any alleged credit denials on

TrueLink, recognizing that TrueLink does not provide credit grantors with the credit information.

Indeed, for this reason, plaintiffs dismissed their Fair Credit Reporting Act claim, which was

premised on these allegations, and Plaintiffs' Counsel have stated that these credit denials are

irrelevant to the allegations before this Court. (Response to Facts, ¶¶45-46). Because there is

absolutely no basis for the only other "fact" offered by the Milletts – "a 65% profit" (see Id.,

¶52), their prayer for more than $11 million ($10,000 x 1130 days) should be denied.

Based upon the undisputed factual record, it is clear that the Milletts would not be entitled to recover a civil penalty at the maximum amount of $10,000 per violation. Even if the Milletts alleged a causal connection between the perceived failure of the Credit Monitoring Product and the credit denials, which they do not, the Milletts could have easily sought and achieved a remedy by simply contacting TrueLink and cancelling Steven Millett's subscription to the TrueLink credit monitoring product. Instead, the Milletts continued to purchase the product for years after knowing it would not monitor information outside of Steven Millett's credit report, and they received a material benefit from doing so. See Dodson, 96 P.3d at 673 (upholding lower court's refusal to provide the maximum civil penalty where the plaintiffs could have "achieved a remedy without resorting to the courts."). Taken together, these considerations demonstrate that the Milletts are not entitled to a civil penalty of $10,000 per day.

4.    The Milletts are not entitled to attorneys' fees.

Under the KCPA, a court "may award to the prevailing party reasonable attorneys' fees, including those on appeal, limited to the work reasonably performed where:

> (1) the consumer complaining of the act or practice that violates this act has brought or maintained an action the consumer knew to be groundless and the prevailing party is the supplier; or a supplier has committed an act or practice that violates this act and the prevailing party is a consumer; and (2) an action under this section has been terminated by a judgment, or settled.

KAN. STAT. ANN. §50-634(e).

It is within this court's discretion to award, or not award, attorneys' fees. Dodson, 96 P.3d at 673; see also York v. Intrust Bank, 962 P.2d 405, 430 (Kan. 1998) ("the reasonable value of attorneys' fees rest within the sound discretion of the trail court.") (internal citation omitted). Even if, as the Milletts suggest, "statutory attorneys' fees constitute a remedy under the KCPA

which is in addition to and separate from the allowance of damage under KAN. STAT. ANN. §50-634(b)," the Milletts are not automatically entitled to recover any attorneys' fees here. York, 962 P.2d at 430. In fact, the exact opposite is true and the Dodson case relied upon by the Milletts articulates this position.

In Dodson, the court found that the plaintiffs had failed to first seek the simple remedy of contacting the individual whom they knew had a key to their storage locker and they, instead, chose to file a lawsuit against the entire facility itself. 96 P.3d at 673. Accordingly, the appellate court upheld the trial court's denial of attorneys' fees for two reasons: (1) because the plaintiffs "could have achieved a remedy without resorting to the court;" and (2) because the defendant had "prevailed on all of the plaintiff's claims with the exception of their claims under the KCPA." Id. Based on the foregoing, even if this Court finds that TrueLink violated sections of the KCPA, this court should deny the Milletts' request for attorneys' fees.

5.    The Milletts are not entitled to equitable relief.

Here, the Millett's seek equitable relief "as a remedy to class members." (Pl.'s Br., 30). This Court, however, has not yet ruled on the Plaintiff's Motion for Class Certification. Accordingly, no class has been certified and the Millett's request for equitable relief on the part of the class is premature at best. A court will not award equitable relief when ruling on a motion for summary judgment where, as here, such a ruling would be premature. Nalco Chem. Co. v. Hydro Tech., Inc., 809 F.Supp. 672, 677 (E. D. Wis. 1992).

The equitable relief that the Milletts seek here would require significant changes to TrueLink's business practices. If this Court determines that it is appropriate to award injunctive

36

relief to the Milletts at this time, then TrueLink would request that this Court do so by separate hearing.

By Section A.1 of the Millett's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, the Millett's request "if in thirty days all class members will receive, via electronic mail, an educational piece or pieces explaining each of the following items." (Pl.'s Br., 30). The Milletts go on to list more than a page of suggested statements that they believe should appear in e-mail format and be sent to all class members. (Id.) Because the class has not been certified in this action, however, Section A.1 is premature and the Millett's request for equitable relief should be denied.

The injunctive relief sought by the Milletts in Section B should also be denied. Here, the Milletts make ambiguous and vague requests that "clarifying language" be displayed in unidentified "contracts," "marketing pieces," "pages," and that certain words such as "complete," "protect," and "prevent," not be utilized within ten words of "identity theft," "identity fraud," or "credit fraud." The Milletts, however, fail to describe in detail how this injunctive relief will be implemented as well as on what pages or documents will it be displayed. Moreover, given their own concession that the TrueLink product is helpful in advising of identity theft, the requested relief is overbroad. For the reasons set forth above, the equitable relief sought in Section B, (Pl.'s Br., 31-33), should be denied.

The equitable relief sought in all of Section C, (C.1 – C.2), should also be rejected by this Court. Here, the Millett's request that information be available to subscribers which TrueLink is prevented from disclosing pursuant to the FCRA. For example, the Milletts request that information relating to the use of the subscriber's social security number by another be disclosed

to that subscriber. Not only is TrueLink unable to provide this information to consumers, but also TrueLink is prevented from doing so by the FCRA. See 15 U.S.C. § 1681b (enumerating limited "permissible purposes" for disclosing information from credit reports). Accordingly, the requested equitable relief sought in Section C should be denied.

## V.    CONCLUSION

As set forth above, Plaintiffs have failed to meet their burden as summary judgment movants. Plaintiffs' Motion fails to demonstrate that each and every element necessary to prove their claim of unconscionability under the KCPA has been established as a matter of law. For these reasons, TrueLink respectfully requests that this Court deny Plaintiffs' Motion For Partial Summary Judgment.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By:   /s/ William M. Lafferty
        William M. Lafferty (#2755)
        Jay N. Moffitt (#4742)
        1201 N. Market Street
        Wilmington, DE  19801
        (302) 658-9200

OF COUNSEL:
Michael O'Neil
Paula D. Friedman
DLA Piper US LLP
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601
CHGO1\31110481.2