IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEVEN G. MILLETT, MELODY G. MILLETT, On Behalf Of Themselves and All Others Similarly Situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>TRUELINK, INC.,<br>A Trans Union Company,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 05-599-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE TESTIMONY OF RONALD DIMBERT**

Christopher J. Curtin, Esquire
MacElree Harvey, Ltd.
5721 Kennett Pike
Centreville, DE 19807
Phone: 302.654.4454
Facsimile: 302.654.4954
Email: ccurtin@macelree.com
Website: macelree.com


COUNSEL FOR PLAINTIFFS
STEVEN G. MILLETT
AND MELODY J. MILLETT

FILED: November 8, 2007

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................ii

TABLE OF CITATIONS ................................................................................................ iii

INTRODUCTION..............................................................................................................1

THE STANDARD FOR ADMISSION OF EXPERT TESTIMONY ........................................2

ARGUMENT ....................................................................................................................5

    A.    THE QUESTIONS IN MR. DIMBERT'S SURVEY ARE RELEVANT TO BOTH THE PERTINENT LEGAL ISSUES AND TO PLAINTIFFS' THEORY OF THIS CASE .............................................................................5

    B.    MR. DIMBERT'S SURVEY SAMPLES THE PROPER UNIVERSE OF PARTICIPANTS.................................................................................................8

    C.    THERE ARE NO FLAWS IN MR. DIMBERT'S METHODOLOGY THAT WARRANT EXCLUSION OF HIS SURVEY RESULTS...............................11

CONCLUSION ................................................................................................................14

# TABLE OF CITATIONS

**CASES**                                                                                                       **Page**

Citizens Financial Group, Inc. v. Citizens National Bank of Evans City, 383 F.3d 110 (3rd Cir. 2004) .......... 10

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) .......... 2

Eclipse Electronics v. Chubb Corp., 176 F.Supp.2d 406 (E.D. Penn. 2001) .......... 4, 11

Farrell v. General Motors Corporation, 815 P.2d 538 (Kan. 1991) .......... 1, 5

J & J Snack Foods, Corp. v. Earthgrains Co., 220 F.Supp.2d 358 (D.N.J. 2002) .......... 2, 4, 11

Jackson v. National Action Financial Services, Inc., 441 F.Supp.2d 877 (N.D. Ill. 2006) .......... 10

Kannankeril v. Terminix International, Inc., 128 F.3d 802 (3rd Cir. 1997) .......... 4, 12

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) .......... 2

Pfizer Inc. v. Teva Pharmaceuticals USA, Inc., 461 F.Supp.2d 271 (D. N.J. 2006) .......... 4, 7, 11

Remco Enterprises, Inc. v. Houston, 677 P.2d 567 (Kan. App. 1984) .......... 1, 5

Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408 (3rd Cir. 2002) .......... 3

United States v. Mitchell, 365 F.3d 215 (3rd Cir. 2004) .......... 3

York v. Intrust Bank, N.A., 962 P.2d 405 (Kan. 1998) .......... 1, 5

**RULES**                                                                                                       **Page**

FED.R.EVID. 702 .......... 2-3

## INTRODUCTION

Plaintiffs' expert, Ronald Dimbert ("Mr. Dimbert"), performed a survey for Plaintiffs in order to evaluate the perceptions and understandings of Kansas consumers regarding various assertions that are stated in Defendant's marketing materials. (D.I. 170, Exhibit D to Defendant's Brief in Support, p. 2). The purpose of the survey was to determine how Kansas consumers define identity theft and to determine what Kansas consumers believe Defendant's product would provide in the way of identity theft protection. (D.I. 170, Exhibit D to Defendant's Brief in Support, p. 2). The survey was conducted with 150 participants from 21 separate counties within Kansas. (D.I. 170, Exhibit D to Defendant's Brief in Support, p. 2).

The survey asked participants questions regarding what types of identity theft protection participants expected would be provided by the product in question. (D.I. 170, Exhibit D to Defendant's Brief in Support, pp. 65-66). The survey also asked participants whether they thought that use of a person's Social Security number with a different name and address to obtain credit or employment constitutes identity theft. (D.I. 170, Exhibit D to Defendant's Brief in Support, pp. 66). This question is significant because it is Plaintiffs' contention that Defendant's product does not protect against this type of identity theft (i.e. use of a Social Security number with a different name and address).

