## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEVEN G. MILLETT, MELODY J. MILLETT, )
On Behalf Of Themselves and All Others )
Similarly Situated, )
                             )
            Plaintiffs, )
                             )     Case No. 05-599-SLR
v. )
                             )
TRUELINK, INC., )
A Trans Union Company, )
                             )
            Defendant. )

## DEFENDANT TRUELINK INC.'S REPLY BRIEF IN SUPPORT
## OF MOTION FOR PARTIAL SUMMARY JUDGMENT

William M. Lafferty (#2755)
**Morris, Nichols, Arsht & Tunnell LLP**
1201 N. Market Street
Wilmington, DE 19899
Phone: (302) 658-9200
Fax: (302) 658-3989

Of Counsel:
Michael O'Neil
Paula D. Friedman
**DLA Piper US LLP**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Phone: (312) 368-4000
Fax:   (312) 236-7516

Counsel for Defendant

FILED:  November 16, 2007

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................. 1

   A. Plaintiffs Fail To Meet Their Burden In Responding To TrueLink's Summary Judgment Motion. ................................................................................................ 1

   B. Plaintiffs Fail To Identify Evidence To Establish The Elements of The KCPA Claims. .................................................................................................................. 4

      1. Plaintiffs have presented no evidence that Ms. Millett has standing as an aggrieved consumer under the KCPA. ........................................................... 5

      2. Plaintiffs offer no evidence that Mr. Millett was harmed by alleged violations of the KCPA. ....................................................................................................... 6

      3. Plaintiffs offer no authority or evidence to support their unreasonable interpretation of TrueLink's marketing language. ............................................. 12

   C. Plaintiffs Fail To Present Evidence That Would Establish Elements Of Their Breach Of Contract Claim. ................................................................................. 14

      1. Because she was not a party to the contract, Ms. Millett lacks standing to sue for its breach. ....................................................................................................... 15

      2. It is undisputed that credit monitoring detects identify theft. ..................... 16

      3. Plaintiffs fail to refute that a proper interpretation of the contract can be made now. 18

      4. Plaintiffs fail to identify evidence that TrueLink failed to provide Fraud Resolution Services or any damages resulting therefrom. .......................................... 18

      5. Plaintiffs cannot allege breach of implied covenant of good faith and fair dealing for the first time in their opposition to summary judgment. ........................... 19

      6. Plaintiffs fail to identify evidence of harm resulting from the alleged breaches addressed in TrueLink's Motion. ................................................................ 19

   D. The Milletts Fail To Respond To TrueLink's Argument That The Milletts Are Not Entitled To Punitive Damages. .................................................................... 20

III. CONCLUSION ....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### FEDERAL CASES

*Amadeus Global Travel Distributing v. Orbitz LLC,*
    302 F. Supp. 2d 329 (D. Del. 2004) ....................................................................1

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ..........................................................................................2

*Bailey v. Allgas, Inc.*
    284 F.3d 1237 (11th Cir. 2002) .........................................................................1

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..........................................................................................1

*Childers v. Joseph,*
    842 F.2d 689 (3d Cir. 1988) ...........................................................................2, 3

*Equimark Committee Finance Co. v. C.I.T. Finance Services Corp.,*
    812 F.2d 141 (3d Cir. 1987) .............................................................................1

*Finstad v. Washburn University of Topeka,*
    845 P.2d 685 (D. Kan. 1993) ..........................................................................5, 6

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ..........................................................................................1

*Monk v. Williams,*
    Civ. No. 04-1358-SLR, 2007 WL 2807548 (D. Del. Sept. 27, 2007) ...................3

*Tucker v. Union of Needle Trades, Industrial. & Textile Employees,*
    407 F.3d 784 (6th Cir. 2005) ...........................................................................19

*USX Corp. v. Prime Leasing Inc.,*
    988 F.2d 433 (3d Cir. 1993) ............................................................................19

### STATE CASES

*American Insurance v. Material Transit, Inc.,*
    446 A.2d 1101 (Del. Super. Ct. 1982) ..............................................................15

*Haveg Corp. v. Guyer,*
    226 A.2d 231 (Del. 1967) ................................................................................16

*Interim Healthcare, Inc.. v. Spherion Corp,*
884 A.2d 513 (Del. Super. Ct. 2005) ...................................................................18

**STATE STATUTES**

Kansas Consumer Protection Act ........................................................................ *passim*

**I.**
**INTRODUCTION**

Plaintiffs' Answering Brief In Opposition to Defendant's Motion For Partial Summary Judgment, D.I. 164 ("Plaintiffs' Opposition" or "Pl. Opp.") fails to satisfy plaintiffs' burden to demonstrate the existence of a genuine issue of *material* fact in precluding summary judgment on the claims addressed in TrueLink's Motion and Brief in Support of Motion for Partial Summary Judgment ("TrueLink's Brief"), and offers no legal authority contradicting that set forth by TrueLink.

