IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEVEN G. MILLETT and<br>MELODY J. MILLETT, on behalf<br>of themselves and all others<br>similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>TRUELINK INC., a Trans Union<br>Company,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 05-599-SLR<br>)<br>)<br>)<br>)<br>) |

Christopher J. Curtin, Esquire of Erisman & Curtin, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Barry R. Grissom, Esquire of Overland Park, Kansas; Bryson R. Cloon, Esquire, of the Cloon Law Firm, Leawood, Kansas; B. Joyce Yeager, Esquire of the Yeager Law Firm, Mission, Kansas; and Michael W. Blanton, Esquire of Swanson Midgley, LLC, Kansas City, Missouri.

William M. Lafferty, Esquire and Jay N. Moffett, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Michael O'Neil, Esquire and Paula D. Friedman, Esquire of DLA Piper US LLP, Chicago, Illinois.

**MEMORANDUM OPINION**

February 7, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiffs Steven G. and Melody J. Millett ("plaintiffs") initiated this consumer fraud action against TrueLink, Inc. ("defendant") on September 9, 2004. Defendant provides a credit monitoring service to which plaintiffs subscribed. Plaintiffs bring claims under the Kansas Consumer Protection Act ("KCPA") for allegedly unfair and deceptive acts and unconscionable practices (D.I. 76 at ¶¶ 44-46) and for breach of contract (id. at ¶ 51) in connection with defendant's failure to protect plaintiffs against identity theft.[1]

Currently before the court are plaintiffs' motion for class certification (D.I. 124), plaintiffs' motion for partial summary judgment on its KCPA allegations (D.I. 147), and defendant's motion for partial summary judgment on plaintiffs' KCPA claims and several of its breach of contract claims (D.I. 145). Also before the court are several motions to strike filed by defendant. (D.I. 160, 161, 180) For the reasons that follow, the court grants summary judgment in favor of defendant, and denies plaintiffs' motion for summary judgment. The remaining motions are denied as moot.

## II. BACKGROUND

### A. Factual Background[2]

---

[1]The court has previously determined that the law of Kansas applies to plaintiffs' consumer fraud claims. (D.I. 74 at 8, found at 2006 WL 2583100, *4 (D. Del. Sept. 7, 2006)

[2]At the outset, the court notes that neither party complied with LR 5.1.1 and 7.1.3 regarding the form and content of their submissions. Plaintiff filed a 14-page fact-laden motion and 34-page opening brief in support for its motion for partial summary judgment, parts of which contain multi-page single-spaced block quotes from deposition transcripts. Neither was in the required 12-point font. In addition, plaintiff repeatedly refers to appendices without connection to docket item number and without pin cites.

This is a consumer fraud action brought under the KCPA. Plaintiff Melody Millett purchased, on behalf of her husband, plaintiff Steven Millett, a credit monitoring service from defendant TrueLink called "Credit Monitoring." Credit Monitoring tracks the information contained in a purchaser's Trans Union credit report. Defendant advertised that its service provides "complete identity theft protection with weekly fraud watch emails." (D.I. 165, ex. G) These weekly emails contain "alerts to changes to your [credit] report . . . including fraudulent activity, new inquiries, new accounts, late payments, and more." (Id., ex. F)

An individual by the name of Abundio C. Perez a/k/a Abundio Cuatle ("Perez") has used Steven Millett's social security number ("SSN") to open lines of credit and finance vehicle purchases. Plaintiffs discovered Perez's use on or about January 24, 2003. See Millett v. Ford Motor Credit Co., No. Civ. A. 04-2450, 2006 WL 1301160, *1 (D. Kan. May 9, 2006).[3] Ms. Millett, herself and through counsel, contacted the three major credit bureaus (Equifax, Experian, and Trans Union) about Perez's use of Mr. Millett's SSN between January and April of 2003. Id. Ms. Millett attempted to close Perez's accounts in 2003. (D.I. 148 at 20) Plaintiffs purchased credit watch services from Equifax in August 2002 and Experian on August 5, 2003. (D.I. 165, ex. C)

---

Defendant filed, in addition to its 38-page answering brief, a 24-page "response to plaintiff's purported factual statement." As the parties have not streamlined the facts and issues to facilitate the court's review, the court briefly describes the more pertinent facts from these submissions in summary fashion only.