The results of Mr. Dimbert's survey are relevant to establish the reasonableness of Plaintiffs' understanding of the language that was used to market Defendant's product. Kansas courts have consistently recognized that the reasonableness of the consumer's expectations in relation to the particular marketing language in question is a key issue in a claim under the Kansas Consumer Protection Act. See, e.g. York v. Intrust Bank, N.A., 962 P.2d 405, 420 (Kan.

1

1998); Farrell v. General Motors Corporation, 815 P.2d 538, 548 (Kan. 1991); Remco Enterprises, Inc. v. Houston, 677 P.2d 567, 572 (Kan. App. 1984).

As Plaintiffs explain below, Mr. Dimbert's report and survey, and the testimony that he provides based thereon, constitute proper expert testimony under Rule 702 of the Federal Rules of Evidence. The arguments set forth by Defendant do not provide a basis for denying admission of Mr. Dimbert's testimony. At most, Defendant's arguments address issues that can be raised by cross-examination and/or the presentation of contrary evidence.

## THE STANDARD FOR ADMISSION OF EXPERT TESTIMONY

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702. "[The] threshold determination of the admissibility of proposed expert testimony is governed by the principles of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)." J & J Snack Foods, Corp. v. Earthgrains Co., 220 F.Supp.2d 358, 368 (D.N.J. 2002).

While Daubert and Kumho spoke to the criteria for the admission of expert testimony, they did not adopt the stringent standard urged by Defendant. This point is recognized in the

2

Advisory Committee Notes to the 2000 amendments to Rule 702, which state in pertinent part as follows:

> A review of the caselaw after <u>Daubert</u> shows that the rejection of expert testimony is the exception rather than the rule. <u>Daubert</u> did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." <u>United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi</u>, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in <u>Daubert</u> stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Likewise, this amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert.

FED.R.EVID. 702, Advisory Committee Notes.

The same principles have been consistently recognized by the Third Circuit. <u>See, e.g., United States v. Mitchell</u>, 365 F.3d 215, 244-45 (3rd Cir. 2004); <u>Stecyk v. Bell Helicopter Textron, Inc.</u>, 295 F.3d 408, 414-15 (3rd Cir. 2002). Moreover, the Third Circuit has emphasized that questions regarding the relative merit of an expert's testimony should be resolved through means of cross-examination and presentation of contrary evidence. In <u>Mitchell</u>, the Court recognized that the adversary process is the proper method for addressing challenges going to the correctness of an expert's opinions:

> <u>Daubert</u> does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. As long as an expert's scientific testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

<u>Mitchell</u>, 365 F.3d at 244. Similarly, in <u>Stecyk</u> the Court recognized that the adversary process is the proper method for addressing challenges going to the strength of an expert's opinions: "A

3

party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination." Stecyk, 295 F.3d at 414.

Courts in the Third Circuit have also recognized that a Daubert analysis should not be used to choose between competing expert opinions or to determine whether an expert's opinion was arrived at by means of the best possible methodology. See, e.g., Kannankeril v. Terminix International, Inc., 128 F.3d 802, 809 (3rd Cir. 1997) ("Whether appellants' expert might have done a better job is not the test."); Eclipse Electronics v. Chubb Corp., 176 F.Supp.2d 406, 412 (E.D. Penn. 2001) ("Daubert, however, was not intended to limit scientific and technical testimony to results obtained through a single, superior method of inquiry, and alternative hypotheses and means of testing remain permissible topics of expert testimony as long as each is reliable and helpful."). "An expert must consider enough factors to make his or her opinion sufficiently reliable in the eyes of the court but the expert need not consider every possible factor to render a reliable opinion." Pfizer Inc. v. Teva Pharmaceuticals USA, Inc., 461 F.Supp.2d 271, 274 (D. N.J. 2006) (Internal punctuation omitted).

Thus, the standard for admission of expert testimony is not high. Furthermore, many of the criticisms that Defendant levels at Mr. Dimbert's expert testimony should be addressed by means of cross-examination or contrary evidence, and do not serve as a basis for striking Mr. Dimbert's testimony.