**II.**
**ARGUMENT**

**A.    Plaintiffs Fail To Meet Their Burden In Responding To TrueLink's Summary Judgment Motion.**

As defendant, TrueLink met its initial burden on summary judgment by pointing out to the Court that there is an *absence of evidence* to support not just one, but several essential elements of plaintiffs' claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (movant's burden "may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support [plaintiffs'] case"). Having done so, "the burden shifts to the non-moving party to 'come forward with specific facts showing that there is a *genuine issue for trial.*'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) (emphasis in original). Plaintiffs, having the burden of proof on their KCPA and breach of contract claims, must "make a showing sufficient to establish the existence of every element essential to [their] claim." Equimark Comm. Fin. Co. v. C.I.T. Fin. Servs. Corp., 812 F.2d 141, 144 (3d Cir. 1987) (quoting Celotex). The "mere existence of some evidence in support of the nonmoving party . . . will not be sufficient for the denial of a motion for summary judgment." Amadeus Global Travel Distrib. v.

Orbitz LLC, 302 F. Supp. 2d 329, 333-34 (D. Del. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). If the evidence presented by plaintiffs is merely "colorable" or "not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

Plaintiffs' Opposition fails to meet this substantial burden. Plaintiffs' Opposition is procedurally deficient in that it fails to properly identify specific evidence supporting plaintiffs' arguments and contradicting the facts identified by TrueLink. Instead, plaintiffs frequently offer general citations to unspecified portions of voluminous docket entries, exhibits, or deposition transcripts. Rather than identify specific testimony or other evidence, plaintiffs frequently cite to an entire deposition, or to an entire docket entry representing a voluminous brief and/or an appendix of numerous exhibits. For example, plaintiffs cite frequently to D.I. 147, which is their Motion for Partial Summary Judgment containing more than 90 separate (but unnumbered) "factual" paragraphs. Plaintiffs, however, make no effort to identify the particular paragraphs (or even page numbers) of this document which they intend to reference with each citation.

Plaintiffs cannot meet their burden in opposing TrueLink's Motion in this manner. By offering such non-specific citations to the record, Plaintiffs' Opposition is reduced to mere arguments and unsupported denials. See Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988) (nonmoving party may not rest on mere denials, but must make *specific* showing of record evidence). In Childers, the Third Circuit made clear that it is the obligation of the party opposing summary judgment – not the Court – to "search through an often voluminous written record for facts which might support the non-movant's claim." Id. at 695. Indeed, plaintiffs' nonspecific citations to entire pleadings and complete deposition transcripts leaves both TrueLink and the Court unaware of precisely what evidence plaintiffs contend supports the particular assertion,

2

and are therefore unable to assess whether or not such evidence actually does, in fact, support the assertion. Id. (failure of party opposing summary judgment to specify where in the record specific evidence lies violates Rule 56(e) and presents "an unworkable and illogical rule"). It is not the Court's job to cull through the various pages of exhibits, deposition transcripts or pleadings to locate support for assertions made in Plaintiffs' Opposition. Id. "The burden remains on the nonmoving party, not the court, to identify sufficient facts from the record that show the existence of a genuine issue for trial." Monk v. Williams, -- F. Supp. 2d --, Civ. No. 04-1358-SLR, 2007 WL 2807548, *3 (D. Del. Sept. 27, 2007).

On a substantive level, even if the Court were inclined to delve into the volumes of exhibits and pleadings to find what plaintiffs might have been citing, it would find that the necessary "evidence" does not exist. Where plaintiffs do cite to evidence in the record, the material cited frequently does not support the proposition for which it is cited. One glaring example is plaintiffs' assertion that once they "realized the product's limitations, no additional purchases were made." (Pl.'s Opp., p. 10). As the uncontroverted record evidence cited by TrueLink shows, this statement could not be farther from the truth. (TrueLink's Brief, Facts, ¶¶ 10-13, citing specific deposition testimony, TrueLink's website marketing viewed by Ms. Millett, and emails reviewed by the Milletts nearly three years before Mr. Millett's subscription lapsed explicitly stating the limits of credit monitoring). In response, the Milletts cite only to pages 147-148 of Mr. Millett's deposition testimony, which support TrueLink's position, as well as pages 157-58. While the testimony contained on page 157 of Mr. Millett's deposition is irrelevant, the Milletts fail to even attach page 158. Further examples of the Milletts' failure to cite specific facts instead of mere denials include the following:

- In response to paragraph 7 of TrueLink's Statement of Facts identifying for the Court the language viewed by Ms. Millett on TrueLink's website on August 6, 2003 that made

clear the phrase "complete identity theft protection" was presented with reference to weekly fraud watch emails, the Milletts state only that they "dispute the legal conclusions asserted in paragraph 7," and nothing further. (Pl.'s Opp., p. 10); and

- In response to paragraph 19 of TrueLink's Statement of Facts identifying specific deposition pages where Ms. Millett confirms that the Milletts are not seeking recovery of economic losses tied to any alleged identity theft, the Milletts cite to the entire deposition testimony of both plaintiffs attached to their Opposition as Exhibit 1 – without any pinpoint citation – as well as the entire Declaration of Robert Ellis Smith In Support of Motion for Class Certification and the December 4, 2004 FTC's Report to Congress, again with no citation to specific pages or paragraphs. (Pl.'s Opp., p. 13).

The list goes on, however setting forth each failure to allege specific facts would take this brief well beyond the twenty page maximum provided for by the local rules. As they did in their own motion for partial summary judgment (D.I. 147, 148), plaintiffs' asserted "facts" frequently mischaracterize the evidence in the record. Still other assertions relate to "facts" having no relevance to the issues raised in TrueLink's Brief, and therefore, even if supported by evidence, do not create a genuine issue of material fact.