[3]Plaintiffs previously brought a suit alleging that Ford Motor Credit Company violated the Fair Credit Reporting Act when it failed to accurately compile or report disputed credit information in connection with Perez's vehicle financing. That action was dismissed on summary judgment.

3

Plaintiffs purchased defendant's service over the internet on August 6, 2003. (Id., ex. F)  Plaintiffs were not notified of Perez's subsequent use of Mr. Millett's SSN by defendant, insofar as it was not reported to Trans Union and was not registered activity on Mr. Millet's credit report.  Plaintiffs assert that defendant has violated the KCPA for advertising "complete protection from identity theft," when access to a purchaser's credit report can not safeguard against an unauthorized person's (unreported) use of a purchaser's SSN.

Prior to purchasing Credit Monitoring, Melody Millett agreed to the terms and conditions of a "Credit Monitoring Member Agreement" (the "Member Agreement"). (D.I. 126, ex. N)  The Member Agreement provided that all content was provided to customers on an "as is" basis, and that defendant does not "make any representation or warranties of any kind whatsoever as to the content, memberships, products or services available on or accessed through this site or that the product or services will be error-free." (Id., p. 2)  Defendant also disclaimed "all express or implied warranties." (Id.) Additionally, the Member Agreement stated that "[t]he credit reports provided or requested through our site are not intended to constitute the disclosure of information by a credit reporting agency as required by the Fair Credict Reporting Act or similar laws;" "Full disclosure of information in your file at a credit reporting agency must be obtained directly from such credit reporting agency." (Id. at 5)

## B. Procedural Posture

Plaintiffs filed the present action on September 9, 2004 in the United States

4

District Court for the District of Kansas.[4]  Plaintiffs' class action allegations at that time included common law breach of contract and violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq.  (D.I. 38)  Plaintiffs also asserted individual allegations of negligence, fraud, negligent misrepresentation, and violations of the KCPA, for which plaintiffs also sought injunctive relief.  (Id.)  The case was subsequently transferred to this district on August 9, 2005.  (D.I. 35)

On December 1, 2004, plaintiff Robert V. Townes, IV brought a separate action alleging violations of the federal Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 et. seq., against defendant in this court on behalf of himself and a proposed nationwide class (hereinafter, the "Townes" action).  (Civ. No. 04-1488-JJF, D.I. 1)  On December 14, 2005, the Millets amended their complaint to add claims for violations of the CROA on behalf of a nationwide class.  (Civ. No. 05-599, D.I. 53-4, 55)  Counsel in Townes subsequently notified the Clerk of Court of the potential overlap between the claims and putative classes in Millett and Townes.  (Id., D.I. 56)  The Millets opposed coordination of the cases, citing their belief that their case is "dissimilar" with the exception of the common defendant, TrueLink (id., D.I. 57), and also moved to appoint interim class counsel.  (Id., D.I. 58)  The court denied plaintiffs' motion and, consistent with plaintiffs' argument, found that the suits were "not overlapping, duplicative, or competing."  (Id., D.I. 73)

The parties in Townes reached a settlement agreement in April 2007; the court approved and notices of settlement were mailed in May 2007.  (Civ. No. 04-1488, D.I.

---

[4]Civ. No. 04-2448.

100 at 2-3)  The Millets subsequently filed a motion to intervene in the Townes action, contending that the pending settlement could bar them from pursuing their own class action claims in the case at bar.  (Id. at 3)  By an opinion dated August 30, 2007, Judge Farnan found that intervention was not appropriate, as "[t]he Millets have consistently taken the position that the Townes action does not overlap with their action, and therefore, the court cannot conclude that common questions of law or fact exist." (Id. at 8)