In short, expert testimony pertaining to a survey should be admitted "if the expert testimony and related survey are useful, reliable, and have probative value after all their deficiencies are taken into account." J & J Snack Foods, Corp. v. Earthgrains Co., 220

F.Supp.2d 358, 370 (D.N.J. 2002). "Generally, exclusion of an admissible and relevant expert opinion is reversible error, even where the court determines that the submission was far outweighed by the other evidence." J & J Snack Foods, Corp. v. Earthgrains Co., 220 F.Supp.2d 358, 368 (D. N.J. 2002).

## ARGUMENT

Defendant argues that Mr. Dimbert's testimony should be stricken for three reasons: (1) the questions used in his survey are not relevant, (2) his survey does not sample the proper universe of participants, and (3) his methodology is flawed. As explained below, none of these arguments are well-founded.

A. **THE QUESTIONS IN MR. DIMBERT'S SURVEY ARE RELEVANT TO BOTH THE PERTINENT LEGAL ISSUES AND TO PLAINTIFFS' THEORY OF THIS CASE.**

Defendant argues that in order for Mr. Dimbert's testimony to be admissible, it must "fit" the factual issues in this case. A brief review of the applicable law and facts illustrates that such a "fit" is present in this case.

Plaintiffs have stated a claim under the Kansas Consumer Protection Act. Kansas courts have consistently recognized that the reasonableness of the consumer's expectations in relation to the particular marketing language in question is a key issue in a claim under the Kansas Consumer Protection Act. See, e.g. York v. Intrust Bank, N.A., 962 P.2d 405, 420 (Kan. 1998); Farrell v. General Motors Corporation, 815 P.2d 538, 548 (Kan. 1991); Remco Enterprises, Inc.

v. Houston, 677 P.2d 567, 572 (Kan. App. 1984). Mr. Dimbert's survey and testimony serve to establish that Plaintiffs' expectations were reasonable by showing that other persons who reviewed the same marketing language reached the same conclusions as Plaintiffs. Thus, Mr. Dimbert's survey and testimony "fit" the issue of "reasonableness" that is core to a claim under the Kansas Consumer Protection Act.

Ironically, Defendant relies upon the summary judgment order in Millett v. Experian Information Solutions, Inc., Case No. SACV05-879JVS (RNBx), in arguing that Plaintiffs' survey evidence is improper. In reality, the court in the Experian action based its ruling, in part, upon the fact that Plaintiffs had only provided their own claims of having been misled, and had not provided other evidence (i.e. survey evidence) to establish that the language in question would also be misleading to other persons. (D.I. 170, Exhibit F to Defendant's Brief in Support, p. 5). In other words, the Experian court was critical of Plaintiffs' failure to provide a survey such as that being provided by Mr. Dimbert in the instant action.

Defendant argues that Mr. Dimbert's analysis is faulty because the survey participants were not informed that Defendant's product only monitors information that is found in a consumer's credit report. However, this criticism completely ignores the nature of Plaintiffs' theory of the case. Plaintiffs contend that consumers **do not** know or understand that Defendant's product only monitors information that appears in a credit report. Thus, it is only logical that the survey conducted by Plaintiffs' expert is not premised on the underlying assumption that consumers do possess such knowledge.

What Defendant is really arguing is that Plaintiffs should have had their expert perform a survey that was based on Defendant's theory of the case and not upon Plaintiffs' theory of the

6

case. However, Plaintiffs are not required to tailor their expert's analysis to Defendant's theory. If Defendant wanted to retain its own expert to perform its own survey in the manner that Defendant claims is proper, then Defendant could have done so. But Defendant has no basis to insist that our expert perform the survey that Defendant wishes had been performed.

Defendant also argues that Mr. Dimbert's survey is not relevant because the survey participants were not shown all of the other pages that appear on Defendant's internet site. However, this argument is not supported by the facts or the law. Mr. Dimbert's survey focuses upon the same core marketing language that is the basis for Plaintiffs' claims. The fact that Mr. Dimbert did not address other language that is not the basis of Plaintiffs' claims does not render his survey unreliable. Again, if Defendant wanted a survey that addressed other language or issues, it could have commissioned its expert to perform that analysis. But the fact that Mr. Dimbert did not consider every factor that Defendant wishes he had considered does not render Mr. Dimbert's testimony unreliable. "An expert must consider enough factors to make his or her opinion sufficiently reliable in the eyes of the court but the expert need not consider every possible factor to render a reliable opinion." Pfizer Inc. v. Teva Pharmaceuticals USA, Inc., 461 F.Supp.2d 271, 274 (D. N.J. 2006) (Internal punctuation omitted).