In addition to failing to meet plaintiffs' burden, the absence of specific citations to support their "facts" appears to be a disingenuous attempt to create an illusion of disputed fact for the purpose of surviving summary judgment. Plaintiffs' tactics, for example, of submitting entire deposition transcripts, and numerous unauthenticated pages of third-party computer documents (most of which plaintiffs do not actually cite to), appears to be an attempt to create an illusion of a factual issue if only by suggesting that *somewhere* in that morass of documents a disputed fact exists. The Court should not be taken in by that illusion; the fact is that plaintiffs failed to meet their burden in opposing TrueLink's Motion.

**B.      Plaintiffs Fail To Identify Evidence To Establish The Elements of The KCPA Claims.**

Where evidence necessary to establish plaintiffs' claim is lacking – including such indispensable elements as standing, the existence of damages, and a causal connection between

them and the challenged practices – summary judgment is appropriate. See Finstad v. Washburn Univ. of Topeka, 845 P.2d 685, 690 (D. Kan. 1993) (KCPA claimants must be aggrieved consumers who have "suffered loss or injury" as a result of the challenged conduct).

      1.    Plaintiffs have presented no evidence that Ms. Millett has standing as an aggrieved consumer under the KCPA.

With regard to TrueLink's challenge to Ms. Millett's standing as an aggrieved consumer, plaintiffs do not dispute that Ms. Millett never bought credit monitoring for herself, and that she only executed the purchase as her husband's agent. (See TrueLink's Brief, D.I. 146, pp. 5, 16). Plaintiffs also do not dispute that there is no evidence that Ms. Millett was ever a victim of identity theft. Consequently, to the extent that the product did not operate as plaintiffs claim to have anticipated, the appropriate cause of action belongs to Mr. Millett as the customer, rather than his agent.

Nevertheless, plaintiffs attempt to establish that Ms. Millett was harmed by the challenged conduct by referring to "efforts" she allegedly undertook to learn about, identify, and limit Mr. Perez's use of her husband's SSN. (See Pl. Opp., pp. 17-18). None of these efforts, however, constitutes *harm to Ms. Millett*, much less harm *resulting from* the alleged misrepresentations or other violations of the KCPA. In fact, many of these efforts were taken *prior to* purchasing credit monitoring, and as a result of learning about Mr. Perez's misuse of Steven Milletts' SSN, or otherwise related to the effects to that prior misuse. If anything, these "facts" merely suggest a motive for her to act as Mr. Millett's agent in making the purchase; they have nothing to do with resulting "harm" *following* the purchase and allegedly caused by a claimed misrepresentation.

With plaintiffs' failure to cite evidence to the contrary, the fact remains that the credit monitoring purchase was made in Steven Millett's name only, albeit by his agent, Ms. Millett.

As such, the cause of action belongs to the customer – Mr. Millett. Plaintiffs offer no authority for their suggestion that Ms. Millett has standing simply because funds from the Milletts' joint checking account were used (through Ms. Millett's debit card) to make the purchase.

      2.     <u>Plaintiffs offer no evidence that Mr. Millett was harmed by alleged violations of the KCPA.</u>

Plaintiffs' efforts to establish Mr. Millett as an aggrieved consumer also fail. Plaintiffs make only vague and conclusory contentions of harm, many which are wholly unsupported by fact. In any event, for none of the hodgepodge of "evidence" of various types of harm allegedly suffered by Mr. Millett do plaintiffs make any effort to establish a causal nexus between the alleged harm and the specific misrepresentation or conduct alleged to be a KCPA violation here. <u>See</u> <u>Finstad</u>, <u>supra</u>.

      a.     Plaintiffs received what they paid for.

To the extent that plaintiffs consider "harm" the price they paid for credit monitoring, there is no evidence that those losses were caused by any alleged violation of the KCPA. Plaintiffs KCPA claim is centered on alleged misrepresentations about TrueLink's credit monitoring. However, plaintiffs offer no evidence that they would not have made the purchase in the absence of the alleged misrepresentations – proof necessary to establish both the reliance and causation elements of their KCPA claim. To the contrary, as plaintiffs acknowledge, Steven Millett testified that in the absence of the alleged misrepresentations, i.e., if they had known what the credit monitoring product "does and doesn't do, then, I mean, we might have bought it and we might not have bought it." (Pl. Opp., p. 10 (citing S. Millett Dep., p. 115)).

Further, any suggestion that plaintiffs would not have made the purchase but for the alleged misrepresentations is belied by the undisputed fact that plaintiffs continued to purchase credit monitoring for more then three years after learning of its limitations. While plaintiffs

attempt to dispute the legal significance of this fact, the evidence is unequivocal: Both plaintiffs testified that they learned within the first month or two that the credit monitoring did not operate to monitor or identify uses of Mr. Millett's SSN outside of his credit report. (TrueLink's Brief, D.I. 146 at pp. 8-10). The evidence is clear that despite this fact, they continued to pay money for the credit monitoring subscription for more then three years. (TrueLink's Brief, D.I. 146, pp. 8-10). Indeed, Ms. Millett extolled the efficacy of credit monitoring in her Internet blog postings and in a New York Times article.

Accordingly, the absence of evidence that plaintiffs would not have purchased credit monitoring but for the alleged misrepresentations, coupled with the unequivocal evidence that they continued to purchase credit monitoring for more than three years after learning of the alleged misrepresentations, demonstrates that plaintiffs are unable to establish the necessary causal connection between plaintiffs' purchase of credit monitoring and the alleged misrepresentations.