Plaintiffs moved for leave to file a third amended complaint in this action on June 12, 2006, which was granted in part. (Civ. No. 05-599, D.I. 70, 75)  Plaintiffs filed a fourth amended complaint on September 20, 2006, wherein plaintiffs assert that defendants sold its credit monitoring service under circumstances in which it knew or had reason to know that:  (1) consumers had an "inability to understand the language of the agreement and marketing materials;" (2) consumers were "unable to receive a material benefit" from their purchase; (3) consumers were induced into an "excessively onesided" agreement; and (4) defendant's statements regarding Credit Monitoring were "misleading statements of opinion . . . on which consumers were likely to rely to their detriment." (Id., D.I. 76 at ¶ 46)  Plaintiffs also assert that defendant breached its promises to:  protect purchasers "against identity theft and fraud;" allow members to monitor their credit report with weekly emails; provide weekly email alerts; allow members to "immediately find out about fraudulent activity;" and to "always be on top of what is happening with their credit."[5]   (Id., D.I. 76 at ¶ 16)

_____

[5]Defendant does not move for summary judgment on plaintiffs' assertions regarding the fraud-watch emails and email alerts (D.I. 76 at ¶ 16 (b) & (c)).  (D.I. 145 at

## IV.  DISCUSSION

### A.  Plaintiffs' KCPA Claims (Count I)

Plaintiff brings its motion for partial summary judgment on its claims of

unconscionability as defined by the KCPA,[6] which provides, in relevant part:

> 50-627.  Unconscionable acts and practices.
>
> (b)  The unconscionability of an act or practice is a question for the court. In
> determining whether an act or practice is unconscionable, the court shall
> consider circumstances of which the supplier knew or had reason to know, such
> as, but not limited to the following that:
>
> (1)  The supplier took advantage of the inability of the consumer reasonably to
> protect the consumer's interests because of the consumer's physical infirmity,
> ignorance, illiteracy, inability to understand the language of an agreement or
> similar factor;
>
> . . .
>
> (5)  the transaction the supplier induced the consumer to enter into was
> excessively onesided in favor of the supplier;
>
> (6)  the supplier made a misleading statement of opinion on which the consumer
> was likely to rely to the consumer's detriment; and
>
> (7)  except as provided by K.S.A. 50-639, and amendments thereto, the supplier
> excluded, modified or otherwise attempted to limit either the implied warranties of
> merchantability and fitness for a particular purpose or any remedy provided by
> law for a breach of those warranties.

K.S.A. § 50-627.

Courts have identified a number of factors for consideration in determining

whether an act is "unconscionable" under the KCPA, namely:  "(1) [t]he use of printed

form or boilerplate contracts drawn skillfully by the party in the strongest economic

---

2)

[6](D.I. 76, ¶ 46)

position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate; and (10) inequality of bargaining or economic power." State ex rel. Stovall v. DVM Enterprises, Inc., 62 P.2d 653, 658 (Kan. 2003) (quoting Wille v. Southwestern Bell Tel. Co., 549 P.2d 903 (1976) (internal citations omitted)).  The unconscionability of an act or practice is a question of law.  K.S.A. § 50-627(b).

### 1. Defendant is entitled to judgment on plaintiffs' § 627(b)(1) and § 627(b)(7) claims

Plaintiff alleges a violation of K.S.A. § 50-627(b)(1) "based upon the use of confusing language by [d]efendant in marketing." (D.I. 175 at 18)  Specifically, plaintiff asserts that "complete protection from identity theft" is vague and ambiguous.  (D.I. 148 at 9-10)  Plaintiff's expert asserts that, based on survey data, "identity theft" is understood to contemplate the unauthorized use of personal identification information (such as a SSN) (D.I. 126, ex. F at 8), while defendant's credit monitoring product can

8

not protect consumers from all forms of such unauthorized use.

> The comments to section 627(b)(1) provide that
>
> > [s]ubsection (b)(1) includes such conduct as selling an English-language encyclopedia set for personal use to a Spanish-American bachelor laborer who does not read English, or using legal verbiage in a manner which cannot be readily comprehended by a low-income consumer who both reads and speaks English.