Defendant also claims that Mr. Dimbert posed his survey questions in a vacuum, without connecting his questions to the product in issue. That is simply incorrect. The questions in Mr. Dimbert's survey specifically asked what the participants expected from Defendant's product. (D.I. 170, Exhibit D to Defendant's Brief in Support, pp. 65-66). One set of questions asked survey participants "which of the following do you expect to receive if you subscribe to TrueCredit?" (D.I. 170, Exhibit D to Defendant's Brief in Support, p. 65). Another set of

questions asked survey participants "do you expect TrueCredit to notify you of the following?" (D.I. 170, Exhibit D to Defendant's Brief in Support, p. 66). It is difficult to see how the questions could be more directly tied to the product in issue.

Finally, Defendant argues that this case is similar to J & J Snack Foods Corp., in which the expert failed to disclose to survey participants the product to which the survey questions were connected. To the contrary, Mr. Dimbert's survey **did** connect the survey questions to the product in issue. As noted above, Mr. Dimbert's survey questions were asked specifically in the context of Defendant's product.

## B. MR. DIMBERT'S SURVEY SAMPLES THE PROPER UNIVERSE OF PARTICIPANTS.

Defendant argues that Mr. Dimbert's survey did not sample the proper universe because Mr. Dimbert did not limit survey participants to persons who had purchased or were planning to purchase credit security products. Defendant is mistaken.

As Plaintiffs have already explained, Mr. Dimbert's testimony serves to establish the reasonableness of Plaintiffs' understanding of Defendant's marketing materials. Thus, a proper survey participant is any person who has read the same marketing materials that Plaintiffs read. There is no need for a survey participant to fit into the class definition for this purpose.

As Defendant has pointed out in its own motion, it is important to consider the "fit" between the survey and the facts in issue. In this case, the fact in issue is the reasonableness of Plaintiffs' understanding of the marketing materials. Thus, a survey of persons who have read those marketing materials is a proper "fit." If Plaintiffs were using the survey to establish their

8

entire claim for class certification, all by itself, then Defendants might have a valid argument that the survey should be limited to prospective class members. However, as Defendant has pointed out in its motion, it is important to consider the purpose for which the survey is being used. Because the survey is being used to establish limited points within Plaintiffs' broader case, it may properly sample a universe of persons that is relevant to the issue in question. In this case, Mr. Dimbert's survey has sampled the proper universe of persons.

Defendant apparently bases its argument regarding the scope of the sample population upon the report of its own expert, Philip Johnson, as Defendant quotes Mr. Johnson in support of the proposition that the sample must be limited to persons who have purchased or are planning to purchase credit security products. While Defendant is certainly entitled to have its own expert witness, Defendant's expert witness may not unilaterally determine the proper sample for Mr. Dimbert's survey. Defendant can certainly attack Mr. Dimbert's testimony with the testimony of its own witness, but that is a matter for trial and not a basis for a motion to strike expert testimony.

Defendant also grossly misrepresents Mr. Dimbert's testimony, even though Defendant has cited the testimony in its own motion. On page 11 of its motion, Defendant states: "With respect to the second putative class consisting of Kansas residents, Mr. Dimbert, admits that his survey results cannot be interpreted as meaningful to members of that class as defined by the Milletts in the Class Cert. Motion." (D.I. 170, Defendant's Brief in Support, p. 11). Defendant then cites the following passage from Mr. Dimbert's deposition in support of that proposition:

> Q.    Did you ever consider limiting the universe to people who actually purchased credit monitoring type products or who had considered purchasing credit monitoring products?

9

>    A.    No. That would be a consideration if we were – if we had a slightly different objective, we might limit the sample in that fashion.

(D.I. 170, Defendant's Brief in Support, p. 11). Plaintiffs do not understand how Defendant can possibly interpret that passage as an admission of Mr. Dimbert that his survey results were not meaningful to the class defined in Plaintiffs' class certification motion. It seems rather obvious that in this passage, Mr. Dimbert simply agrees that he did not perform a certain type of survey and indicates that he might have performed that type of survey if he had a different objective.

Defendant also cites two cases in support of their argument regarding the proper sample universe. However, neither of those cases actually supports Defendant's position.