> b.     Alleged inability to obtain credit.

Plaintiffs offer no evidence that the asserted (though unsupported) "inability to obtain credit" was the result of undetected identity theft that plaintiffs would have been alerted to if all data in Trans Union's entire credit reporting database had been accessed and monitored. Specifically, there is no evidence that the denials of credit were based upon information in Trans Union's database, or that the prospective credit grantor even accessed Mr. Millett's Trans Union credit report.

Perhaps more significantly, plaintiffs conveniently ignore their own testimony and litigation position expressly disavowing any claim of harm relating to a denial of credit. See TrueLink's Brief In Opposition To Plaintiffs' Motion For Partial Summary Judgment, D.I. 163, pp. 29-30 and TrueLink's Response To Plaintiffs' Purported Factual Statement ("Response to

Facts"), D.I. 165 at p. 19 and Exhibits A, B and S thereto). As reflected in those materials (which are expressly incorporated herein), Ms. Millett testified that plaintiffs do not blame any alleged credit denials on TrueLink, recognizing that TrueLink does not provide credit grantors with the credit information. (Response to Facts, D.I. 165, at ¶¶ 45-46 and Exhibit A thereto (M. Millett Dep. pp. 154-155). See also TrueLink's Brief, (D.I. 146), p. 12 ¶ 19 (citing M. Millett Dep., pp. 156, 131-133; see also pp. 331-333, Ex. B to TrueLink's Brief). Further, plaintiffs' counsel advised that issues regarding denials of credit are not relevant to the KCPA or breach of contract claims. Response to Facts, D.I. 165 at ¶¶ 45-46 and Exhibits B and S thereto (S. Millett Dep., p. 157 and Plaintiffs' Response To Document Request No. 35, respectively).[1] Having taken this position, plaintiffs cannot now attempt to establish harm by asserting that the Milletts were denied credit.

>           c.      Purported post-purchase "data errors."

Plaintiffs both previously testified that they had no evidence of identity theft occurring since Mr. Millett purchased the product. (S. Millett Dep., pp. 37-38, 51, 125, Ex. C to TrueLink's Brief; M. Millett Dep., pp. 171-72, Ex. B to TrueLink's Brief). During the course of the parties' briefing of cross-motions for summary judgment, however, plaintiff Ms. Millett purports to have single-handedly uncovered such evidence. Plaintiffs rely solely upon the conclusions of plaintiff Melody Millett, which purportedly are based upon unspecified records gathered from unspecified third parties pursuant to subpoenas in unspecified litigation.[2] In fact,

---

[1] Because Plaintiffs conceded that credit denials were not relevant here, they voluntarily dismissed their claims brought under the Fair Credit Reporting Act.

[2] Plaintiffs contend that they have recently "discovered" the existence of "mixed credit information" in the files of unspecified creditors. Ms. Millett states that such documents were obtained by subpoenas. If this is true, they were not obtained by subpoenas served in this case. Moreover, plaintiffs apparently never deposed any of the third parties which produced the

for the reasons set forth in TrueLink's separate motions to strike two of the three affidavits offered by Ms. Millett on the parties' Rule 56 motions, the plaintiffs' conjecture is without basis. (The mere fact that plaintiffs must rely upon the conclusory affidavit of Ms. Millett, and not the documents themselves, itself raises doubts as to the import of the documents.)  In any event, even if there had been the "data errors" in the files of creditors, there is no evidence such errors were in the files of TrueLink (or Trans Union).  Finally, because such "data errors" were purportedly a continuation of the misuse of Mr. Millett's SSN of which plaintiffs already knew, TrueLink's failure to advise of such errors caused no harm to Plaintiffs.

(1)     "Relabeling" of credit accounts

Plaintiffs rely solely upon the Affidavit of Melody Millett, dated September 27, 2007, for proof that third parties "mixed" unspecified "data information" in their files.  The insufficiency of the affidavit is set forth in the separately-filed motion to strike the affidavit.  However, even putting aside the absence of evidence as to the relabeling or mixing of data in the computer systems of creditors, there is absolutely no evidence that any creditor reported the mixed data to Trans Union.  Moreover, the reference to Ms. Millett's review of unspecified "codes" reflects in the reporting of data to credit bureaus like Trans Union is seriously misleading.  Neither Ms. Millett nor her counsel have reviewed any accounts receivables tapes transmitted from any creditor to Trans Union.  Nor have plaintiffs subpoenaed any records from any creditor relating to this topic.  Nor have plaintiffs sought any discovery from Trans Union, either in the pending action or in the action they previously brought (and later dismissed) against Trans Union.[3]

---

documents, and rely solely upon the inferences that Ms. Millett draws from a review of the documents.