Comment 2, 2005 Main Volume (1973). Plaintiffs present no evidence that they could not understand or comprehend the terms of the agreement in this case. Rather, the gravamen of plaintiffs' complaint is that the terms of the agreement were false. This purported falsehood can not form the basis for a claim under section 627(b)(1). See Tufts v. Newmar Corp., 53 F. Supp. 2d 1171, 1183 (D. Kan. 1999) (section 627(b)(1) inapplicable where "[p]laintiffs d[id] not allege that they did not understand the terms of the agreement; they allege[d] that they understood the terms, but that the terms were false.").

Plaintiffs further allege that defendant's attempt to exclude all warranties is unconscionable pursuant to K.S.A. § 50-627(b)(7). More specifically, plaintiffs assert that defendant improperly excluded warranties of merchantability and fitness for a particular purpose despite knowing that "consumers purchased the product because they relied upon [d]efendant to provide accurate scores in order to time their purchases" and "to learn about identity theft." (D.I. 175 at 19) As an initial matter, defendant is correct that this theory of unconscionability is not alleged in plaintiff's fourth amended complaint. (D.I. 76 at ¶ 46) Notwithstanding, the statute relied upon by plaintiffs

appears to apply only to goods, not services.[7]  See K.S.A. § 50-639(a)(1) ("[W]ith

respect to property which is the subject of or is intended to become the subject of a

consumer transaction in this state, no supplier shall:  (1) [e]xclude, modify or otherwise

attempt to limit the implied warranties of merchantability . . . and fitness for a particular

purpose . . . .") (cited at D.I. 175 at 16).

      For these reasons, plaintiffs' motion for summary judgment is denied with

respect to both claims.  Moreover, because a reasonable jury cannot find for plaintiffs

on either claim, defendant is entitled to judgment.

### 2.  Plaintiffs are not entitled to summary judgment on their remaining unconscionability claims

#### a.  Section 627(b)(5):  inducement into an excessively one-sided contract

      Plaintiffs allege a violation of K.S.A. § 50-627(b)(5) for use of unconscionable

contract terms, "based upon use of the boilerplate contract" by defendant, "the party in

the strongest economic position which used industry-wide standards offered in a 'take it

or leave it' basis." (D.I. 175 at 18)  Plaintiffs do not cite specific evidence in support of

their assertions that consumers had no choice but to accept defendant's

representations as to the manner in which Credit Monitoring would perform and its

efficacy.  (D.I. 148 at 12)  Ms. Millett was required to review and assent to the terms of

the Member Agreement prior to purchasing defendant's services, which contained a

statement that the information provided was not guaranteed to be "error-free" (D.I. 126,

ex. N at 2) and that Credit Monitoring would not provide all of the information in a

---

[7]Plaintiffs themselves characterize Credit Monitoring as a service.  (D.I. 76 at ¶ 35)

purchaser's credit report (id. at 5). Plaintiffs were entitled to cancel Mr. Millett's enrollment at any time (id. at 1, 6), yet there is no indication that plaintiffs attempted to take advantage of this policy, despite learning that Perez's use of Mr. Millett's SSN did not appear in defendant's email alerts. (D.I. 165, ex. A at 99) Plaintiffs point to no evidence and, indeed, the record appears devoid of "some element of deceptive bargaining conduct . . . as well as unequal bargaining power" that could render the Member Agreement unconscionable under the KCPA.[8]  State ex rel. Stovall, 62 P.2d at 658 (citing Willman v. Ewan, 634 P.2d 1061 (1981)). Plaintiff's motion for summary judgment is denied on this ground.

### b. Section 627(b)(6): misleading statement of opinion

Plaintiffs assert that defendant violated section 627(b)(6) by representing that the "credit report . . . [was] the tool by which a consumer could obtain the information necessary to protect herself from identity theft or to be alerted to ongoing identity theft" when, in fact, a credit report does not contain all of the information necessary to detect the unauthorized use of one's SSN. (D.I. 165 at 13)  Plaintiffs' claim is borne out of their expectation that Credit Monitoring would do more than monitor Mr. Millett's Trans