In <u>Citizens Financial Group, Inc. v. Citizens National Bank of Evans City</u>, 383 F.3d 110 (3rd Cir. 2004), the court struck survey testimony in a reverse confusion trademark case because the survey was conducted in one county, whereas the party offering the survey as evidence had its customer base in a different county. <u>Id.</u> at 118-19. In this case there is no similar disconnect between the survey and the sample population. Plaintiffs are pursuing a claim under the Kansas Consumer Protection Act and they obtained a survey of Kansas residents regarding their understanding of the subject marketing language.

Defendant also cites to <u>Jackson v. National Action Financial Services, Inc.</u>, 441 F.Supp.2d 877 (N.D. Ill. 2006) as a case in which the court determined a survey was unreliable because it did not sample the proper universe. Actually, the court in <u>Jackson</u> specifically indicated that it **was not** finding the survey to be unreliable based solely upon problems with the sample universe that was used in the survey. <u>Id</u> at 881.

Finally, Defendant once again criticizes Mr. Dimbert's testimony as not including the proper context because it did not apprise survey participants of all other pages that were

available on Defendant's internet site. This is a proper subject for cross-examination or presentation of contrary evidence. It is not a proper basis for a motion to strike expert testimony. "An expert must consider enough factors to make his or her opinion sufficiently reliable in the eyes of the court but the expert need not consider every possible factor to render a reliable opinion." Pfizer Inc. v. Teva Pharmaceuticals USA, Inc., 461 F.Supp.2d 271, 274 (D. N.J. 2006) (Internal punctuation omitted).

In short, the proper universe for a survey is determined by the purpose of the survey. Mr. Dimbert's survey sampled a proper universe (i.e. persons who had reviewed the marketing materials that were reviewed by Plaintiffs) given that the purpose of his survey was to establish the reasonableness of Plaintiffs' understanding of the marketing materials.

C.  THERE ARE NO FLAWS IN MR. DIMBERT'S METHODOLOGY THAT WARRANT EXCLUSION OF HIS SURVEY RESULTS.

Defendant argues that Mr. Dimbert's testimony should be stricken due to flaws in his methodology. This argument is not well-founded.

As a preliminary matter, it should be noted that "methodological deficiencies in a survey generally relate to the weight given the survey's conclusions rather than to its admissibility." J & J Snack Foods, Corp. v. Earthgrains Co., 220 F.Supp.2d 358, 368 (D. N.J. 2002). Furthermore, an expert is not required to use the ideal methodology; only an acceptable methodology. "Daubert . . . was not intended to limit scientific and technical testimony to results obtained through a single, superior method of inquiry, and alternative hypotheses and means of testing remain permissible topics of expert testimony as long as each is reliable and helpful." Eclipse Electronics v. Chubb Corp., 176 F.Supp.2d 406, 412 (E.D. Penn. 2001).

It should also be noted that Defendant's argument regarding Mr. Dimbert's methodology is based primarily upon the testimony of Defendant's own expert, Mr. Johnson. However, as previously noted, Defendant's expert may not unilaterally determine the proper basis for Mr. Dimbert's survey. Even if this Court believed that Mr. Johnson's proposed methodology is preferable to that used by Mr. Dimbert, that would not warrant exclusion of Mr. Dimbert's testimony. "Whether [the other party's] expert might have done a better job is not the test." Kannankeril v. Terminix International, Inc., 128 F.3d 802, 809 (3rd Cir. 1997).

In light of the above-referenced authorities, it is clear that Mr. Dimbert's testimony is admissible even if he did not use the ideal methodology and even if his methodology was subject to flaws. Furthermore, as explained below, Mr. Dimbert's methodology was not flawed.

Defendant criticizes Mr. Dimbert's survey on the basis that his survey did not use a control group. Plaintiffs are not aware of a single Third Circuit case which requires a survey to include a control group in order to be admissible. Nor does Defendant cite any such case. In fact, the only case that Defendant cites in support of this proposition is a single case from the Eastern District of Michigan. Plaintiffs contend that Mr. Dimbert's testimony meets the standards imposed by the Third Circuit and that it would be improper to exclude Mr. Dimbert's testimony for failure to comply with a requirement that has never been imposed by the Third Circuit.