[3]  Plaintiffs attempt to defend their failure to take discovery on the current issue of harm in this case upon TrueLink's efforts to block discovery through Plaintiffs' "Motion and Memorandum for Court Order."  (D.I. 121).  This contention not only is misleading, but is contrary to

Therefore, there simply is no support for Ms. Millett's conclusion that unspecified "mixed credit information, reflecting part of my husband's information and part of [the imposter's] information, was reported to the credit reporting agencies and to Trans Union." (M. Millett Aff., dated September 27, 2007, p. 8.)[4]

Moreover, Plaintiffs make no suggestion, much less an evidentiary showing that the "mixing" of data affected Mr. Millett in any way such as the account appearing on his own credit report, or having the credit grantor pursue Mr. Millett for payment of the account. Thus, plaintiffs have no evidence of an associated loss. Notably, plaintiffs concede that the relabeling was caused by the misuse of Steven Millett's SSN by Mr. Perez that occurred prior to Mr. Millett's purchase of the credit monitoring product. (Pl. Opp., 14). Of course, Plaintiffs already had notice of such conduct, and any "failure" of the product to advise Plaintiffs caused no harm.

(2)    Insurer's "data error"

Even more mysterious are the summary statements of Ms. Millett, included in her later affidavit, dated October 29, 2007, that Plaintiffs and an unspecified "known identity thief" are insured by the same insurer. (Plaintiffs' Opposition Brief, p. 7).[5] Neither the Brief nor the

---

plaintiffs' prior representations to this Court. As explained more fully in TrueLink's opposition to plaintiffs' Motion, plaintiffs sought an order that Trans Union produce certain documents, even though plaintiffs never served Trans Union with a subpoena, never filed their motion before the close of fact discovery, and never even served the motion on Trans Union. (D.I. 121). Moreover, given the plaintiffs' representation in that Motion that the information was sought from Trans Union for purposes other than this litigation (D.I. 121, ¶ 2) plaintiffs' complaint that such information is not available to oppose TrueLink's summary judgment motion is disingenuous, at best.

[4]  Ms. Millett separately states that she "learned" that a person named "Debi" at Trans Union telephoned an unspecified individual at an unspecified creditor, and inquired if an unspecified account "was 'fraud'." Id., p.4. Again, given the absence of any discovery of the relevant entities, and Ms. Millett's failure to identify how she "learned" of such facts, this conclusion should be ignored. Moreover, even if accepted, it is not support for the statement that the unspecified "mixed data" was contained in the credit report of Mr. Millett.

purported factual support for the brief, (i.e., Ms. Millett's affidavit) identify the insurance
company, the "known identity thief," or the insurance agent from whom Ms. Millett apparently
obtained this information.  Once again, however, even if plaintiffs did (or could) provide such
specific information, Plaintiffs offer no explanation of how the mere fact that some unspecified
identity thief is insured by the same insurer as the plaintiffs points to some loss caused by some
action by TrueLink.  Nor do Plaintiffs offer any basis – or even contention – that any "data error"
was reported to any third party, including TrueLink or Trans Union.

        d.      Watch set interruption.

Plaintiffs also suggest they were harmed because they were charged for credit monitoring
during a time when they were not signed up for the watch service.  (Pl. Opp., p. 18).  Plaintiffs'
"evidence," however, fails to support this assumption.  In particular, the Exhibits cited by
plaintiffs do not establish charges for credit monitoring during any of the brief points in time that
the watch was not set.  In fact, TrueLink's records demonstrate that plaintiffs were *not* charged
for credit monitoring *at any time* when he was not signed up for the watch service.  (See
Declaration of Kate Anderson ("Anderson Decl."), ¶ 19), a copy of which is attached as Exhibit
K to TrueLink's Response to Facts).  Moreover, the evidence demonstrates that the reason for
the product's temporary lapse was not a failure by TrueLink, but instead was caused by
plaintiffs' own cancellation of the subscription. (Anderson Decl., ¶¶ 12-14.  See also Response
to Facts, D.I. 165, at ¶¶ 24-36).

        e.      Blank alerts.

Plaintiffs also suggest that costs incurred in connection with blank alerts they received
from TrueLink constitute harm.  As set forth in TrueLink's Opposition To Plaintiffs' Motion For

---

[5] As this "evidence" was not included in Ms. Millett's initial affidavit filed on September 27,
2007, Plaintiffs apparently discovered this new evidence of loss in only the last few weeks.

Summary Judgment, D.I. 163 at pp. 22-23 (which TrueLink incorporates herein), at most, the limited occurrence of blank alerts, which is properly characterized as a computer glitch, could form the basis for a breach of contract; it is not a KCPA violation.

>    f.    Judgments obtained.

Plaintiffs offer no evidence to suggest that they suffered any harm as result of a judgment entered under Steven Millett's SSN.  Ms. Millett testified that this judgment stemmed from Mr. Perez's conduct.  (See TrueLink's Brief, pp. 18-19, n.7 (citing M. Millett Dep., pp. 310-312)). But there is no evidence that it related to identity theft occurring after plaintiffs' purchased credit monitoring.  Further, Plaintiffs' Opposition completely fails to identify evidence tending to show that even the existence of this judgment (much less the alleged delay in finding out about it) caused *actual harm* to plaintiffs.  Indeed, there is no evidence that the judgment ever appeared on Mr. Millett's credit report, or that anyone ever attempted to collect this judgment from Mr. Millett.

>    3.    Plaintiffs offer no authority or evidence to support their unreasonable interpretation of TrueLink's marketing language.