---

[8]Compare Dodson v. U-Needa Self Storage, LLC, 96 P.2d 667, 672-73 (Kan. App. 2004) (finding unequal bargaining power where: (1) purchaser of self-storage unit told defendant that she had never signed a contract before; (2) defendant's employee told her how to fill out the required form; (3) defendant represented that plaintiff would have sole access to a storage unit despite having knowledge that another individual retained access to the storage unit according to his rental agreement; and (4) defendant did not inform plaintiff that additional action was required to transfer tenancy in the unit); Hatke v. Heartland Homecare Svcs., Inc., 77 P.3d 1288 (Kan. App. 2003) (no indication of deceptive bargaining conduct or unequal bargaining power when plaintiff was offered prescription medication at "a price that, at times, was triple the price at which similar customers could purchase the same medication" in the area).

Union credit report for changes which might indicate possible identity theft.  Though defendant advertised "complete identity theft protection with weekly fraud watch emails," the advertising specifically stated that this was accomplished by "weekly email alerts to changes in your [credit] report."[9]  (Id., ex. G)  It would be clear to any reasonable consumer that defendant's "product offers to convey information indicative of identity theft, but only if it appears in the purchaser's [Trans Union] credit report."  See Millett et al. v. Experian Information Solutions, Inc. et al., Central District of California No. Civ. A. 05-879, D.I. 140 at 6 (Dec. 18, 2006) (docketed in the present record at Civ. No. 05-599, D.I. 146, ex. A)  As the California district court found with respect to near identical consumer fraud claims brought by plaintiffs against Experian, "[i]t is unreasonable to read the representations on the web pages leading to the purchase page and believe that Credit Manager somehow acts as an all-knowing private investigator, relaying any information relevant to identity theft to the purchaser."  Id.  Melody Millett has recognized as much in her deposition.  (D.I. 146, ex. B at 409-10 (affirming that Credit Monitoring would provide identity theft protection "only as it would relate to Trans Union's data;" "no reasonable person would" believe Credit Motitoring would protect against the unauthorized use of a SSN on an employment application))  Defendant's advertising is not unconscionable; plaintiffs' motion is denied in this

---

[9]Other advertisements of record contain similar language and limitations.  One such ad stated that "[y]ou can secure your credit, your identity, & your peace of mind for just $9.95/year with the Web's most affordable credit monitoring service – weekly credit alerts!  We'll keep track of your credit for you and email you every time there's a change – keeping you on top of your credit standing."  (D.I. 126, ex. M)

regard.[10]

### 3. Defendant is granted summary judgment on the remaining KCPA claims

In view of the foregoing, the court agrees with defendant that its representations

are non-actionable under the KCPA, as they constitute no more than mere "puffing" to

be expected by consumers. Baldwin v. Priem's Pride Motel, Inc., 580 P.2d 1326, 1329

(Kan. 1978). Additionally, only "a consumer aggrieved by an alleged violation of th[e

KCPA]" may bring an action for damages. K.S.A. § 50-634(a). A consumer is only

"aggrieved" when suffering a loss or injury resulting from a violation of the KCPA. See

Finstad v. Washburn Univ. of Topeka, 845 P.2d 685, 691 (Kan. 1993). Plaintiffs assert,

without adequate support, that they "paid excessive amounts of insurance," and were

also harmed by the use of Mr. Millett's SSN to obtain a car loan and to become

obligated on a mortgage.[11]  Plaintiffs admit that their "damages are difficult to quantify,"

but have not even attempted to do so. (D.I. 176 at 15)  Plaintiffs do not assert that

Perez used Mr. Millett's SSN to open accounts in Mr. Millett's name.  To the extent

Perez's use of Mr. Millett's SSN may have caused plaintiffs difficulties, or impacted Mr.

Millett's accounts, plaintiffs do not describe whether, and how, they suffered harm as a

_____

[10]The court need not address the parties' arguments regarding specific product failures, e.g. "core failures" and "watch set failures," insofar as such failures are relevant to product performance, or the correctness of statements of fact, rather than "statements of opinion" made by defendant. See K.S.A. § 60-627(b)(6).