Defendant also criticizes Mr. Dimbert's survey on the basis that Mr. Dimbert left the subject marketing language on the screen while the participant was answering the questions. Plaintiffs contend that this is the most realistic simulation of the actual situation faced by persons who would read the marketing language on Defendant's internet site. Persons who saw the marketing language on Defendant's internet site would be able to keep the information on the

12

screen for as long as they needed to form their understanding of what that language meant. If the survey participant was shown the marketing language and then was forced to answer questions about his or her understanding of that language without having the language available to him or her, that would not be a realistic simulation of the situation faced by a person viewing the marketing language on Defendant's internet site.

Defendant also criticizes Mr. Dimbert's survey for using the language that was actually used in the subject marketing materials. Plaintiffs contend that this is merely a matter of Mr. Dimbert being precise. If Mr. Dimbert had attempted to paraphrase the language from the marketing materials, Defendant would no doubt be complaining that Mr. Dimbert had not accurately represented that language. Furthermore, as Defendant has pointed out in its own motion, it is important for there to be a "fit" between the survey and the facts in the case. Thus, it is entirely appropriate for Mr. Dimbert to use the actual language that was used in the marketing materials. Indeed, given that Mr. Dimbert is asking about survey participant's understanding of the marketing language, it would seem that the actual marketing language would be the logical choice for the language used in the survey questions.

Defendant also attacks the wording of particular survey questions. This type of challenge is more appropriately addressed in the context of cross-examination. If the issue is whether certain questions are appropriate, then the outcome of that determination does not dictate the admissibility of Mr. Dimbert's testimony in its entirety and is not a proper basis for striking Mr. Dimbert's testimony in its entirety.

## CONCLUSION

Mr. Dimbert's survey meets the applicable standards of relevance and reliability in that it addresses a relevant topic (the reasonableness of Plaintiffs' understanding of the marketing language) and it samples the proper universe (Kansas residents who have reviewed the marketing language that was reviewed by Plaintiffs). Furthermore, any errors in Mr. Dimbert's methodology go to weight to be given his testimony and not to its admissibility. While Defendant levels numerous criticisms against Mr. Dimbert's survey, these criticisms are in the nature of contrary opinion. Thus, these criticisms are more properly the subject of cross-examination and/or the presentation of contrary evidence. For all of the reasons stated herein, Defendant's Motion to Strike the Testimony of Ronald Dimbert should be denied.

Respectfully submitted,

/s/ Christopher J. Curtin
Christopher J. Curtin
DE Bar Id. No. 0226
MacElree Harvey, Ltd.
5721 Kennett Pike
Centreville, DE 19807
Phone: 302.654.4454
Facsimile: 302.654.4954
Email: ccurtin@macelree.com
Website: macelree.com

/s/ Barry R. Grissom
Barry R. Grissom, Esq., *pro hac vice*
KS Bar. Id. No. 10866
10990 Quivira, Ste. 200
Overland Park, Kansas 66210
Phone: (913) 341-6616

Bryson R. Cloon, *pro hac vice*
KS Bar. Id. No. 08660, MO Bar. Id. No. 36843
Cloon Law Firm
11150 Overbrook Road
Leawood, KS 66211
Phone: (913) 661-9600

Yeager Law Firm
B. Joyce Yeager, *pro hac vice*
KS Bar No. 18932, MO Bar No. 46013
P.O. Box 2469
Mission, KS 66201-2469
Phone: (913) 648-6673

Michael W. Blanton, *pro hac vice*
MO Bar. Id. No. 46490
Swanson Midgley, LLC
2420 Pershing Road, Ste. 400
Kansas City, Missouri 64108
Phone: (816) 842-6100

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

    I, Christopher J. Curtin, Esq., hereby certify that on November 8, 2007, I electronically filed the foregoing document with the Clerk of the District Court using CM/ECF, which will send notification of such filing to the following:

    William M. Lafferty, Esq.
    Morris Nichols Arsht & Tunnell
    1201 N. Market St.
    Wilmington, DE 19899

    /s/ Christopher J. Curtin
    Christopher J. Curtin
    MacElree Harvey, Ltd.
    5721 Kennett Pike
    Centreville, DE 19807
    Phone: 302.654.4454
    Facsimile: 302.654.4954
    Email: ccurtin@macelree.com
    Website: macelree.com

DATE: November 8, 2007