TrueLink's Motion set forth in great detail the evidence and legal principles which undercut plaintiffs' claim that TrueLink's marketing of credit monitoring was misleading and a violation of the KCPA.  (See TrueLink's Brief, pp. 22-25).  Plaintiffs' response on this issue is limited to attempting to distinguish the Experian court's ruling on procedural or factual grounds. But whether or not such distinctions may exist, they have no legal significance to the validity of the Experian court's reasoning, and its application of established legal principles.  Plaintiffs do not and cannot dispute the legal principles underlying the Experian court's analysis.  Plaintiffs offer no authority for suggesting that in determining whether TrueLink's marketing was misleading, the truncated phrase "complete identity theft protection" can be taken out of context

of not only the complete phrase but also other statements made on the same webpage. Nor do they offer authority for viewing the phrase "complete identity theft protection" in isolation, instead of its full context, to determine whether it constitutes a misrepresentation.

As set forth in TrueLink's Brief, pp. 6-11, 22-25, 33-35, plaintiffs' asserted interpretation of what TrueLink promised finds no support in the evidence or the law. Plaintiffs do not dispute the evidence cited by TrueLink, detailing what plaintiffs understood and believed at the time that they purchased credit monitoring. Instead, plaintiffs purport to dispute the legal effect of this evidence. (Pl. Opp., pp. 9-11). But the effect of plaintiffs' knowledge at the time of purchasing credit monitoring from TrueLink, as well as their continued renewals of it for more than three years, must not be ignored as plaintiffs would urge. This evidence goes not only to a proper interpretation of the marketing language at issue, but also demonstrates that plaintiffs did not interpret or rely upon the marketing language in a literal and absolute sense.

By Ms. Millett's own testimony, she recognized that "complete identity theft protection" as that phrase was used on TrueLink's webpage was not to be read literally, thereby acknowledging that it constituted mere puffing. (See TrueLink's Brief, p. 8, 23; M. Millett Dep., p. 410 ("you have to read those types of things reasonably")). The webpage viewed by plaintiffs stated in pertinent part, "complete identity theft protection with weekly fraud watch emails" and also provided a description of "weekly fraud watch emails" as alerts notifying credit monitoring customers when there were specified types of "changes in your credit report." (TrueLink's Brief, p. 8; M. Millett Dep., pp. 238-242, Ex. B to TrueLink's Brief). Clearly, in its undisputed context, the "complete identity theft protection" language at issue constituted mere puffing with respect to the "weekly fraud watch emails" provided with credit monitoring.

Finally, plaintiffs suggest, without specificity, that there are other aspects to their KCPA claim besides the alleged misrepresentation of credit monitoring as providing "complete identity theft protection." (Pl. Opp., p. 22). However, the issues raised in TrueLink's Motion would dispose of all of plaintiffs' KCPA claims because every private KCPA claim requires harm, and a causal relationship between that harm and the alleged violation – *no matter what* the alleged violation may be.[6]

Finally, plaintiffs attempt to manufacture a dispute regarding references to the terms "credit file" and "credit report" in TrueLink's Brief. Certainly, what terms TrueLink uses in its briefs is not relevant to what plaintiffs understood when purchasing the product. Plaintiffs fail to identify *any* marketing of TrueLink's credit monitoring relied upon by the Milletts that refers to or suggests that anything other than the customer's "credit report" would be monitored. Accordingly, even if there were confusion, there is certainly no evidence that it was caused by TrueLink. (See Response to Facts, D.I. 164 at ¶¶ 4-6 and Exhibit G thereto (Millett 00871); see also D.I. 163 (TrueLink's Opposition to Motion For Partial Summary Judgment), pp. 11-14). Thus, the suggestion that TrueLink misrepresented what data would be monitored is unsupported by any evidence.[7]

**C.    Plaintiffs Fail To Present Evidence That Would Establish Elements Of Their Breach Of Contract Claim.**

The Milletts' breach of contract claim is based on TrueLink's alleged failure to provide "complete identity theft protection" to Mr. Millett. (M. Millett Dep., pp. 242-43, Ex. B to

---

[6] TrueLink focused its Motion on the website language "complete identity theft protection" because that was the phrase which induced plaintiffs' expectation that TrueLink would monitor more than just Mr. Millett's credit report. (See Response To Facts, D.I. 165, ¶¶ 14-15).

[7] Plaintiffs' argue that reliance is unnecessary for a KCPA violation, but rely on case law addressing breach of contract claims and not KCPA claims. (Pl.'s Opp., pp. 22-23).

TrueLink's Brief; S. Millett Dep., pp. 26, 50-51, 115, Ex. C to TrueLink's Brief). In particular, the Milletts claim that TrueLink agreed to not only monitor Mr. Millett's credit file, but also to monitor all information – even information in the credit file of an imposter – and to alert Mr. Millett to any inclusion in any credit file of Mr. Millett's SSN. (TrueLink's Brief, D.I. 146, p. 33).

TrueLink moved for summary judgment on plaintiffs' claims that TrueLink breached its contract as described in subparagraph 16(a), (d) and (e) of the FAC (D.I. 76), all of which relate to the primary claim that TrueLink failed to provide "complete identity theft protection" by failing to monitor the credit files of other individuals. Plaintiffs' Opposition with regard to their breach of contract claim suffers from deficiencies similar to those addressed above. To meet their burden in opposing summary judgment, plaintiffs are required to demonstrate, with specific citations to supporting evidence, that a genuine issue of material fact exists as to their claim for breach of contract.