[11]For these propositions, plaintiffs cite the affidavits of Melody Millett, which do not cite supporting documentation. (D.I. 164 at 14, citing D.I. 166, ex. 6, D.I. 150, ex. J) This affidavit, along with an additional affidavit by Melody Millett, are the subject of motions to strike by defendant. (D.I. 160, 180)  Defendant also moves to strike the expert report of plaintiffs' expert, Donald Dilbert. (D.I. 161)  These motions are denied as moot in view of the court's holdings herein.

result of any inability to rectify the problem.[12]  Absent more, a reasonable jury could not

find that plaintiffs were "aggrieved" parties entitled to recovery.  For these reasons,

defendant is entitled to summary judgment on plaintiffs' remaining KCPA claims.[13]

### B.  Breach of Contract

Plaintiffs allege that defendant breached the Member Agreement by allegedly

failing to provide the following services:

(a)    Protecting members against identity theft and fraud;
(b)    Allowing members to monitor their credit report with weekly fraud-watch emails;
(c)    Providing members with weekly email alerts of changes in their credit reports;
(d)    Allowing members to immediately find out about fraudulent activity; and
(e)    Allowing members to always be on top of what is happening with their credit.

(D.I. 76 at ¶¶ 10, 16, 51)   Defendant moves for summary judgment on the allegations

described in paragraphs (a), (d), and (e) above.  (D.I. 146 at 30)

There are three elements of a breach of contract claim:  plaintiffs must prove that

a contract existed; they must establish that the defendant breached an obligation

imposed by the contract; and they must show that the breach resulted in damages.

VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003).  As an initial

matter, defendant argues that Ms. Millett's breach of contract claim fails because she

_____

[12]Melody Millett testified that she managed to have Ford Motor repossess Perez's cars, purchased on the fraudulent applications, and succeeded in having many of Perez's credit grantors close his accounts.  (D.I. 146, ex. B at 173)  Notably, the Milletts continued purchasing Credit Monitoring from defendants for several years thereafter; plaintiffs at no time opted to cancel.  (Id. at 85, 179)

[13]The court need not reach defendant's argument regarding Ms. Millett's standing with respect to these claims.

14

was not a party to Mr. Millett's contract with defendant.  (D.I. 146 at 31, citing Amer. Ins. v. Mat'l Transit, Inc., 446 A.2d 1101, 1104 (Del. Super. 1982))  The court agrees and, therefore, grants judgment in favor of defendant on Ms. Millett's claims with respect to all five of the allegations described above.

Plaintiffs describe several purported aspects to the breach of contract claims. Plaintiffs state that:  (1) purchasers "received information filtered and selected by another, maintained by another, reported by third parties, and maintained in such a manner that those engaging in credit fraud or the use of another's identifiers could continue to do so;" (2) defendant knew that the "credit report" was not an effective tool to communicate "information pertaining to use of credit information," but continued to sell Credit Monitoring; (3) defendant breached the Member Agreement each time a "watch" was not placed on a consumer's credit report, and for phantom alerts sent to purchasers when no changes to a credit report had occurred; and (4) defendant failed to provide "meaningful" fraud resolution services.  (D.I. 164 at 25-28)  Even assuming these allegations to be true, however, plaintiffs do not allege that any of Perez's creditors ever accessed Mr. Millett's report or that any of Perez's accounts ever appeared on Mr. Millett's report.  There is simply no evidence of record that defendant failed to apprise Mr. Millett of any fraudulent activity on his credit report – none was ever reflected therein.  Because there was no credit report activity to speak of, it does not follow that these services failed to perform as promised.[14]  There is also no

---

[14]The Member Agreement provides for several "fraud resolution services."  For example, in the event of a detected identity fraud, defendant agreed to "[c]ompile and organize the paperwork to help you document the hacker attack or identity fraud," "inform credit bureaus," run a credit check, and provide a list of attorneys.  (D.I. 126, Ex.

indication that Mr. Millett attempted to use defendant's fraud resolution services.

Therefore, there is no indication that these services failed to provide a service to Mr.

Millett as promised.

Plaintiffs also assert that defendant used ambiguous terms (such as "consumer

credit report") and "varied [the] uses of the [contract] terms utilized." (D.I. 164 at 27)

The court disagrees.