      1.   <u>Because she was not a party to the contract, Ms. Millett lacks standing to sue for its breach.</u>

By its Motion, TrueLink challenged Ms. Millett's standing to maintain her own breach of contract claim, citing authorities holding that an agent acting for a principal cannot sue on the contract. (TrueLink's Brief, pp. 32-33). Plaintiffs agree that Ms. Millett was not a party to the contract, but contend (without explanation) that the fact that she was acting for her husband was disclosed. The plaintiffs, however, have missed the point. As a preliminary matter, TrueLink had no way of knowing that it was Ms. Millett – and not Mr. Millett – who clicked the "I accept" button when purchasing TrueLink's credit monitoring on its internet website TrueCredit.com. Regardless, whether or not Ms. Millett was a disclosed agent is irrelevant. Simply put, Delaware law is clear that where a party enters into a contract as an agent for another, the party to the

15

contract is the principal and not the agent. Amer. Ins. v. Material Transit, Inc., 446 A.2d 1101, 1104 (Del. Super. Ct. 1982). The Milletts do not refute this legal proposition, nor do they challenge TrueLink's reliance on Amer. Ins. Perhaps most notably, the Milletts do not, in support of their argument that Ms. Millett "can proceed as a Plaintiff to enforce the terms of the contract," cite to a single case where an agent was permitted to sue on a contract.[8] Therefore, it is undisputed that Ms. Millett is not a party to the contract and has no standing to maintain a breach of contract claim in her own name.[9] (Pl. Opp., p. 24).

2.   It is undisputed that credit monitoring detects identify theft.

Plaintiffs' opposition to TrueLink's Rule 56 motion, and its own motion as well, is predicated upon the proposition that TrueLink's product is defective and does not help to uncover identity theft. However, plaintiffs' own public concessions prove otherwise.

The most common form of identity theft, as recognized by the Identify Theft Resource Center's 2003 Report (the "ITRC Report") (produced by plaintiffs, a copy of which is attached as Exhibit N to TrueLink's Response to Facts), is financial identity theft. Financial identity theft involves:

> the imposter's use of personal identifying information, primarily the social security number, **to establish new credit lines in the name of the victim.**

(D.I. 165, Ex. N, p. 5 (emphasis added)). Years before the plaintiffs let their credit monitoring subscription lapse Ms. Millett publicly acknowledged that TrueLink's credit monitoring protects

---

[8] In support of their position, the Milletts cite to Haveg Corp. v. Guyer, 226 A.2d 231 (Del. 1967). However, the issue there was not whether an agent could sue on a contract, but whether an agent had authority to bind the principal corporation to the terms of a contract. 226 A.2d at 234-35.

[9] The ability of Ms. Millett to pursue the claims here is particularly significant, given that she – and not Mr. Millett – was identified as the adequate class representative for their pending Rule 23 motion.

against this most common form of identity theft, described by Ms. Millett as True Name Fraud.

In her July 5, 2004 blog entry, Ms. Millett stated the following, revealing her understanding of

the limits of credit monitoring:

> **True Name Fraud** – A person uses your name and your
> address/their address and your SSN to apply for credit, **this will
> show on your credit report, and monitoring will work in this
> case very nicely**.
> <u>However, this is the only kind of ID theft it [credit monitoring]
> actually works for. . .</u>
>
> SSN Only Fraud - . . . Credit monitoring does not work for this
> form of ID theft. <u>AT ALL</u>.

(July 2004 blog of M. Millett, a copy of which is attached as Ex. T to TrueLink's Response to

Facts, D.I. 165). Even with this knowledge, the Milletts – as Ms. Millett stated in an interview

with the New York times – still has "credit monitoring because of the simple fact that it is the

best tool available at this time." (TrueLink's Brief, p. 10).

Financial identity theft, as defined by the ITRC Report, is the very type of identity theft

against which TrueLink's credit monitoring guards. (TrueLink's Brief, D.I. 146, Facts, ¶¶ 5, 10-

12). Because financial identity theft involves an imposter's use of another's personal

identification information "to establish new credit lines in the name of the victim," TrueLink's

product monitors the credit report of the subscriber – just as advertised -- in order to discover

new accounts and the inquiries by creditors which foreshadow new accounts. (TrueLink's Brief,

D.I. 146, Facts, ¶¶ 7-12).

Here, the Milletts set forth absolutely no allegation or contention that Mr. Millett ever

suffered financial identity theft. More specifically, the Milletts do not allege – because no facts

would support such allegations – that Abundio Perez's creditors ever accessed Mr. Millett's

credit report or that any of Abundio Perez's accounts ever appeared on Mr. Millett's credit

report. If that were the case, TrueLink would have sent Mr. Millett an alert. In sum, the Milletts

have set forth no evidence that Abundio Perez committed the type of identity theft that a credit monitoring product is designed to detect.

   3.   <u>Plaintiffs fail to refute that a proper interpretation of the contract can be made now.</u>

Plaintiffs fail to refute that interpretation of the contract's terms, which are unambiguous, should be resolved on summary judgment. (<u>See</u> TrueLink's Brief, p. 30-31). Instead, plaintiffs simply assert the following nonsequitur: that because, they contend, the contract incorporated marketing language, its meaning "cannot be subject to a single interpretation." (Pl. Opp., pp. 23-24). In support, plaintiffs rely on <u>Interim Healthcare, Inc. v. Spherion Corp</u>, 884 A.2d 513 (Del. Super. Ct. 2005). The plaintiffs' reliance is misplaced. In <u>Interim Healthcare</u>, the plaintiffs alleged a breach of a stock purchase agreement where the defendants allegedly failed to properly disclose the financial condition and liabilities of the acquired company. 884 A.2d at 517. While <u>Interim Healthcare</u> does set forth the elements for a breach of contract under Delaware law as cited by TrueLink in its opening brief, (TrueLink Brief, p. 30), it does not even remotely suggest that a contract cannot be subject to a single interpretation even if, as plaintiffs contend, it incorporates language used in marketing materials.