> Contract language is not ambiguous simply because the parties disagree on its
> meaning. Rather, a contract is ambiguous only when the provisions in
> controversy are reasonably or fairly susceptible of different interpretations or may
> have two or more different meanings.

E.I. du Pont de Nemours & Co. v. Allstate Ins. Co., 693 A.2d 1059, 1061 (Del. 1997)

(citation omitted). Plaintiffs do not advance reasonable, alternative interpretations of

the terms they assert are ambiguous. Plaintiffs acknowledge that defendant promised

to monitor a purchaser's credit report, but complain that this was an ineffective tool in

protecting against identity theft. One such reason, according to plaintiffs, is because a

credit report contains only filtered credit information. (D.I. 164 at 25-26) The Member

Agreement, however, specifically states that full disclosure of a purchaser's credit file

can only be obtained from a credit agency. (D.I. 126, ex. N) The crux of plaintiffs'

argument is that, despite knowing that the "credit report" did not contain the breadth of

information contained in a "credit file," defendant represented that the credit report

would be an adequate tool to protect against identity theft. (D.I. 164 at 28) As

_____ ___

N at 2-3) Notably, however, defendant reserved the right not to provide any such
services "in the event [it] determines that [the purchaser] knew, or should reasonably
have known, of an act of identity fraud that commenced prior to [his or her] Credit
Monitoring membership," as likely was the case with Perez's use of Mr. Millett's SSN
here. (Id. at 4)

16

discussed previously, a reasonable person would not read the representations in
defendant's advertising or the Member Agreement and believe, as Mr. Millet claims,
that Credit Manager acts as a tool which protects an individual's SSN. The court finds
that the Member Agreement is not ambiguous and, as a matter of law, cannot be
interpreted as promising to monitor the complete credit files of purchasers (or the files
of other individuals utilizing a purchaser's SSN).

For the aforementioned reasons, summary judgment for defendant is appropriate
on plaintiffs' breach of contract claims. In addition, the court notes that, because
plaintiffs have not introduced, despite ample opportunity to do so,[15] more than a scintilla
of evidence that Mr. Millett suffered resulting harm, defendant is entitled to judgment on
each count. (D.I. 76, ¶¶ 10(a)-(e), 16(a)-(e), 51(a)-(e)) Nevertheless, the court will
allow plaintiffs an opportunity to respond before the court enters judgment in this
action.[16]

_____

[15]"It has long been established that, under the right circumstances, district courts
are entitled to enter summary judgment sua sponte." Couden v. Duffy, 446 F.3d 483,
500 (3d Cir. 2006) (quoting Gibson v. Mayor and Council of Wilmington, 355 F.3d 215,
222 (3d Cir. 2004)). This may not occur, however, "without 'placing the adversarial party
on notice that the court is considering a sua sponte summary judgment motion' and
providing that party 'an opportunity to present relevant evidence in opposition to that
motion.'" Couden, 446 F.3d at 500 (other citations omitted). Notice is satisfied if "the
targeted party had reason to believe the court might reach the issue and received a fair
opportunity to put its best foot forward." Id. (other citations and quotation marks
omitted).

[16]Plaintiffs' response is limited to arguments and documents contained in the
current summary judgment record. Citations to appendices and exhibits of record
should contain both a record document identifier (D.I. ____, ex. ___) and specific page
and/or paragraph number for the court's reference. Plaintiffs should not refer to the
affidavits of Melody Millett as factual support; insofar as either affidavit specifically
references a specific document in evidence, that document itself should be cited to the
court. Delaware counsel is reminded that further submissions to the court must comply

## V. CONCLUSION

For the aforementioned reasons, the court denies plaintiffs' motion for partial summary judgment (D.I. 147), grants defendant's motion for partial summary judgment (D.I. 145), and grants summary judgment in favor of defendant on plaintiffs' remaining breach of contract claims. Plaintiffs' motion for class certification (D.I. 124) is denied as moot. Defendant's motions to strike (D.I. 160, 161, 180) are also denied as moot. An appropriate order shall issue.

---

with LR 5.1.1 and 7.1.3.