   4.   <u>Plaintiffs fail to identify evidence that TrueLink failed to provide Fraud Resolution Services or any damages resulting therefrom.</u>

Plaintiffs suggest that the alleged failure to provide Fraud Resolution Services was overlooked in TrueLink's Brief. (<u>See</u> Pl. Opp., p. 28). Perhaps plaintiffs did not read far enough, because TrueLink's Brief specifically addressed that alleged breach (in fact it constituted a separate argument with its own heading), and demonstrated why it fails as a matter of law. <u>See</u> TrueLink's Brief, D.I. 146 (citing evidence that the Milletts never sought to use the Fraud Resolution Services). For this reason, any alleged (albeit unsupported) suggestion that plaintiffs were harmed by the failure to provide such services must be rejected).

5.  Plaintiffs cannot allege breach of implied covenant of good faith and fair dealing for the first time in their opposition to summary judgment.

In their Opposition, plaintiffs improperly advance a new theory of liability that Truelink allegedly breached an implied covenant of good faith and fair dealing. (Pl.'s Opp., p. 26)  The Court should ignore this defense to TrueLink's motion because the plaintiffs are barred from raising a new legal theory of liability for the first time in response to a motion for summary judgment.  Tucker v. Union of Needle Trades, Indus. & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005).  Plaintiffs have never before alleged that Truelink breached its implied covenant of good faith and fair dealing.  Accordingly, allowing them to do so now subjects Truelink to unfair surprise, and gives Truelink no opportunity to investigate such an allegation through the discovery phase of this litigation.

The Milletts' new allegation that Truelink breached its implied covenant of good faith and fair dealing is also improper because the Milletts cannot assert such a claim "that is based on exactly the same acts which are said to be in breach of express covenants." USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 439 (3d Cir. 1993) (affirming district court's grant of summary judgment for defendant on count for breach of implied covenants under Pennsylvania law).  The Milletts have alleged no specific implied contractual obligation distinct from their allegations that Truelink breached the express terms of the contract at issue.  Based on the foregoing, this Court should reject in its entirety the Milletts' argument that Truelink allegedly breached its implied covenant of good faith and fair dealing.

6.  Plaintiffs fail to identify evidence of harm resulting from the alleged breaches addressed in TrueLink's Motion.

Finally, plaintiffs fail to meet their burden to demonstrate, by reference to specific facts in the record (and not mere conclusory allegations), that plaintiffs suffered harm as a result of

any breach.  As set forth in Section B, <u>supra</u>, plaintiffs offer no evidence that the alleged breach resulted in any harm to plaintiffs.

**D.     The Milletts Fail To Respond To TrueLink's Argument That The Milletts Are Not Entitled To Punitive Damages.**

The Milletts' Opposition does not address TrueLink's request for summary judgment on plaintiffs' claim for punitive damages.  Instead, the Milletts claim that TrueLink's alleged willfulness is sufficient to support their claim for damages under the KCPA generally.  (Pl.'s Opp., pp. 29-30).  Accordingly, this Court should find as a matter of law that the Milletts are not entitled to punitive damages even if this Court finds that there is a fact issue relating to the representations made by TrueLink on its website.  Punitive damages are not recoverable under the KCPA or under the Milletts' breach of contract theory, nor have the Milletts presented any evidence that TrueLink "willfully" or "maliciously" misrepresented credit monitoring. (TrueLink's Brief, pp. 39-40).

### III.
### <u>CONCLUSION</u>

WHEREFORE, for all the foregoing reasons, TrueLink respectfully requests that this Court grant TrueLink's Motion for Partial Summary Judgment.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By:  /s/ Jay N. Moffitt
        William M. Lafferty (#2755)
        Jay N. Moffitt (#4742)
        1201 N. Market Street
        Wilmington, DE  19801
        (302) 658-9200

<u>OF COUNSEL</u>:
Michael O'Neil
Paula D. Friedman
DLA Piper US LLP
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601

## CERTIFICATE OF SERVICE

I, Jay N. Moffitt, hereby certify that on November 16, 2007, I electronically filed the

foregoing *Defendant TrueLink Inc.'s Reply Brief in Support of Motion for Partial Summary

Judgment* with the Clerk of Court using CM/ECF, which will send notification of such filing(s)

to the following:

### BY ELECTRONIC SERVICE

Christopher J. Curtin
Erisman & Curtin
629 Mount Lebanon Road
P.O. Box 250
Wilmington, DE 19803

And that I served a copy this day by electronic mail and by depositing in the United

States Mail, postage prepaid to:

### BY E-MAIL AND U.S. MAIL

Christopher J. Curtin
Erisman & Curtin
629 Mount Lebanon Road
P.O. Box 250
Wilmington, DE 19803

B. Joyce Yeager
Yeager Law Firm LLC
City Center Square, 26th Floor
1100 Main Street
Kansas City, MO  64105

Jay N. Moffitt (#4742)